USDC SCAN INDEX SHEET

















GEP    11/10/04    10:41

3:04-CV-02244   DEPT OF PARKS V. BAZAAR DEL MUNDO INC

*1*

*TRANCS.*

FILED

04 NOV -9 AM II: 11

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY:

**FILED**

NOV - 4 2004

CLERK, U.S. DISTRICT COURT
DEPU EASTERN DISTRICT OF CALIFORNIA
BY_____
DEPUTY CLERK

I hereby certify that the annexed
instrument is a true and correct copy of
the original on file in my office.
ATTEST:    JACK L. WAGNER
Clerk, U. S. District Court
Eastern District of California
By_____
NOV - 4 2004
Dated_____

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----ooOoo----

|  |  |
|---|---|
| DEPARTMENT OF PARKS AND RECREATION FOR THE STATE OF CALIFORNIA, | **'04 CV 2244 JM    (JMA)** |
| Plaintiff, | NO. 04-CV-1533 FCD JFM |
| v. | <u>MEMORANDUM AND ORDER</u> |
| BAZAAR DEL MUNDO, INC., a California Corporation, and DOES 1-50, inclusive, |  |
| Defendant. / |  |

----ooOoo----

This matter is before the court on defendant Bazaar del

Mundo, Inc.'s ("BdM") motion to transfer venue pursuant to 28

U.S.C. section 1404(a).  Plaintiff, the Department of Parks and

Recreation for the State of California ("the State"), set forth

*six causes of action against BdM in its complaint,* including: (1)

declaratory judgment of trademark ownership; (2) rectification of

trademark; (3) fraudulent federal trademark infringement; (4)

unfair business practices; (5) false advertising; and (6) false

1 | designation of origin.

2 |     The State originally filed its complaint in Sacramento
3 | County Superior Court, and the case was properly removed to this
4 | court. BdM now seeks to transfer this matter to the United
5 | States District Court for the Southern District of California.
6 | For the reasons set forth below, the court grants BdM's motion to
7 | transfer venue pursuant to 28 U.S.C. section 1404(a).[1]

8 | **BACKGROUND**

9 |     The underlying dispute between the State and BdM involves a
10 | contest for intellectual property rights in connection with the
11 | operation of two restaurants located in San Diego. (Def.'s
12 | Memorandum of Points and Authorities in Support of its Motion to
13 | Transfer Venue ("Def.'s Memo. of P & A") at 1.) In its
14 | complaint, the State alleges ownership of two trademarks used by
15 | BdM, namely "Casa De Pico" and "Casa De Bandini." (Id.) These
16 | marks are the names of two restaurants BdM has continuously
17 | operated in Old Town San Diego since 1971 and 1980, respectively.
18 | (Id. at 3.)

19 |     The State's complaint alleges BdM fraudulently registered
20 | with the United States Patent and Trademark Office and the
21 | California Secretary of State two names, "Casa De Pico" and "Casa
22 | De Bandini," lawfully owned by the State. (Id. at 1.) The State
23 | seeks, *inter alia*, injunctions against BdM and a judicial
24 | declaration that the State is entitled to the exclusive use and
25 | ownership of the trademarks. (Pl.'s Complaint at 10.)

26 |

27 |     [1]    Because oral argument will not be of material
assistance, the court orders this matter submitted on the briefs.
28 | See E.D. Cal. Local Rule 78-230(h).

**STANDARD**

Where venue is proper in the district in which an action is brought, the court may transfer the action "to any other district or division where it might have been brought" out of concern for "convenience of the parties and witnesses," and "in the interest of justice." 28 U.S.C. § 1404(a) (2003). Where an action might have been brought in another district, the decision to transfer is left to the sole discretion of the district court. <u>Commodity Futures Trading Comm'n v. Savage</u>, 611 F.2d 270, 279 (9th Cir. 1979). Section 1404(a) grants the district court broad discretion "to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" <u>Stewart Organization v. Ricoh Corp.</u>, 487 U.S. 22, 29 (1988), quoting <u>Van Dusen v. Barrack</u>, 376 U.S. 612, 622 (1964); *accord* <u>Jones v. GNC Franchising, Inc.</u>, 211 F.3d 495, 498 (9th Cir. 2000).

The dispositive factors of party convenience, witness convenience, and the interest of justice are to be interpreted broadly to allow for consideration of the facts of each case. <u>E. & J. Gallo Winery v. F. & P. S.p.A.</u>, 899 F. Supp. 465, 466 (E.D. Cal. 1994). The moving party has the burden of showing that "the convenience of the parties and witnesses" and "the interest of justice" require transfer to another district. <u>Commodity Futures Trading Comm'n</u>, 611 F. 2d at 279.

Transfer may not be ordered if the result merely shifts the inconvenience from one party to another. <u>Reed Elsevier, Inc. v. Innovator Corp.</u>, 105 F. Supp. 2d 816, 821 (S.D. Ohio 2000). The party seeking the transfer has the burden of showing that trial

3

1  where the action is pending will result in a clear balance of

2  inconveniences to it.  <u>Harris Trust & Sav. Bank v. SLT Warehouse</u>

3  <u>Co., Inc.</u>, 605 F. Supp. 225, 227 (N.D. Ill. 1985).

4                              **ANALYSIS**

5       The district court may transfer an action pursuant to

6  Section 1404(a)[2] if two requirements are met.  First, the

7  proposed transferee district must be one in which the action

8  "might have been brought" originally.  28 U.S.C. § 1404(a).

9  Second, the court must determine that the transfer of the action

10 will enhance the convenience of the parties and witnesses, and is

11 in the interests of justice.  <u>Id.</u>; <u>See also</u> 17 <u>Moore's Federal</u>

12 <u>Practice</u>, § 111.11 (Matthew Bender 3d ed. 2003).

13      1.   **This Action Could Have Been Brought in the Southern**
             **District of California**
14

15      Plaintiff does not dispute the fact that this action could

16 have been brought in the Southern District of California.  Venue

17 would have been proper pursuant to 28 U.S.C. section 1391(b)[3].

18 BdM resides in the Southern District (Powers Decl., ¶ 13), and an

19 overwhelming number of the events giving rise to the State's

20 complaint occurred in the Southern District.  Therefore, under

21      [2]   28 U.S.C. § 1404(a) states, "For the convenience of
    parties and witnesses, in the interest of justice, a district
22  court may transfer any civil action to any other district or
    division where it might have been brought."
23

24      [3]   A civil action wherein jurisdiction is not founded
    solely on diversity of citizenship may, except as otherwise
25  provided by law, be brought only in (1) a judicial district where
    any defendant resides, if all defendants reside in the same
26  State, (2) a judicial district in which a substantial part of the
    events or omissions giving rise to the claim occurred, or a
27  substantial part of property that is the subject of the action is
    situated, or (3) a judicial district in which any defendant may
28  be found, if there is no district in which the action may
    otherwise be brought.  28 U.S.C. § 1391(b)

                                 4

1  subsections (1) and (2) of 28 U.S.C. section 1391(b), the State

2  could have initially filed its complaint in the Southern District

3  of California.

4      **2.   Convenience of the Parties and Witnesses and the
      Interests of Justice**

5

6      In _Decker Coal Co. v. Commonwealth Edison Co._, 805 F.2d 834,

7  843 (9th Cir. 1986), the Ninth Circuit identified several factors

8  a court may consider in determining whether to grant a transfer

9  under Section 1404(a): (1) the convenience of the parties and

10 _witnesses; (2) the relative ease of access to sources of proof;_

11 (3) the possibility of viewing the premises; (4) the local

12 interest in having localized disputes decided at home; (5) the

13 unfairness of burdening citizens in an unrelated forum with jury

14 duty; and (6) plaintiff's choice of forum.

15     First, although BdM does not identify the exact number and

16 names of all its potential witnesses at this early stage in the

17 litigation, BdM does make it clear that nearly all reside in the

18 San Diego area. (_See_ Def's. Memorandum of Points and Authorities

19 ("Def's. Mem. of P & A") at 9-10.) Although the State _identifies_

20 four potential witnesses located in Sacramento, even the State's

21 attorney is located in San Diego. Accordingly, the relatively

22 small burden placed on the State by transferring this matter to

23 the Southern District is far outweighed by the substantial

24 inconvenience to BdM's parties, witnesses, and relevant evidence,

25 almost all of which are located in San Diego. (_See id._)

26     Second, since the trademark dispute has essentially no

27 connection to this district, the Southern District of California

28 has a substantially stronger interest in adjudicating this

1  inherently local matter.  The Southern District is the situs of

2  nearly all of the operative facts underlying the State's

3  trademark claims, and the effect of the requested injunctive

4  relief, if granted, would primarily be felt in San Diego.

5      Finally, BdM contends that the Southern District is a more

6  appropriate forum given that a related case, <u>Bazaar Del Mundo,</u>

7  <u>Inc. v. Delaware North Companies Parks and Resorts, et. al</u>, Case

8  No. 03-CV-2284 W (LSP), decided by the Southern District and

9  involving the same central issue of the ownership of the two

10 trademarks, is currently pending before the Ninth Circuit Court

11 of Appeals. (<u>See</u> Def's. Reply at 7.)  In the interests of

12 judicial economy and consistency of judgments, the Southern

13 District of California should adjudicate this matter since it

14 involves the same central issue as the prior case.

15                              CONCLUSION

16     For the foregoing reasons, defendant's motion to transfer

17 venue pursuant to 28 U.S.C. section 1404(a) is GRANTED.  This

18 matter shall be transferred to the Southern District of

19 California.

20     IT IS SO ORDERED.

21 DATED: October 3 , 2004

22                              FRANK C. DAMRELL, Jr.
23                              UNITED STATES DISTRICT JUDGE

24

25

26

27

28

                                6

lm

United States District Court
for the
Eastern District of California
November 4, 2004

* * CERTIFICATE OF SERVICE * *

2:04-cv-01533

Dept of Parks

v.

Bazaar Del Mundo

---

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Eastern District of California.

That on November 4, 2004, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office, or, pursuant to prior authorization by counsel, via facsimile.

David H Robinson                        MP/FCD
NOT EDCA ADMITTED
Attorney General                        CF/JFM
PO Box 85266
110 West A Street
Suite 1100
San Diego, CA  92186-5266

Richard P. Sybert
Gordon and Rees LLP
101 West Broadway
Suite 1600
San Diego, CA  92101

Callie A Bjurstrom
Luce Forward Hamilton and Scripps
600 West Broadway
Suite 2600
San Diego, CA  92101

U.S. District Court
Southeern District of CA
880 Front Street, Suite 4290
San Diego, CA  92101-8900

(W/Clerk's File)

Jack L. Wagner, Clerk

by: Deputy Clerk

Case No: 2:04-cv-1533   Document No: 28,   1 Copy Printed: Nov, 4, 2004  03:11 PM

US District Court Southern District of CA
880 Front Street
Suite  4290
San Diego, California 92101-8900

# ELECTRONIC FILING NOTICE

On **January 3, 2005,** the United States District Court for the Eastern District of California will go live on CM/ECF.  On this date, the court will require that all documents filed by attorneys in new, pending or closed cases be filed in electronic format.  While Pro Se Litigants are exempt from this requirement, the court will scan in all documents filed by pro se litigants and, with rare exception, the official court record in all cases will be electronic.  More information regarding the court's implementation of CM/ECF can be found on the court's web site at **www.caed.uscourts.gov**.

## IMPORTANT INFORMATION FOR ATTORNEYS

* If you have not already done so, you **must** register for CM/ECF.  On-line registration is available at **www.caed.uscourts.gov**.  Please register as soon as possible.  Once registered you will receive your login and password in approximately 2 - 3 weeks.

* You will be able to use your login and password on the court's training system which will be available as of November 1, 2004.  More information including a user's manual, training dates and CM/ECF is available on the court's web site at **www.caed.uscourts.gov**.

* You are responsible for knowing the rules governing electronic filing in the Eastern District.  Please review the Final Procedures, which will be incorporated into the Court's Local Rules, available on the court's web site.

## INFORMATION FOR PRO SE LITIGANTS

* If you are representing yourself before the court, please note beginning January 3, 2005, **all** original documents you submit in paper format will be scanned into electronic format by the court and the original document will ultimately be destroyed.

* All documents you file with the court must be legible so the official court file accurately reflects your filing.  Please ensure that all documents you file are typed or printed legibly in ink on 8 ½ x 11 inch white paper.

* You **must not** submit original exhibits to the court.  If you are filing a document that contains exhibits, please attach a **copy** of your exhibit and maintain your original as all copies you submit to the court will be scanned into electronic format and destroyed.

TERMED REFER
TRANSF

U.S. District Court
EASTERN DISTRICT OF CALIFORNIA (Sacramento)

CIVIL DOCKET FOR CASE #: 04-CV-1533

Dept of Parks v. Bazaar Del Mundo                    Filed: 08/04/04
Assigned to: Judge Frank C Damrell, Jr        Jury demand: Defendant
            Referred to: Magistrate Judge John F Moulds
Demand: $0,000                        Nature of Suit:  840
Lead Docket: None                     Jurisdiction: Federal Question
Dkt# in other court: None

Cause: 15:1051 Trademark Infringement


DEPARTMENT OF PARKS AND          David H Robinson
RECREATION                       NOT EDCA ADMITTED
      plaintiff                  [COR LD NTC]
                                 Attorney General of the State
                                 of California
                                 PO Box 85266
                                 110 West A Street
                                 Suite 1100
                                 San Diego, CA 92186-5266
                                 619-645-2567
                                 FTS 645-2581

                                 Richard P. Sybert
                                 [COR LD NTC]
                                 Gordon and Rees LLP
                                 101 West Broadway
                                 Suite 1600
                                 San Diego, CA 92101
                                 619-696-6700
                                 FTS 696-7124


   v.


BAZAAR DEL MUNDO, INC            Callie A Bjurstrom
      defendant                  [COR LD NTC]
                                 Luce Forward Hamilton and
                                 Scripps
                                 600 West Broadway
                                 Suite 2600
                                 San Diego, CA 92101
                                 619-236-1414

I hereby certify that the annex...
instrument is a true and correct copy of
the original on file in my office.
ATTEST: JACK L. WAGNER
Clerk, U. S. District Court
Eastern District of California
By [signature]
                              Deputy Clerk
Dated 11/9/04

Proceedings include all events.                              TERMED
2:04cv1533 Dept of Parks v. Bazaar Del Mundo                       REFER
                                                            TRANSF

8/4/04    1     NOTICE OF REMOVAL from Sacramento County Superior
                04AS02446, fee status paid, receipt # 2047323, assigned to
                Judge Frank C. Damrell Jr referred to Magistrate Judge John
                F. Moulds (ds) [Entry date 08/05/04]

8/4/04    2     ORDER REQUIRING JOINT STATUS REPORT by Judge Frank C.
                Damrell Jr informing the parties on the procedure to follow
                in pursuing this action (ds) [Entry date 08/05/04]

8/6/04    3     ANSWER by defendant Bazaar Del Mundo to removal complaint
                [1-1]; jury demand (crf) [Entry date 08/09/04]

8/6/04    4     PROOF OF SERVICE by defendant Bazaar Del Mundo  of [3-1]
                (crf) [Entry date 08/09/04]

8/31/04   5     NOTICE OF MOTION AND MOTION to transfer venue by defendant
                Bazaar Del Mundo motion TO BE HEARD by Judge Frank C.
                Damrell Jr; Motion Hearing Set For 10:00 a.m. 10/29/04 (ds)
                [Entry date 09/01/04]

8/31/04   6     MEMORANDUM OF POINTS AND AUTHORITIES in SUPPORT of motion
                to transfer venue by defendant Bazaar Del Mundo [5-1] (ds)
                [Entry date 09/01/04]

8/31/04   7     DECLARATION of Diane Powers in support of dft's motion to
                transfer venue [5-1] (ds) [Entry date 09/01/04]

8/31/04   8     REQUEST for Judicial notice by defendant Bazaar Del Mundo
                (ds) [Entry date 09/01/04]

8/31/04   9     NOTICE by defendant of lodging exhibits in support of
                motion to transfer venue (ds) [Entry date 09/01/04]

8/31/04   10    PROOF OF SERVICE by defendant of [5-1], [6-1], [7-1],
                [8-1], [9-1] (ds) [Entry date 09/01/04]

9/2/04    11    AMENDED PROOF OF SERVICE by defendant Bazaar Del Mundo  of
                [5-1], [6-1], [7-1], [8-1], [9-1] (ds) [Entry date 09/03/04]

10/4/04   12    JOINT STATUS REPORT (ds) [Entry date 10/05/04]

10/13/04  13    POINTS AND AUTHORITIES in support of OPPOSIITON by
                plaintiff Dept of Parks to motion to transfer venue by
                defendant Bazaar Del Mundo [5-1] (sk) [Entry date 10/14/04]

10/13/04  14    (notice) EXHIBITS by plaintiff Dept of Parks in support of
                opposition to motion to transfer venue [13-1] (sk)
                [Entry date 10/14/04]

10/13/04  15    DECLARATION of Ron Brean in support of plaintiff's
                opposition to motion to transfer venue [13-1] (sk)
                [Entry date 10/14/04]

Proceedings include all events.                              TERMED
2:04cv1533 Dept of Parks v. Bazaar Del Mundo                      REFER
                                                            TRANSF

10/13/04 16    EVIDENTIARY OBJECTIONS by plaintiff Dept of Parks to
               declaration of Diane Powers [7-1] (sk) [Entry date 10/14/04]

10/13/04 17    EVIDENTIARY OBJECTIONS by plaintiff Dept of Parks to
               defendant's points and authorties regarding motion for
               transfer of venue [6-1] (sk) [Entry date 10/14/04]

10/22/04 18    REPLY to response to motion to transfer venue by defendant
               Bazaar Del Mundo [5-1] (ds) [Entry date 10/25/04]

10/22/04 19    EVIDENTIARY OBJECTIONS by defendant to pltf's memorandum in
               support of it's motion to transfer [6-1] (ds)
               [Entry date 10/25/04]

10/22/04 20    DECLARATION of Richard R Spirra in support of dft's motion
               to transfer venue [5-1] (ds) [Entry date 10/25/04]

10/22/04 21    EVIDENTIARY OBJECTIONS by defendant to the declaration of
               Ron Brean [15-1] (ds) [Entry date 10/25/04]

10/22/04 22    RESPONSE by defendant to pltf's evidentiary objections to
               the declaration of Diane Powers [16-1] (ds)
               [Entry date 10/25/04]

10/22/04 23    RESPONSE by defendant to pltf's objections to dft's
               memorandum in support of motion to transfer [6-1] (ds)
               [Entry date 10/25/04]

10/22/04 24    PROOF OF SERVICE by defendant of [18-1], [19-1], [20-1],
               [21-1], [22-1], [23-1] (ds) [Entry date 10/25/04]

10/25/04 25    MINUTE ORDER: the hearing on the motion to transfer venue
               by defendant Bazaar Del Mundo [5-1] is VACATED and the
               motion is SUBMITTED on the briefs w/o oral argument; the
               court will issue an order (cc: all counsel) (ds)
               [Entry date 10/26/04]

10/26/04 26    EVIDENTIARY OBJECTIONS by plaintiff to declaration of
               Richard R Spirra [20-1] (ds) [Entry date 10/27/04]

10/27/04 27    PROOF OF SERVICE by defendant of [18-1], [19-1], [20-1],
               [21-1], [22-1], [23-1] (ds) [Entry date 10/28/04]

11/4/04  28    MEMORANDUM AND ORDER by Judge Frank C Damrell Jr ORDERING
               that the Motion to transfer venue by Dft Bazaar Del Mundo
               is GRANTED Case TRANSFERRED to District of Southern
               District of CA (cc: all counsel) (lm)

11/4/04  --    TRANSMITTAL of original documents 1-28 sent to USDC
               Southern District of CA 880 Front Street Suite 4290 San
               Diego CA 92101-8900 (lm)

Docket as of November 4, 2004 4:10 pm                    Page 3

CALLIE A. BJURSTROM, STATE BAR NO. 137816
LUCE, FORWARD, HAMILTON & SCRIPPS LLP
600 WEST BROADWAY
SUITE 2600
SAN DIEGO, CA 92101
619-236-1414

**FILED**

OCT 2 7 2004

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
DEPUTY CLERK

Attorney(s) for       DEFENDANT

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

Plaintiff:    DEPARTMENT OF PARKS AND, ETC.       Case No: 04-CV-1533(FCD) JFM

Defendant: BAZAAR DEL MUNDO, INC., ETC.           PROOF OF SERVICE

1. At the time of service I was at least 18 years of age and not a party to this action, and I served
copies of the:
                  SEE ATTACHED LIST

2. a. Party served:      RICHARD SYBERT, ESQ
   b. Person served:     A. BUDD, RECEPTIONIST
   c. Place of Service:  101 WEST BROADWAY, SUITE 1600
                         SAN DIEGO, CA 92101
                              {Business}

3. I served the party named in item 2
   a. By personally delivering copies to the person served.
      (1) on:            10/22/04
      (2) at:            12:33 P.M.

4. Person serving:                          a. Fee for Service:$ 25.00
   IRA PINTZUK                               e. Exempt from registration under
   CALEXPRESS                                   Bus. & Prof. Code 22350(b)
   1302 Kettner Boulevard
   San Diego, CA 92101
   (619) 685-1122

5. I declare under penalty of perjury under the laws of the State of California that the foregoing is
   true and correct.

Date:    10/25/04                           Signature: _____

27

PROOF OF SERVICE

LIST OF DOCUMENTS SERVED
DEPARTMENT OF PARKS, ETC. VS. BAZAAR DEL MUNDO, INC., ETC.
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
CASE NO.: 04-CV-1533(FCD) JFM

1. BAZAAR DEL MUNDO'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION TO TRANSFER VENUE PURSUANT TO 28.U.S.C. 1404(A);

2. DEFENDANT BAZAAR DEL MUNDO, INC.'S EVIDENTIARY OBJECTIONS TO PLAINTIFF DEPARTMENT OF PARKS AND RECREATION FOR THE STATE OF CALIFORNIA'S POINTS AND AUTHORITIES IN SUPPORT OF ITS OPPOSITION TO TRANSFER VENUE;

3. DEFENDANT BAZAAR DEL MUNDO, INC.'S EVIDENTIARY OBJECTIONS TO THE DECLARATION OF RON BREAN IN SUPPORT OF PLAINTIFF DEPARTMENT OF PARKS AND RECREATION FOR THE STATE OF CALIFORNIA'S OPPOSITION TO TRANSFER VENUE;

4. DEFENDANT BAZAAR DEL MUNDO, INC.'S RESPONSE TO PLAINTIFF DEPARTMENT OF PARKS AND RECREATION FOR THE STATE OF CALIFORNIA'S EVIDENTIARY OBJECTIONS TO BAZAAR DEL MUNDO, INC.'S POINT AND AUTHORITIES RE: MOTION FOR TRANSFER OF VENUE;

5. DEFENDANT BAZAAR DEL MUNDO, INC.'S RESPONSE TO PLAINTIFF DEPARTMENT OF PARKS AND RECREATION FOR THE STATE OF CALIFORNIA'S EVIDENTIARY OBJECTIONS TO THE DECLARATION OF DIANE POWERS; AND

6. DECLARATION OF RICHARD R. SPIRRA IN SUPPORT OF DEFENDANT BAZAAR DEL MUNDO, INC.'S MOTION TO TRANSFER VENUE PURSUANT TO 28 U.S.C. 1404(A)

CALLIE A. BJURSTROM, STATE BAR NO. 137816
LUCE, FORWARD, HAMILTON & SCRIPPS LLP
600 WEST BROADWAY
SUITE 2600
SAN DIEGO, CA 92101
619-236-1414

Attorney(s) for      DEFENDANT

### UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF CALIFORNIA

Plaintiff:   DEPARTMENT OF PARKS AND, ETC.      Case No: 04-CV-1533(FCD) JFM

Defendant: BAZAAR DEL MUNDO, INC., ETC.      PROOF OF SERVICE

1. At the time of service I was at least 18 years of age and not a party to this action, and I served copies of the:
   SEE ATTACHED LIST

2. a. Party served:       DAVID ROBINSON, ESQ
   b. Person served:     D. THOMAS, RECEPTIONIST
   c. Place of Service:  110 WEST A STREET, SUITE 1100
                         SAN DIEGO, CA 92101
                              {Business}

3. I served the party named in item 2
   a. By personally delivering copies to the person served.
      (1) on:        10/22/04
      (2) at:        12:25 P.M.

4. Person serving:                    a. Fee for Service:$ 25.00
   ROSS DELIKE                        e. Exempt from registration under
   CALEXPRESS                            Bus. & Prof. Code 22350(b)
   1302 Kettner Boulevard
   San Diego, CA  92101
   (619) 685-1122

5. I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date:    10/25/04                     Signature: _____

PROOF OF SERVICE

LIST OF DOCUMENTS SERVED
DEPARTMENT OF PARKS, ETC. VS. BAZAAR DEL MUNDO, INC., ETC.
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
CASE NO.: 04-CV-1533(FCD) JFM

1. BAZAAR DEL MUNDO'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION TO TRANSFER VENUE PURSUANT TO 28.U.S.C. 1404(A);

2. DEFENDANT BAZAAR DEL MUNDO, INC.'S EVIDENTIARY OBJECTIONS TO PLAINTIFF DEPARTMENT OF PARKS AND RECREATION FOR THE STATE OF CALIFORNIA'S POINTS AND AUTHORITIES IN SUPPORT OF ITS OPPOSITION TO TRANSFER VENUE;

3. DEFENDANT BAZAAR DEL MUNDO, INC.'S EVIDENTIARY OBJECTIONS TO THE DECLARATION OF RON BREAN IN SUPPORT OF PLAINTIFF DEPARTMENT OF PARKS AND RECREATION FOR THE STATE OF CALIFORNIA'S OPPOSITION TO TRANSFER VENUE;

4. DEFENDANT BAZAAR DEL MUNDO, INC.'S RESPONSE TO PLAINTIFF DEPARTMENT OF PARKS AND RECREATION FOR THE STATE OF CALIFORNIA'S EVIDENTIARY OBJECTIONS TO BAZAAR DEL MUNDO, INC.'S POINT AND AUTHORITIES RE: MOTION FOR TRANSFER OF VENUE;

5. DEFENDANT BAZAAR DEL MUNDO, INC.'S RESPONSE TO PLAINTIFF DEPARTMENT OF PARKS AND RECREATION FOR THE STATE OF CALIFORNIA'S EVIDENTIARY OBJECTIONS TO THE DECLARATION OF DIANE POWERS; AND

6. DECLARATION OF RICHARD R. SPIRRA IN SUPPORT OF DEFENDANT BAZAAR DEL MUNDO, INC.'S MOTION TO TRANSFER VENUE PURSUANT TO 28 U.S.C. 1404(A)

1  Callie A. Bjurstrom, State Bar No. 137816
   Michelle A. Herrera, State Bar No. 209842
2  LUCE, FORWARD, HAMILTON & SCRIPPS LLP
   600 West Broadway, Suite 2600
3  San Diego, California 92101-3372
   Telephone No.: 619.236.1414
4  Fax No.: 619.232.8311

5  Attorneys for Defendant Bazaar del Mundo, Inc.

**ORIGINAL
FILED**

OCT 2 2 2004

CLERK, U S DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
                DEPUTY CLERK

6

7

8                    UNITED STATES DISTRICT COURT

9                    EASTERN DISTRICT OF CALIFORNIA

10

11  DEPARTMENT OF PARKS AND          | Case No. 04-CV-1533 (FCD) JFM
    RECREATION FOR THE STATE OF      |
12  CALIFORNIA,                      | The Hon. Frank C. Damrell, Jr.

13                                   | **BAZAAR DEL MUNDO, INC.'S REPLY
              Plaintiff,             | MEMORANDUM OF POINTS AND
14                                   | AUTHORITIES IN SUPPORT OF ITS
    v.                               | MOTION TO TRANSFER VENUE
15                                   | PURSUANT TO 28 U.S.C. § 1404(a)**
    BAZAAR DEL MUNDO, INC., a California
16  corporation, and DOES 1-50, inclusive, | **Date:    October 29, 2004**
                                     | **Time:    10:00 a.m.**
17            Defendant.             | **Dept.:   2**

18

19        Defendant Bazaar del Mundo, Inc. ("BdM") respectfully submits this Reply Memorandum

20  of Points and Authorities in Support of its Motion to Transfer Venue pursuant to 28 U.S.C.

21  § 1404(a).

22                                    **I.**

23                                **OVERVIEW**

24        Plaintiff Department of Parks and Recreation for the State of California ("DPR" or the

25  "State") opposes BdM's motion to transfer venue primarily on the grounds that as the plaintiff, it

26  has the right to choose the forum and that its choice of forum deserves great weight. (Opposition,

27  3:15-18.)  The State also asserts that four of its employees may be inconvenienced if this case is

28  transferred to the Southern District of California.  DPR's arguments are unpersuasive.

                                        1                    Case No. 04-CV-1533 (FCD) JFM

10/22/2004  15:14 FAX                    KINKO'S                              ☒ 003/008

1  Callie A. Bjurstrom, State Bar No. 137816
   Michelle A. Herrera, State Bar No. 209842
2  LUCE, FORWARD, HAMILTON & SCRIPPS LLP
   600 West Broadway, Suite 2600
3  San Diego, California 92101-3372
   Telephone No.: 619.236.1414
4  Fax No.: 619.232.8311

5  Attorneys for Defendant Bazaar del Mundo, Inc.

**ORIGINAL
FILED**

OCT 22 2004

CLERK, U S DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
                DEPUTY CLERK

6

7

8                    UNITED STATES DISTRICT COURT

9                    EASTERN DISTRICT OF CALIFORNIA

10

11  DEPARTMENT OF PARKS AND              Case No. 04-CV-1533 (FCD) JFM
    RECREATION FOR THE STATE OF
12  CALIFORNIA,                          The Hon. Frank C. Damrell, Jr.

13                                       **DEFENDANT BAZAAR DEL MUNDO,
              Plaintiff,                 INC.'S EVIDENTIARY OBJECTIONS
14                                       TO PLAINTIFF DEPARTMENT OF
    v.                                   PARKS AND RECREATION FOR THE
15                                       STATE OF CALIFORNIA'S POINTS
    BAZAAR DEL MUNDO, INC., a California AND AUTHORITIES IN SUPPORT OF
16  corporation, and DOES 1-50, inclusive, ITS OPPOSITION TO TRANSFER
                                         VENUE**
17            Defendant.

18                                       **Date:    October 29, 2004**
                                         **Time:    10:00 a.m.**
19                                       **Dept.:   2**
                                         **Judge:   Hon. Frank C. Damrell, Jr.**
20

21         Defendant Bazaar del Mundo, Inc. ("BdM") hereby files with the Court its objections to

22  plaintiff Department of Parks and Recreation for the State of California's ("DPR") points and

23  authorities in support of its opposition to transfer venue (the "Opposition Points and Authorities").

24  ///

25  ///

26  ///

27  ///

28  ///

                                          1                    Case No. 04-CV-1533 (FCD) JFM

1  Callie A. Bjurstrom, State Bar No. 137816
   Michelle A. Herrera, State Bar No. 209842
2  LUCE, FORWARD, HAMILTON & SCRIPPS LLP
   600 West Broadway, Suite 2600
3  San Diego, California 92101-3372
   Telephone No.: 619.236.1414
4  Fax No.: 619.232.8311

5  Attorneys for Defendant Bazaar del Mundo, Inc.

6

7

**ORIGINAL FILED**

**OCT 22 2004**

CLERK, U S DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
            DEPUTY CLERK

8              UNITED STATES DISTRICT COURT

9             EASTERN DISTRICT OF CALIFORNIA

10

| | |
|---|---|
| 11  DEPARTMENT OF PARKS AND RECREATION FOR THE STATE OF 12  CALIFORNIA,<br><br>13         Plaintiff,<br>14  v.<br>15  BAZAAR DEL MUNDO, INC., a California 16  corporation, and DOES 1-50, inclusive,<br>17         Defendant.<br>18<br>19 | Case No. 04-CV-1533 (FCD) JFM<br><br>The Hon. Frank C. Damrell, Jr.<br><br>**DEFENDANT BAZAAR DEL MUNDO, INC.'S EVIDENTIARY OBJECTIONS TO THE DECLARATION OF RON BREAN IN SUPPORT OF PLAINTIFF DEPARTMENT OF PARKS AND RECREATION FOR THE STATE OF CALIFORNIA'S OPPOSITION TO TRANSFER VENUE**<br><br>**Date:    October 29, 2004**<br>**Time:   10:00 a.m.**<br>**Dept.:  2**<br>**Judge:  Hon. Frank C. Damrell, Jr.** |

20

21         Defendant Bazaar del Mundo, Inc. ("BdM") hereby files with the Court its objections to

22  the Declaration of Ron Brean in support of plaintiff Department of Parks and Recreation for the

23  State of California's ("DPR") opposition to transfer venue.

24  ///

25  ///

26  ///

27  ///

28

                                   1                    Case No. 04-CV-1533 (FCD) JFM

1  Callie A. Bjurstrom, State Bar No. 137816
   Michelle A. Herrera, State Bar No. 209842
2  LUCE, FORWARD, HAMILTON & SCRIPPS LLP
   600 West Broadway, Suite 2600
3  San Diego, California 92101-3372
   Telephone No.: 619.236.1414
4  Fax No.: 619.232.8311

5  Attorneys for Defendant Bazaar del Mundo, Inc.

6

7

**ORIGINAL FILED**

OCT 2 2 2004

CLERK, U S DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
DEPUTY CLERK

8              UNITED STATES DISTRICT COURT

9              EASTERN DISTRICT OF CALIFORNIA

10

| | |
|---|---|
| 11  DEPARTMENT OF PARKS AND RECREATION FOR THE STATE OF 12  CALIFORNIA, | Case No. 04-CV-1533 (FCD) JFM |
| | The Hon. Frank C. Damrell, Jr. |
| 13          Plaintiff, | **DEFENDANT BAZAAR DEL MUNDO, INC.'S RESPONSE TO PLAINTIFF** |
| 14  v. | **DEPARTMENT OF PARKS AND RECREATION FOR THE STATE OF** |
| 15  BAZAAR DEL MUNDO, INC., a California | **CALIFORNIA'S EVIDENTIARY OBJECTIONS TO THE DECLARATION** |
| 16  corporation, and DOES 1-50, inclusive, | **OF DIANE POWERS** |
| 17          Defendant. | |
| 18 | **Date:   October  29, 2004** |
| 19 | **Time:   10:00 a.m.** |
| 20 | **Dept.:  2** |
| | **Judge:  Hon. Frank C. Damrell, Jr.** |

21

22          Defendant Bazaar del Mundo, Inc. ("BdM") respectfully submits this response to plaintiff

23  Department of Parks and Recreation for the State of California's ("DPR") evidentiary objections

24  to the declaration of Diane Powers.

25  ///

26  ///

27  ///

28  ///

1 | Callie A. Bjurstrom, State Bar No. 137816
  | Michelle A. Herrera, State Bar No. 209842
2 | LUCE, FORWARD, HAMILTON & SCRIPPS LLP
  | 600 West Broadway, Suite 2600
3 | San Diego, California 92101-3372
  | Telephone No.: 619.236.1414
4 | Fax No.: 619.232.8311

**ORIGINAL FILED**

OCT 22 2004

CLERK, U S DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY_____
DEP _____

5 | Attorneys for Defendant Bazaar del Mundo, Inc.

8 | UNITED STATES DISTRICT COURT

9 | EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DEPARTMENT OF PARKS AND RECREATION FOR THE STATE OF CALIFORNIA, <br><br> Plaintiff, <br><br> v. <br><br> BAZAAR DEL MUNDO, INC., a California corporation, and DOES 1-50, inclusive, <br><br> Defendant. | Case No. 04-CV-1533 (FCD) JFM <br><br> The Hon. Frank C. Damrell, Jr. <br><br> **DEFENDANT BAZAAR DEL MUNDO, INC.'S RESPONSE TO PLAINTIFF DEPARTMENT OF PARKS AND RECREATION FOR THE STATE OF CALIFORNIA'S EVIDENTIARY OBJECTIONS TO BAZAAR DEL MUNDO, INC.'S POINTS AND AUTHORITIES RE: MOTION FOR TRANSFER OF VENUE** <br><br> Date:  **October 29, 2004** <br> Time:  **10:00 a.m.** <br> Dept.:  **2** <br> Judge: **Hon. Frank C. Damrell, Jr.** |

22 | Defendant Bazaar del Mundo, Inc. ("BdM") respectfully submits this response to plaintiff

23 | Department of Parks and Recreation for the State of California's ("DPR") evidentiary objections

24 | to BdM's memorandum of points and authorities in support of its motion to transfer venue.

25 | ///

26 | ///

27 | ///

28 | ///

1  Callie A. Bjurstrom, State Bar No. 137816
   Michelle A. Herrera, State Bar No. 209842
2  LUCE, FORWARD, HAMILTON & SCRIPPS LLP
   600 West Broadway, Suite 2600
3  San Diego, California 92101-3372
   Telephone No.: 619.236.1414
4  Fax No.: 619.232.8311

5  Attorneys for Defendant Bazaar del Mundo, Inc.

**ORIGINAL**
**FILED**

OCT 2 2 2004

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
                    D: _____

6

7

8                   UNITED STATES DISTRICT COURT

9                   EASTERN DISTRICT OF CALIFORNIA

10

| | |
|---|---|
| 11  DEPARTMENT OF PARKS AND<br>RECREATION FOR THE STATE OF<br>12  CALIFORNIA,<br><br>13<br>        Plaintiff,<br>14<br>   v.<br>15<br>   BAZAAR DEL MUNDO, INC., a California<br>16  corporation, and DOES 1-50, inclusive,<br>17<br>        Defendant.<br>18 | Case No. 04-CV-1533 (FCD) JFM<br><br>The Hon. Frank C. Damrell, Jr.<br><br>**DECLARATION OF RICHARD R.**<br>**SPIRRA IN SUPPORT OF DEFENDANT**<br>**BAZAAR DEL MUNDO, INC.'S MOTION**<br>**TO TRANSFER VENUE PURSUANT TO**<br>**28 U.S.C. § 1404(a)**<br><br>**Date:**   **October 29, 2004**<br>**Time:**   **10:00 a.m.**<br>**Dept.:**  **2**<br>**Judge:** **Hon. Frank C. Damrell, Jr.** |

19      I, Richard R. Spirra, declare:

20      1.    I am an attorney licensed to practice law before the courts of the State of

21  California. I am a partner with the law firm of Luce, Forward, Hamilton & Scripps LLP, counsel

22  for defendant Bazaar del Mundo, Inc. ("BDM") in the above-captioned action. I have worked on

23  both the trial court proceedings and the appeal in the action that was filed by Bazaar del Mundo,

24  Inc. and is currently pending in the United States District Court for the Southern District of

25  California in which BDM asserted trademark infringement claims against Delaware North

26  Companies Park and Resorts ("Delaware North") and the Department of Parks and Recreation for

27  the State of California. As a result of my continued participation in those proceedings, I am

28  familiar with the status of that action. Moreover, during the past twenty years, a substantial

                                        1                    Case No. 04-CV-1533 (FCD) JFM

ORIGINAL
FILED

OCT 2 2 2004

1 | <u>PROOF OF SERVICE</u>

2 | Dept. of Parks and Recreation for the State of California v. Bazaar del Mundo, Inc.,

3 | Case No. 04-CV-1533 (FCD) JFM,

CLERK U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY_____

4 | Judge: Hon. Frank C. Damrell, Jr. Dept: 2

5 |     I, Bunny Block, declare as follows:

6 |     I am employed with the law firm of Luce, Forward, Hamilton & Scripps LLP, whose

7 | address is 600 West Broadway, Suite 2600, San Diego, California 92101-3372. I am over the age

8 | of eighteen years, and am not a party to this action.

9 |     On October 22, 2004, I served the following:

10 | 1.   **BAZAAR DEL MUNDO'S REPLY MEMORANDUM OF POINTS AND**
11 |     **AUTHORITIES IN SUPPORT OF ITS MOTION TO TRANSFER VENUE**
    **PURSUANT TO 28.U.S.C. § 1404(a);**

12 | 2.   **DEFENDANT BAZAAR DEL MUNDO, INC.'S EVIDENTIARY OBJECTIONS**
13 |     **TO PLAINTIFF DEPARTMENT OF PARKS AND RECREATION FOR THE**
    **STATE OF CALIFORNIA'S POINTS AND AUTHORITIES IN SUPPORT OF**
14 |     **ITS OPPOSITION TO TRANSFER VENUE;**

15 | 3.   **DEFENDANT BAZAAR DEL MUNDO, INC.'S EVIDENTIARY OBJECTIONS**
    **TO THE DECLARATION OF RON BREAN IN SUPPORT OF PLAINTIFF**
16 |     **DEPARTMENT OF PARKS AND RECREATION FOR THE STATE OF**
    **CALIFORNIA'S OPPOSITION TO TRANSFER VENUE;**

17 | 4.   **DEFENDANT BAZAAR DEL MUNDO, INC.'S RESPONSE TO PLAINTIFF**
18 |     **DEPARTMENT OF PARKS AND RECREATION FOR THE STATE OF**
    **CALIFORNIA'S EVIDENTIARY OBJECTIONS TO BAZAAR DEL MUNDO,**
19 |     **INC.'S POINTS AND AUTHORITIES RE: MOTION FOR TRANSFER OF**
    **VENUE**

20 | 5.   **DEFENDANT BAZAAR DEL MUNDO, INC.'S RESPONSE TO PLAINTIFF**
21 |     **DEPARTMENT OF PARKS AND RECREATION FOR THE STATE OF**
    **CALIFORNIA'S EVIDENTIARY OBJECTIONS TO THE DECLARATION OF**
22 |     **DIANE POWERS; AND**

23 | 6.   **DECLARATION OF RICHARD R. SPIRRA IN SUPPORT OF DEFENDANT**
    **BAZAAR DEL MUNDO, INC.'S MOTION TO TRANSFER VENUE PURSUANT**
24 |     **TO 28 U.S.C. § 1404(a).**

25 | on the interested parties in this action by:

26 | _____   U. S. MAIL: I placed a copy in a separate envelope, with postage fully prepaid, for
    each address named on the attached service list for collection and mailing on the below
27 |     indicated day following the ordinary business practices at Luce, Forward, Hamilton &
    Scripps LLP. I certify I am familiar with the ordinary business practices of my place of
28 |     employment with regard to collection for mailing with the United States Postal Service.

ORIGINAL



1 │ BILL LOCKYER
   │ Attorney General of the State of California
2 │ TOM GREENE
   │ Chief Assistant Attorney General
3 │ MARY E. HACKENBRACHT
   │ Senior Assistant Attorney General
4 │ CAROL A. SQUIRE
   │ Supervising Deputy Attorney General
5 │ DAVID H. ROBINSON, State Bar No. 74956
   │ Deputy Attorney General
6 │  110 West A Street, Suite 1100
   │  San Diego, CA  92101
7 │ P.O. Box 85266
   │ San Diego, CA 92186-5266
8 │ Telephone:  (619) 645-2609
   │ Fax:  (619) 645-2581
9 │
   │ RICHARD P. SYBERT, State Bar No. 80731
10│ BRETT M. MIDDLETON, State Bar No. 199427
   │ GORDON & REES, LLP
11│ 101 West Broadway, Suite 1600
   │ San Diego, CA 92101
12│ Telephone No.: (619) 696-6700
   │ Fax No.: (619) 696-7124
13│
   │ Attorneys for Plaintiff Department of Parks and
14│ Recreation

No fee pursuant to Government Code
Section 6103

15
16 │              IN THE UNITED STATES DISTRICT COURT
17 │            FOR THE EASTERN DISTRICT OF CALIFORNIA
18

| DEPARTMENT OF PARKS AND RECREATION FOR THE STATE OF CALIFORNIA, | CASE NO.  CIV-S-04-1533 |
|---|---|
| Plaintiff, | STATE'S EVIDENTIARY OBJECTIONS TO DECLARATION OF RICHARD R. SPIRRA |
| v. | |
| BAZAAR DEL MUNDO, INC., a California corporation, and DOES 1-50, inclusive, | Date:        October 29, 2004<br>Time:        10:00 a.m.<br>Courtroom: Dept. 2 |
| Defendant. | Judge:      Hon. Frank C.<br>                 Damrell, Jr. |

26 │      · Plaintiff Department of Parks and Recreation for the state of California ("State") objects to

27 │ the Declaration of Richard R. Spirra filed in support of BdM's reply memorandum of points and

28 │ authorities re: motion to transfer venue.  The declaration is self-serving, speculative, conclusory,

2½

State's Evidentiary Objections to Declaration of Richard R. Spirra

1

1   lacks foundation, and constitutes inadmissible legal opinion.  In addition, the declaration is irrelevant

2   because it does not support BdM's claim that there exists the possibility of inconsistent rulings

3   concerning the issue of trademark ownership.  Even assuming the Ninth Circuit reverses the

4   dismissal of the federal lawsuit brought by BdM against Delaware North, the issue of ownership of

5   the disputed marks will not be litigated in that case.  BdM chose not to appeal the dismissal against

6   the State; therefore, the State's claim that it owns the marks is not before that Court.  Delaware North

7   has never asserted it owns the marks; rather, it claimed that it had no knowledge concerning whether

8   the State or BdM owns the marks.  To litigate the ownership issue, the State is an indispensable

9   party.  However, the Southern District Court properly dismissed the State from the suit on numerous

10  grounds, including immunity.  Therefore, the ownership issue cannot be litigated in that case, and

11  BdM's claim there exists the possibility of inconsistent verdicts is baseless.  The Declaration of

12  Richard R. Spirra asserting the potential for the revival of the Southern District Court case is

13  irrelevant to the motion for transfer of venue.

14          Dated:  October 25, 2004

15                                              Respectfully submitted,

16                                              BILL LOCKYER
                                                Attorney General of the State of California
17                                              TOM GREENE
                                                Chief Assistant Attorney General
18                                              MARY E. HACKENBRACHT
                                                Senior Assistant Attorney General
19                                              CAROL A. SQUIRE
                                                Supervising Deputy Attorney General
20

21

22                                              DAVID H. ROBINSON
                                                Deputy Attorney General
23                                              Attorneys for Plaintiff Department of Parks
                                                and Recreation
24

25

26

27

28

State's Evidentiary Objections to Declaration of Richard R. Spirra

2

## DECLARATION OF SERVICE BY U.S. MAIL

**Case Name:  Department of Parks and Recreation for the State of California v. Bazaar del Mundo, Inc., a California Corporation, and DOES 1-50, inclusive.**

**Case No.:  CIV-S-04-1533**

I declare:

I am employed in the Office of the Attorney General, which is the office of a member of the California State Bar at which member's direction this service is made. I am 18 years of age or older and not a party to this matter. I am familiar with the business practice at the Office of the Attorney General for collection and processing of correspondence for mailing with the United States Postal Service. In accordance with that practice, correspondence placed in the internal mail collection system in the Office of the Attorney General is deposited with the United States Postal Service that same day in the ordinary course of business.

On October 25, 2004, I served the attached **STATE'S EVIDENTIARY OBJECTIONS TO DECLARATION OF RICHARD R. SPIRRA** by placing a true copy thereof enclosed in a sealed envelope with postage thereon fully prepaid, in the internal mail collection system at the Office of the Attorney General at 110 West "A" Street, Suite 1100, San Diego, California 92101, addressed as follows:

| | |
|---|---|
| **CALLIE A. BJURSTROM, ESQ.** | **RICHARD P. SYBERT, ESQ.** |
| **MICHELLE A. HERRERA, ESQ.** | **BRETT M. MIDDLETON, ESQ.** |
| **LUCE, FORWARD, HAMILTON &** | **GORDON & REES LLP** |
| **SCRIPPS LLP** | **101 WEST BROADWAY, SUITE 1600** |
| **600 WEST BROADWAY, SUITE 2600** | **SAN DIEGO, CA 92101** |
| **SAN DIEGO, CA 92101-3391** | |

I declare under penalty of perjury under the laws of the State of California the foregoing is true and correct and that this declaration was executed on October 25, 2004, at San Diego, California.

M. CAROLINA SAHELI
_____
Declarant

_____
Signature

**IT IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF CALIFORNIA**



OCT 2 5 2004

CLERK, U.S. DISTRICT COURT
TERN DISTRICT OF CALIF

DEPARTMENT OF PARKS
and RECREATION for the
STATE OF CALIFORNIA,
       Plaintiff(s),

vs.

BAZAAR DEL MUNDO, INC.,
       Defendant(s).

CASE NO. CIV. S-04-1533 FCD JFM.

**MINUTE ORDER**

---

At a session of the United States District Court for the Eastern District of California, in the City of Sacramento, on October 25, 2005

**PRESENT, THE HONORABLE FRANK C. DAMRELL, JR., JUDGE:**

The hearing set for October 29, 2004 at 10:00 a.m. on Defendant's Motion for Transfer of Venue is VACATED and the motion is SUBMITTED on the briefs without oral argument. The Court will issue an order.

**I hereby certify** that the foregoing is a true and correct statement of an order in the above captioned case on this 25th day of October 2004.

JACK L. WAGNER, CLERK

By: _____
Maureen A. Price
Courtroom Deputy
(916) 930-4163 fax (916) 491-3932
Email mprice@caed.uscourts.gov

28

crd

United States District Court
for the
Eastern District of California
October 25, 2004

\* \* CERTIFICATE OF SERVICE \* \*

2:04-cv-01533

Dept of Parks

v.

Bazaar Del Mundo

---

I, the undersigned, hereby certify that I am an employee in the Office of
the Clerk, U.S. District Court, Eastern District of California.

That on  October 25, 2004, I SERVED a true and correct copy(ies) of
the attached, by placing said copy(ies) in a postage paid envelope
addressed to the person(s) hereinafter listed, by depositing said
envelope in the U.S. Mail, by placing said copy(ies) into an inter-office
delivery receptacle located in the Clerk's office, or, pursuant to prior
authorization by counsel, via facsimile.

David H Robinson                          MP/FCD
NOT EDCA ADMITTED
Attorney General of the State of California
PO Box 85266
110 West A Street
Suite 1100
San Diego, CA  92186-5266

Richard P. Sybert
Gordon and Rees LLP
101 West Broadway
Suite 1600
San Diego, CA  92101

Callie A Bjurstrom
Luce Forward Hamilton and Scripps
600 West Broadway
Suite 2600
San Diego, CA  92101

**FILED**

OCT 2 2 2004

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
DEPUTY CLERK FCD

<u>PROOF OF SERVICE</u>

<u>Dept. of Parks and Recreation for the State of California v. Bazaar del Mundo, Inc.</u>

Case No. 04-CV-1533 (FCD) JFM,

Judge: Hon. Frank C. Damrell, Jr. Dept: 2

    I, Bunny Block, declare as follows:

    I am employed with the law firm of Luce, Forward, Hamilton & Scripps LLP, whose address is 600 West Broadway, Suite 2600, San Diego, California 92101-3372. I am over the age of eighteen years, and am not a party to this action.

    On October 22, 2004, I served the following:

1. **BAZAAR DEL MUNDO'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION TO TRANSFER VENUE PURSUANT TO 28.U.S.C. § 1404(a);**

2. **DEFENDANT BAZAAR DEL MUNDO, INC.'S EVIDENTIARY OBJECTIONS TO PLAINTIFF DEPARTMENT OF PARKS AND RECREATION FOR THE STATE OF CALIFORNIA'S POINTS AND AUTHORITIES IN SUPPORT OF ITS OPPOSITION TO TRANSFER VENUE;**

3. **DEFENDANT BAZAAR DEL MUNDO, INC.'S EVIDENTIARY OBJECTIONS TO THE DECLARATION OF RON BREAN IN SUPPORT OF PLAINTIFF DEPARTMENT OF PARKS AND RECREATION FOR THE STATE OF CALIFORNIA'S OPPOSITION TO TRANSFER VENUE;**

4. **DEFENDANT BAZAAR DEL MUNDO, INC.'S RESPONSE TO PLAINTIFF DEPARTMENT OF PARKS AND RECREATION FOR THE STATE OF CALIFORNIA'S EVIDENTIARY OBJECTIONS TO BAZAAR DEL MUNDO, INC.'S POINTS AND AUTHORITIES RE: MOTION FOR TRANSFER OF VENUE**

5. **DEFENDANT BAZAAR DEL MUNDO, INC.'S RESPONSE TO PLAINTIFF DEPARTMENT OF PARKS AND RECREATION FOR THE STATE OF CALIFORNIA'S EVIDENTIARY OBJECTIONS TO THE DECLARATION OF DIANE POWERS; AND**

6. **DECLARATION OF RICHARD R. SPIRRA IN SUPPORT OF DEFENDANT BAZAAR DEL MUNDO, INC.'S MOTION TO TRANSFER VENUE PURSUANT TO 28 U.S.C. § 1404(a).**

on the interested parties in this action by:

_____ **U. S. MAIL:** I placed a copy in a separate envelope, with postage fully prepaid, for each address named on the attached service list for collection and mailing on the below indicated day following the ordinary business practices at Luce, Forward, Hamilton & Scripps LLP. I certify I am familiar with the ordinary business practices of my place of employment with regard to collection for mailing with the United States Postal Service.

24   1

1    I am aware that on motion of the party served, service is presumed invalid if postal
     cancellation date or postage meter date is more than one day after date of deposit or
2    mailing affidavit.

3 ____  **OVERNIGHT MAIL:** I sent a copy via overnight mail, Airbill
     No. _____.
4
     ____  **OVERNIGHT COURIER SERVICE:** I placed a copy in a separate envelope
5    addressed to each addressee as indicated below, and caused such envelope(s) to be
     delivered via _____.
6
   XX ____  **HAND DELIVERY:** I placed a copy in a separate envelope addressed to each
7    addressee as indicated below, and delivered it to CalExpress for personal service.

8 ____  **FACSIMILE:** I sent a copy via facsimile transmission to the telefax number(s)
     indicated below. The facsimile machine I used complied with California Rules of
9    Court, Rule 2003 and no error was reported by machine. Pursuant to California Rules
     of Court, Rule 2006(d), I caused the machine to print a transmission record of the
10   transmission, a copy of which is attached to this declaration.

11   David H. Robinson, Esq.              *Attorneys for Plaintiff Department of*
     Deputy Attorney General              *Parks and Recreation for the State of*
12   State of California                  *California*
     110 West A St., Suite 1100
13   San Diego, CA 92101
     Tel. 619.645.2609
14   Fax. 619.645.2581

15   Richard Sybert, Esq.                 *Attorneys for Plaintiff Department of*
     Brett M. Middleton, Esq.             *Parks and Recreation for the State of*
16   Gordon & Rees, LLP                   *California*
     101 West Broadway, Suite 1600
17   San Diego, CA 92101
     Tel. 619.696.7124
18   Fax. 619.696.7124

19
     ____  **(STATE):** I declare under penalty of perjury under the laws of the State of California
20   that the foregoing is true and correct.

21   X ____  **(FEDERAL):** I declare that I am employed in the office of a member of the bar of this
     court at whose direction the service was made.
22

23   Executed at San Diego, California on October 22, 2004.

24

25   _Bunny Bloch_
     BUNNY BLOCK
26

27
     1995168.1
28

2

1  Callie A. Bjurstrom, State Bar No. 137816
   Michelle A. Herrera, State Bar No. 209842
2  LUCE, FORWARD, HAMILTON & SCRIPPS LLP
   600 West Broadway, Suite 2600
3  San Diego, California 92101-3372
   Telephone No.: 619.236.1414
4  Fax No.: 619.232.8311

**FILED**

OCT 2 2 2004

5  Attorneys for Defendant Bazaar del Mundo, Inc.

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY_____
              DEPUTY CLERK

6

7

8              UNITED STATES DISTRICT COURT

9              EASTERN DISTRICT OF CALIFORNIA

10

11  DEPARTMENT OF PARKS AND          Case No. 04-CV-1533 (FCD) JFM
    RECREATION FOR THE STATE OF
12  CALIFORNIA,                      The Hon. Frank C. Damrell, Jr.

13             Plaintiff,            **DEFENDANT BAZAAR DEL MUNDO,
                                     INC.'S RESPONSE TO PLAINTIFF
14  v.                               DEPARTMENT OF PARKS AND
                                     RECREATION FOR THE STATE OF
15                                   CALIFORNIA'S EVIDENTIARY
    BAZAAR DEL MUNDO, INC., a California   OBJECTIONS TO BAZAAR DEL
16  corporation, and DOES 1-50, inclusive,  MUNDO, INC.'S POINTS AND
                                     AUTHORITIES RE: MOTION FOR
17             Defendant.            TRANSFER OF VENUE**

18
                                     **Date:    October 29, 2004**
19                                   **Time:    10:00 a.m.**
                                     **Dept.:   2**
20                                   **Judge:   Hon. Frank C. Damrell, Jr.**

21

22         Defendant Bazaar del Mundo, Inc. ("BdM") respectfully submits this response to plaintiff

23  Department of Parks and Recreation for the State of California's ("DPR") evidentiary objections

24  to BdM's memorandum of points and authorities in support of its motion to transfer venue.

25  / / /

26  / / /

27  / / /

28  / / /

23

# I.

## RESPONSE TO OBJECTIONS

BdM submits the following response to DPR's evidentiary objections to BdM's memorandum of points and authorities ("MPA") in support of its motion to transfer venue:

**A.    Page 1, lines 17-26.**

    **1.    Objections**

Relevancy, lack of foundation.

    **2.    Response**

Lines 17 through 26 of the MPA describe BdM's creation, registration and continued use of its trademarks CASA DE PICO and CASA DE BANDINI, facts that are relevant to BdM's motion to transfer venue because they occurred and are occurring in San Diego. DPR's objection based on relevancy grounds therefore lacks merit.

Equally lacking in merit is DPR's objection on foundational grounds. As a preliminary matter, the language appears in the Introduction section to the MPA and is intended to provide the Court with a roadmap of the remainder of the pleading. Regardless, Diane Powers, BdM's President and principal officer for the past 30+ years, established a foundation for these facts through sworn testimony in the form of a declaration.

**B.    Page 2, lines 20-24.**

    **1.    Objections**

Relevancy.

    **2.    Response**

According to DPR's own complaint in this case, it acquired an interest in the marks Casa de Pico and Casa de Bandini through a 1968 condemnation proceeding against the Cardwell family wherein it acquired ownership of land that housed buildings that were once allegedly known by these names. The condemnation proceeding, the sole mechanism through which DPR acquired its alleged interest, occurred in San Diego County Superior Court. The records of the proceeding constitute evidence that is located in San Diego, a fact relevant to BdM's motion to transfer venue.

        Case No. 04-CV-1533 (FCD) JFM

**C.**   **Page 3, lines 1-28.**

    **1.**    **Objections**

Relevancy, foundation, hearsay.

    **2.**    **Response**

    The first part of this portion of the MPA is a continuation of the preceding section and further describes the 1968 condemnation proceeding through which DPR claims to have acquired rights in the Casa de Pico and Casa de Bandini marks. The relevance of this information is set forth in Section I.B.2, *supra*. The foundational basis for the facts alleged by BdM is established by pleadings from the condemnation proceeding that BdM lodged with this Court. This portion of the MPA also describes the 1971 bid proposal process DPR conducted with regard to the Old Town concession, and describes the condition of the underlying land and building situated thereon at that time. BdM, a participant in that process, established the foundation for these facts through the sworn testimony of Ms. Powers who has first hand knowledge of same.

    The second part of this portion of the MPA, paragraphs 3 through 5, describe the circumstances surrounding BdM's creation of "Bazaar del Mundo" as permitted by its lease agreements with DPR, BdM's continued use of its registered trademarks CASA DE PICO and CASA DE BANDINI and the local connection of the same to San Diego. These facts are relevant to BdM's motion because they describe the very situs of the actions at issue, a factor weighing in favor of transfer to the Southern District of California. *See, e.g. Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 509 (1947) (recognizing a "local interest in having localized controversies decided at home); *Decker Coal v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986) (same). Further, these facts are foundationally supported by Ms. Powers' declaration.

    "'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Fed. R. Evid. 801(c). Even under the most liberal construction of Rule 801(c), no portion of the MPA referenced in this section can be construed as hearsay.

/ / /

/ / /

Case No. 04-CV-1533 (FCD) JFM

1   **D.**   **Page 4, lines 1-8.**

2       **1.**   **Objections**

3   Relevancy, foundation, hearsay.

4       **2.**   **Response**

5       This portion of the MPA is a continuation of the portion discussed in Section I.C.2, *supra*,

6   and BdM incorporates herein its response set forth in that section establishing that the information

7   is relevant, is supported by an adequate foundation and does not constitute hearsay.[1]

8   **E.**   **Page 4, lines 14-25.**

9       **1.**   **Objections**

10   Relevancy, foundation, hearsay.

11       **2.**   **Response**

12       This portion of the MPA describes the lease agreements between DPR and BdM under

13   which BdM operates its Casa de Pico and Casa de Bandini restaurants, DPR's 2003 bid proposal

14   process through which DPR claims BdM purportedly "lost its right" to use its registered

15   trademarks CASA DE PICO and CASA DE BANDINI, and BdM's challenge to that process.

16   These are facts concerning events relevant to this dispute, facts that occurred in San Diego and

17   that are therefore relevant to BdM's motion to transfer venue.  BdM was a participant in each of

18   these events and established a foundation to attest to the same through Ms. Powers' declaration.

19   No hearsay appears in this portion of the MPA.

20   **F.**   **Page 5, lines 1-28.**

21       **1.**   **Objections**

22   Relevancy, foundation, hearsay.

23       **2.**   **Response**

24       This portion of the MPA is a continuation of the portion discussed in Section I.E.2, *supra*,

25   and BdM incorporates herein its response set forth in that section establishing that the information

26   is relevant, is supported by an adequate foundation and does not constitute hearsay.

27   _____

28   [1] BdM further established a foundation to the MPA through its lodgment of BdM's state and federal registrations for its marks CASA DE PICO and CASA DE BANDINI.

Case No. 04-CV-1533 (FCD) JFM

1     This portion of the MPA further describes two lawsuits that are pending in San Diego

2    concerning issues substantially related to those presented in DPR's instant lawsuit against BdM in

3    the Eastern District of California, and facts that are therefore relevant to the Court's determination

4    of BdM' motion to transfer venue. *A.J. Industries, Inc. v. United States Dist. Court for Cent.*

5    *Dist.*, 503 F.2d 384, 389 (9th Cir. 1974). BdM, a party in each action pending in San Diego,

6    established a foundation for the facts concerning the same through the sworn testimony of Ms.

7    Powers and through pleadings lodged as exhibits with this Court.

8     No hearsay appears in this portion of the MPA.

9  **G.**    **Page 6, lines 1-28.**

10     **1.**    **Objections**

11    Relevancy, foundation, hearsay.

12     **2.**    **Response**

13     This portion of the MPA describes the allegations in DPR's Complaint on file with this

14    Court. DPR's argument that the allegations in its own complaint lack foundation and are

15    somehow irrelevant to BdM's motion to transfer venue is perplexing and should be rejected out of

16    hand.

17     The remainder of this portion of the MPA describes the San Diego location of BdM's

18    operations, including its allegedly infringing conduct, BdM's witnesses and documentary evidence

19    relevant to the parties' claims and defenses in this action. The location of parties, witnesses and

20    evidence is clearly relevant to BdM's motion to transfer venue to the Southern District of

21    California. BdM's factual attestations in this regard are foundationally supported by Ms. Powers'

22    declaration.

23     No hearsay appears in this portion of the MPA.

24  / / /

25  / / /

26  / / /

27  / / /

28  / / /

    Case No. 04-CV-1533 (FCD) JFM

## II.

## CONCLUSION

For all of the reasons stated herein, BdM requests that the Court overrule all evidentiary objections to BdM's memorandum of points and authorities in support of its motion to transfer venue.

DATED: October _21_, 2004          LUCE, FORWARD, HAMILTON & SCRIPPS LLP

By: _____
     Callie A. Bjurstrom
     Michelle A. Herrera
     Attorneys for Defendant Bazaar del Mundo, Inc.

2009343.1

6                        Case No. 04-CV-1533 (FCD) JFM

1  Callie A. Bjurstrom, State Bar No. 137816
   Michelle A. Herrera, State Bar No. 209842
2  LUCE, FORWARD, HAMILTON & SCRIPPS LLP
   600 West Broadway, Suite 2600
3  San Diego, California 92101-3372
   Telephone No.: 619.236.1414
4  Fax No.: 619.232.8311

5  Attorneys for Defendant Bazaar del Mundo, Inc.

**FILED**

OCT 22 2004

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
       DEPUTY CLERK

6

7

8                      UNITED STATES DISTRICT COURT

9                      EASTERN DISTRICT OF CALIFORNIA

10

11  DEPARTMENT OF PARKS AND            Case No. 04-CV-1533 (FCD) JFM
    RECREATION FOR THE STATE OF
12  CALIFORNIA,                        The Hon. Frank C. Damrell, Jr.

13         Plaintiff,                  **DEFENDANT BAZAAR DEL MUNDO,
                                       INC.'S RESPONSE TO PLAINTIFF
14  v.                                 DEPARTMENT OF PARKS AND
                                       RECREATION FOR THE STATE OF
15  BAZAAR DEL MUNDO, INC., a California   CALIFORNIA'S EVIDENTIARY
    corporation, and DOES 1-50, inclusive,  OBJECTIONS TO THE DECLARATION
16                                     OF DIANE POWERS**

17         Defendant.

18                                     Date:   **October  29, 2004**
                                       Time:   **10:00 a.m.**
19                                     Dept.:  **2**
                                       Judge:  **Hon. Frank C. Damrell, Jr.**
20

21

22         Defendant Bazaar del Mundo, Inc. ("BdM") respectfully submits this response to plaintiff

23  Department of Parks and Recreation for the State of California's ("DPR") evidentiary objections

24  to the declaration of Diane Powers.

25  / / /

26  / / /

27  / / /

28  / / /

                                    1                  Case No. 04-CV-1533 (FCD) JFM

*22*

# I.

## **RESPONSE TO OBJECTIONS**

DPR objects to the near entirety of Ms. Powers' declaration.  Specifically, DPR objects to the following portions of Ms. Powers' declaration.

- Page 1, lines 24-28;

- Page 2, lines 1-28;

- Page 3, lines 1-28;

- Page 4, lines 1-3 and 14-24; and

- Page 5, lines 6-10.

DPR asserts a blanket objection to Ms. Powers' sworn testimony on the grounds of relevancy, lack of foundation and hearsay, none of which are well taken and each of which are addressed in turn below:

### **Relevancy**

Each attestation in Ms. Powers' declaration is relevant to BdM's motion to transfer venue. First, Ms. Powers' statement at paragraph 2 of her declaration that she is the President of BdM and has been since 1971 is obviously relevant as it lays the foundation for the facts attested to in the remainder of the declaration.

Paragraphs 3 through 5 describe the circumstances surrounding BdM's creation of "Bazaar del Mundo" as permitted by its lease agreements with DPR.  These facts are relevant to BdM's instant motion because they describe the very situs of BdM's allegedly trademark-infringing action, a factor weighing in favor of transfer to the Southern District of California.

Paragraphs 6 and 7 of Ms. Powers' declaration attest to the creation and registration of BdM's trademarks CASA DE PICO and CASA DE BANDINI, facts that are relevant because they are at issue and occurred in San Diego.

Paragraphs 9 through 12 of Ms. Powers' declaration describe the circumstances under which DPR claims BdM "lost its right" to use its registered trademarks CASA DE PICO and CASA DE BANDINI in San Diego, describes a lawsuit pending in San Diego Superior Court related to DPR's decision in this regard, and describes BdM's continued use of the trademarks.

1    These facts are relevant to BdM's motion to transfer venue because they describe acts and events

2    that have occurred and are occurring in San Diego, including BdM's continuing use of the

3    disputed trademarks.

4         Paragraphs 17 and 20 of Ms. Powers' declaration describe the local interest in this lawsuit,

5    a factor that the United States Supreme Court and the Ninth Circuit have held is relevant to a

6    motion to transfer venue. *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 509 (1947) (recognizing a

7    "local interest in having localized controversies decided at home); *Decker Coal v. Commonwealth*

8    *Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986) (same).

9    **Foundation**

10         DPR's objection that any of the statements in Ms. Powers' declaration lack foundation is

11    utterly specious. Ms. Powers testified that she has been BdM's President and principal officer for

12    over 30 years. (Powers Decl., ¶ 2.)  The entirety of her declaration consists of facts regarding the

13    creation and operation of BdM including, without limitation, the circumstances under which BdM

14    was created, its operation of the Casa de Bandini and Casa de Pico restaurants (including its

15    agreements with DPR related to same), BdM's registration and continued use of its trademarks

16    CASA DE PICO and CASA DE BANDINI, its participation in DPR's 2003 bid proposal process

17    for the Old Town Concession where BdM's restaurants are located and the outcome of that

18    process, and the inquiries and commentary BdM has received in response to the outcome of that

19    process. As BdM's President and principal officer, Ms Powers has more than sufficient personal

20    knowledge to attest to these facts and all others that are contained in her declaration.

21    **Hearsay**

22         DPR's objection to Ms. Powers' declaration on hearsay grounds is entirely without merit.

23    "'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or

24    hearing, offered in evidence to prove the truth of the matter asserted." Fed. R. Evid. 801(c). Even

25    under the most liberal construction of Rule 801(c), none of the attestations in Ms. Powers'

26    declaration could conceivably be construed as hearsay. The only third party "statements" that Ms.

27    Powers has attested to appear in paragraph 20 of her declaration.  Those statements relate to

28    letters, telephone calls and comments of support that BdM has received regarding its dispute with

1    DPR.  Those statements are not offered for the truth of the matter contained therein, *i.e.* that third

2    parties actually support BdM; rather, they are offered to show the local San Diego interest in this

3    dispute, a proper factor for the Court's consideration of BdM's motion to transfer venue.

## II.

## CONCLUSION

6        For all of the reasons stated herein, BdM requests the Court overrule all evidentiary

7    objections to Ms. Powers' declaration asserted by DPR.

9    DATED: October 21, 2004          LUCE, FORWARD, HAMILTON & SCRIPPS LLP

11   By: _____

12       Callie A. Bjurstrom
         Michelle A. Herrera
13       Attorneys for Defendant Bazaar del Mundo, Inc.

14   2009312.1

1 | Callie A. Bjurstrom, State Bar No. 137816
Michelle A. Herrera, State Bar No. 209842
2 | LUCE, FORWARD, HAMILTON & SCRIPPS LLP
600 West Broadway, Suite 2600
3 | San Diego, California 92101-3372
Telephone No.: 619.236.1414
4 | Fax No.: 619.232.8311

5 | Attorneys for Defendant Bazaar del Mundo, Inc.

6

7

**FILED**

**OCT 2 2 2004**

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY_____FCD
DEPUTY CLERK

8 | UNITED STATES DISTRICT COURT

9 | EASTERN DISTRICT OF CALIFORNIA

10

11 | DEPARTMENT OF PARKS AND
RECREATION FOR THE STATE OF
12 | CALIFORNIA,

13 |       Plaintiff,

14 | v.

15 | BAZAAR DEL MUNDO, INC., a California
corporation, and DOES 1-50, inclusive,
16

17 |       Defendant.

18

19

Case No. 04-CV-1533 (FCD) JFM

The Hon. Frank C. Damrell, Jr.

**DEFENDANT BAZAAR DEL MUNDO, INC.'S EVIDENTIARY OBJECTIONS TO THE DECLARATION OF RON BREAN IN SUPPORT OF PLAINTIFF DEPARTMENT OF PARKS AND RECREATION FOR THE STATE OF CALIFORNIA'S OPPOSITION TO TRANSFER VENUE**

**Date:**   **October 29, 2004**
**Time:**   **10:00 a.m.**
**Dept.:**   **2**
**Judge:**   **Hon. Frank C. Damrell, Jr.**

20

21 |       Defendant Bazaar del Mundo, Inc. ("BdM") hereby files with the Court its objections to

22 | the Declaration of Ron Brean in support of plaintiff Department of Parks and Recreation for the

23 | State of California's ("DPR") opposition to transfer venue.

24 | / / /

25 | / / /

26 | / / /

27 | / / /

28

1

Case No. 04-CV-1533 (FCD) JFM

**OBJECTIONS TO THE DECLARATION OF RON BREAN**

1.    Page 2, lines 8-11 ("Mary . . . . Pico.'")

Objection:  BdM objects to this portion of the Brean Declaration on the grounds that the offered testimony is irrelevant, lacks foundation and consists of an unsupported legal conclusion. Fed. R. Evid. 401, 402, 602, 701.

2.    Page 2, lines 12-16 ("Donna . . . Bandini.")

Objection:  BdM objects to this portion of the Brean Declaration on the grounds that the offered testimony is irrelevant, lacks foundation and consists of an unsupported legal conclusion. Fed. R. Evid. 401, 402, 602, 701.

3.    Page 2, lines 17-20 ("Stephen . . . Sacramento.")

Objection:  BdM objects to this portion of the Brean Declaration on the grounds that the offered testimony is irrelevant, lacks foundation and consists of an unsupported legal conclusion. Fed. R. Evid. 401, 402, 602, 701.

4.    Page 2, lines 21-23 ("Paul . . . Park.")

Objection:  BdM objects to this portion of the Brean Declaration on the grounds that the offered testimony is irrelevant, lacks foundation and consists of an unsupported legal conclusion. Fed. R. Evid. 401, 402, 602, 701.

5.    Page 2, lines 24-27 ("The . . . employment.")

Objection:  BdM objects to this portion of the Brean Declaration on the grounds that it lacks foundation and consists of unsupported legal conclusions.  Fed. R. Civ. P. 602, 701.

///
///
///
///
///
///
///
///

2                    Case No. 04-CV-1533 (FCD) JFM

1       6.     Page 3, lines 1-4 ("Most . . . California.")

2       Objection: BdM objects to this portion of the Brean Declaration on the grounds that it

3  lacks foundation and consists of an unsupported legal conclusion. Fed. R. Civ. P. 602, 701.

4

5  DATED: October 2(, 2004      LUCE, FORWARD, HAMILTON & SCRIPPS LLP

6

7       By: _____

8            Callie A. Bjurstrom
          Michelle A. Herrera
9            Attorneys for Defendant Bazaar del Mundo, Inc.

10  2009404.1

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1 | Callie A. Bjurstrom, State Bar No. 137816
Michelle A. Herrera, State Bar No. 209842
2 | LUCE, FORWARD, HAMILTON & SCRIPPS LLP
600 West Broadway, Suite 2600
3 | San Diego, California 92101-3372
Telephone No.: 619.236.1414
4 | Fax No.: 619.232.8311

5 | Attorneys for Defendant Bazaar del Mundo, Inc.



**FILED**

OCT 2 2 2004

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY_____
DEPUTY CLERK

6

7

8 | UNITED STATES DISTRICT COURT

9 | EASTERN DISTRICT OF CALIFORNIA

10

11 | DEPARTMENT OF PARKS AND
RECREATION FOR THE STATE OF
12 | CALIFORNIA,

Case No. 04-CV-1533 (FCD) JFM

The Hon. Frank C. Damrell, Jr.

13 | 
        Plaintiff,

14 | v.

15 | 

16 | BAZAAR DEL MUNDO, INC., a California
corporation, and DOES 1-50, inclusive,

17 |         Defendant.

18 |

**DECLARATION OF RICHARD R.
SPIRRA IN SUPPORT OF DEFENDANT
BAZAAR DEL MUNDO, INC.'S MOTION
TO TRANSFER VENUE PURSUANT TO
28 U.S.C. § 1404(a)**

**Date:    October 29, 2004**
**Time:    10:00 a.m.**
**Dept.:   2**
**Judge:  Hon. Frank C. Damrell, Jr.**

19 | I, Richard R. Spirra, declare:

20 | 1.      I am an attorney licensed to practice law before the courts of the State of

21 | California. I am a partner with the law firm of Luce, Forward, Hamilton & Scripps LLP, counsel

22 | for defendant Bazaar del Mundo, Inc. ("BDM") in the above-captioned action. I have worked on

23 | both the trial court proceedings and the appeal in the action that was filed by Bazaar del Mundo,

24 | Inc. and is currently pending in the United States District Court for the Southern District of

25 | California in which BDM asserted trademark infringement claims against Delaware North

26 | Companies Park and Resorts ("Delaware North") and the Department of Parks and Recreation for

27 | the State of California. As a result of my continued participation in those proceedings, I am

28 | familiar with the status of that action. Moreover, during the past twenty years, a substantial

$20^1$

Case No. 04-CV-1533 (FCD) JFM

1   portion of my practice has consisted of handling appellate matters in both the state and federal

2   appellate courts. As a result of this experience, I have a substantial amount of expertise with

3   respect to appellate procedural issues.

4        2.     I am personally aware, and I have confirmed through a review of the files for the

5   United States District Court for the Southern District of California and the United States Court of

6   Appeals for the Ninth Circuit, that U.S.D.C. Case Number 03cv2284 W(LSP), the aforementioned

7   action between BDM and Delaware North is currently open and pending in the U.S. District Court

8   for the Southern District of California. BDM has filed a Notice of Appeal of the Order and

9   Judgment dismissing its claims against Delaware North. The District Court case is, and will

10   remain, open and pending in the District Court until such time as the Ninth Circuit Court of

11   Appeals has considered and resolved the issues on appeal and issues its ruling and subsequent

12   Mandate either affirming, reversing, vacating, or otherwise modifying the order and judgment

13   appealed from. If the Court of Appeals reverses or vacates the Order and/or Judgment, the District

14   Court will proceed to adjudicate the claims. If the Order and Judgment are affirmed, the District

15   Court will be required to take further steps in the action upon the Court of Appeals' issuance of its

16   Mandate, e.g. resolving issues related to the recovery of costs. The District Court case will not be

17   concluded and closed until after the Ninth Circuit issues its decision and Mandate, and any

18   remaining substantive and/or collateral/procedural issues are resolved.

19       I declare under penalty of perjury under the laws of the State of California that the

20   foregoing is true and correct and that this declaration was executed on this 2JS day of October

21   2004, in San Diego, California.

22

23   Richard R. Spirra

2009397.4

24

25

26

27

28

2         Case No. 04-CV-1533 (FCD) JFM

1    Callie A. Bjurstrom, State Bar No. 137816
     Michelle A. Herrera, State Bar No. 209842
2    LUCE, FORWARD, HAMILTON & SCRIPPS L
     600 West Broadway, Suite 2600
3    San Diego, California 92101-3372
     Telephone No.: 619.236.1414
4    Fax No.: 619.232.8311

5    Attorneys for Defendant Bazaar del Mundo, Inc

**FILED**

OCT 2 2 2004

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY_____
        DEPUTY CLERK

8                    UNITED STATES DISTRICT COURT

9                    EASTERN DISTRICT OF CALIFORNIA

10

11   DEPARTMENT OF PARKS AND                 Case No. 04-CV-1533 (FCD) JFM
     RECREATION FOR THE STATE OF
12   CALIFORNIA,                             The Hon. Frank C. Damrell, Jr.

13                                           **DEFENDANT BAZAAR DEL MUNDO,**
              Plaintiff,                     **INC.'S EVIDENTIARY OBJECTIONS**
14                                           **TO PLAINTIFF DEPARTMENT OF**
     v.                                      **PARKS AND RECREATION FOR THE**
15                                           **STATE OF CALIFORNIA'S POINTS**
     BAZAAR DEL MUNDO, INC., a California    **AND AUTHORITIES IN SUPPORT OF**
16   corporation, and DOES 1-50, inclusive,  **ITS OPPOSITION TO TRANSFER**
                                             **VENUE**
17            Defendant.

18                                           **Date:    October 29, 2004**
                                             **Time:    10:00 a.m.**
19                                           **Dept.:   2**
                                             **Judge:   Hon. Frank C. Damrell, Jr.**
20

21           Defendant Bazaar del Mundo, Inc. ("BdM") hereby files with the Court its objections to

22   plaintiff Department of Parks and Recreation for the State of California's ("DPR") points and

23   authorities in support of its opposition to transfer venue (the "Opposition Points and Authorities").

24   / / /

25   / / /

26   / / /

27   / / /

28   / / /

                              19        1              Case No. 04-CV-1533 (FCD) JFM

## OBJECTIONS TO OPPOSITION POINTS AND AUTHORITIES

1.    Page 2, lines 9-11 ("The . . . lawsuit.")

Objection:  BdM objects to this portion of the Opposition Points and Authorities on the grounds that it lacks foundation.  Fed. R. Evid. 602.

2.    Page 2, lines 19-23 ("BdM . . . State.")

Objection:  BdM objects to this portion of the Opposition Points and Authorities on the grounds that it lacks foundation.  Fed. R. Evid. 602.

3.    Page 2, lines 24-27 ("The . . . 1985.")

Objection:  BdM objects to this portion of the Opposition Points and Authorities on the grounds that it lacks foundation.  Fed. R. Evid. 602.

4.    Page 3, line 25 to page 4, line 8 ("the . . . consider.")

Objection:  BdM objects to this portion of the Opposition Points and Authorities on the grounds that it lacks foundation and is irrelevant.  Fed. R. Evid. 602, 401, 402.

5.    Page 4, lines 16-18 ("Although . . . Amendment.")

Objection:  BdM objects to this portion of the Opposition Points and Authorities on the grounds that it is irrelevant.  Fed. R. Evid. 401, 402.

6.    Page 4, lines 20-22 ("Therefore . . . incorrect.")

Objection:  BdM objects to this portion of the Opposition Points and Authorities on the grounds that it is irrelevant and lacks foundation.  Fed. R. Evid. 401, 402, 602.

7.    Page 5, lines 2-4 ("BdM . . . California.")

Objection:  BdM objects to this portion of the Opposition Points and Authorities on the grounds that it is irrelevant.  Fed. R. Evid. 401, 402.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

1    8.    Page 5, lines 19-23 ("Most . . . case.")

2    Objection:  BdM objects to this portion of the Opposition Points and Authorities on the

3    grounds that it lacks foundation.  Fed. R. Evid. 602.

4

5    DATED: October 21, 2004        LUCE, FORWARD, HAMILTON & SCRIPPS LLP

6

7    By: _____

8    Callie A. Bjurstrom
     Michelle A. Herrera

9    Attorneys for Defendant Bazaar del Mundo, Inc.

10   2009403.1

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1  Callie A. Bjurstrom, State Bar No. 137816
   Michelle A. Herrera, State Bar No. 209842
2  LUCE, FORWARD, HAMILTON & SCRIPPS LLP
   600 West Broadway, Suite 2600
3  San Diego, California 92101-3372
   Telephone No.: 619.236.1414
4  Fax No.: 619.232.8311

5  Attorneys for Defendant Bazaar del Mundo, Inc.

**FILED**

OCT 2 2 2004

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY_____
DEPUTY CLERK

6

7

8              UNITED STATES DISTRICT COURT

9              EASTERN DISTRICT OF CALIFORNIA

10

11 DEPARTMENT OF PARKS AND                  Case No. 04-CV-1533 (FCD) JFM
   RECREATION FOR THE STATE OF
12 CALIFORNIA,                              The Hon. Frank C. Damrell, Jr.

13                                          **BAZAAR DEL MUNDO, INC.'S REPLY**
              Plaintiff,                    **MEMORANDUM OF POINTS AND**
14                                          **AUTHORITIES IN SUPPORT OF ITS**
   v.                                       **MOTION TO TRANSFER VENUE**
15                                          **PURSUANT TO 28 U.S.C. § 1404(a)**
   BAZAAR DEL MUNDO, INC., a California
16 corporation, and DOES 1-50, inclusive,   **Date:    October 29, 2004**
                                            **Time:    10:00 a.m.**
17            Defendant.                     **Dept.:   2**

18

19         Defendant Bazaar del Mundo, Inc. ("BdM") respectfully submits this Reply Memorandum

20 of Points and Authorities in Support of its Motion to Transfer Venue pursuant to 28 U.S.C.

21 § 1404(a).

22                              **I.**

23                          **OVERVIEW**

24         Plaintiff Department of Parks and Recreation for the State of California ("DPR" or the

25 "State") opposes BdM's motion to transfer venue primarily on the grounds that as the plaintiff, it

26 has the right to choose the forum and that its choice of forum deserves great weight. (Opposition,

27 3:15-18.)   The State also asserts that four of its employees may be inconvenienced if this case is

28 transferred to the Southern District of California.  DPR's arguments are unpersuasive.

                              18   1           Case No. 04-CV-1533 (FCD) JFM

1     DPR's choice of forum deserves no weight under the facts of this case because DPR

2  improperly filed its complaint in Sacramento County Superior Court to begin with. It is

3  undisputed that BdM's principal place of business is in San Diego. It is also undisputed that the

4  conduct the State complains of is occurring in San Diego. The *only* connection DPR asserts for

5  the filing of this case in Sacramento is the filing of applications for the registration of two

6  trademarks with the State *over twenty (20) years ago.*

7     Venue is not improper in the Eastern District of California *only* because this case was

8  removed to federal court. Absent removal, this case would have been dismissed for improper

9  venue. As a result, this Court should accord little weight to the State's choice of forum.

10     The State's claim that four of its employees will also be inconvenienced if this case is

11  transferred to the Southern District is unconvincing. None of the State's purported witnesses

12  located in Sacramento have any first hand knowledge of any issues of significance in this case.

13  None of the State's witnesses can testify directly to DPR's alleged acquisition/ownership of the

14  disputed trademarks.

15     DPR cavalierly dismisses as "irrelevant," the existence of witnesses and evidence located

16  in San Diego that are clearly important to the Court's analysis. Such witnesses include BdM

17  employees, third party witnesses such as the Cardwell family from whom the State allegedly

18  acquired its rights, and those involved in the application and registration process for the CASA DE

19  PICO and CASA DE BANDINI trademarks.

20     Moreover, any allegedly infringing use by BdM of the CASA DE PICO and CASA DE

21  BANDINI trademarks is occurring in San Diego, not Sacramento. Any requested relief will

22  impact businesses operating in San Diego and their customers in San Diego.

23     Finally, a related case involving the same trademarks and substantially the same legal

24  issues is currently pending in the United States District Court for the Southern District of

25  California. The interests of justice are served by transferring this case to the Southern District to

26  avoid inconsistent judgments, to promote judicial economy, and to allow local disputes to be

27  resolved in their local court system.

28  ///

**II.**

## DPR'S CHOICE OF FORUM SHOULD BE ACCORDED NO WEIGHT BECAUSE THE FORUM CHOSEN BY DPR WAS IMPROPER

California Code of Civil Procedure section 395.5 provides:

> A corporation or association may be sued in the county where the contract is made or is to be performed, or where the obligation or liability arises, or the breach occurs; or in the county where the principal place of business of such corporation is situated, subject to the power of the court to change the place of trial as in other cases.

This is a trademark dispute. DPR originally filed suit in state court in Sacramento. Pursuant to C.C.P. § 395.5, venue in this case is proper only where BdM has its principal place of business or where the obligation or liability arose. Both support venue only in San Diego. BdM's principal place of business is in San Diego. (Declaration of Diane Powers filed in Support of Defendant's Motion to Transfer Venue, ¶ 13.) The allegedly infringing conduct is occurring in San Diego. *See Shores v. Chip Steak Co.*, 130 Cal.App.2d 620, 626 (1955)(finding that venue is proper where trademark was allegedly infringed).

Given that DPR filed this case in an improper forum to begin with, there is little reason for this Court to accord any weight to DPR's choice of forum. In fact, as noted by a decision cited in DPR's Opposition papers, "to be considered at all, the plaintiff's choice of forum must be one which is permitted under the relevant venue statute." *In re Horseshoe Entm't*, 305 F.3d 354, 359 (5th Cir. 2002).

By filing this lawsuit in state court in Sacramento County, the State was clearly forum shopping. The Eastern District is not an improper forum *only* because this case was removed to federal court. This District has no real interest in this dispute. As the Ninth Circuit has stated:

> Plaintiff's choice of forum, then, is not the final word. In judging the weight to be given such a choice, as is the case with other types of actions, consideration must be given to the extent both of the defendant's business contacts with the chosen forum and of the plaintiff's contacts, including those relating to his cause of action. If the operative facts have not occurred within the forum of original selection and the forum has no particular interest in the parties or the subject matter, the plaintiff's choice is entitled only to minimal consideration.

/ / /

/ / /

3

Case No. 04-CV-1533 (FCD) JFM

1 | *Pacific Car & Foundry Co. v. Pence,* 403 F.2d 949, 954 (9th Cir. 1968)(footnotes omitted).  The

2 | filing of two applications for registration of trademarks 20 years ago is hardly significant contact

3 | by BdM with plaintiff's chosen forum.    Although the State's headquarters is located in

4 | Sacramento, the claims asserted relate to contacts and actions that occurred or are currently

5 | occurring in San Diego.  DPR admits as much in its Complaint.  To permit the State to sue a San

6 | Diego business with no connection to Sacramento, in Sacramento, would be contrary to the

7 | established purposes of the venue rules which are to give the defendant some control in the choice

8 | of forum.  *See Smith v. Smith,* 88 Cal. 572, 576 (1891)(recognizing that California's venue rules

9 | are intended to protect the defendant against the expense and inconvenience of being compelled to

10 | defend itself in a distant county).  It would also be contrary to the United States Supreme Court

11 | and Ninth Circuit Court of Appeals decisions recognizing a "local interest in having localized

12 | controversies decided at home." *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 509 (1947); *Decker Coal*

13 | *Co. v. Commonwealth Edison Co.,* 805 F.2d 834, 843 (9th Cir. 1986).

14 |    Quite simply, the State's choice of forum is supported only by the fact that it was chosen.

15 | This simply does not overcome BdM's clear showing of  the inconvenience that will result if this

16 | case remains in Sacramento.  *See Pacific Car and Foundry Co.,* 403 F.2d at 955 ("We are left,

17 | then, with a choice of forum supported only by the fact that it was chosen.  Such a choice cannot

18 | prevail under § 1404(a) against the showing of inconvenience here made by the petitioner.")

19 | BdM's motion to transfer should therefore be granted.

20 | <div align="center">**III.**</div>

21 | <div align="center">**THE EASTERN DISTRICT IS AN INCONVENIENT FORUM AND JUSTICE IS NOT**</div>
<div align="center">**SERVED BY PROCEEDING IN THIS DISTRICT**</div>

22 |

23 |    DPR makes a half-hearted effort to convince this Court that it will be inconvenienced if the

24 | case is transferred to the Southern District of California.  DPR's entire showing in this regard is

25 | the identification of four State employees it claims as witnesses to this dispute.  Not one of these

26 | State employees has any personal knowledge regarding the acquisition of any rights in these

27 | trademarks by DPR.  Two of these alleged witnesses, Mr. Mikesell and Ms. Pozzi, cannot even

28 | offer testimony that is relevant.  The fact that names may have an historic significance, or that a

<div align="center">4</div>

1   building may be designated a landmark does not mean that the State has any enforceable

2   *trademark rights* in those names.  "There is no such thing as property in a trademark except as *a*

3   *right appurtenant to an established business or trade in connection with which the mark is*

4   *employed.*" *United Drug Co. v. Theodore Rectanus Co.*, 248 U.S. 90, 97 (1918)(emphasis added.)

5       As for Mr. Carlson, he is simply the Custodian of Records for the California Parks

6   Commission.  His testimony will likely be unnecessary.  Although documents relating to the

7   acquisition of the Old Town buildings may be relevant, many of the same documents are on file

8   with the San Diego County Superior Court given the acquisition took place through an eminent

9   domain proceeding in San Diego.  Documents are also easily transportable.  DPR has an office

10  and counsel in San Diego that can maintain the relevant documents with little inconvenience to

11  DPR.

12      As for Ms. Helmich, again, she has no personal knowledge regarding any of the matters in

13  dispute.  Assuming Ms. Helmich will be permitted to testify at all, her only value will be as a

14  purported expert witness.  Clearly, the forum for this dispute should not turn on what is convenient

15  or inconvenient for a party's expert witness.  *See Promuto v. Waste Mgmt., Inc.*, 44 F.Supp.2d

16  628, 640 (S.D.N.Y. 1999)(convenience of expert witnesses is entitled to little weight, if any).  *See*

17  *also, Figley v. California Arrow Airlines*, 111 Cal.App.2d, 285, 287 (1952) ("Generally, the

18  convenience of experts should not be considered in determining the question of convenience of

19  witnesses on application for change of venue except where the experts have a personal knowledge

20  of the facts upon which their testimony is to be based"); *accord, Peiser v. Mettler*, 50 Cal.2d 584,

21  611 (1958).

22      The State ignores the showing made by BdM that San Diego is a more convenient forum

23  for third party witnesses and BdM witnesses, thereby acknowledging the same.  As referenced

24  above, San Diego is also the location of many relevant documents.  DPR's dismissal as

25  "irrelevant" the eminent domain proceeding through which it acquired the buildings is refuted by

26  its identification of Mr. Carlson as a witness.  Mr. Carlson is purportedly to testify to the

27  acquisition of these same buildings.  (*See* Declaration of Ron Brean, ¶ 3(d).)

28  / / /

1    Moreover, the State is simply wrong when it states that BdM failed to adequately identify

2    witnesses to the condemnation proceeding.  BdM identified Paul Overton and members of the

3    Cardwell family in San Diego, as well as their anticipated testimony.

4    As for DPR's argument that the Court should not consider the residence of BdM's attorney

5    who negotiated the concession agreement, BdM never made such a claim.  BdM did identify as

6    witnesses three attorneys who will provide fact-based testimony and who reside in San Diego.

7    Those attorneys include, Mr. Overton who represented the Cardwell family in the condemnation

8    proceeding and who has knowledge regarding what rights and interests were transferred to the

9    State by the Cardwells, and Mr. Hahn and Ms. Sanderson, both of whom have knowledge

10   regarding BdM's application for and registration of its CASA DE PICO and CASA DE BANDINI

11   trademarks, which DPR claims were fraudulently procured.[1]

12   Finally, the State dismisses as "irrelevant" the local nature of the dispute and the location

13   of the restaurants operating under the disputed trademarks.  (Opposition, pgs. 3-4.) The United

14   States Supreme Court and the Ninth Circuit Court of Appeals believe local interest is a relevant

15   consideration in determining the appropriate forum within which a dispute should be litigated.

16   *Gulf Oil Corp.*, 330 U.S. at 509; *Decker Coal*, 805 F.2d at 843.  The fact that DPR disagrees is of

17   no moment.

18   As for the location of the restaurants, the trademarks are being used in connection with

19   Mexican restaurants operated in San Diego.  Therefore, the allegedly infringing conduct is

20   occurring in San Diego; the witnesses to such conduct are located in San Diego.  Moreover, the

21   Complaint seeks preliminary and permanent injunctive relief to restrain BdM and its employees

22   from "using or displaying" the disputed trademarks, from using the trademarks to designate

23

24   [1]   The two decisions cited by DPR, *Solomon v. Continental American,* 472 F.2d 1043 (3rd Cir.
1973) and *In re Horseshoe Entm't,* 305 F.3d 354 (5th Cir. 2002), do not preclude this Court from

25   considering the San Diego residence of these fact-based witnesses in determining whether to
transfer this case to the Southern District of California.  Both of these decisions stand for the

26   proposition that the residence of counsel *in the action pending before the court* that is deciding a
motion to transfer venue should not be considered.  *Solomon,* 472 F.2d at 1047; *In re Horseshoe*

27   *Entm't,* 305 F.3d at 358.  BdM does not suggest that the location of its counsel in this case is a
factor this Court should consider in deciding this motion, however, it is interesting to note that *all*

28   *attorneys* in this case, including those representing the State, are located in San Diego.

1   BdM's "services, Internet web sites, domain name, promotional materials and advertisements,

2   corporate name and logos," and to insure that "BdM's employees or representatives" that are using

3   the trademarks "cease such use." (*See* Complaint, ¶ 22.)  Assuming the State could prove its

4   ownership in these trademarks (which it cannot), and that BdM is infringing the same (which it is

5   not), the primary remedy sought, injunctive relief, and enforcement of the same would necessarily

6   occur in San Diego.

7        The Southern District of California is clearly a more convenient and a more appropriate

8   forum for this localized dispute.  BdM's motion to transfer venue should be granted.

9                                         **IV.**

10       **THE SOUTHERN DISTRICT IS ALSO A MORE APPROPRIATE FORUM GIVEN**
         **THAT A CASE INVOLVING THE SAME TRADEMARKS IS**
11       **STILL PENDING IN THAT DISTRICT**

12       The State focuses in its Opposition to BdM's motion on the fact that it was dismissed from

13   an action pending in the Southern District of California based on  Eleventh Amendment grounds

14   and that it is not a party to the appeal. (Opposition, 4:16-21.)  Both statements are true.  However,

15   what is significant for this Court to consider is the effect of having two district court actions

16   pending at the same time and involving the same trademarks.  Contrary to the State's claim,

17   *Bazaar Del Mundo, Inc. v. Delaware North Companies Parks and Resorts, et. al,* Case No. 03-

18   CV-2284 W (LSP) is still pending.  (*See* Declaration of Richard Spirra, ¶ 2, filed concurrently

19   herewith.)  The case remains open and pending in the district court until such time as the Ninth

20   Circuit Court of Appeals has considered and resolved the issues on appeal and issues its ruling and

21   subsequent Mandate. (Spirra Declaration, ¶ 2.)  If the Court of Appeals reverses or vacates the

22   district court's Order, the case will continue until the claims are adjudicated.  If the Order is

23   affirmed, the district court will be required to take further steps upon the issuance of the Mandate.

24   Such steps could include, for example, resolving issues related to the recovery of costs. (*Id.*)

25       Any subsequent adjudication of the issues pending in the Southern District will involve

26   BdM's ownership and right to enforce its CASA DE PICO and CASA DE BANDINI trademarks

27   against Delaware North, the State's newly appointed Old Town concessionaire.  BdM will assert

28   its absolute right to enforce these marks as the owner of incontestable federal trademark

1   registrations for the marks.  Delaware North will assert that BdM is not the proper owner of these

2   marks.  A decision will ultimately be made as to who owns these trademarks and is entitled to

3   enforce them.  ***That is the same issue presented in this case, to this Court.***  As a result, it is

4   entirely possible, with two actions pending in two different district courts, that one court could

5   rule that BdM owns these marks and the other court could rule that DPR does.

6        In order to avoid the possibility of inconsistent rulings with regard to the ownership of the

7   CASA DE PICO and CASA DE BANDINI trademarks, this Court should transfer this case to the

8   Southern District of California where a related case involving the same trademarks is already

9   pending.  Transfer of this case would be consistent with Southern District of California Civil

10  Local Rule 40.1(d)[2] which states:

11       **Low Number Rule, Criteria**.  The clerk shall promptly examine the original
         complaint or petition in each civil action and proceeding hereafter filed and
12       ascertain whether any one or more civil actions or proceedings pending or any one
         or more currently filed appear (1) to arise from the same or substantially identical
13       transactions, happenings, or events; or (2) involve the same or substantially the
         same parties or property, or (3) involve ***the same patent or the same***
14       ***trademark,*** . . . or (4) call for determination of the ***same or substantially identical***
         ***questions of law;*** or (5) for other reasons would entail substantial duplication of
15       labor if heard by different judges.

16       Both cases involve the same trademarks and call for a determination of the same or

17  substantially identical questions of law.  Although both cases are not currently pending in the

18  same court, the same policies of avoiding inconsistent judgments and conservation of judicial

19  resources support the transfer of this case to the Southern District of California, the district where

20  a related action is currently pending.

21  ///

22  ///

23  ///

24  ///

25

---

26  [2]   Transferring this case would also be consistent with Eastern District of California Local Rule
    83-123, which requires the parties to identify related cases involving the same property, similar
27  questions of fact and the same question of law, and any actions where there is likely to be a
    substantial savings of judicial effort, either because the same result should follow in both actions
28  or otherwise.

## V.

## CONCLUSION

While venue may technically be proper in this Court, the Southern District of California is a more convenient and appropriate forum for the resolution of this dispute. The Southern District of California is home to most, if not all, of the witnesses with relevant, first hand knowledge relating to who owns these trademarks. It is where the State allegedly acquired its "trademark" interests in the Casa de Pico and Casa de Bandini names, where BdM resides, and where BdM has used the CASA DE PICO and CASA DE BANDINI trademarks for over two decades. The Southern District is where DPR claims the alleged infringing activity is occurring. The Southern District is also where another action over the same trademarks and substantially the same legal issues is currently pending. And finally, it is in the Southern District where you find people who are interested in this dispute; a dispute between a San Diego business that has operated the restaurants at issue under the disputed names for over two decades, and the State of California.

Defendant, Bazaar Del Mundo respectfully requests this Court grant its Motion to Transfer Venue pursuant to 28 U.S.C. § 1404(a), and transfer this case to the United States District Court for the Southern District of California.

DATED: October 22, 2004          LUCE, FORWARD, HAMILTON & SCRIPPS LLP

By: _____
Callie A. Bjurstrom
Michelle A. Herrera
Attorneys for Defendant Bazaar del Mundo, Inc.

2008643.1

ORIGINAL

1  BILL LOCKYER
   Attorney General of the State of California
2  TOM GREENE
   Chief Assistant Attorney General
3  MARY HACKENBRACHT
   Senior Assistant Attorney General
4  CAROL A. SQUIRE
   Deputy Attorney General
5  DAVID H. ROBINSON
   Deputy Attorney General
6  State Bar No. 74956
      110 West "A" Street, Suite 1100
7  San Diego, CA 92101
   P.O. Box 85266
8  San Diego, CA 92186-5266
   Telephone: (619) 645-2609
9  Fax: (619) 645-2581

10  RICHARD P. SYBERT, State Bar No. 80731
    BRETT M. MIDDLETON, State Bar No. 199427
11  GORDON & REES, LLP
    101 West Broadway, Suite 1600
12  San Diego, CA 92101
    Telephone No.: (619) 696-6700
13  Fax No.: (619) 696-7124

14  Attorneys for Plaintiff Department of Parks and
    Recreation
15

**FILED**

**OCT 1 3 2004**

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY_____
         DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| 18  **DEPARTMENT OF PARKS AND RECREATION FOR THE STATE OF CALIFORNIA,** | Case No. 04-CIV-1533 (FDC) JFM |
| 20                                    Plaintiff, | **STATE'S EVIDENTIARY OBJECTIONS TO BAZAAR DEL MUNDO, INC.'S POINTS AND AUTHORITIES RE: MOTION FOR TRANSFER OF VENUE** |
| 21                  v. | |
| 22  **BAZAAR DEL MUNDO, INC., a California corporation, and DOES 1-50, inclusive,** | Date:        October 29, 2004 |
| 23                                    Defendant. | Time:        10:00 a.m. |
| 24 | Courtroom:  Dept. 2<br>Judge:       Hon. Frank C. Damrell, Jr. |

26     Plaintiff,  Department of Parks and Recreation for the State of California ("State") hereby

27  objects, and submits the following objections, to Bazaar del Mundo, Inc.'s Memorandum of Points

28  and Authorities in Support of Motion to Transfer Venue.

State's Evidentiary Objections to Bazaar Del Mundo, Inc's Points and Authorities     Case No. 04-CV-1533 (FDC) JFM

1

1. Page 1, lines 17-26. Objections: relevancy, lacks foundation. Fed. Rules of Evid., rules 401, 402, 602.

2. Page 2, lines 20-24. Objection: relevancy. Fed. Rules of Evid., rules 401, 402.

3. Page 3, lines 1-28. Objections: relevancy, lacks foundation, and contains inadmissible hearsay. Fed. Rules of Evid., rules 401, 402, 602, 801(c), 802.

4. Page 4, lines 1-8. Objections: relevancy, lacks foundation, and contains inadmissible hearsay. Fed. Rules of Evid., rules 401, 402, 602, 801(c), 802. In addition, Page 4, lines 7-8 is an incorrect legal conclusion that lacks foundation.

5. Page 4, lines 14-25, ending with the words "Casa de Bandini." Objections: relevancy, lacks foundation, and contains inadmissible hearsay. Fed. Rules of Evid., rules 401, 402, 602, 801(c), 802.

6. Page 5, lines 1-28. Objections: relevancy, lacks foundation, and contains inadmissible hearsay. Fed. Rules of Evid., rules 401, 402, 602, 801(c), 802.

7. Page 6, lines 1-28. Objections: relevancy, lacks foundation, and contains inadmissible hearsay. Fed. Rules of Evid., rules 401, 402, 602, 801(c), 802.

Dated:  October 12, 2004

Respectfully submitted,

BILL LOCKYER
Attorney General of the State of California

TOM GREENE
Chief Assistant Attorney General

MARY HACKENBRACHT
Senior Assistant Attorney General

CAROL A. SQUIRE
Supervising Deputy Attorney General

DAVID H. ROBINSON
Deputy Attorney General

Attorneys for Plaintiff Department of Parks and Recreation

1

## DECLARATION OF SERVICE BY U.S. MAIL

2   **Case Name:**   **Department of Parks and Recreation for the State of California v. Bazaar del Mundo, Inc., a California corporation, and DOES 1-50, inclusive**

3

**Case No.:**   **04-CIV-1533 (FDC) JFM**

4

I declare:

5

I am employed in the Office of the Attorney General, which is the office of a member of the

6   California State Bar at which member's direction this service is made. I am 18 years of age or older and not a party to this matter. I am familiar with the business practice at the Office of the Attorney

7   General for collection and processing of correspondence for mailing with the United States Postal Service. In accordance with that practice, correspondence placed in the internal mail collection

8   system at the Office of the Attorney General is deposited with the United States Postal Service that same day in the ordinary course of business.

9

On October 12, 2004, I served the attached **STATE'S EVIDENTIARY OBJECTIONS TO**

10   **BAZAAR DEL MUNDO, INC'S POINTS AND AUTHORITIES RE:  MOTION FOR TRANSFER OF VENUE** by placing a true copy thereof enclosed in a sealed envelope with postage

11   thereon fully prepaid, in the internal mail collection system at the Office of the Attorney General at 110 West "A" Street, Suite 1100, San Diego, California  92101, addressed as follows:

12

13   **CALLIE A. BJURSTROM, ESQ.**
**MICHELLE A. HERRERA, ESQ.**

14   **LUCE, FORWARD, HAMILTON & SCRIPPS LLP**
**600 WEST BROADWAY, SUITE 2600**

15   **SAN DIEGO, CA 92101-3391**

16   **RICHARD P. SYBERT, ESQ.**
**BRETT M. MIDDLETON, ESQ.**

17   **GORDON & REES LLP**
**101 WEST BROADWAY, SUITE 1600**

18   **SAN DIEGO, CA 92101**

19   I declare under penalty of perjury under the laws of the State of California the foregoing is true and correct and that this declaration was executed on October 12, 2004, at San Diego, California.

20

21           **M. CAROLINA SAHELI**

22           _____          _____
                        Declarant                              Signature

23

24

25

26

27

28

ORIGINAL

1  BILL LOCKYER
   Attorney General of the State of California
2  TOM GREENE
   Chief Assistant Attorney General
3  MARY HACKENBRACHT
   Senior Assistant Attorney General
4  CAROL A. SQUIRE
   Deputy Attorney General
5  DAVID H. ROBINSON
   Deputy Attorney General
6  State Bar No. 74956
      110 West "A" Street, Suite 1100
7     San Diego, CA 92101
      P.O. Box 85266
8     San Diego, CA 92186-5266
      Telephone: (619) 645-2609
9     Fax: (619) 645-2581

10 RICHARD P. SYBERT, State Bar No. 80731
   BRETT M. MIDDLETON, State Bar No. 199427
11 GORDON & REES, LLP
   101 West Broadway, Suite 1600
12 San Diego, CA 92101
   Telephone No.: (619) 696-6700
13 Fax No.: (619) 696-7124

14 Attorneys for Plaintiff Department of Parks and
   Recreation

15

FILED

OCT 1 3 2004

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY_____
        DEPUTY CLERK

16             IN THE UNITED STATES DISTRICT COURT

17             FOR THE EASTERN DISTRICT OF CALIFORNIA

18 | **DEPARTMENT OF PARKS AND** | Case No. 04-CIV-1533 (FDC) JFM
   | **RECREATION FOR THE STATE OF** |
19 | **CALIFORNIA,** | **STATE'S EVIDENTIARY**
   | | **OBJECTIONS TO DECLARATION**
20 |                        Plaintiff, | **OF DIANE POWERS**
21 |            v. | Date:        October 29, 2004
   | | Time:        10:00 a.m.
22 | **BAZAAR DEL MUNDO, INC., a California** | Courtroom:   Dept. 2
   | **corporation, and DOES 1-50, inclusive,** | Judge:       Hon. Frank C.
23 | |              Damrell, Jr.
   |                        Defendant. |
24 |

25        Plaintiff,  Department of Parks and Recreation for the State of California ("State") hereby

26 objects and submits the following objections to the Declaration of Diane Powers filed in support of

27 Defendant Bazaar del Mundo, Inc.'s ("BdM") motion for change of venue.

28 / / /

1.  Page 1, lines 24-28; page 2, lines 1-28; page 3, lines 1-28; page 4, lines 1-3, lines

14-24; page 5, lines 6-10.  Objections: relevancy, lacks foundation, and contains

inadmissible hearsay. Fed. Rules of Evidence, rules 401, 402, 602, 801(c), and 802.

Dated:  October 12, 2004

Respectfully submitted,

BILL LOCKYER
Attorney General of the State of California

TOM GREENE

Chief Assistant Attorney General

MARY HACKENBRACHT
Senior Assistant Attorney General

CAROL A. SQUIRE
Supervising Deputy Attorney General

DAVID H. ROBINSON
Deputy Attorney General

Attorneys for Plaintiff Department of Parks and Recreation

State's Evidentiary Objections to Declaration of Diane Powers       Case No. 04-CV-1533 (FDC) JFM

2

1

## DECLARATION OF SERVICE BY U.S. MAIL

2   **Case Name:**   **Department of Parks and Recreation for the State of California v. Bazaar del**
             **Mundo, Inc., a California corporation, and DOES 1-50, inclusive**

3

    **Case No.:**   **04-CIV-1533 (FDC) JFM**

4

    I declare:

5

    I am employed in the Office of the Attorney General, which is the office of a member of the
6   California State Bar at which member's direction this service is made. I am 18 years of age or older
    and not a party to this matter. I am familiar with the business practice at the Office of the Attorney
7   General for collection and processing of correspondence for mailing with the United States Postal
    Service. In accordance with that practice, correspondence placed in the internal mail collection
8   system at the Office of the Attorney General is deposited with the United States Postal Service that
    same day in the ordinary course of business.

9

    On October 12, 2004, I served the attached **STATE'S EVIDENTIARY OBJECTIONS TO**
10  **DECLARATION OF DIANE POWERS** by placing a true copy thereof enclosed in a sealed
    envelope with postage thereon fully prepaid, in the internal mail collection system at the Office of
11  the Attorney General at 110 West "A" Street, Suite 1100, San Diego, California 92101, addressed
    as follows:

12

13  **CALLIE A. BJURSTROM, ESQ.**
    **MICHELLE A. HERRERA, ESQ.**
14  **LUCE, FORWARD, HAMILTON & SCRIPPS LLP**
    **600 WEST BROADWAY, SUITE 2600**
15  **SAN DIEGO, CA 92101-3391**

16  **RICHARD P. SYBERT, ESQ.**
    **BRETT M. MIDDLETON, ESQ.**
17  **GORDON & REES LLP**
    **101 WEST BROADWAY, SUITE 1600**
18  **SAN DIEGO, CA 92101**

19  I declare under penalty of perjury under the laws of the State of California the foregoing is true and
    correct and that this declaration was executed on October 12, 2004, at San Diego, California.

20

21  **M. CAROLINA SAHELI**

22  _____          _____
          Declarant                              Signature

23

24

25

26

27

28

ORIGINAL



1   BILL LOCKYER
    Attorney General of the State of California
2   TOM GREENE
    Chief Assistant Attorney General
3   MARY HACKENBRACHT
    Senior Assistant Attorney General
4   CAROL A. SQUIRE
    Deputy Attorney General
5   DAVID H. ROBINSON
    Deputy Attorney General
6   State Bar No. 74956
        110 West "A" Street, Suite 1100
7       San Diego, CA 92101
        P.O. Box 85266
8       San Diego, CA 92186-5266
        Telephone: (619) 645-2609
9       Fax: (619) 645-2581

10  RICHARD P. SYBERT, State Bar No. 80731
    BRETT M. MIDDLETON, State Bar No. 199427
11  GORDON & REES, LLP
    101 West Broadway, Suite 1600
12  San Diego, CA 92101
    Telephone No.: (619) 696-6700
13  Fax No.: (619) 696-7124

14  Attorneys for Plaintiff Department of Parks and
    Recreation

15

16          IN THE UNITED STATES DISTRICT COURT

17          FOR THE EASTERN DISTRICT OF CALIFORNIA

18  | DEPARTMENT OF PARKS AND | Case No. 04-CIV-1533 (FDC) JFM |
    | RECREATION FOR THE STATE OF | |
19  | CALIFORNIA, | **DECLARATION OF RON BREAN** |
    | | **IN SUPPORT OF PLAINTIFF** |
20  | Plaintiff, | **DEPARTMENT OF PARKS AND** |
    | | **RECREATION FOR THE STATE** |
21  | v. | **OF CALIFORNIA'S OPPOSITION** |
    | | **TO TRANSFER VENUE** |
22  | **BAZAAR DEL MUNDO, INC., a California** | |
    | **corporation, and DOES 1-50, inclusive,** | Date:       October 29, 2004 |
23  | | Time:       10:00 a.m. |
    | Defendant. | Courtroom:  Dept. 2 |
24  | | Judge:      Hon. Frank C. |
    | | Damrell, Jr. |

25

26      I, Ron Brean, declare as follows:

27      1. I am the Deputy Director for the California Department of Parks and Recreation. My

28  office is located in Sacramento, California. I have personal knowledge of the facts set forth in this

Declaration of Ron Brean                                  Case No. 04-CV-1533 (FDC) JFM

1

1   declaration, and if called upon to do so, could and would testify competently thereto.

2   　　2. This declaration is submitted in support of the State's Opposition to Bazaar del Mundo,

3   Inc's motion to transfer venue to the United States District Court, Southern District of California.

4   　　3. Listed below are the names of individuals that the State intends to call as witnesses in this

5   trademark infringement lawsuit, along with a brief description of the matters to which they will

6   testify.  These named individuals are employees of the California Department of Parks and

7   Recreation ("the Department"), and are located in Sacramento, California:

8   　　　　a.  Mary Helmich.  Ms. Helmich works at the Department's headquarters in

9   Sacramento, California. Ms. Helmich has done interpretive work for the Department for the last 30

10  years, and currently manages the Department's "Old Town Initiative." Ms. Helmich will testify as

11  to the historical use of the two disputed names "Casa de Bandini" and " Casa de Pico."

12  　　　　b.  Donna Pozzi.  Ms. Pozzi is the Chief of the Department's Interpretive and

13  Education Division and works at the Department's headquarters in Sacramento, California. She has

14  worked for the Department for approximately thirty years, and has led a statewide historic

15  preservation campaign. Ms. Pozzi will testify as to the historic nature of the two names and the

16  landmark designation of the Casa de Bandini.

17  　　　　c.  Stephen D. Mikesell. Mr. Mikesell serves as a Deputy State Historic Preservation

18  Officer and is a custodian of records maintaining the records of the California Parks Commission,

19  which designated Casa de Bandini as Historical Landmark No. 72.  Mr. Mikesell works in

20  Sacramento.

21  　　　　d.  Paul Carlson.  Paul Carlson is a Senior Land Surveyor and works at the

22  departments headquarters in Sacramento. Mr. Carlson is also a Custodian of Records and will testify

23  to documents relating to acquisition of the buildings at Old Town San Diego Historic Park.

24  　　4. The interests of justice and the convenience of the State's witnesses would be served by

25  retaining this action in the United States District Court, Eastern District of California because it

26  would be burdensome and inconvenient for the State's witnesses to travel and attend trial in San

27  Diego due to expense of travel to the State, and time away from their place of employment.

28  ///

1    5.  Most, if not all, of the State's documentary evidence, including the acquisition files

2    relating to the creation of Old Town San Diego Historic Park, and records related to the concession

3    agreement between the State and Bazaar del Mundo, Inc., are located in the Eastern District of

4    California.

5         I declare under penalty of perjury under the laws of the State of California that the foregoing

6    is true and correct.  Executed on this ___ day of October, 2004,  at Sacramento, California.

7

8                                           _____

9                                           RON BREAN

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

5. Most, if not all, of the State's documentary evidence, including the acquisition files relating to the creation of Old Town San Diego Historic Park, and records related to the concession agreement between the State and Bazaar del Mundo, Inc., are located in the Eastern District of California.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed on this 12th day of October, 2004, at Sacramento, California.

RON BREAN

DECLARATION OF RON BREAN

3

## DECLARATION OF SERVICE BY U.S. MAIL

**Case Name:**   **Department of Parks and Recreation for the State of California v. Bazaar del Mundo, Inc., a California corporation, and DOES 1-50, inclusive**

**Case No.:**   **04-CIV-1533 (FDC) JFM**

I declare:

I am employed in the Office of the Attorney General, which is the office of a member of the California State Bar at which member's direction this service is made. I am 18 years of age or older and not a party to this matter. I am familiar with the business practice at the Office of the Attorney General for collection and processing of correspondence for mailing with the United States Postal Service. In accordance with that practice, correspondence placed in the internal mail collection system at the Office of the Attorney General is deposited with the United States Postal Service that same day in the ordinary course of business.

On October 12, 2004, I served the attached **DECLARATION OF RON BREAN IN SUPPORT OF PLAINTIFF DEPARTMENT OF PARKS AND RECREATION FOR THE STATE OF CALIFORNIA'S OPPOSITION TO TRANSFER VENUE** by placing a true copy thereof enclosed in a sealed envelope with postage thereon fully prepaid, in the internal mail collection system at the Office of the Attorney General at 110 West "A" Street, Suite 1100, San Diego, California 92101, addressed as follows:

**CALLIE A. BJURSTROM, ESQ.**
**MICHELLE A. HERRERA, ESQ.**
**LUCE, FORWARD, HAMILTON & SCRIPPS LLP**
**600 WEST BROADWAY, SUITE 2600**
**SAN DIEGO, CA 92101-3391**

**RICHARD P. SYBERT, ESQ.**
**BRETT M. MIDDLETON, ESQ.**
**GORDON & REES LLP**
**101 WEST BROADWAY, SUITE 1600**
**SAN DIEGO, CA 92101**

I declare under penalty of perjury under the laws of the State of California the foregoing is true and correct and that this declaration was executed on October 12, 2004, at San Diego, California.

| | |
|---|---|
| **M. CAROLINA SAHELI** | _(signature)_ |
| Declarant | Signature |

ORIGINAL

1  BILL LOCKYER
   Attorney General of the State of California
2  TOM GREENE
   Chief Assistant Attorney General
3  MARY HACKENBRACHT
   Senior Assistant Attorney General
4  CAROL A. SQUIRE
   Deputy Attorney General
5  DAVID H. ROBINSON
   Deputy Attorney General
6  State Bar No. 74956
     110 West "A" Street, Suite 1100
7    San Diego, CA 92101
     P.O. Box 85266
8    San Diego, CA 92186-5266
     Telephone: (619) 645-2609
9    Fax: (619) 645-2581

10 RICHARD P. SYBERT, State Bar No. 80731
   BRETT M. MIDDLETON, State Bar No. 199427
11 GORDON & REES, LLP
   101 West Broadway, Suite 1600
12 San Diego, CA 92101
   Telephone No.: (619) 696-6700
13 Fax No.: (619) 696-7124

14 Attorneys for Plaintiff Department of Parks and
   Recreation

15

16

17

**FILED**

OCT 1 3 2004

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY_____
       DEPUTY CLERK

                IN THE UNITED STATES DISTRICT COURT

                FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| 18 **DEPARTMENT OF PARKS AND RECREATION FOR THE STATE OF CALIFORNIA,** | Case No. 04-CIV-1533 (FDC) JFM |
| 19 | **NOTICE OF LODGMENT OF EXHIBITS IN SUPPORT OF PLAINTIFF DEPARTMENT OF PARKS AND RECREATION FOR THE STATE OF CALIFORNIA'S OPPOSITION TO MOTION TO TRANSFER VENUE** |
| 20 Plaintiff, | |
| 21 v. | |
| 22 **BAZAAR DEL MUNDO, INC., a California corporation, and DOES 1-50, inclusive,** | |
| 23 Defendant. | Date:       October 29, 2004 |
| 24 | Time:       10:00 a.m. |
| 25 | Courtroom:  Dept. 2 |
| | Judge:      Hon. Frank C. Damrell, Jr. |

26         TO DEFENDANT BAZAAR DEL MUNDO, INC., and its attorneys of record:

27  PLEASE TAKE NOTICE that Plaintiff Department of Parks and Recreation for the State of

28  California ("State") hereby lodges true and correct copies of the following exhibits, all of which are

1 | public records, in support of the State's Opposition to the Motion for Transfer of Venue filed by

2 | Defendant.

3 | Exhibit A:  Order Granting Defendant Ruth Coleman's Motion to Dismiss filed March 3,

4 | 2004, in United States District Court, Southern District of California Case No. 03-CV-2284 W(LSP).

5 | Exhibit B:  Order Granting Defendant Delaware North's Motion to Dismiss filed March 3,

6 | 2004, United States District Court, Southern District of California Case No. 03-CV-2284 W(LSP).

7 | Exhibit C:  Decision of Ruth Coleman, incorporating proposed decision of administrative

8 | law judge in OAH Case No.N2003120018.

9 | Dated:  October 12, 2004

10 | Respectfully submitted,

11 | BILL LOCKYER
Attorney General of the State of California

12 | TOM GREENE

13 | Chief Assistant Attorney General

14 | MARY HACKENBRACHT
Senior Assistant Attorney General

15 | CAROL A. SQUIRE
Supervising Deputy Attorney General

16 |

17 |

18 | DAVID H. ROBINSON
Deputy Attorney General

19 | Attorneys for Plaintiff Department of Parks and Recreation

20 |

21 |

22 |

23 |

24 |

25 |

26 |

27 |

28 |

# EXHIBIT "A"

FILED

04 MAR -3  AM 8: 56

CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY: _____  DEPUTY

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BAZAAR DEL MUNDO, INC., | CASE NO: 03-CV-2284 W (LSP) |
| Plaintiff, | |
| v. | **ORDER GRANTING DEFENDANT RUTH COLEMAN'S MOTION TO DISMISS** |
| DELAWARE NORTH COMPANIES PARKS AND RESORTS; RUTH COLEMAN, in her official capacity as the DIRECTOR OF THE DEPARTMENT OF PARKS AND RECREATION FOR THE STATE OF CALIFORNIA, | |
| Defendants. | |

//
//

ER 76

- 1 -

03cv2284w

ENTERED ON 3-3-04

1   Defendant Ruth Coleman ("Defendant"), in her official capacity as Director of
2   the California Department of Parks and Recreation ("DPR") moves to dismiss Plaintiff
3   Bazaar del Mundo's ("Plaintiff") First Amended Complaint under Federal Rule of Civil
4   Procedure ("FRCP") 12(b)(6).   All parties are represented by counsel.   Having
5   considered the parties' papers and applicable law, without oral argument [see Civil
6   Local Rule 7.1(d.1)], the Court **GRANTS** Defendant's motion to dismiss.

7   I.   BACKGROUND

8   For the past 30 years Plaintiff has been the exclusive Old Town State Historic
9   Park concessionaire according to Plaintiff's lease with Defendant.   Both parties agree
10  that the lease recently expired by its own terms, but Plaintiff continues operating its
11  dining and retail establishments as a holdover tenant.   Among other things, Plaintiff
12  allegedly owns a number of federal registered trademarks associated with its Old Town
13  facilities.   Specifically Plaintiff operates two restaurants, Casa de Pico and Casa de
14  Bandini, which operate under the purported trademarks.

15  In early 2003 Defendant requested new operating proposals for any party seeking
16  to operate the Old Town facilities.   Plaintiff and Delaware North submitted competing
17  proposals. On October 17, 2003 Defendant issued a "Notice of Intent to Award" the
18  Old Town concessionaire agreement to Delaware North, a Delaware corporation,
19  rather than to Plaintiff.   Ten days later, Plaintiff protested the bid award, officially
20  commencing the state administrative review process. To date, Plaintiff's administrative
21  bid protest process remains ongoing.

22  On November 19, 2003 Plaintiff filed this federal action against Defendant and
23  Delaware North.   Plaintiff later amended the pleadings to include claims against
24  Defendant for: (1) federal trademark infringement under 15 U.S.C. § 1114; (2) unfair
25  competition under 15 U.S.C. § 1125(a); (3) dilution of trademark under 15 U.S.C.
26  1125(c )(1); (4) declaratory relief based on federal trademark; (7) state unfair
27  competition under CAL. BUS. & PROF. CODE § 17200; and (8) state common law unfair
28  competition.   Defendant now moves to dismiss for failure to state a claim under FRCP

1   12(b)(6).

2   **II.**   **LEGAL STANDARD**

3   A motion to dismiss under Rule 12(b)(6) tests the complaint's sufficiency. <u>See</u>

4 <u>North Star Int'l. v. Arizona Corp. Comm'n.</u>, 720 F.2d 578, 581 (9th Cir. 1983).

5 Dismissal of a claim according to this rule is appropriate only where it "appears beyond

6 doubt that the plaintiff can prove no set of facts in support of his claim which would

7 entitle him to relief." <u>Levine v. Diamanthuset, Inc.</u>, 950 F.2d 1478, 1482 (9th Cir.

8 1991) (<u>quoting</u> <u>Conley v. Gibson</u>, 355 U.S. 41, 45-46 (1957)).

9   A complaint may be dismissed as a matter of law for two reasons: (1) lack of a

10 cognizable legal theory, or (2) insufficient facts under a cognizable theory. <u>Robertson</u>

11 <u>v. Dean Witter Reynolds, Inc.</u>, 749 F.2d 530, 534 (9th Cir. 1984). In reviewing a

12 motion to dismiss under Rule 12(b)(6), the court must assume the truth of all factual

13 allegations and must construe them in the light most favorable to the nonmoving party.

14 <u>Gompper v. VISX, Inc.</u>, 298 F.3d 893, 895 (9th Cir. 2002). The complaint and all

15 reasonable inferences therefrom are construed in the plaintiff's favor. <u>Walleri v. Fed.</u>

16 <u>Home Loan Bank of Seattle</u>, 83 F.3d 1575, 1580 (9th Cir. 1996). The court must bear

17 in mind that the Federal Rules, in adopting notice pleading, have rejected the more

18 rigorous requirements used before the Rules' adoption. <u>See</u> <u>Swierkiewicz v. Sorema,</u>

19 <u>N.A.</u>, 534 U.S. 506, 512 (2002).

20   **III.**   **DISCUSSION**

21   **A.**   **PLAINTIFF'S FEDERAL TRADEMARK CLAIMS ARE NOT RIPE FOR ADJUDICATION**

22 Plaintiff's First Amended Complaint alleges that Defendant violated Plaintiff's

23 federal trademark rights by using the names Casa de Pico and Casa de Bandini in its

24 concessionaire operating proposal. Defendant counters that Plaintiff's trademark claims

25 are not ripe for adjudication because (1) the state administrative proceedings are not

26 finalized; and (2) the alleged trademark infringement has not yet been used in

27 commerce.

28

03cv2284w

**ER 78**

1    The Ripeness Doctrine prevents premature adjudication and is directed at cases
2 that do not yet have a concrete impact upon the parties. Thomas v. Union Carbide
3 Agricultural Prod. Co., 473 U.S. 568, 580 (1985). "[I]ts basic rationale is to prevent
4 the courts, through premature adjudication, from entangling themselves in abstract
5 disagreements." Abbott Laboratories v. Gardner, 387 U.S. 136, 148 (1967). "A federal
6 court normally ought not resolve issues 'involv[ing] contingent future events that may
7 not occur as anticipated, or indeed may not occur at all.'" Clinton v. Acequia, Inc., 94
8 F.3d 568, 572 (9th Cir. 1996) (quoting Thomas, 473 U.S. at 580-81). "In the absence
9 of an immediate and certain injury to a party, a dispute has not 'matured sufficiently to
10 warrant judicial intervention.'"  Id. (quoting Warth v. Seldin, 422 U.S. 490, 499
11 (1975)).

12    In this case, Defendant argues that Plaintiff's claims are unripe for adjudication
13 because the state administrative proceedings are not concluded.

14    The Court agrees.

15    After Defendant elected to decline Plaintiff's Old Town operating proposal,
16 Plaintiff initiated a separate state administrative protest which raises the same
17 trademark issues at issue in this federal action. All parties agree that the administrative
18 review process has not concluded.  Meanwhile, Plaintiff continues operating its Old
19 Town facilities, as Plaintiff has done for the past 30 years.

20    When the state administrative appeal process comes to an end, the
21 administrative law judge will likely issue a recommendation, which Defendant may then
22 accept or reject. While this Court makes no prediction regarding which party may
23 ultimately prevail within the state administrative review–the outcome remains
24 unknown and subject to change at any time. Either party presently before this Court
25 may prevail in the state administrative proceeding.  Hence, whether Plaintiff suffers
26 actual injury depends on contingent future events, namely the administrative law
27 judge's final ruling and Defendant's election to accept or reject that ruling.  Because
28 Plaintiff has not yet suffered an immediate and certain injury, Plaintiff's claims are

1  unripe for adjudication before this Court.

2      Plaintiff's federal trademark claims are also unripe for adjudication because

3  Defendant has not used the allegedly trademarked names *in commerce*. Under federal

4  law, trademark infringement occurs only when the trademark is used *in commerce*

5  without consent from the trademark's registered owner.   See 15 U.S.C. §

6  1114(1)(a) (emphasis supplied). Presently, Plaintiff operates its Old Town facilities just

7  as it always has, continuing to rely on its alleged trademarks. Indeed, nothing has

8  materially changed since Defendant first issued its "Notice of Intent to Award" the

9  concessionaire rights to Delaware North. Any future use of the purported trademarked

10  names *in commerce* by Defendant, Delaware North, or any other entity is purely

11  speculative at this point in time. As a result, Plaintiff's federal trademark infringement

12  claims are unripe for adjudication. Plaintiff's trademark infringement claims can

13  become ripe only when a new restaurant commences operations using the purportedly

14  trademarked names without consent.

15

16      B.   PLAINTIFF'S FEDERAL TRADEMARK CLAIMS
              ARE BARRED BY THE ELEVENTH AMENDMENT

17      The Court additionally finds that Plaintiff's claims are barred by sovereign

18  immunity. It is well settled that a suit against a state or one of its agencies is barred by

19  the Eleventh Amendment. Regents of University of California v. Doe, 519 U.S. 425,

20  429-30 (1997); Pennhurst State School & Hospital v. Halderman, 465 U.S. 89, 100

21  ((1984). The Eleventh Amendment not only bars suits when the states themselves are

22  named as defendants, it also bars suits against individual defendants who are sued in

23  their official capacity. Kentucky v. Graham, 473 U.S. 159, 166 (1985). Furthermore,

24  despite some past confusion regarding trademark claims against states in light of the

25  Trademark Remedy Clarification Act, Pub. L. 102-542, 106 Stat. 3567, it is now clear

26  that a trademark owner cannot sue a state for trademark infringement in either federal

27  or state court. See Idaho Potato Com'n v. M&M Produce Farms & Sales, 95 F. Supp.

28  2d 150 (S.D.N.Y. 2000); 4 J. Thomas McCarthy, McCarthy on Trademarks and Unfair

-5-

03cv2284w

1 | Competition § 25:66 (4th ed. 2003).

2 |     Here, Plaintiff has sued Defendant Ruth Coleman in her official capacity as
3 | Director of the California Department of Parks and Recreation.  Under the Eleventh
4 | Amendment, the State of California and its agencies are immune from suit brought by
5 | their own citizens in federal court. <u>California</u>, 519 U.S. at 429; <u>Pennhurst</u>, 465 U.S. at
6 | 100.  Because this action is essentially a suit against the State of California, the
7 | Eleventh Amendment bars Plaintiff's claims against Defendant DPR as a matter of law.

8 |     Plaintiff next argues that because it seeks injunctive relief, Defendant cannot
9 | claim Eleventh Amendment immunity.  The Court disagrees.

10 |     Under the <u>Ex parte Young</u> doctrine, the Eleventh Amendment does not bar a
11 | suit for injunctive relief against a state officer.  <u>Ex parte Young</u>, 209 U.S. 123 (1908).
12 | However, in this case there is nothing to enjoin.  As already discussed, trademark
13 | infringement under the Lanham Act occurs only when the trademark is used *in*
14 | *commerce* without the trademark owner's consent.   In this case, the allegedly
15 | trademarked names are not being used *in commerce* without Plaintiff's consent because
16 | Plaintiff continues to operate its very own Old Town facilities.  It is well-settled that
17 | injunctive relief is not appropriate where the alleged infringement is a mere possibility.
18 | <u>Lang v. Pacific Marine & Supply Co.</u>, 895 F.2d 761, 765-66(Fed. Cir. 1990).  Hence,
19 | despite the fact that Plaintiff merely prays for injunctive relief, the Eleventh
20 | Amendment nonetheless bars Plaintiff's claims.

21 |     C.    <u>PLAINTIFF'S SUIT IS AN IMPROPER ATTEMPT TO</u>
22 |             <u>SPLIT THE CAUSE OF ACTION</u>

23 |     Finally, the Court notes that by filing this lawsuit Plaintiff improperly attempts
24 | to split the cause of action into two separate judicial proceedings.  It is well established
25 | that the law does not allow the a cause of action's owner to divide or split that cause
26 | so as to make it the subject of several different actions. <u>Mendez v. Bowie</u>, 118 F.2d 435
27 | (1st Cir. 1941).  Here, Plaintiff filed its separate administrative protest, commencing
28 | internal state review.  By later filing this separate federal case, Plaintiff endeavors to

03cv2284w

split the cause of action arising from the same set of facts: Defendant DPR's election to award Delaware North the concessionaire agreement.  Hence, Plaintiff's current action is barred as an improper attempt to litigate the same rights before two separate tribunals.

D.     THE COURT DECLINES SUPPLEMENTAL JURISDICTION TO CONSIDER PLAINTIFF'S STATE LAW CLAIMS BECAUSE THE FEDERAL CLAIMS ARE BARRED

Having dismissed all federal claims against Defendant DPR, the Court declines to exercise supplemental jurisdiction over Plaintiff's two remaining state law claims. Where the district court has original jurisdiction, the district court has supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy.  28 U.S.C § 1367.  Here, because Plaintiff's anchoring federal claims are barred as a matter of law, this Court lacks supplemental jurisdiction over the remaining two state law claims. United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726 (1966); Executive Software North America, Inc. v. U.S. Dist. Court, 24 F.3d 1545, 1556-57 (9th Cir. 1994).  Those claims are therefore dismissed without prejudice to Plaintiff pursuing such claims in a more appropriate judicial forum.

//

//

03cv2284w

IV.   CONCLUSION AND ORDER

In light of the foregoing, the Court **GRANTS** Defendant's motion to dismiss. (Doc. No. 4).  The Court **DISMISSES** all claims against Defendant Ruth Coleman in her official capacity as Director of the California Department of Parks and Recreation.

**IT IS SO ORDERED.**

DATE: March 2, 2004

_____
HON. THOMAS J. WHELAN
United States District Court
Southern District of California

CC:   All parties and Counsel of Record

- 8 -

03cv2284w

# EXHIBIT "B"



FILED

MAR 3 2004

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

BAZAAR DEL MUNDO, INC.,

                Plaintiff,

      v.

DELAWARE NORTH COMPANIES
PARKS AND RESORTS; RUTH
COLEMAN, in her official capacity as
the DIRECTOR OF THE
DEPARTMENT OF PARKS AND
RECREATION FOR THE STATE
OF CALIFORNIA,

                Defendants.

CASE NO: 03-CV-2284 W (LSP)

ORDER GRANTING
DEFENDANT
DELAWARE
NORTH'S MOTION
TO DISMISS

//
//
//

- 1 -

03cv2284w

1    Defendant Delaware North("Defendant"), a Delaware corporation, moves to
2   dismiss Plaintiff Bazaar del Mundo's ("Plaintiff") First Amended Complaint under
3   Federal Rule of Civil Procedure ("FRCP") 12(b)(6).  All parties are represented by
4   counsel.  Having considered the parties' papers and applicable law, without oral
5   argument [see Civil Local Rule 7.1(d.1)], the Court GRANTS Defendant's motion to
6   dismiss.

7        I.    BACKGROUND
8        For the past 30 years Plaintiff has been the exclusive Old Town State Historic
9   Park concessionaire according to Plaintiff's lease with Defendant California Department
10  of Parks and Recreation ("DPR").   All parties agree that the lease recently expired by
11  its own terms, but Plaintiff continues operating its dining and retail establishments as
12  a holdover tenant.  Among other things, Plaintiff allegedly owns a number of federal
13  registered trademarks associated with its Old Town facilities.  Specifically Plaintiff
14  operates two restaurants, Casa de Pico and Casa de Bandini, which operate under the
15  purported trademarks.

16       In early 2003 Defendant requested new operating proposals for any party seeking
17  to operate the Old Town facilities.  Plaintiff and Defendant submitted competing
18  proposals.  On October 17, 2003 DPR issued a "Notice of Intent to Award" the Old
19  Town concessionaire agreement to Defendant rather than to Plaintiff.  Ten days later,
20  Plaintiff protested the bid award, officially commencing the state administrative review
21  process.  To date, Plaintiff's administrative bid protest process remains ongoing.

22       On November 19, 2003 Plaintiff filed this federal action against Defendants
23  Delaware North and DPR.  Plaintiff later amended the pleadings to include claims for:
24  (1) federal trademark infringement under 15 U.S.C. § 1114;  (2)  unfair competition
25  under 15 U.S.C. § 1125(a); (3) dilution of trademark under 15 U.S.C. 1125©)(1); (4)
26  declaratory relief based on federal trademark; (7) state unfair competition under CAL.
27  BUS. & PROF. CODE § 17200; and (8) state common law unfair competition.  Defendant
28  Delaware North now moves to dismiss for failure to state a claim under FRCP 12(b)(6).

**II.    LEGAL STANDARD**

A motion to dismiss under Rule 12(b)(6) tests the complaint's sufficiency. See North Star Int'l. v. Arizona Corp. Comm'n., 720 F.2d 578, 581 (9th Cir. 1983). Dismissal of a claim according to this rule is appropriate only where it "appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Levine v. Diamanthuset, Inc., 950 F.2d 1478, 1482 (9th Cir. 1991) (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)).

A complaint may be dismissed as a matter of law for two reasons: (1) lack of a cognizable legal theory, or (2) insufficient facts under a cognizable theory. Robertson v. Dean Witter Reynolds, Inc., 749 F.2d 530, 534 (9th Cir. 1984). In reviewing a motion to dismiss under Rule 12(b)(6), the court must assume the truth of all factual allegations and must construe them in the light most favorable to the nonmoving party. Gompper v. VISX, Inc., 298 F.3d 893, 895 (9th Cir. 2002). The complaint and all reasonable inferences therefrom are construed in the plaintiff's favor. Walleri v. Fed. Home Loan Bank of Seattle, 83 F.3d 1575, 1580 (9th Cir. 1996). The court must bear in mind that the Federal Rules, in adopting notice pleading, have rejected the more rigorous requirements used before the Rules' adoption. See Swierkiewicz v. Sorema, N.A., 534 U.S. 506, 512 (2002).

**III.    DISCUSSION**

As an initial matter, the Court finds this action is not yet ripe for adjudication against Defendant Delaware North for the same reasons stated by the Court in its order dated March 2, 2004. The Court incorporates its ripeness discussion here by reference. However, that does not necessarily end the Court's inquiry. The Court additionally finds Defendant Delaware North can secure dismissal because Plaintiff has failed to exhaust its administrative remedies.

A case may be dismissed without prejudice under FRCP 12(b)(6) when Plaintiff fails to exhaust its administrative remedies. Whitehead v. Zurich Am. Ins. Co., 348 F.3d 478, 480-81 (5 th Cir. 2003). "Under normal circumstances, a party must exhaust

ER 86

03cv2284w

1  its [administrative] remedies before it can obtain judicial review of an agency decision."

2  United Farm Workers of Am. v. Arizona Agric. Employment Relations Board, 669 F.2d

3  1249, 1253 (9th Cir. 1982) (citation omitted). The exhaustion doctrine "provides that

4  no one is entitled to judicial relief for a *supposed or threatened injury* until the prescribed

5  administrative remedy has been exhausted." McKart v. United States, 395 U.S. 185,

6  193 (1969). The exhaustion doctrine's purpose is to allow the administrative agency

7  to exercise its expertise over the subject matter, thus avoiding unnecessary or

8  premature judicial intervention into the administrative process. Weinberger v. Salfi,

9  422 U.S. 749, 765 (1975).

10        Here, it is undisputed that Plaintiff has initiated an administrative challenge to

11  DPR's decision to award the Old Town concession to Defendant Delaware North. The

12  California Legislature has specifically granted DPR the powers and duties to award state

13  park concessions. CAL. PUB. RES. CODE § 5080.02 et. seq. Hence, the administrative

14  proceedings are the proper forum to determine the validity of DPR's decision. To

15  consider this lawsuit now, the Court would be unnecessarily intervening in the

16  administrative process.

17        In addition, Plaintiff is not entitled to judicial relief for its "supposed or

18  threatened injury" until the state administrative proceedings have concluded.

19  Presently, Plaintiff has not suffered a definite injury because Plaintiff continues to

20  operate its Old Town facilities just as it has in the past. As already stated by the Court

21  in its March 2, 2004 order, whether Plaintiff suffers an actual injury depends on

22  contingent future events, namely the administrative law judge's final ruling and DPR's

23  election to accept or reject that ruling. Because Plaintiff has failed to exhaust its

24  administrative remedies and has not suffered an immediate and certain injury, the

25  Court must dismiss Plaintiff's First Amended Complaint.

26

27

28

03cv2284w

## IV.   CONCLUSION AND ORDER

In light of the foregoing, the Court **GRANTS** Defendant's *motion to dismiss.* (Doc. No. 7).  The Court **DISMISSES** without prejudice all claims against Delaware North.  Seeing that no other active claims or parties remain in this litigation, all pending motions are **DENIED** as moot.  The Clerk of Court shall close the district court case file.

**IT IS SO ORDERED.**

DATE: March 3, 2004

_____
HON. THOMAS J. WHELAN
United States District Court
Southern District of California

CC:   All parties and Counsel of Record

- 5 -

03cv2284w

AO 450 Judgment in a Civil Case

# United States District Court

## SOUTHERN DISTRICT OF CALIFORNIA

**FILED**
MAR 4 - 2004
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY

Bazaar Del Mundo, Inc

**v.**

Delaware North Companies Parks and Resorts; Ruth
Coleman, in her official capacity as the Director of
the Department of Parks and Recreation for the State
of California

**JUDGMENT IN A CIVIL CASE**

**CASE NUMBER:**     03cv2284-W (LSP)

☐ **Jury Verdict.** This action came before the Court for a trial by jury. The issues have been tried and the jury has rendered its verdict.

☒ **Decision by Court.** This action came to trial or hearing before the Court. The issues have been tried or heard and a decision has been rendered.

IT IS ORDERED AND ADJUDGED that the Court Grants Defendant Delaware North's motion to dismiss. The Court Dismisses without prejudice all claims against Delaware North. Seeing that no other active claims or parties remain in this litigation, all pending motions are denied as moot. The Clerk of Court shall close the district court case file...........................................................................................................................................................................................

March 4, 2004
Date

W. Samuel Hamrick, Jr.
Clerk

C. Gobbi
(By) Deputy Clerk

ENTERED ON March 4, 2004

21

ER 89

# EXHIBIT "C"

BEFORE THE
DEPARTMENT OF PARKS AND RECREATION
STATE OF CALIFORNIA

| | |
|---|---|
| In the Matter of the Statement of Issues (Protest) of :<br><br>BAZAAR DEL MUNDO, INC. and OLD TOWN SAN DIEGO CHAMBER OF COMMERCE<br><br>                    Protestants,<br><br>   v.<br><br>CALIFORNIA DEPARTMENT OF PARKS AND RECREATION<br><br>                    Respondent,<br><br>   And<br><br>DELAWARE NORTH COMPANY PARKS AND RESORTS, INC.<br><br>                Real Party in Interest. | OAH No. N2003120018 |

**DECISION**

The attached Proposed Decision of the Administrative Law Judge is hereby

adopted by the Department of Parks and Recreation as its Decision in the above-entitled

matter.

This Decision shall become effective on _____ July 23, 2004 _____.

IT IS SO ORDERED _____.

_Ruth Coleman_

OAH 15 (Rev. 6/84)

BEFORE THE
DEPARTMENT OF PARKS AND RECREATION
STATE OF CALIFORNIA

| | |
|---|---|
| In the Matter of the Statement of Issues (Protest) of : | |
| | |
| BAZAAR DEL MUNDO, INC. and OLD TOWN SAN DIEGO CHAMBER OF COMMERCE | OAH No. N2003120018 |
| Protestants, | |
| | |
| v. | |
| | |
| CALIFORNIA DEPARTMENT OF PARKS AND RECREATION | |
| Respondent, | |
| | |
| And | |
| | |
| DELAWARE NORTH COMPANY PARKS AND RESORTS, INC. | |
| | |
| Real Party in Interest. | |

## PROPOSED DECISION

Karl S. Engeman, Administrative Law Judge, Office of Administrative Hearings, heard this matter on May 17 through 20, 2004, in Sacramento, California.

Robert G. Steiner, Attorney at Law, represented protestant Bazaar Del Mundo, Inc. (protestant). Protestant Old Town San Diego Chamber of Commerce (protestant Chamber) appeared for part of the administrative hearing through its President Fred N. Grand. [1]

Deborah L. Barnes, and Caryn L. Craig, Deputies Attorney General, represented respondent Department of Parks and Recreation (Department).

---

[1] The Chamber of Commerce did not actively participate in the administrative hearing and did not submit separate briefs on any of the legal issues.

1

David Elson and Randall W. Keen, Attorneys at Law, represented real party in interest Delaware North Companies Parks & Resorts, Inc. (awardee).

Evidence was received and the record left open for simultaneous opening and reply briefs. The opening briefs were received on or before June 7, 2004. Response briefs were received on or before June 21, 2004. All of the briefs were added to exhibit 172, a common exhibit which includes the parties' previously submitted written argument. The matter was submitted on June 21, 2004.

## FACTUAL FINDINGS

### *BACKGROUND FACTS*

1.     This dispute involves the Department's award of a concession contract for the Mexican Commercial Corner, El Opal Restaurant, and the Casa de Bandini/Cosmopolitan Hotel properties within Old Town San Diego Historic State Park, a park which is owned and operated by the Department. The concession currently operates four restaurants and sixteen retail shops. Protestant has operated the concession since 1971 pursuant to a written concession contract which has been amended and renewed several times. The most recent contract expired in 2001 and protestant has been a hold over tenant on a month to month lease since then.

2.     In anticipation of the expiration of the most recent concession contract, the Department began work on a request for proposals (RFP) in the late 1990's. The term of the new contract is ten years. The contract terms and the Department's goals and objectives for the concession are outlined in the RFP, issued March 13, 2003. The general intent of the concession is to:

> [Create] a vibrant and historically authentic high-quality, reasonably priced shopping and dining experience for the visitor that supports the department's obligation and efforts to preserve and interpret the rich cultural history of Old Town San Diego State Historic Park, and provide reasonable financial compensation to the State of California, Department of Parks and Recreation.

3.     Eligible proposers were required to submit a proposal bond and a proposal that included information regarding the proposer's identification, background, financial capability, financial references, credit history, business references, individual biographical backgrounds, concession operation plan, facility improvement plan, interpretive plan, the proposed rent to be paid, project feasibility by documentation, proposal verifications, required certifications, signatures and appropriate supplemental information. Four bidders submitted proposals by the August 18, 2003, deadline: protestant Bazaar del Mundo, Inc.; Creative Host Services, Inc.; awardee Delaware North Companies Parks & Resorts, Inc.; and Premier/Levy Joint Venture. The proposals at issue in this proceeding are those submitted by protestant and awardee.

2

4. The Department reviewed and evaluated the four proposals. Department assigned staff specialists to review the interpretive plan, facility improvement, and financial components of each proposal and to prepare reports reflecting the reviews. An independent outside expert was retained to review the feasibility of the financial proposals. The Director (Director) of the Department appointed three persons to a Concession Contract Award Board (Award Board) to review, evaluate and rate the proposals and to make a recommendation to the Director regarding the selection of the "Best Responsible Bidder."

5. On October 3, 2003, the Award Board met to evaluate and rate the proposals pursuant to the specified criteria in the RFP. The Award Board determined that awardee's proposal met all of the requirements of the RFP and qualified awardee as "The Best Responsible Proposer" under Public Resources Code section 5080.23. The Award Board recommended that the Department award the concession contract to awardee and the Director accepted that recommendation on October 3, 2003.

6. The Director issued "Notice of Intent to Award" letters on October 17, 2003. Protestant Chamber filed its protest petition on or about October 24, 2003, and protestant filed its protest on or about October 27, 2003. Protestant listed seven separate grounds which included violations of applicable law and due process[2], the allocation of too few points for protestant's incumbency, the infeasibility of awardee's proposal, incorrect scoring of protestant's and awardee's respective proposals, and bias. Protestant later alleged that awardee's submission of more detailed drawings than those required by the RFP was a material deviation from the RFP. An examination of the RFP structure, the qualifications of the evaluators, the materials solicited and relied upon, and the assignment of points based on the RFP criteria supported none of protestant's grounds for protest.

### EVALUATORS' QUALIFICATIONS

7. Department staff specialists Karen Beery, Mary Helmich and Joe Vasquez were selected to evaluate the Interpretive Plan elements in each of the four proposals. The first panel member was Karen Beery, who works in the Department's Southern Service Center in San Diego. She has over twenty years of experience in cultural, historic and natural history interpretation with the Department. Ms. Beery has more than fourteen years of experience with park planning and interpretive training, and served as the District Interpretive Coordinator for Hearst Simeon State Historic Monument, another state historic park, for approximately ten years.

8. Mary Helmich, the second panel member, works at the Department's headquarters in Sacramento, California. Helmich has done interpretive work for more than thirty years for the Department and currently manages the Department's "Old Town Initiative." She has authored or co-authored several of the historical treatises used as

---

[2] This ground dealt with the short timelines associated with the process and was abandoned by protestant during the administrative hearing.

resource material in the RFP. Helmich also co-authored the two-volume Interpretive Program for Old Town San Diego Historic Park.

9.     Jose Vasquez, the third panel member, is a District Interpretive Specialist with the Department's San Diego Coast District. Vasquez worked as a ranger at the Old Town San Diego Historic Park for seven years, and acted as that park's interpretive coordinator for three years. Vasquez has sixteen years interpretive training experience and has been involved with the development of several plans and reports relating to the Old Town San Diego State Historic Park.

10.    Department assigned Supervising Architect David Bailey to review and evaluate the Facility Improvement Plan (FIP) portion of each proposal. Bailey was asked to consider whether each proposed FIP met the minimum requirements outlined in the RFP, whether the proposed changes were acceptable for Old Town San Diego Historic Park, and whether the proposed plan met Americans with Disabilities Act requirements outlined in the RFP. Bailey has worked as an architect with Department for approximately 30 years. During the last twenty-five years, he managed and inspected the construction of many of the repair and restoration projects at most of the historic structures in Old Town San Diego State Historic Park. Bailey worked briefly for the Office of the State Historic Preservation Office and for approximately fifteen years provided training for the National Park System and other local and state agencies in preservation of historic structures.

11.    The Department's Audits Office, under the direction of Office Chief Richard Wong, evaluated the four proposers' ability to finance and operate their proposed projects. Each proposer had to demonstrate access to a minimum of $500,000.00 in funding for the facility, the financial means to fund the required construction and operational startup costs, and the working capital necessary to finance and operate the project as proposed. Wong has approximately twenty-seven years of auditing experience. Wong directs the Department's independent auditing program for its 288 concession operations. He also oversees limited reviews of the financial information required by RFPs.

12.    The three Award Board members were Donna Pozzi, Dr. Mark Schrader, and Kirk Sturm. Pozzi is the Chief of the Department's Interpretive and Education Division. She is responsible for the overall direction, policy formulation and development, program management and coordination of interpretive and educational services for the Department. Pozzi has worked for the Department for approximately thirty years. She has studied in the area of interpretation for more than seventeen years and has trained many others in interpretation. Pozzi has led a statewide historic preservation campaign and has testified before the legislature on that subject. She is a member of the Department's Park Operations Policy Group. She supervises seventeen employees in three counties responsible for visitor education and interpretive services. Pozzi has been awarded Park Operations Division Chief of the Year, the California Council for the Promotion of History's Award of Distinction and the Governor's Historic Preservation Award.

4

13.     The second Award Board member, Dr. Mark Schrader, is the Deputy Director of Acquisition and Development. Schrader holds Bachelor and Masters degrees in architecture, and Masters and Ph.D. degrees in business administration. Schrader has extensive national and international facility, real estate and construction management experience. He is a registered architect in California, Nevada and Arizona and is a California licensed contractor. Schrader served as a member of the Comstock Historic Preservation District Commission and performed architectural work on a number of restoration projects for historic structures and sites. He has experience evaluating restaurant and retail proposals in the private and public sectors.

14.     The third Award Board member, Kirk Sturm, is the Division Chief for Park Operations, Northern Division. Sturm's responsibilities include the establishment of operating procedures and management of all Northern Division programs for park operations relating to public service, interpretation, resources and public protection, preservation of natural, historical and cultural resources, concessions, business management, safety and enforcement, facility and equipment management and aquatic safety. Sturm served as Superintendent and later Director of Hearst San Simeon State Historic Monument, another historic park.

15.     The Department retained Thomas Feeney of Williams-Kuebelbeck & Associates (WKA) as the independent outside consultant to conduct the economic feasibility assessment. Feeney holds a Bachelor degree in economics, a Masters degree in development economics from Catholic University in Washington, D.C., and a Masters in Business Administration degree from Stanford University with an emphasis in finance. WKA is a consulting firm specializing in the economic, financial and management aspects of commercial recreation developments on government owned land. Feeney has performed over 250 assignments of which approximately 60 percent were for public agencies. These included projects for the City of Anchorage and the San Diego Unified Port District. He is currently the project manager for the anticipated development adjacent to the University of California's proposed Merced campus. Feeney has performed approximately twenty evaluations similar to this project.

## *EVALUATION OF AWARDEE'S AND PROTESTANT'S PROPOSALS*

16.     The Award Board evaluated all of the proposals using the RFP criteria consisting of five levels. Level I (Compliance with RFP Requirements), Level II (Rent Proposed/Credit Worthiness And Ability To Finance), Level V (Project Feasibility) were rated as either "pass" or "disqualified." Level III (Proposal Evaluation) and Level V (Rent Offer) were rated with a numeric score. The materials considered were the RFP, including addenda and errata, the questions submitted by proposers and answers to those questions by the Department, the proposals, and background and reference materials obtained by the Department through the RFP process. The material reviewed also included staff specialist and consultant reports on each of the proposal's development and interpretation plans as well as financial feasibility.

17.    The Award Board met in Sacramento on October 3, 2003, to evaluate and score all of the proposals in the order listed in the RFP.  For each category, the Award Board reviewed and discussed the criteria prior to scoring.  Then, the Award Board discussed and evaluated the proposals and how each met the criteria and how well each responded to instructions in the RFP.  Scores were the product of Award Board members' consensus.  The Award Board's scored the proposals as follows:[3]:  Awardee received 82.6 points, protestant received 56.03 points, Premier/Levy Joint Venture received 40 points, and Creative Host Services, Inc. received 36 points.  The specifics for the parties are discussed below.

18.    Awardee and protestant each received "pass" scores for Level I, Compliance with RFP Requirements.  This was based on the Award Board's conclusion that each contained all of the required documents and information required by the RFP.

19.    Under Level II, Rent Proposed/Credit Worthiness & Ability to Finance, awardee and protestant each received a "pass" score for each of the four subcategories.  These were minimum rent proposed, credit worthiness, ability to finance and compliance with the National Labor Relations Act.[4]

20.    Level III, Proposal Evaluation, was divided into six subcategories: experience and capability/quality of experience, operation plan, facility improvement plan, interpretive plan, small business factor and incumbency.  Each subcategory had an assigned maximum number of points.

21.    Experience and Capability were worth a maximum of 15 points.  Both awardee and protestant received 15 points.  The Award Board's Summary includes brief comments for each of the subcategories relating to each of the proposers.  In this subcategory, the Award Board noted, regarding awardee:

> The Board reviewed the entire proposal and noted in particular the materials provided in the individual information and Appendix sections of the proposal. For example, the Board cited Proposer's extensive experience working with public agencies at Yosemite National Park, Asilomar State Beach Conference Grounds, NASA Space Center, Yellowstone National Park and Niagra Falls State Historic Park (supported by documentation from those agencies) in a wide variety of venues that translated to a broad experience in park, cultural, and historic business operations in areas with high visitation (for example see Section IV-8, Page 159-Operation Plan, and Appendix).  Proposer provided case studies of their other operations documenting their ability to implement business plans as committed to in the proposal. (Parentheses original).

---

[3] The maximum points available were 100.
[4] The other two proposers received "pass" scores as well.

22.    The Award Board noted the following about protestant's qualifications in this subcategory:

>   The Board reviewed the entire proposal and noted in particular the resumes
>   provided, complimentary letters, annual evaluation reports and 30 years
>   documented experience (IV-38 and 401) as the incumbent. The Board noted
>   the RFP sought an increased interpretive focus for the business and Proposer's
>   prior experience did not address the new requirements. However, given
>   Proposer's years of success operating the prior concession at the same
>   location, the Board felt it was appropriate to award the full points possible in
>   this category. (Parentheses original).

23.    Operation Plan was worth a maximum of 20 points. Awardee received 19 points and protestant received 10 points. The Award Board noted, regarding awardee's proposal, that:

>   The overall plan was original, very creative and responsive to the identified
>   RFP requirements. The plan connected each of the various elements and
>   addressed how all phases of the operation would be implemented in a manner
>   that supported the goals and objectives of the RFP. The Proposer provided
>   documentation and case studies of their other existing operations, supporting
>   their ability to implement business plans as committed by the proposal.
>
>   The Board felt that the plan exceeded the requirements of the RFP in several
>   ways including but not limited to:
>
>   Employee training-'Employee of choice'
>
>   Customer Service-'Legendary Service Leadership Program'
>
>   Environmental-'Green Path' plan, as used in their other business operations.
>
>   Marketing and Advertising-An actual plan for the businesses with a clear
>   commitment to implement.
>
>   The Board felt that the Transition Plan was adequate but could have used
>   additional detail.

24.    The Award Board noted, regarding protestant's Operation Plan, that:

>   The Board felt the overall plan included the minimum required
>   elements as stated in the RFP and that staffing levels and most other
>   items appeared sufficient for the operation as proposed. The Board
>   also recognized the awards received for past performance. However,

the Board noted the plan stated that the operation was modeled on
Saturday markets outside of Mexico City, instead of replicating an
environment and experience that supported the interpretive goals and
objectives of the RFP. The Board expressed concern that the overall
plan did not demonstrate an understanding of the State's objectives as
stated in the RFP. For example, the operation plan did not articulate a
new proposed operation consistent with the RFP. See proposal
including, but not limited to, pages IV-173, 193, and 203-204. The
Board noted that, among other things, the proposed employee training
was limited and the marketing plan described lacked detail and a
commitment to implement consistent with the goals of the RFP. The
Board concluded that while the proposal documented the continuance
of the existing operation with some improvements, overall the plan did
not sufficiently further the goals and objectives set out in the RFP.

25.    The third subcategory within Level III was Facility Improvement Plan worth a
maximum of 15 points. Awardee received 15 points and protestant received 8 points. The
Award Board commented, regarding awardee's proposal, that:

The Board determined that the plan exceeded RFP requirements and
that it was supportive of goals and objectives of the RFP. The plan
both related to and supported the interpretive plan. The Board noted
that the proposal provided details for proposed improvements with
respect to each specific area, with floor plans and renderings to
demonstrate what was being proposed in each case. The plan was well
thought out and offered new, creative thinking. For example, the Board
liked the proposed ideas of restoring the Casa de Bandini second story,
and creating the Interpretive Center. The Board noted that although the
landscape plan did include some non-historic plantings, overall it
improved the visitor experience by creating a more historic
environment. Cost estimate provides appropriate level of detail.

26.    The Award Board commented about protestant's Facility Improvement Plan,
that:

Although the staff report rated this plan as only acceptable, upon
review of the proposal, the Board felt that the plan offered a higher
value that the acceptable rating given to two other proposers. The
Board commented that the plan met the minimum requirements stated
in the RFP and provided detailed plans for what it would accomplish.
However, the plan did not offer sufficiently creative or innovative
plans. The Board cited IV-227 as an example. The Board felt that the
FIP focused on minimum required facility maintenance activities
instead of creative facility improvements as needed to accomplish the
goals of the RFP.

8

27.    The Interpretive Plan subcategory was worth a maximum 20 points.  Awardee received 20 points and protestant received 12 points.  The Award Board noted, regarding awardee's proposal in this area, that:

> The Board determined that the plan demonstrated full understanding of interpretation, the three distinct interpretive periods of the OTSDSHP[5] and overall furthered the interpretive goals and objectives of the RFP. The Board felt the proposal was exciting, innovative and creative and mentioned such examples as the proposed 'all docent workforce' and how that would be accomplished.  The Board noted the proposal's description on Page 31 as an example of commitment to accomplish interpretation as articulated in the RFP.  The Board stated that the interpretive themes were integrated throughout the proposal and reflected in the facility improvement plans.  Also wandering storytellers (Interpretive Plan Page 10), costume rentals, 'gossipers' (Interpretive Plan Page 9) were cited as examples by the Board as excellent interpretive tools.  The Board noted that the proposal offered examples of similar interpretive efforts at other locations, supporting the Proposers (sic) experience and ability to implement the plan.  (First two parentheses original).

28.    The Award Board noted, with respect to protestant's Interpretive Plan, that:

> The RFP clearly sets out the Department's goal to re-create the Mexican era in California within specific historic periods. The Board felt the proposal missed the mark by focusing on re-creating a Mexican city.  Further, the proposal did not fully address the objectives in the RFP.  The Board commented that the role of the proposed Historical and Cultural Advisory Board was ambiguous as outlined in the proposal and its value added to achieving the goals of the RFP was unclear.  This was particularly true since the proposed Advisory Board did not appear to have participated substantively in the preparation of the proposal.  The Board felt the plan did not fully develop the concept of the three distinct interpretive periods discussed in the RFP (Sections 1, 3, and 3.8).  The Board commented that the proposal did commit to placing staff in period attire.  The Board mentioned that much of the proposed interpretive activities were limited to visitors observing and not participating in active interpretation.  The special events proposed did not reflect the interpretive period.  The interpretive Cultural Oasis concept did not connect to the goals and objectives of the RFP.

---

[5] Old Town San Diego State Historical Park.

Overall, the Board felt the proposal lacked an organized thematic approach and did not fully address the objectives of the RFP. The Board cited IV-11 as an example.

29.     Neither awardee nor protestant received any of the maximum five points for the Small Business Factor subcategory. Neither proposer submitted documentation substantiating entitlement to credit in this subcategory.

30.     Protestant received the maximum five points in the Incumbent subcategory. Awardee received no points in this subcategory.

31.     Level IV was Rent Offer. The RFP included a formula to score rent offers in each proposal. The application of the formula resulted in the award of 13.6 points to awardee and 8.03 points to protestant.

32.     Level V was Project Feasibility. This was a pass/disqualified item and both awardee and protestant received "pass" scores, as did the other two proposers. This was the criterion for which WKA was hired to evaluate the proposals. The Award Board's Summary recites that the RFP required each proposer "to demonstrate the financial ability to successfully develop, implement and operate the concession in a financially responsible manner and in accordance with the terms and conditions of the Sample Contract and the Proposer's Operation Plan and Facility Improvement Plan." The Summary notes that the Award Board reviewed the proposals, staff reports and WKA analysis in reaching its conclusions in this area.

33.     Feeney prepared a detailed eleven-page report dated October 2, 2003, reflecting his analysis of the four proposals. In the introduction, Feeney recited his primary five tasks as: review the financial projections and related material submitted by the four proposers, evaluate the completeness of the material, evaluate the reasonableness of the projections, identify any fatal flaws in the projections, and determine on a pass/fail basis if the proposals were feasible. He commented that he relied upon the fact that the proposed facilities already existed and had a record of past performance that could be reviewed. He also noted that each of the proposers had a successful track record in the food service business, with internal records of similar operations upon which they based their projections.

34.     Feeney began his written analysis with a discussion of past performance of protestant from year 1998 through year 2002. Feency reported gross sales and, based on the breakdown submitted by protestant in its proposal, divided the gross sales into restaurant, retail, and other for each year. The next discussion item was projected sales. The information relied upon was supplied by the proposers. The projected first year (2004) of sales for the four proposers ranged between $25.3 million and $30.4 million. Awardee's projected sales are $14.6 million with $14.6 million from restaurant revenue and $10.7 million from retail sales. Protestant's total is $20.8 million with $20.8 million from restaurants and $7.6 million from retail sales. Using the projected sales figures submitted by the proposers for year ten of the contract, Feeney showed total sales increases ranging from

38.13 percent to 45.48 percent or annual average percentage increases ranging from 3.4 percent to 6.4 percent. Awardee projected a 38.13 percent increase with an average annual increase of 5.6 percent and protestant projected an overall increase of 45.48 percent for an average annual increase of 6.4 percent. Over the ten year contract period, awardee projected 62 percent of sales from restaurants, 36 percent from retail sales and two percent from other. Protestant projected 73 percent from restaurants, 25 percent from retail sales and one percent from other. The total projected sales over the life of the contract range from $325.1 million to $368.2 million dollars with awardee's projected total sales of $325.1 million and protestant's projected total sales of $368.2 million dollars.

35. Feeney concluded that all of the year one projections were within a reasonable range given protestant's reported sales of $26.41 million in fiscal year 2002. He also concluded that all of the total sales projections over the ten year period were within a reasonable range. He felt that the average annual percentage increases between the first and last years of the contract expressed reasonable expectations.

36. Feeney also commented about the transition plans submitted by the four proposers, observing that each implied minimal disruption in sales and services during the transition. Feeney acknowledged that there was the potential for a decline in sales if the new operator did not handle the transition carefully. He concluded that "With adequate planning and foresight, the transition period could result in virtually no disruption in the best case or up to several weeks or lost or reduced sales in the worst case."

37. The next section of Feeney's report addressed industry standards for sales. The proposers were not required by the terms of the RFP to specify the total number of restaurants seats or total square feet of retail sales space in their respective versions of the project. Feeney consulted with Department staff and he was provided estimates for the existing restaurant square footage, existing retail square footage, and existing number of restaurant seats. He was asked to assume that the same estimated number of restaurant seats, restaurant space and retail space would remain for each proposer. The estimated number of restaurant seats was 1,376. The estimated retail space was 8,000 square feet and the estimated restaurant space was 22,500 square feet for a total of approximately 30,500 square feet. Feeney and the Department felt that these assumptions would be fair and provide a level playing field on which to evaluate each of the proposers's projected restaurant and retail sales revenue. Using the estimated 1,376 restaurant seats, Feeney calculated sales per seat for the four proposers in year one of the contract to range from $10,610 to $16,279 with awardee projecting $10,610 and protestant projecting $15,116 per seat based on their respective projected restaurant total revenue in year one and Feeney's assumption regarding the total number of seats. Feeney compared the figures with protestant's reported $13,990 per seat for year 2002 and the National Restaurant Association's (NRA) reported sales from $16,000 to $21,800 for the upper quartile of restaurants of restaurants surveyed. Using the proposer's projected retail sales revenues, Feeney calculated a range from $950 to $1350 per square foot with awardee projecting $1338 and protestant projecting $950 per square foot in the first year of the contract. He compared this to the $750 per square foot that protestant received in 2002. While not stated in his report, Feeney also compared the figures with

industry standards obtained from the Urban Land Institute (ULI) "Dollars and Cents" standards for retail establishments. Feeney used this standard because the ULI reports median sales for a variety of retail establishments and other industry standards rely exclusively on figures from shopping centers. The projected retail sales figures fell within the top ten percent which Feeney regarded as comparable to tourist destination specialty stores. While not included in his report, Feeney also calculated the total sales per square foot and determined that the figures for each proposer were within industry standards for feasibility. The NRA and ULI surveys are accepted industry standards for performing economic feasibility evaluations.

38.    The next section of Feeney's report addressed projected cost of goods. The projected costs of goods for the proposers ranged from 30 percent to 32 percent of total sales. Feeney noted that the overall cost of goods for the past five years of protestant's operation was 33 percent. The NRA survey reported a median cost of goods for full service restaurants of 33 percent.

39.    Feeney's next section was entitled Operating Expenses, excluding rent and interest. The proposers projected operating expenses ranged from 43 percent to 53 percent of a percentage of total sales. The NRA reported a typical ratio of 53 percent for full service restaurants and a typical ratio of 35 percent for retail sales. Using a weighted average reflecting the larger percentage of sales from the restaurants, Feeney concluded that all of the bidders had projected reasonable operating expenses.

40.    The Feeney report's next section dealt with projected revenue to the State. This section merely recited each proposer's rent commitment to the State and ranked them based on minimum rent promised and projected rent, one through four. Awardee committed to pay a minimum of two million dollars a year or 8.5 percent of the first $18 million plus 9 percent of the second $18 million of total sales. Protestant promised one and a half million per year in minimum rent or 7.3 percent of the first $18 million plus 7.3 percent of the second million of total sales. Feeney noted that percentage lease rates for full service restaurants which provide alcohol typically range from 8 percent to 11 percent. Awardee ranked second in minimum rent promised and third in projected rent. Protestant ranked fourth in both categories.

41.    The next section of the Feeney report dealt with cost estimates submitted by the proposers. Each proposer was asked to list projected costs in eleven separate categories. The range of total costs was from $8.33 million to $13.55 million. Awardee's projected costs were $13.55 million, while protestant's projected total costs were $9.88 million. Feeney noted that the difference between awardee's estimated costs and the two lowest estimates was primarily attributable to higher projected costs for interior renovations. Feeney deferred to architects and contractors to determine whether the estimates were reasonable based on the proposer's respective facility improvement plans.

42.    The report's next section dealt with Financing. Feeney summarized each bidder's proposed means of financing. Awardee proposed to provide all the required capital

12

($13.55 million) from internal sources although they reflected interest payments of $4.1 million over the term of the ten year contract. Protestant proposed using $4.5 million from internal capital and a long term loan of $4.0 million to finance its $9.88 million projected capital outlay. Feeney deemed all of the proposers' approaches reasonable.

43.     The next section of the Feeney report dealt with Net Income. Feeney evaluated net income before interest costs because the bidders proposed different methods of financing and accounting for interest. Feeney reasoned that as net income would be available to cover capital costs, net income could be compared to total projected investment. Awardee's projected net income (after interest and rent) for the ten year contract period was $29.1 million. Protestant's projected net income was $25.8 million. When compared with projected total costs over the same period, the ratio for awardee was $2.50 returned for $1 invested. For protestant, the ratio was 1:2.8 or $2.80 returned for every $1 invested. The ratios for the other bidders were 1:1.3 and 1:5.2, respectively. Feeney concluded that there was more than enough projected net income to recoup each bidder's investment, although he did report that the 1:1.3 ratio "bears noting."

44.     Following a section entitled, "Unforeseen Circumstances" in which Feeney noted that such circumstances could affect the actual results, Feeney summarized his conclusions. He concluded that all four proposals passed the feasibility test. He opined that each appeared to be based on reasonable and achievable assumptions. Where minor abnormalities appeared in assumptions, he suggested that further clarification might be required. He ended the summary with the statement: "The level of projected profits (after rent to the State) appear to be sufficient to cover the cost of the investment and to cover the stipulated interest payment of each bidder."

## CREDIBILITY FINDINGS REGARDING EXPERT WITNESS DISAGREEMENTS[6]

45.     Two other expert witnesses testified regarding the economic feasibility of awardee's proposal.[7] Protestant's expert witness was Gerald M. Trimble, Managing Principal and Vice President of Keyser Marston and Associates, Inc. (KMA). Trimble obtained a Bachelor degree in Psychology from the University of Southern California. He also holds a Real Estate Certificate obtained following completion of at least 30 units in real estate at the University of California, Los Angeles. Trimble served as Project Manager and Department Administrator for the Los Angeles Community Redevelopment Agency and then Executive Director of the Pasadena Redevelopment Agency during the period from 1963 to 1977. These positions involved working with private developers to develop various public projects. His responsibilities included soliciting proposals, evaluating the proposals, selecting developers, and monitoring the development of the projects. From 1977 to 1987, Trimble was Executive Vice President of Centre City Development Corporation, a

---

[6] In this case, "credibility" is not intended to mean the truthfulness of the experts; rather, here the word is intended to denote which experts rendered the most persuasive opinions.

[7] Feeney testified in the Department's case in chief and in rebuttal after protestant's expert had testified.

development corporation representing the City of San Diego's Redevelopment Agency in its development of the downtown area. This work also involved selection of developers of various types of projects including restaurants, hotels, offices and rehabilitation of historic buildings. From 1987 to 1982, Trimble was the President of a private real estate corporation created by the University of Southern California to develop student housing, faculty housing, retail and marketing facilities off campus to serve the university. This work involved the submission of proposals to the Los Angeles Redevelopment Agency. In 1992, Trimble became a principal at KMA, a real estate advisory company working with land owners, institutions, public agencies, and developers on various real estate development projects. Approximately 65 percent of the firm's clients are public agencies. KMA advises such agencies when selecting a developer or investor through a solicitation. Trimble is a member of the ULI and has served as a member on its Public-Private Council. Trimble's firm prepared the financial portions of protestant's proposal.

    46.    Trimble testified that awardee's proposal was economically infeasible. Among his contentions supporting that conclusion were his opinions that awardee's projected sales figures are unrealistic to the extent of impossibility and that Feeney used the wrong method of determining overall economic feasibility. Trimble testified that Feeney should have used the internal rate of return (IRR) method for determining whether the proposers should expect a reasonable rate of return on their respective capital investments. Trimble also criticized the way in which Feeney applied his ratio analysis. Trimble noted that most of the capital invested by awardee would take place in the first two years of the contract. He explained that Feeney's ratio method simply used the total net profits over the *ten year term of the contract without an appropriate "discount" for the reduced value of the* dollars earned over time. In later testimony, Trimble said the discount actually reflects an assessment of risk of the project to a developer. He listed among the risks in this project the ten year contract term without a developer option to renew, the contractual provision permitting the State to cancel the contract following one year's notice and the risky nature of the restaurant business. Trimble said Feeney's methodology resulted in an "apples to oranges" kind of analysis yielding invalid results. When Trimble calculated the discounted value of net income over the life of the contract ("present value analysis"), assuming a 20 percent "discount," he concluded that the capital investment of every $1 yielded just 92 cents in return, which he characterized as a losing economic proposition for awardee. On cross-examination, Trimble testified that a developer would have to at least double its investment to make the project feasible using the present value analysis to arrive at a ratio of capital investment to net profit. Trimble acknowledged that the computer program used to calculate the return on investment assumed that income would be received on the last day of each year and that the total capital investment would be made on the first day of the ten year contract term. Trimble conceded that a fairer way to consider income earned was to assume that it was earned at the mid-point of each year, known as the "mid-year convention."

14

47.     Trimble expressed that the $1,338[8] per square foot that Feeney calculated as awardee's projected retail sales for the first year of the contract was "impossible" to attain. This, he opined, was not a feasible projection for a viable business. Trimble based his opinion in part on the median retail sales of $382 per square foot reported by the International Conference of Commercial Shopping Centers (ICSC), Pacific Region survey. The ICSC survey is another accepted industry standard with which to perform economic feasibility evaluations. Trimble also compared awardee's projected sales figures to reported sales per square foot from Seaport Village in San Diego and Pier 39 in San Francisco, other tourist destinations with similar specialty shops. Seaport Village reported $620 per square foot for its specialty shops. Pier 39 reported $635 per square foot. Trimble also compared the retail sales per square foot for Nordstrom ($319), Costco ($757), two area shopping malls ($398 and $283), a Sacramento shopping mall ($537), and a "high producing" Las Vegas shopping mall ($550). Trimble acknowledged that awardee's projected restaurant sales per seat fell below the industry median standard reflected in the NRA survey. On cross examination, Trimble conceded that tourist destination specialty shops are not included in the ICSC survey.

48.     Feeney testified on rebuttal in response to Trimble's criticisms of his economic evaluation and conclusions. Feeney pointed out that the square footage number he was provided for retail sales was just an approximation and that 8,000 square feet was such a small number that if it were off by only 2,000 square feet, it would result in a major change in the ratio. Therefore, he felt that if a projected number looked off, it could be attributable to the approximation of retail space. Feeney explained that he used, as an industry standard, the ULI's publication called "Dollars and Cents of Shopping Centers" because they report sales by approximately 30 store types, not just shopping centers. This enabled Feeney to pick out the stores he believed comparable and come up with an appropriate "basket" of stores. The other reason was that the publication does not show just median sales figures but includes sales in the upper ten percent and two percent of stores, which he regarded as more relevant than the median. Feeney did not use the ICSC publication because he felt the ULI published industry standards were better for this project. Feeney produced excerpts from the ULI 2002 publication reflecting sales in the upper ten percent and two percent of six types of stores: jewelry, art gallery, candles, decorative accessories, leather goods, and sunglasses. Feeney picked these types of stores based on his experience that these kinds of stores are typical for this kind of project. The upper ten percent of stores in these categories had sales ranging from $860 to $2,059 per square foot with the average being $1,472. The upper two percent ranged from $1,185 to $3,634 per square foot with an average of $2,453 per square foot. Feeney focused on the upper ten percent in his analysis because he assumed well operated stores in a good location with new investment in the project. In his opinion, if you look below that level, you are considering what he called a "mishmash" of stores, many of which are not doing well which diminishes the value of the statistics.

---

[8] In the KMA written analysis, the figure $1341 was used and Trimble explained that this was the actual figure rather than the $1338 which, he said, reflected a rounding off by Feeney.

15

49.     Feeney also addressed Trimble's criticisms of the method he used to evaluate the return on investment of the proposers (Net Income portion of Feeney's report). He began by acknowledging that there are three basic methods to calculate economic feasibility. One is the payback period which calculates how many years it will take to recoup the investment. Another is the ratio method which he used in this evaluation. With this method, one looks at the relationship of the total returns to the initial investment. The third is the IRR. Feeney reiterated that he had no problem with using the IRR. According to him, it is used more by developers to evaluate compounded rates of return in a situation where the developer projects changing cash flows, including negative cash flows in particular years caused by phased investment. Feeney said that he used the ratio method, without any net present value discounting, because it demonstrated whether all of the obligations of the developer would be covered which was of concern to the Department. Feeney remarked that the task was not to rank the proposals but to simply determine if they passed the economic feasibility test. This, to him, meant demonstrating that proposers would at least get their investment back and have some left over. Using the ratio analysis, awardee intends to invest $13.55 million and get back $33.2 million for an approximately $20 million return on investment.

50.     Feeney offered his own criticisms of Trimble's net present value calculations. He found little fault with the 20 percent risk assessment and the application of the discount on a compounded per annum basis to the projected cash flow in each of the contract years. The total net present value of cash flow (adding all of the years together) would be approximately $12.6 million. Feeney felt, however, that this method would not result in a reasonable assessment of the economic feasibility of awardee's proposal. More specifically, Feeney testified that Trimble's table does not reflect a return of 92 cents for each dollar invested; rather, it reflects that the investor would get back every dollar invested plus 20 percent. He explained that the IRR is simply the discount rate which results in equivalency between the investment and discounted return. In this case, a discount of approximately 19 percent would be the IRR. Feeney explained that if the figure were met, the proposal would be at least economically feasible under an IRR analysis. In response to questions posed by awardee, Feeney acknowledged that each proposer would typically come up with its own risk assessment/discount rate.

51.     Awardee called the third expert witness, Robert Patterson, as a rebuttal witness. Patterson attended the School of Hotel and Restaurant Administration at Cornell University from which he received a Bachelor degree. He also received a Masters degree in Business Administration from Cornell University. Patterson is a Certified Public Accountant and holds the American Institute of Certified Public Accountants' Accredited Business Valuation credential. His most relevant experience includes four years as vice president and director of operations of a small restaurant company in the bay area followed by thirteen years with the accounting firm of Leventhal and Horwith in Los Angeles. At Leventhal and Horwith, he was initially in charge of the firm's leisure time activities consulting practice which involved hotels, restaurants, and other hospitality entities and then eventually in charge of all the firm's consulting work in the southwest. Patterson then joined Coopers and Lybrand (now merged with Price Waterhouse) as a partner for five years, heading the consulting practice dealing with the hospitality industry. Patterson has authored publications

16

and taught classes for the NRA, including classes in budgeting, financial planning and operations analysis. He worked on the NRA's survey referred to by the other two expert witnesses.

52.    Patterson provided his own explanation of net present value analysis. He testified that the concept means applying the time value of money to both project investment and project cash flows so that each year's cash flows are brought back to the beginning of the project using a discount factor. The factor is derived from a stipulated discount rate believed to be appropriate to the risks of the project and the characteristics of the investor. The rate is typically set by the investor and is referred to as the "target" or "hurdle" rate-the rate, i.e. the investor must reach or exceed for the project to be deemed financially feasible. Patterson has performed net present value analyses more than one hundred times. Patterson said that Trimble's analysis does not comport with industry standards for net present value analysis. He explained that the discounted cash flows appeared appropriate but the capital expenditures were not similarly discounted even though they are spread out over seven different years. Patterson also took issue with Trimble's assertion that an investor would require a ratio of one to two, or even one to three, to make a project economically feasible. He explained that a ratio of one to two meant that the investor earned twice the target rate or here, a compounded 40 percent annual rate of return. Patterson applied the net present value analysis to awardee's projected capital expenditures and cash flow, using Trimble's 20 percent figure. The resulting ratio was 1:1.235 using this method. Patterson testified that this would mean that after earning a 20 percent return, there would be $2.4 million left over for the developer. If the midyear convention was utilized, which assumes all capital expenditures and cash receipts occur midyear, the ratio is the same 1:1.235 but yields $2.634 million after the twenty percent return. Patterson demonstrated that even at a 25 percent discount, there would be money left over. Patterson concluded, using awardee's figures, that the clients with whom he regularly consulted would regard the project as a feasible investment.

53.    The conflicts among the expert witnesses regarding appropriate valuation methodology in this matter were not difficult to resolve. The testimony and supporting documents made it clear that while Trimble certainly has vast and impressive experience in real estate development including that undertaken by public agencies, he does not possess the education and experience in economic valuation demonstrated by both Feeney and Patterson. Feeney persuasively established that his ratio analysis was a particularly appropriate method to assess the economic feasibility of the four proposals from the Department's perspective. That analysis demonstrated that awardee's projections provided adequate revenue to cover awardee's costs over the term of the contract. Patterson provided the best explanation of the purpose and application of the net present value/IRR analysis. Accepting Trimble's risk factor of 20 percent, Patterson demonstrated that using the net present value of capital expenditures and cash flow over the life of the contract, the cash return would easily surpass the "hurdle" point with considerable cash left over for awardee, even if one used the end of each year as the point at which one assumed expenditures were made and cash earned. In other words, even using Trimble's suggested methodology (correctly), awardee's proposal easily passes the economic feasibility test.

17

54.    The other area of expert witness conflict only involves Feeney and Trimble. The question of the economic feasibility of awardee's projected retail sales per square foot turns, in large part, on which industry standards are most appropriate. In this case, Feeney's reliance on the ULI's survey makes more sense. Rather than a compilation of generic shopping center sales statistics and a reported median figure, the ULI publication breaks down the stores by category and includes the retail sales per square foot of the most successful of those whose wares seem comparable with those likely to be offered by the proposers. Feeney's "basket" appears reasonable as does his assumption that the quality of stores, excellent location of the project, and investor capital improvements will place the stores within the top producers among tourist destination specialty shops. Trimble relied upon the much lower median figure reported by the ICSC, but was unable to provide specific figures for the centers at the high end of the statistical sampling. He conceded that the median is not used by the development industry to establish that sales projections above the median are economically infeasible, but more typically to determine that projected sales below the median signal trouble. Trimble opined that projections more than $200 above the ICSC median would warrant further explanation. Yet all of the projected sales per square foot figures, including protestant's, are well above that suspicion threshold as were protestant's actual sales figures for 2002 ($750 per square foot). Moreover, the ULI statistics clearly impeach Trimble's assertion that awardee's projected sales revenues are "impossible." In summary, Feeney's analysis and the reasons he provided for his conclusions were more persuasive.

## *AWARDEE'S RESPONSE TO RFP PRELIMARY PLAN REQUIREMENTS*

55.    Section IV of the RFP entitled Proposal Information includes a discussion of the Facility Improvement Plan (FIP) requirements. The relevant portions required the proposer to describe its FIP for interior and exterior improvements to the concession facilities. The FIP was to describe how the developer intended to meet the requirements for facility improvements set forth in Section V, page 12 of the Sample Contract and exhibit C which was to include a detailed description and layout of the proposed concession facilities including plans, drawings, and schematics. The successful proposer's (concessionaire) FIP is to become part of the contract, subject to the approval of the State. A note specified that the plan "shall meet or exceed minimum requirements set forth in the Sample Contract." Section V, paragraph 12, entitled "CONSTRUCTION AND COMPLETION OF IMPROVEMENTS," began with a requirement that the concessionaire complete improvements within one year of the commencement of the contract. Subparagraph d dealt with facility design and plan submittal process. The first step of the process is discussion and approval ("concurrence") of the concessionaire's facility improvement plan and conceptual plans within 14 days, followed by submission of a schematic design within four weeks, followed within six weeks of approval by concessionaire's preliminary working drawings, followed within eight weeks of approval by concessionaire's working drawings. The process and phases were more particularly described in exhibit D. Exhibit C defined the minimal facility improvements required for the concession properties.

56.     Awardee submitted a FIP which included 23 pages of descriptive text as well as an additional 53 pages which more specifically described the contemplated improvements in the concession. Included were various architectural drawings and artists' renderings, each accompanied by explanatory text. On page 12 of the FIP entitled "Implementation and Phasing Plan," awardee noted:

> We believe what that what we have provided in this proposal certainly satisfies the requirements for the Schematic Design Phase and probably for the Design Development Phase (Preliminaries) described in Exhibit 'D', Definitions and Procedures for Approved Schematics, Preliminary Plans and Working Drawings. This will probably shorten the time needed to make adjustments should the DPR deem it necessary. Within 60 days of the approval of the concession contract, we will provide the DPR with existing "As-Built" drawings, including floor plans and exterior elevations, drawn to scale and in an electronic 'AutoCAD 2000' format.

57.     In his evaluation of awardee's FIP, Department's Supervising Architect stated that awardee submitted a very well organized FIP, which was easy to review and seemed to exceed the RFP requirements by a large margin. Bailey concluded that awardee's plans were more design development than schematic and rated them as "excellent."

58.     No party presented the testimony of an architect relating to the level of the drawings submitted by awardee. However, even absent such testimony, it is reasonable to infer that preliminary drawings would typically incorporate the conceptual stage. More importantly, protestant did not present any evidence that the level of the drawings would in any way frustrate the Department's ability to review awardee's FIP in anticipation of construction, as suggested by protestant. The RFP required proposers to meet "or exceed" FIP requirements. Thus, if the architectural drawings exceeded minimum requirements, as the comments by awardee and Bailey suggested, this was not a deviation from the RFP requirements.

## LEGAL CONCLUSIONS

### STANDARD OF REVIEW

1.     The standard of review is whether the Department's award of the contract to awardee was arbitrary, capricious, entirely lacking in evidentiary support, unlawful or procedurally unfair. The RFP was conducted pursuant to Public Resources Code section 5083.23[9] which reads, in pertinent part:

---

[9] All statutory references are to the California Public Resources Code unless otherwise indicated.

(a) Notwithstanding any other provision of this article, with respect to concession contracts entered into on and after October 1, 1994, if the director determines that it is in the best interests of the state, the director may, upon giving notice to the State Parks and Recreation Commission, in lieu of the process for awarding contracts otherwise prescribed in this article, award contracts authorizing occupancy of any portion of the state park system for a period of more than two years to the best responsible person or entity submitting a proposal for a concession contract.

(b) For any concession contract authorizing occupancy by the concessionaire for a period of more than two years of any portion of the state park system that is entered into pursuant to this section, the department shall prepare a request for proposal, which shall include the terms and conditions of the concession sufficient to enable a person or entity to submit a proposal for the operation of the concession on the basis of the best benefit to the state. Proposals shall be completed only on the basis of the request for proposal.

(d) For purposes of this section, "best responsible person or entity submitting a proposal" means the person or entity submitting a proposal, as determined by specific standards established by the department, that will operate the concession in the best interests of the state and the public. (Emphasis added)

2.    California Code of Regulations, title 14, section 4400 reads:

Within ten (10) days after the Department of Parks and Recreation has issued a notice of intent to award a concession contract for a term in excess of two (2) years following a request for proposal or invitation to bid, any proposer/bidder may file a written statement of protest against awarding of the contract with the Director of the Department. The statement shall be signed by the protestor, shall specify the grounds for the protest and may include a demand for a hearing. A copy of the protest must be served on the Attorney General within the same ten-day period by the proposer/bidder.

If a protest is timely served and a hearing is demanded, or if the Director on his or her own motion orders a hearing, proceedings shall be conducted according to the Administrative Procedure Act, and the protest statement shall be treated as a statement of issues. Any recommendation or decision of the hearing officer shall be submitted to the Director for approval, adoption, modification, disapproval or other interlocutory or final action.

If a hearing is not so demanded or ordered, the action of the Director shall be final. (Emphasis added).[10]

3.       The relevant statutes and regulations are silent as to the standard of review to be utilized by the Administrative Law Judge (ALJ) when the matter is referred to the Office of Administrative Hearings for resolution of the protest in the form of a Proposed Decision. The Administrative Procedure Act does not provide the answer. Common sense, however, compels the assumption that the ALJ's role is akin to that of a Superior Court judge reviewing the exercise of administrative discretion by the Department and its staff in the award of the contract. It would make no sense to require that the ALJ conduct a de novo hearing, including the presentation of evidence, or even a quasi-de novo hearing based on the materials previously reviewed by the Award Board. First, that decision has been delegated exclusively to the Department. Second, such delegation necessarily involves the exercise of discretion and application of policy considerations, purely legislative functions, which the ALJ has neither the expertise nor authority to perform. Thus, while the ALJ is also a member of the executive branch of government, he or she performs a judicial (or "quasi-judicial") function when reviewing the Department's decision to award a contract.

4.       Typically, a Superior Court reviews a governmental entity's award of a public contract pursuant to Code of Civil Procedure section 1085, the "traditional" writ of mandamus provision used to review an agency's exercise of discretion. (*Ghilotti Construction Co. v. City of Richmond* (1996) 45 Cal.App.4th 897.) The *Ghilotti* court stated on pages 903 and 904:

> Our review is limited to an examination of the proceedings to determine whether the City's actions were arbitrary, capricious, entirely lacking in evidentiary support, or inconsistent with proper procedure. There is a presumption that the City's actions were supported by substantial evidence, and GCC has the burden of proving otherwise. We may not reweigh the evidence and must view it in the light most favorable to the City's actions, indulging all reasonable inferences in support of those actions.

5.       In accord is *Mike Moore's 24-Hour Towing v. City of San Diego* (1996) 45 Cal.App.4th 1294 (hereafter "*Moore*"). The *Moore* court pointed out that a public entity's award of a contract, and all the acts leading up to the award are legislative in character. This function necessarily involves an exercise of discretion guided by considerations of public welfare. The mere fact that a proceeding before a deliberative body may possess certain characteristics of the judicial process does not convert legislative action into adjudication of a private controversy. *Moore* at page 1303.

---

[10] This regulation was promulgated pursuant to the Department's general enabling statute authorizing the adoption of regulations and the authority to award concession contracts. No statutory provision directs the manner in which bid protests are to be conducted in this context.

6. When reviewing an agency's legislative determination, the ultimate questions, whether the agency's decision was arbitrary or capricious or entirely lacking in evidentiary support, contrary to public policy or unlawful or procedurally unfair are essentially questions of law. (*Moore* at p.1303). The inquiry is whether the legislative body adequately considered all relevant factors and demonstrated a rational connection between those factors, the choice made, and the purposes of the statute under which the agency was acting. (*Shapell Industries, Inc. v. Governing Board* (1991) 1 Cal.App.4th 218, 232.) (hereafter "*Shapell*").

7. In certain circumstances, courts have required that some form of an evidentiary hearing be provided to protestants. Where the solicitation requires that the contract be awarded to the lowest (or highest) responsible bidder, prior to awarding a public works contract to other than the lowest bidder, a public body must notify the low bidder of any evidence reflecting upon his responsibility, afford him an opportunity to rebut such adverse evidence, and permit him to present evidence that he is qualified to perform the contract. However, due process does not require a quasi-judicial proceeding prior to rejection of the low monetary bidder as a nonresponsible bidder (*City of Inglewood-L.A. County Civic Center Auth.* v. *Superior Court* (1972) 7 Cal.3d 861, 866-867; *Boydston v. Napa Sanitation Dist.* (1990) 222 Cal.App.3d 1362, 1368-1369.). The judicial review standard remains the same. (*Boydston* at p. 1369.). An even more unique situation was presented in *National Coach Corp. v. State Bd. of Control* (1982) 137 Cal.App.3d 750, 755. There, the court reviewed the trial court's denial of a writ of mandamus to an unsuccessful low bidder whose bid had been determined nonresponsive by the awarding state department. Then, as now, the State Board of Control was statutorily mandated to hear and decide protests under such circumstances and render a final decision.[11] The court held that the statute and regulations adopted by the State Board of Control providing for an evidentiary hearing de novo[12] implied an adjudicative hearing with a decision based on evidence presented to the Board. Under such circumstances, the Board's final administrative decision was reviewable under Code of Civil Procedure section 1094.5 by which the trial court reviews the agency's factual findings under either the substantial evidence in light of the whole record or the independent review scope of review, depending on whether the interest of the petitioner is deemed a fundamental vested right. (Bus. & Prof. Code §1094.5, subd. (c); *Fukuda v. City of Angels* (1999) 20 Cal. 4th 805.).

8. The cases recited in Legal Conclusion 7 are distinguishable from the facts presented in this matter. Here, the RFP did not require that either the lowest or highest responsible bidder be awarded the contract. Instead, the RFP required that the contract be awarded to the "best responsible bidder" based on the application of specific criteria by the Department. More importantly, there is no comparable statutory provision by which the legislature conferred final decision making authority on the ALJ in protests filed by unsuccessful low bidders and the Department did not promulgate a regulation which contemplates a hearing de novo before the ALJ.

---

[11] Now Public Contract Code section 10306.
[12] Now California Code of Regulations, title 2, sections 870-876.

9. Protestant contends that the ALJ's standard of review should be the independent judgment test by which the Superior Court typically reviews a final administrative decision involving a fundamental vested right. As discussed above, except in very limited circumstances, judicial review of a public agency's decision to award a contract is accomplished through traditional mandamus pursuant to Code of Civil Procedure section 1085. Administrative mandamus pursuant to Code of Civil Procedure 1094.5 is limited to "inquiring into the validity of any final administrative order or decision made as a result of a proceeding in which by law a hearing is required to be given, evidence is required to be taken, and discretion in the determination of facts is vested in the inferior tribunal...." There were no such requirements imposed on the Department and it was, as discussed above, engaged in the application of discretion rather than adjudicative "fact finding." Further, even if the proper method of judicial review was administrative mandamus, here the scope of review of agency factual findings (assuming they existed) would be substantial evidence in light of the whole record because protestant's interest in the contract does not involve a fundamental vested right.[13]

## LIMITATIONS ON RECORD FOR REVIEW BY ALJ

10. Having adopted the standard by which trial courts review an agency's award of a public contract, certain evidentiary limitations necessarily follow. Generally, a trial court may not consider materials prepared after the agency has taken action which is under review. (*Shapell* at p. 233.). The *Shapell* court considered whether the trial court properly considered evidence in the form of a 23-page report prepared by an expert. The report was submitted to the trial court but was not before the local agency at the time that legislative action was undertaken. In essence the report refuted the other studies upon which the agency had based its decision. The appellate court held that the determination whether the decision was arbitrary, capricious or entirely lacking in evidentiary support must be based on the evidence considered by the administrative agency; and consideration of reports prepared long after the agency has acted would, therefore, be improper. (*Shapell* at p. 233.). Citing *Shapell*, the California Supreme Court reached the same conclusion when deciding whether the Air Resource Board's promulgation of regulations could be challenged with extra-record expert evidence. (*Western States Petroleum Assn. v. Superior Court (ARB)* (1995) 9 Cal.4th 559, 570-573.). These evidentiary limitations were the bases for disallowing the testimony of protestants (and awardee's) experts whose opinions and supporting documents were not part of the materials reviewed by the Department in making the award. The sole exception was the testimony of the evaluation experts. This exception was based on the RFP's requirement that the proposals be financially feasible and protestant's written offer of proof that Trimble would, based on information reviewed by Feeney, establish that awardee's proposal was financially impossible.

---

[13] Protestant may have held a vested fundamental right in the concession contract during the term of the previous contract, but that contract—and any right to the concession—expired in 2001.

11.    A second corollary tenet is the general prohibition against inquiry into the thought processes of agency decision makers and their staffs. (*Moore* at pp. 1305-1306.). The rule rests primarily upon the concept of separation of power between the executive and judicial branches but the rationale for the rule is equally applicable to an ALJ's review of agency decision making. That is, the proper inquiry does not involve an assessment of the subjective thought processes involved in the evaluation of respective bids, scoring, and the ultimate determination of which bidder is the "best responsible" entity. Rather, the appropriate question is whether the agency's decision was rational based upon the administrative record before it.

## *ULTIMATE LEGAL CONCLUSIONS*

12.    Protestant failed to establish that the Department's award of the contract to awardee was arbitrary, capricious, entirely lacking in evidentiary support, unlawful or procedurally unfair. The Department's staff specialists and Award Board members were well qualified to perform their respective analyses and evaluations and they did so based on the information provided by the proposers and in accordance with the criteria specified in the RFP. The higher scores received by awardee in the Level III subcategories for operation plan, facility improvement plan, and interpretive plan made the difference. The scores obviously reflected the shared opinion of the Department's staff that awardee's proposal was more responsive to the RFP in those areas. Much of the administrative hearing time was taken up with testimony and other evidence relating to the Department's consultant's evaluation of the four proposals for financial feasibility. The evidence clearly established that the "pass" score received by awardee based on its projections was warranted. It follows that the Award Board and Director's reliance on Feeney's report was not arbitrary, capricious, lacking in evidentiary support, unlawful or procedurally unfair.

13.    The other legal contentions raised by protestant do not warrant further discussion. Some, like those involving the so called "Tootelian report" and individual expense line item projections, are based upon proffered evidence that was ruled irrelevant during the administrative hearing. There was no factual support for protestant's claim of bias. Protestant provided no legal support for its contention that Department allocated too few points for incumbency. Other contentions have been addressed in the two preceding sections which reiterate, in part, legal rulings made during the pre-hearing stage. Protestant's remaining legal contentions, which do not merit a specific response, are rejected.

## ORDER

1.    The Department's award of the concession contract for the Mexican Commercial Corner, El Opal Restaurant, and the Casa de Bandini/Cosmopolitan Hotel properties within Old Town San Diego Historic State Park to Delaware North Company Parks and Resorts, Inc. is affirmed.

24

2. The protest of Bazaar Del Mundo, Inc. is denied.

3. The protest of Old Town San Diego Chamber of Commerce is denied.

Dated: _July 12, 2004_

KARL S. ENGEMAN
Administrative Law Judge
Office of Administrative Hearings

## DECLARATION OF SERVICE BY U.S. MAIL

**Case Name:**   **Department of Parks and Recreation for the State of California v. Bazaar del Mundo, Inc., a California corporation, and DOES 1-50, inclusive**

**Case No.:**   **04-CIV-1533 (FDC) JFM**

I declare:

I am employed in the Office of the Attorney General, which is the office of a member of the California State Bar at which member's direction this service is made. I am 18 years of age or older and not a party to this matter. I am familiar with the business practice at the Office of the Attorney General for collection and processing of correspondence for mailing with the United States Postal Service. In accordance with that practice, correspondence placed in the internal mail collection system at the Office of the Attorney General is deposited with the United States Postal Service that same day in the ordinary course of business.

On October 12, 2004, I served the attached **NOTICE OF LODGMENT OF EXHIBITS IN SUPPORT OF PLAINTIFF DEPARTMENT OF PARKS AND RECREATION FOR THE STATE OF CALIFORNIA'S OPPOSITION TO MOTION TO TRANSFER VENUE** by placing a true copy thereof enclosed in a sealed envelope with postage thereon fully prepaid, in the internal mail collection system at the Office of the Attorney General at 110 West "A" Street, Suite 1100, San Diego, California 92101, addressed as follows:

**CALLIE A. BJURSTROM, ESQ.**
**MICHELLE A. HERRERA, ESQ.**
**LUCE, FORWARD, HAMILTON & SCRIPPS LLP**
**600 WEST BROADWAY, SUITE 2600**
**SAN DIEGO, CA 92101-3391**

**RICHARD P. SYBERT, ESQ.**
**BRETT M. MIDDLETON, ESQ.**
**GORDON & REES LLP**
**101 WEST BROADWAY, SUITE 1600**
**SAN DIEGO, CA 92101**

I declare under penalty of perjury under the laws of the State of California the foregoing is true and correct and that this declaration was executed on October 12, 2004, at San Diego, California.

| | |
|---|---|
| **M. CAROLINA SAHELI** | *[signature]* |
| Declarant | Signature |

ORIGINAL

1  BILL LOCKYER
   Attorney General of the State of California
2  TOM GREENE
   Chief Assistant Attorney General
3  MARY HACKENBRACHT
   Senior Assistant Attorney General
4  CAROL A. SQUIRE
   Deputy Attorney General
5  DAVID H. ROBINSON
   Deputy Attorney General
6  State Bar No. 74956
      110 West "A" Street, Suite 1100
7     San Diego, CA 92101
      P.O. Box 85266
8     San Diego, CA 92186-5266
      Telephone: (619) 645-2609
9     Fax: (619) 645-2581

10 RICHARD P. SYBERT, State Bar No. 80731
   BRETT M. MIDDLETON, State Bar No. 199427
11 GORDON & REES, LLP
   101 West Broadway, Suite 1600
12 San Diego, CA 92101
   Telephone No.: (619) 696-6700
13 Fax No.: (619) 696-7124

14 Attorneys for Plaintiff Department of Parks and
   Recreation



FILED

OCT 1 3 2004

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY_____
         DEPUTY CLERK

15

16               IN THE UNITED STATES DISTRICT COURT

17               FOR THE EASTERN DISTRICT OF CALIFORNIA

18 | **DEPARTMENT OF PARKS AND** | Case No. 04-CIV-1533 (FDC) JFM
   | **RECREATION FOR THE STATE OF** |
19 | **CALIFORNIA,** | **PLAINTIFF DEPARTMENT OF**
   | | **PARKS AND RECREATION FOR**
20 |                          Plaintiff, | **THE STATE OF CALIFORNIA**
   | | **POINTS AND AUTHORITIES IN**
21 |              v. | **SUPPORT OF ITS OPPOSITION**
   | | **TO TRANSFER VENUE**
22 | **BAZAAR DEL MUNDO, INC., a California** |
   | **corporation, and DOES 1-50, inclusive,** | Date:        October 29, 2004
23 | | Time:        10:00 a.m.
   |                         Defendant. | Courtroom:   Dept. 2
24 | | Judge:       Hon. Frank C.
   | |              Damrell, Jr.
25

26        Plaintiff, the California Department of Parks and Recreation for the State of California

27 ("State"), properly filed its intellectual property complaint in the Sacramento County Superior Court.

28 The case was removed to United States District Court for the Eastern District of California.

1   Defendant Bazaar del Mundo, Inc., ("BdM") now seeks to transfer the case to the United States

2   District Court for the Southern District of California under 28 U.S.C. section 1404(a).   This Court

3   should deny the motion for change of venue.  State's choice of forum should be accorded substantial

4   weight.  BdM has failed to demonstrate that the Southern District of California is more convenient

5   for all parties so as to overcome Plaintiff's choice of forum.  BdM has not shown, and cannot show,

6   that justice requires a change of venue.  Most, if not all, of the State's witnesses,  are located in

7   Sacramento, California.  The main office of the Department of Parks and Recreation is located in

8   Sacramento.

9          In addition, the State's case involves issues related to intellectual property.  The fact that

10   BdM's restaurants are located in San Diego, a fact that is not disputed, is irrelevant to the legal issues

11   that are the subject of the lawsuit.  BdM cannot meet its burden of proof to upset the State's choice

12   of forum.

## ARGUMENT

## I.

**THE STATE'S TRADEMARK INFRINGEMENT CASE SHOULD REMAIN IN THE EASTERN DISTRICT OF CALIFORNIA BECAUSE THE FORUM IS MORE CONVENIENT TO THE STATE'S WITNESSES AND PROMOTES THE INTEREST OF JUSTICE.   THE PLAINTIFF'S CHOICE OF FORUM SHOULD BE ACCORDED GREAT WEIGHT.**

19          The State filed its Complaint against BdM because BdM fraudulently registered with the

20   United States Patent and Trademark Office and the California Secretary of State two historical

21   names, "Casa de Pico" and "Casa de Bandini," lawfully owned by the State.  BdM utilized the

22   historical names when operating two restaurants at Old Town San Diego State Historic Park under

23   a concession agreement with the State.

24          The state-owned buildings that housed BdM's restaurants are historic structures and

25   identified by these names for over 175 years.  The buildings were designated as historic landmarks

26   under these names by the State in 1968.  Nevertheless, BdM (without notice to the State) registered

27   the two names with federal and state trademark agencies in 1985.

28          The State's Complaint sets forth six causes of action against BdM, including: (1) declaratory

1   judgment of trademark ownership; (2) rectification of trademark; (3) fraudulent federal trademark

2   infringement; (4) unfair business practices; (5) false advertising; and (6) false designation of origin.

3   . The State's lawsuit presents issues related to ownership of the two historical names, the legal

4   effect of the concession agreement between the State and BdM, and a resolution that the State is

5   entitled to the exclusive use and ownership of the names.

6   The State is entitled to a resolution of these issues in the forum of its choice. The Eastern

7   District of California is an overwhelmingly more convenient forum to litigate these issues. The

8   State's main office and witnesses are located in Sacramento, California (see Declaration of Ron

9   Brean filed concurrently with this Opposition.) The relative ease of access to proof, the convenience

10  of the parties, and the convenience of the State's witnesses, compels this Court to retain this matter

11  in the interest of justice.

12  BdM has failed to demonstrate that a change of venue is appropriate. 28 U.S.C. section

13  1404(a) provides: "For the convenience of parties and witnesses, in the interest of justice, a district

14  court may transfer any civil action to any other district or division where it might have been

15  brought." However, a plaintiff's choice of forum is to be given great weight. Pacific Car and

16  Foundry Co. v. Pence (9th Cir. 1968) 403 F.2d 949, 954. A court may justifiably find the effect of

17  plaintiff's choice of forum to be outweighed only if there are other, more compelling considerations.

18  See Moore v. Teflon Communications Corp. (9th Cr. 1978) 589 F.2d 959, 968. The party requesting

19  the transfer of venue bears the burden of establishing the convenience of parties and witnesses and

20  interest of justice requires transfer to another district. Commodity Futures Trading Comm'n v.

21  Savage (9th Cir. 1979) 611 F.2d 270, 279. A transfer will not be ordered if the result is merely to

22  shift the inconvenience from one party to another. Harris Trust & Sav. Bank v. SLT Warehosue Co.,

23  Inc. (n.D. Il. 1985) 605 F.Supp. 225, 227.

24  BdM cannot meet its burden to show transfer of venue is appropriate. BdM's argument that

25  the Southern District of California is more convenient is wrong. First, the fact that the restaurants

26  utilizing the names are operated in San Diego is irrelevant to the intellectual property issues.

27  Second, the fact that a condemnation occurred in 1968 is irrelevant, and BdM's claims that there may

28  be "members of the Cardwell family who may have knowledge" that is relevant to this case is

1  speculative and fails to meet the requirement of particularity. BdM  fails to identify by name any

2  witness related to the condemnation proceeding and how such testimony may be relevant, or where

3  such witness resides. See <u>Heller Financial, Inc. v. Midwhey Powder Co.</u> (7th Cir. 1989) 883 F.2d

4  1286, 1293. Third, the fact that BdM's attorney who negotiated the concession agreement with the

5  State resides in San Diego is not a factor to be considered by the Court in ruling on a discretionary

6  transfer of venue. <u>Soloman v. Continental American</u> (3rd Cir. 1973) 472 F.2d 1043, 1047; <u>In re</u>

7  <u>Horseshoe Entertainment</u> (5th Cir. 2002) 305 F.3d 354, 358. Fourth, BdM's claim that there is "local

8  interest" in the lawsuit is not a proper factor to consider.

9        BdM states "The pendency of two actions in San Diego courts involving issues related to

10  those in this also supports transferring this case to the Southern District of California. (BdM's

11  Motion page 12, lines 23-24.)  In its discussion of these two lawsuits, BdM omits relevant

12  information in an attempt to bolster ties to Southern California.

13        First, BdM references a lawsuit it filed against the State and Delaware North, Inc., in the

14  United States District Court for the Southern District of California in December 2003. (BdM's

15  motion, page 5, lines 8-20, and footnote 3.) BdM attaches a copy of the First Amended Complaint

16  in its Lodgment. Although BdM notes the Court dismissed the case against both State and Delaware

17  North, BdM fails to mention its lawsuit against the State was dismissed in part because the State is

18  immune from suit under the Eleventh Amendment. (See Order Granting Defendant Ruth Coleman's

19  Motion to Dismiss, Exhibit A to State's Notice of Lodgment filed concurrently with this

20  Opposition.)  Therefore, there is no lawsuit between BdM and the State pending in the Southern

21  District. Moreover, BdM's assertion that its lawsuit against Delaware North is "still pending in the

22  Southern District of California" (Motion, page 5, footnote 3) is incorrect.  The trial court ruled

23  BdM's case against Delaware North was unripe (among other things.)  See  Order Granting

24  Defendant Delaware North's Motion to Dismiss, attached as Exhibit B to State's Lodgment.) It is

25  purely speculative for BdM to imply its appeal will be successful, thereby reviving the suit against

26  Delaware North in the Southern District.

27        Second, BdM notes it has challenged the State's decision to lease the property to a new

28  concessionaire, which was upheld by an administrative law judge after a hearing. (BdM's motion,

1  page 2, footnote 1, and page 4, lines 210; page 5, line 7.) BdM states "This case is pending in San

2  Diego County Superior Court." BdM fails to apprise this Court that the administrative hearing on

3  the matter was conducted in Sacramento, and the administrative law judge's proposed decision was

4  adopted by the Director of DPR in Sacramento, California.  (See Decision of Ruth Coleman,

5  incorporating proposed decision of administrative law judge in OAH Case No.N2003120018,

6  attached as Exhibit C to State's Lodgment.)

7         BdM chose to file its petition for writ of mandate challenging the outcome of the

8  administrative decision in San Diego.  BdM fails to note the petition for writ of mandate is limited

9  to a review of the  administrative record and involves no witnesses.  In addition, the hearing on the

10  writ is set for November 22, 2004; therefore, the matter will be concluded within 30 days after

11  BdM's motion for change of venue is heard by this Court. BdM has admitted in its motion to change

12  venue that the trademark issues in this case are unrelated to the issues in the petition for writ of

13  mandate challenging the award of the concession agreement to a third party. (BdM's motion, page

14  4, lines 27-28.)

15                              **CONCLUSION**

16         This Court is the proper venue to resolve this lawsuit.  The State's choice of forum must be

17  given great weight.  In addition, the interests of justice and the convenience of the State's witnesses

18  are best served by adjudicating this matter in the Eastern District of California.  Most, if not all, of

19  the State's witnesses work for the State in the Sacramento office.  Also, all of the documentary

20  evidence relating to the intellectual property issues is located in Sacramento, California.  The fact

21  that the restaurants operated by BdM under its concession agreement with the State are located in

22  San Diego is irrelevant to the legal issues in this case.  It would be burdensome, inconvenient, and

23  unnecessarily costly for the State to litigate this matter in Southern California.  BdM has failed to

24  meet its burden to demonstrate that the State's choice of forum should be disregarded.  The motion

25  to transfer venue should be denied.

26  / / /

27  / / /

28  / / /

1    Dated:  October 12, 2004

2                                  Respectfully submitted,

3                                  BILL LOCKYER
                                   Attorney General of the State of California

4                                  TOM GREENE

5                                  Chief Assistant Attorney General

6                                  MARY HACKENBRACHT
                                   Senior Assistant Attorney General

7                                  CAROL A. SQUIRE
                                   Supervising Deputy Attorney General

8

9

10                                 DAVID H. ROBINSON
                                   Deputy Attorney General

11                                 Attorneys for Plaintiff Department of Parks and Recreation

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## DECLARATION OF SERVICE BY U.S. MAIL

2

**Case Name:** **Department of Parks and Recreation for the State of California v. Bazaar del Mundo, Inc., a California corporation, and DOES 1-50, inclusive**

3

**Case No.:** **04-CIV-1533 (FDC) JFM**

4

I declare:

5

6 I am employed in the Office of the Attorney General, which is the office of a member of the California State Bar at which member's direction this service is made. I am 18 years of age or older and not a party to this matter. I am familiar with the business practice at the Office of the Attorney 7 General for collection and processing of correspondence for mailing with the United States Postal Service. In accordance with that practice, correspondence placed in the internal mail collection 8 system at the Office of the Attorney General is deposited with the United States Postal Service that same day in the ordinary course of business.

9

On October 12, 2004, I served the attached **PLAINTIFF DEPARTMENT OF PARKS AND** 10 **RECREATION FOR THE STATE OF CALIFORNIA POINTS AND AUTHORITIES IN SUPPORT OF ITS OPPOSITION TO TRANSFER VENUE** by placing a true copy thereof 11 enclosed in a sealed envelope with postage thereon fully prepaid, in the internal mail collection system at the Office of the Attorney General at 110 West "A" Street, Suite 1100, San Diego, 12 California 92101, addressed as follows:

13

**CALLIE A. BJURSTROM, ESQ.**
**MICHELLE A. HERRERA, ESQ.**
14 **LUCE, FORWARD, HAMILTON & SCRIPPS LLP**
**600 WEST BROADWAY, SUITE 2600**
15 **SAN DIEGO, CA 92101-3391**

16

**RICHARD P. SYBERT, ESQ.**
**BRETT M. MIDDLETON, ESQ.**
17 **GORDON & REES LLP**
**101 WEST BROADWAY, SUITE 1600**
18 **SAN DIEGO, CA 92101**

19

I declare under penalty of perjury under the laws of the State of California the foregoing is true and 20 correct and that this declaration was executed on October 12, 2004, at San Diego, California.

21

22 **M. CAROLINA SAHELI**

23 Declarant                                  Signature

24

25

26

27

28

ORIGINAL



FILED

OCT - 4 2004

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY_____
             DEPUTY CLERK

1 BILL LOCKYER
Attorney General of the State of California
2 TOM GREENE
Chief Assistant Attorney General
3 MARY E. HACKENBRACHT
Senior Assistant Attorney General
4 CAROL A. SQUIRE
Supervising Deputy Attorney General
5 DAVID H. ROBINSON, State Bar No. 74956
Deputy Attorney General
6  110 West A Street, Suite 1100
San Diego, CA 92101
7 P.O. Box 85266
San Diego, CA 92186-5266
8 Telephone: (619) 645-2609
Fax: (619) 645-2581
9
RICHARD P. SYBERT, State Bar No. 80731
10 BRETT M. MIDDLETON, State Bar No. 199427
GORDON & REES LLP
11 101 West Broadway, Suite 1600
San Diego, CA 92101
12 Telephone No.: (619) 696-6700
Fax No.: (619) 696-7124
13
Attorneys for Plaintiff Department of Parks and
14 Recreation

15 CALLIE A. BJURSTROM, State Bar No. 137816
MICHELLE A. HERRERA, State Bar No. 209842
16 LUCE FORWARD HAMILTON & SCRIPPS LLP
600 West Broadway, Suite 2600
17 San Diego, CA 92101
Telephone No.: (619) 236-1414
18 Fax No.: (619) 232-8311

19 Attorneys for Defendant Bazaar del Mundo, Inc.

20              IN THE UNITED STATES DISTRICT COURT

21              FOR THE EASTERN DISTRICT OF CALIFORNIA

22

23 | DEPARTMENT OF PARKS AND RECREATION | CASE NO.  CIV-S-04-1533
FOR THE STATE OF CALIFORNIA, | FCD JFM
24 | |
Plaintiff, | JOINT STATUS REPORT
25 | |
v. | |
26 | |
BAZAAR DEL MUNDO, INC., a California | Hearing:
27 corporation, and DOES 1-50, inclusive, | Time:
| Courtroom:
28 Defendant. | Judge:    Frank C. Damrell, Jr.

JOINT STATUS REPORT



1    Plaintiff, the Department of Parks and Recreation for the State of California and Defendant,

2  Bazaar del Mundo, Inc., a California corporation submit this Joint Status Report.

3    (a)    A brief summary of the claims and legal theories under which recovery is sought or

4          liability denied.

5  Response:

6  Plaintiff, the Department of Parks and Recreation for the state of California ("State"), seeks

7  a declaratory judgment that it is the lawful owner of the names "Casa de Bandini" and "Casa

8  de Pico."  State has exclusive rights to these historical names that Defendant Bazaar del

9  Mundo ("BdM") fraudulently and wrongfully registered as trademarks. BdM has used these

10  names at its concession at Old Town State Historical Park for the 32 years by written

11  permission from State as part of its concessionaire/licensing agreement. State seeks damages

12  and attorneys' fees based on BdM's wrongful acts, which form the basis for State's five

13  causes of action, including: declaratory relief; fraudulent trademark infringement; unfair

14  business practices; false advertising; and false designation of origin.

15  Bazaar del Mundo ("BdM") denies liability on all claims asserted by plaintiff.  BdM has

16  incontestable and exclusive ownership rights in the trademarks at issue in this matter and has

17  valid federal and state registrations of the marks.  Plaintiff will not be able to establish any

18  ownership interest in the subject trademarks, a necessary predicate to all of its claims.  Even

19  if plaintiff ever acquired any rights in the trademarks (which it has not), plaintiff failed to

20  reserve any interest in the marks and abandoned the marks by failing to use them in

21  commerce and through improper licensing.

22    (b)    Status of service on all defendants and cross-defendants.

23  Response:

24  All defendants have been served.

25  ///

26  ///

27  ///

28  ///

JOINT STATUS REPORT

(c)     Possible joinder of additional parties.

Response:

State does not intend to join any parties unless any third party attempts to use the names that are the subject of this lawsuit.

BdM does not presently intend to join any parties to this action.  Should any third party attempt to use BdM's trademarks that are the subject of this matter under ostensible permission from plaintiff, however, BdM will likely file a third party complaint for trademark infringement against that third party.

(d)     Contemplated amendments to the pleadings.

Response:

State will amend its pleadings if BdM uses the names after the expiration of its holdover tenancy.  BdM does not presently intend to amend its pleadings.

(e)     The statutory basis for jurisdiction and venue.

Response:

This Court has federal question subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1441.  BdM has filed a motion to transfer venue pursuant to 28 U.S.C. § 1404(a) on the grounds that the Eastern District of California is an inconvenient forum for the parties and the witnesses, and that venue lies more appropriately in the Southern District of California.  State opposes the motion to transfer venue on the basis that this Court is the proper forum for this matter, and the forum is not inconvenient to the parties and witnesses. State will files its opposition to the motion shortly.

(f)     Anticipated discovery and the scheduling of discovery, including the following:

    (1)     What changes, if any, should be made in the timing, form, or requirement for disclosures under Rule 26(a), including a statement as to when disclosures under Rule 26(a)(1) were made or will be made;

    Response:

    State and BdM agree that the disclosures required by Fed. R. Civ. P. 26(a) should be stayed pending the outcome of BdM's motion to transfer venue, which will be heard

JOINT STATUS REPORT

1    on October 29, 2004.  State and BdM do not object to the form of disclosures
2    required by Rule 26(a).

3    (2)       The subjects on which discovery may be needed; when discovery should be
4             completed, and whether discovery should be conducted in phases;

5    <u>Response</u>:

6    State intends to issue and conduct discovery relating to: (1) BdM's assertion of rights
7    in, and use of, the State-owned marks; (2) BdM's fraudulent and unlawful
8    registration of the marks; (3) BdM's factual and legal bases for BdM's affirmative
9    defenses; and (4) BdM's basis for violating the terms of the concessionaire/licensing
10   agreement with the State.  State does not believe discovery should be conducted in
11   phases.

12   BdM intends to issue discovery related to plaintiff's alleged acquisition of rights in
13   and use of BdM's trademarks; plaintiff's knowledge regarding BdM's federal and
14   state registrations of these marks; BdM's prolonged, open and notorious use of the
15   marks; and plaintiff's failure to reserve any interest in the marks to itself, assuming
16   it ever acquired any interest in these marks.  The completion date of discovery
17   depends upon the Court's ruling on BdM's motion to transfer venue, but BdM
18   anticipates that discovery can be completed by May 2005. BdM does not believe that
19   discovery should be conducted in phases.

20   (3)       What changes, if any, should be made in the limitations on discovery
21             imposed under the Civil Rules and what other limitations, if any, should
22             be imposed;

23   <u>Response</u>:

24   State and BdM do not believe any changes or other limitations should be made to the
25   discovery limitations set forth in the Federal Rules of Civil Procedure.

26   (4)       The timing of the disclosure of expert witnesses and information required
27             by Rule 26(a)(2); and

28   ///

Response:

State and BdM expect that the disclosure of expert witnesses and information required by Rule 26(a)(2) can be completed by February 2005.

(5)    Proposed dates for discovery cut-off.

Response:

State and BdM expect that discovery can be completed by May 2005.

(g)    Contemplated dispositive motions and proposed date by which all non-discovery motions shall be heard.

Response:

State intends to file a motion to strike many of BdM's affirmative defenses following the Court's ruling on the motion to transfer venue. In addition, State intends to file a motion for summary judgment/adjudication in June 2005.

BdM intends to file a motion for judgment on the pleadings following the Court's ruling on BdM's motion to transfer venue. If necessary, BdM intends to file a motion for summary judgment or summary adjudication at the close of discovery in approximately June or July 2005.

(h)    Proposed date for final pretrial conference.

Response:

State and BdM anticipate that a final pre-trial conference can be held in August 2005.

(i)    Proposed date for trial, estimate of days of trial, and whether any party has demanded a jury.

Response:

State has demanded a jury trial and estimates the length of trial to be seven days. State and BdM propose trial be held in September 2005. BdM has demanded a jury trial and estimates the length of trial will be seven to ten days.

(j)    Appropriateness of special procedures such as reference to a special master or agreement to try the matter before a magistrate judge pursuant to 28 U.S.C. 636(c).

///

JOINT STATUS REPORT

Response:

State and BdM do not believe a special master is appropriate for this case. State will not agree to a trial before a magistrate judge. BdM may be amenable to trial before a magistrate judge.

(k)     Proposed modification of standard pretrial procedures because of the simplicity or complexity of the case.

Response:

State and BdM agree to standard pretrial procedures.

(l)     Whether the case is related to any other case pending in this district, including the bankruptcy courts of this district.

Response:

There are no related cases pending within this district. BdM states there is a related case "pending in the Southern District of California." State notes the case referenced by BdM was brought by BdM against State and Delaware North, Inc.. The case was dismissed against both defendants, and BdM has appealed the matter to the Ninth Circuit Court of Appeals only against Delaware North. Therefore, it is State's position there is no pending case in the Southern District of California.

(m)     Prospects for settlement, including whether a settlement conference should be scheduled and whether, in the case of a jury trial, the parties will stipulate to the trial judge acting as settlement judge.

Response:

State believes prospects for settlement are slim, and believes a settlement conference should not be scheduled at this time. State will not stipulate to the trial judge acting as settlement judge.

In light of the pendency of BdM's motion to transfer venue and its intent to file a motion for judgment on the pleadings that may resolve this case in its entirety, a settlement conference should not be scheduled at this time. As a result, BdM will not stipulate at this time to the trial judge acting as the settlement judge.

1    (n)    Any other matters that may be conducive to the just and expeditious disposition of

2    the case.

3    <u>Response</u>:

4    State and BdM are not aware of any other matters that may be conducive to the just and

5    expeditious disposition of this case.

6    Dated:  October 1, 2004

7                  Respectfully submitted,

8                  BILL LOCKYER
                      Attorney General of the State of California

9                  TOM GREENE
                      Chief Assistant Attorney General

10                MARY E. HACKENBRACHT
                      Senior Assistant Attorney General

11                CAROL A. SQUIRE
                      Supervising Deputy Attorney General

12

13

14                DAVID H. ROBINSON
                      Deputy Attorney General

15                Attorneys for Department of
                      Parks and Recreation

16

17                CALLIE A. BJURSTROM, ESQ.
                      MICHELLE A. HERRERA, ESQ.

18                Luce Forward Hamilton & Scripps LLP
                      Attorneys for Bazaar del Mundo, Inc.

19

20
    Joint Status Report - final.wpd

21

22

23

24

25

26

27

28

JOINT STATUS REPORT

1   (n)   Any other matters that may be conducive to the just and expeditious disposition of

2   the case.

3   Response:

4   State and BdM are not aware of any other matters that may be conducive to the just and

5   expeditious disposition of this case.

6   Dated:  October 1, 2004

7                                            Respectfully submitted,

8                                            BILL LOCKYER
                                             Attorney General of the State of California
9                                            TOM GREENE
                                             Chief Assistant Attorney General
10                                           MARY E. HACKENBRACHT
                                             Senior Assistant Attorney General
11                                           CAROL A. SQUIRE
                                             Supervising Deputy Attorney General

12

13                                           DAVID H. ROBINSON
14                                           Deputy Attorney General
                                             Attorneys for Department of
15                                           Parks and Recreation

16                                           _Michelle Herrera_
17                                           CALLIE A. BJURSTROM, ESQ.
                                             MICHELLE A. HERRERA, ESQ.
18                                           Luce Forward Hamilton & Scripps LLP
                                             Attorneys for Bazaar del Mundo, Inc.

19

20   Joint Status Report - final.wpd

21

22

23

24

25

26

27

28

**JOINT STATUS REPORT**

7

## DECLARATION OF SERVICE BY U.S. MAIL

**Case Name:**   **Department of Parks and Recreation for the State of California v. Bazaar Del Mundo, Inc., a California Corporation, and Does 1-50, Inclusive**

**Case No.:**      **CIV-S-04-1533**

I declare:

I am employed in the Office of the Attorney General, which is the office of a member of the California State Bar which member's direction this service is made. I am 18 years of age and older and not a party to this matter. I am familiar with the business practice at the Office of the Attorney General for collection and processing of correspondence for mailing with the United States Postal Service. In accordance with that practice, correspondence placed in the internal mail collection system at the Office of the Attorney General is deposited with the United States Postal Service that same day in the ordinary course of business.

On October 1, 2004, I served the attached **JOINT STATUS REPORT** by placing a true copy thereof enclosed in a sealed envelope with postage thereon fully prepaid, in the internal mail collection system at the Office of the Attorney General at 110 West "A" Street, Suite 1100, San Diego, California 92101, addressed as follows:

RICHARD P. SYBERT
BRETT M. MIDDLETON
GORDON & REES, LLP
101 WEST BROADWAY, SUITE 1600
SAN DIEGO, CA 92101

CALLIE A. BJURSTROM
MICHELLE A. HERRERA
LUCE, FORWARD, HAMILTON & SCRIPPS LLP
600 WEST BROADWAY, SUITE 2600
SAN DIEGO, CA 92101-3391

I declare under penalty of perjury under the laws of the State of California the foregoing is true and correct and that this declaration was executed on October 1, 2004, at San Diego, California.

| M. Carolina Saheli | |
| --- | --- |
| Declarant | Signature |

80038049.wpd



**AMENDED** PROOF OF SERVICE

FILED

SEP - 2 2004

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

DEPUTY CLERK

Dept. of Parks and Recreation for the State of California v. Bazaar del Mundo, Inc.

Case No. 04-CV-1533 (FCD) JFM, Judge: Hon. Frank C. Damrell, Jr., Dept: 2

I, Casandra Rose, declare as follows:

I am employed with the law firm of Luce, Forward, Hamilton & Scripps LLP, whose address is 600 West Broadway, Suite 2600, San Diego, California 92101-3372. I am over the age of eighteen years, and am not a party to this action.

On September 1, 2004, I served the following:

1. **DEFENDANT BAZAAR DEL MUNDO, INC.'S NOTICE OF MOTION AND MOTION TO TRANSFER VENUE PURSUANT TO 28 U.S.C. § 1404(a);**

2. **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT BAZAAR DEL MUNDO, INC.'S MOTION TO TRANSFER VENUE PURSUANT TO 29 U.S.C. § 1404(a);**

3. **REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF DEFENDANT BAZAAR DEL MUNDO, INC.'S MOTION TO TRANSFER VENUE PURSUANT TO 28 U.S.C. § 1404(a);**

4. **NOTICE OF LODGMENT OF EXHIBITS IN SUPPORT OF DEFENDANT BAZAAR DEL MUNDO, INC.'S MOTION TO TRANSFER VENUE PURSUANT TO 29 U.S.C. § 1404(a);**

5. **DECLARATION OF DIANE POWERS IN SUPPORT OF DEFENDANT BAZAAR DEL MUNDO, INC.'S MOTION TO TRANSFER VENUE PURSUANT TO 28 U.S.C. § 1404(a);**

on the interested parties in this action by:

 X____ **U. S. MAIL:** I placed a copy in a separate envelope, with postage fully prepaid, for each address named on the attached service list for collection and mailing on the below indicated day following the ordinary business practices at Luce, Forward, Hamilton & Scripps LLP. I certify I am familiar with the ordinary business practices of my place of employment with regard to collection for mailing with the United States Postal Service. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit or mailing affidavit.

_____ **OVERNIGHT MAIL:** I sent a copy via overnight mail, Airbill No. _____.

_____ **OVERNIGHT COURIER SERVICE:** I placed a copy in a separate envelope addressed to each addressee as indicated below, and caused such envelope(s) to be delivered via _____.

_____ **HAND DELIVERY:** I placed a copy in a separate envelope addressed to each addressee as indicated below, and delivered it to _____ for personal service.

1

1    **FACSIMILE:** I sent a copy via facsimile transmission to the telefax number(s) indicated below. The facsimile machine I used complied with California Rules of Court, Rule 2003 and no error was reported by machine. Pursuant to California Rules of Court, Rule 2006(d), I caused the machine to print a transmission record of the transmission, a copy of which is attached to this declaration.

2

3

4    David H. Robinson, Esq.               *Attorneys for Plaintiff Department of*
     Deputy Attorney General              *Parks and Recreation for the State of*
5    State of California                  *California*
     110 West A St., Suite 1100
6    San Diego, CA 92101
     Tel. 619.645.2609
7    Fax. 619.645.2581

8    Richard Sybert, Esq.                 *Attorneys for Plaintiff Department of*
     Brett M. Middleton, Esq.             *Parks and Recreation for the State of*
9    Gordon & Rees, LLP                   *California*
     101 West Broadway, Suite 1600
10   San Diego, CA 92101
     Tel. 619.696.7124
11   Fax. 619.696.7124

12

13   **(STATE):** I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

14   X     **(FEDERAL):** I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

15

16   Executed at San Diego, California on September 1, 2004.

17

18   CASANDRA ROSE

19

20

21   1995168.1

22

23

24

25

26

27

28

2

FILED

ORIGINAL   FCD

AUG 31 2004

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
DEPUTY CLERK

<u>PROOF OF SERVICE</u>

Dept. of Parks and Recreation for the State of California v. Bazaar del Mundo, Inc.

Case No. 04-CV-1533 (FCD) JFM, Judge: Hon. Frank C. Damrell, Jr. Dept: 2

I, Casandra Rose, declare as follows:

I am employed with the law firm of Luce, Forward, Hamilton & Scripps LLP, whose address is 600 West Broadway, Suite 2600, San Diego, California 92101-3372. I am over the age of eighteen years, and am not a party to this action.

On August 31, 2004, I served the following:

1. **DEFENDANT BAZAAR DEL MUNDO, INC.'S NOTICE OF MOTION AND MOTION TO TRANSFER VENUE PURSUANT TO 28 U.S.C. § 1404(a);**

2. **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT BAZAAR DEL MUNDO, INC.'S MOTION TO TRANSFER VENUE PURSUANT TO 29 U.S.C. § 1404(a);**

3. **REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF DEFENDANT BAZAAR DEL MUNDO, INC.'S MOTION TO TRANSFER VENUE PURSUANT TO 28 U.S.C. § 1404(a);**

4. **NOTICE OF LODGMENT OF EXHIBITS IN SUPPORT OF DEFENDANT BAZAAR DEL MUNDO, INC.'S MOTION TO TRANSFER VENUE PURSUANT TO 29 U.S.C. § 1404(a);**

5. **DECLARATION OF DIANE POWERS IN SUPPORT OF DEFENDANT BAZAAR DEL MUNDO, INC.'S MOTION TO TRANSFER VENUE PURSUANT TO 28 U.S.C. § 1404(a);**

on the interested parties in this action by:

__X__    U. S. MAIL: I placed a copy in a separate envelope, with postage fully prepaid, for each address named on the attached service list for collection and mailing on the below indicated day following the ordinary business practices at Luce, Forward, Hamilton & Scripps LLP. I certify I am familiar with the ordinary business practices of my place of employment with regard to collection for mailing with the United States Postal Service. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit or mailing affidavit.

_____    OVERNIGHT MAIL: I sent a copy via overnight mail, Airbill No. _____.

_____    OVERNIGHT COURIER SERVICE: I placed a copy in a separate envelope addressed to each addressee as indicated below, and caused such envelope(s) to be delivered via _____.

_____    HAND DELIVERY: I placed a copy in a separate envelope addressed to each addressee as indicated below, and delivered it to _____ for personal service.

1

10

1    **FACSIMILE:** I sent a copy via facsimile transmission to the telefax number(s) indicated below. The facsimile machine I used complied with California Rules of Court, Rule 2003 and no error was reported by machine. Pursuant to California Rules of Court, Rule 2006(d), I caused the machine to print a transmission record of the transmission, a copy of which is attached to this declaration.

David H. Robinson, Esq.
Deputy Attorney General
State of California
110 West A St., Suite 1100
San Diego, CA 92101
Tel. 619.645.2609
Fax. 619.645.2581

*Attorneys for Plaintiff Department of Parks and Recreation for the State of California*

Richard Sybert, Esq.
Brett M. Middleton, Esq.
Gordon & Rees, LLP
101 West Broadway, Suite 1600
San Diego, CA 92101
Tel. 619.696.7124
Fax. 619.696.7124

*Attorneys for Plaintiff Department of Parks and Recreation for the State of California*

___    **(STATE):** I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

**X**    **(FEDERAL):** I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Executed at San Diego, California on August 31, 2004.

*Casandra Rose*

CASANDRA ROSE

1995168.1

2

1  Callie A. Bjurstrom, State Bar No. 137816
   Michelle A. Herrera, State Bar No. 209842
2  LUCE, FORWARD, HAMILTON & SCRIPPS LLP
   600 West Broadway, Suite 2600
3  San Diego, California 92101-3372
   Telephone No.: 619.236.1414
4  Fax No.: 619.232.8311

5  Attorneys for Defendant Bazaar del Mundo, Inc.

6

7

8                  UNITED STATES DISTRICT COURT

9                 EASTERN DISTRICT OF CALIFORNIA

10

11  DEPARTMENT OF PARKS AND              Case No. 04-CV-1533 (FCD) JFM
    RECREATION FOR THE STATE OF
12  CALIFORNIA,                          **NOTICE OF LODGMENT OF EXHIBITS
                                         IN SUPPORT OF DEFENDANT BAZAAR
13                                       DEL MUNDO, INC.'S MOTION TO
               Plaintiff,                TRANSFER VENUE PURSUANT TO 28
14                                       U.S.C. § 1404(a)**
    v.
15                                       Date:   October 29, 2004
    BAZAAR DEL MUNDO, INC., a California  Time:   10:00 a.m.
16  corporation, and DOES 1-50, inclusive,  Dept:   2
                                         Judge:  Hon Frank C. Damrell, Jr.
17             Defendant.

18

19      TO PLAINTIFF AND ITS ATTORNEYS OF RECORD:

20          PLEASE TAKE NOTICE THAT Defendant Bazaar del Mundo, Inc. hereby lodges true

21  and correct copies of the following exhibits in support of its Motion to Transfer Venue Pursuant to

22  28 U.S.C. § 1404(a).

23  | **Exhibit** | **Description** |
24  | A. | Judgment in Condemnation issued October 17, 1968 in San Diego Superior Court, Case No. 301993. |
25
26  | B. | United States Patent & Trademark Registration No. 1,364,974 for the mark CASA DE PICO issued to Bazaar del Mundo, Inc. on October 8, 1985. |
27  | C. | United States Patent & Trademark Registration No. 1,350,088 for the mark CASA DE BANDINI issued to Bazaar del Mundo, Inc. on July 16, 1985. |
28

                              9          1                  Case No. 04-CV-1533 (FCD) JFM

FILED

AUG 3 1 2004

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
       DEPUTY CLERK

ORIGINAL

| 1 | D. | Certificate of Registration for Service Mark No. 21972, for the mark CASA DE PICO, issued to Bazaar del Mundo, Inc. by the State of California on |
| 2 | | January 14, 1985. |

3   E.   Certificate of Registration for Service Mark No. 21975, for the mark CASA DE BANDINI, issued to Bazaar del Mundo, Inc. by the State of California on January 14, 1985.

5   F.   Bazaar del Mundo's First Amended Complaint filed against Delaware North Companies Parks and Resorts and Ruth Coleman, in her official capacity as the Director of the Department of Parks and Recreation for the State of California, on December 29, 2003 in Case No. 03-cv-2284 TJW(LSP) in the United States District Court for the Southern District of California.

G.   Reply Memorandum of Points and Authorities in Support of Defendant Ruth Coleman's Motion to Dismiss or Stay Amended Complaint filed on or about January 29, 2004 in Case No. 03-cv-2284 TJW(LSP) in the United States District Court for the Southern District of California.

DATED: August 30, 2004      LUCE, FORWARD, HAMILTON & SCRIPPS LLP

By: _____
Callie A. Bjurstrom
Michelle A. Herrera
Attorneys for Defendant Bazaar del Mundo, Inc.

1993704.1

1   THOMAS C. LYNCH, Attorney General
    of the State of California
2   WILLARD A. SHANK,
    Assistant Attorney General
3   JOHN M. MORRISON,
    Deputy Attorney General
4   Room 500, Wells Fargo Bank Building
  Fifth Street and Capitol Mall
5   Sacramento, California 95814
  Telephone: 445-4988
6
  Attorneys for Plaintiff
7

FILED
Oct 18 12 23 PH '68
JAMES, CLERK
BY _____ DEPUTY

ENTERED
OCT 17 1968
650 283
Judgment Book___ Pg___

8      SUPERIOR COURT OF THE STATE OF CALIFORNIA

9       FOR THE COUNTY OF SAN DIEGO

10

11   STATE OF CALIFORNIA, acting by
  and through the State Public
12   Works Board,
                NO. 301993
13          Plaintiff,

14     vs.            JUDGMENT IN
                     CONDEMNATION
15   CARDWELL CORPORATION, a
  California corporation; UNITED
16   STATES OF AMERICA; THE CITY OF
  SAN DIEGO, a municipal corpora-
17   tion; THE COUNTY OF SAN DIEGO,
  a political subdivision; DOE ONE
18   TO DOE ONE HUNDRED, Inclusive;
  and ALL PERSONS UNKNOWN CLAIMING
19   ANY TITLE OR INTEREST IN OR TO
  THE WITHIN DESCRIBED PROPERTY,
20          Defendants.
21

*See Reverse*

*for ____ __*

22

23      The above-entitled cause having come on for trial

24 in the above-entitled court, as to the parcels of property

25 described in the complaint in eminent domain on file herein,

26 commencing on August 26, 1968, the Honorable Robert O. Staniforth,

27 Judge of the Superior Court, presiding with a jury, the plaintiff

28 above named appearing by its counsel, THOMAS C. LYNCH, Attorney

29 General of the State of California, by JOHN M. MORRISON, Deputy

30 Attorney General, and the defendants, FRANK K. CARDWELL,

31 JAMES H. CARDWELL, and NORA CARDWELL (formerly Cardwell Corporation)

1

ORIGINAL

1    appearing by their attorneys, HIGGS, JENNINGS, FLETCHER & MACK,

2    by PAUL EUGENE OVERTON, and the issue of just compensation

3    having been submitted to a jury of twelve duly qualified

4    persons, which returned a verdict of the fair market value

5    of the property sought to be condemned and all improvements

6    thereon pertaining to the realty as of July 6, 1967, as follows:

7         Parcel No. 6...................$ 65,000

8         Parcel No. 10.................$261,884

9         Parcels No. 11 and 13.......$ 80,000

10        Parcel No. 38.................$ 71,292

11        Parcel No. 41.................$420,000;

12   and all other issues having been submitted to the court or

13   stipulated to by the parties, and evidence, both oral and

14   documentary, having been offered and received, and the matter

15   having been argued; and the defendant, the County of San Diego

16   having filed an answer claiming tax liens against all compensa-

17   tion awarded for the condemnation of the property, made no

18   appearance at the trial herein; and the defendant, City of

19   San Diego, having filed a disclaimer in the proceeding, made no

20   further appearance at the trial; and Doe One through Doe One

21   Hundred were dismissed prior to trial; and Findings of Fact and

22   Conclusions of Law, having been filed herein; and good cause

23   appearing therefor;

24        IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that

25   upon payment by plaintiff into court of the total sum of

26   EIGHT HUNDRED NINETY-EIGHT THOUSAND ONE HUNDRED SEVENTY-SIX AND

27   NO/100 DOLLARS ($898,176.00), together with defendants' costs of

28   suit as hereinafter set forth, there shall be condemned in favor

29   of plaintiff, State of California, acting by and through the

30   State Public Works Board, for the public use and purpose set

31   forth in plaintiff's complaint in eminent domain, all of the

                                2.

1    aforesaid real properties, together with all improvements

2    thereon pertaining to the realty, more particular described

3    as follows, to wit:

4          A fee simple absolute in and to all those certain

5    parcels of real property lying within the County of San Diego,

6    State of California, described as follows:

7    PARCEL 6

8          That portion of Lot 3 in Block 408 of Old San
9    Diego, in the City of San Diego, County of San Diego,
      State of California, according to map thereof made by
10   James Pascoe in 1870, described as follows:

11         Beginning at the most Northerly corner of said
      Block, on the Southwesterly line of Calhoun Avenue,
12   formerly Fitch Street, and the Southeasterly line
      of Taylor Street; thence Southeasterly along the
13   Southwesterly line of Calhoun Avenue, formerly Fitch
      Street, 460.2 feet to a point, being an angle point
14   in the land conveyed to James B. Young and Minnie L.
      Young by deed from Margaret W. Rowen, dated
15   February 26, 1926, recorded in book 1117, page 107
      of Deeds, and being the true point of beginning of
16   the property herein described; thence making an angle
      to the right of 89° 33' and running along the
17   boundary of said Young's land, 81.9 feet to an angle
      point therein; thence making an angle to the left
18   of 90° 36' and running along the boundary of said
      Young's land, 77.08 feet, more or less, to the North-
19   westerly line of Wallace Street, adjoining Washington
      Square on the Northwest; thence Northeasterly along
20   the Northwesterly line of said Wallace Street to
      the Southwesterly line of said Calhoun Avenue; thence
21   Northwesterly along said Calhoun Avenue to point of
      beginning.

22    PARCELS 10, 11 and 13

23        Lots 1, 2, 3 and 4 in Block 426 of Old San
24   Diego, in the City of San Diego, County of San Diego,
      State of California, according to map thereof made
25   by James Pascoe in 1870, a copy of which said map
      was filed in the office of the County Recorder of
26   said County, December 12, 1921 and is known as
      Miscellaneous Map No. 40.

27        Excepting the Southeasterly 100.00 feet of said
28   Lot 4.

        Also excepting the Southeasterly 102.00 feet,
29   measured along the Northeasterly and Southwesterly
      lot lines, of said Lot 3.

30        Also, excepting those portions of said Lots 1
31   and 4, described as follows:

-3-

Beginning at a point in the Southwesterly line of said Lot 4 distant thereon 178.50 feet Northwesterly from the most Southerly corner of said lot; thence Northwesterly along the Southwesterly line of said lots a distance of 56.00 feet; thence Northeasterly parallel with the Southeasterly line of Lot 4 a distance of 79.50 feet; thence Southeasterly parallel with said Southwesterly line a distance of 56.00 feet; thence Southwesterly parallel with the Southeasterly line of Lot 4 a distance of 79.50 feet to the point of beginning.

PARCEL 38

Lot 2 in Block 436 of Old San Diego, in the City of San Diego, County of San Diego, State of California, according to map made by James Pascoe in 1870, on file in the office of the City Engineer of the City of San Diego.

EXCEPTING THEREFROM the Southeasterly 32-1/4 feet thereof.

PARCEL 41

Lots 1, 2, 3 and 4 in Block 451 of Old San Diego, in the City of San Diego, County of San Diego, State of California, according to the map thereof made by James Pascoe in 1870, filed in the office of the County Recorder of San Diego County,

together with all improvements thereon pertaining to the realty.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that out of the total sum of EIGHT HUNDRED NINETY-EIGHT THOUSAND ONE HUNDRED SEVENTY-SIX AND NO/100 DOLLARS ($898,176.00), there shall be paid to the defendant County of San Diego such amounts, if any, as may arise by reason of taxes.

The remainder of the sum hereinabove provided to be paid by plaintiff shall be paid to the defendants Frank K. Cardwell, James H. Cardwell, and Nora Cardwell, in such amounts as this Court may determine.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the use for which said properties are sought to be condemned is a public use authorized by law; and the taking of said properties is necessary for such public use; and the public interest, necessity, and convenience require the acquisition of the whole thereof as described in the complaint in eminent domain on

4.

file herein.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the defendants, Frank K. Cardwell, James H. Cardwell, and Nora Cardwell are entitled to their costs in the sum of $ 81.43

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the defendants, Frank K. Cardwell, James H. Cardwell, and Nora Cardwell, and each of them, shall deliver possession of said land and all improvements thereon pertaining to the realty to the plaintiff, free and clear of all personal property not later than November 15, 1968.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the payment into court of the sum hereinabove provided, together with said defendants' costs of suit, is full payment for the land and all the improvements thereon pertaining to the realty so taken in fee, together with all damages of whatsoever kind and nature, if any, suffered by said defendants by reason of the taking or damaging of said land and all improvements thereon pertaining to the realty.

DATED:

JUDGE OF THE SUPERIOR COURT
ROBERT O. STANIFORTH

5.



# Nº 1364974

# THE UNITED STATES OF AMERICA

## CERTIFICATE OF REGISTRATION

This is to certify that the records of the Patent and Trademark Office show that an application was filed in said Office for registration of the Mark shown herein, a copy of said Mark and pertinent data from the Application being annexed hereto and made a part hereof,

And there having been due compliance with the requirements of the law and with the regulations prescribed by the Commissioner of Patents and Trademarks,

Upon examination, it appeared that the applicant was entitled to have said Mark registered under the Trademark Act of 1946, and the said Mark has been duly registered this day in the Patent and Trademark Office on the

### PRINCIPAL REGISTER

to the registrant named herein.

This registration shall remain in force for Twenty Years unless sooner terminated as provided by law.



In Testimony Whereof I have hereunto set my hand and caused the seal of the Patent and Trademark Office to be affixed this eighth day of October, 1985.

Commissioner of Patents and Trademarks-Designate

Int. Cl.: 42

Prior U.S. Cl.: 100

## United States Patent and Trademark Office

Reg. No. 1,364,974
Registered Oct. 8, 1985

<div align="center">

SERVICE MARK
PRINCIPAL REGISTER

### CASA DE PICO

</div>

BAZAAR DEL MUNDO, INC. (CALIFORNIA CORPORATION)
2754 CALHOUN STREET
SAN DIEGO, CA 92110

   FOR: RESTAURANT SERVICES, IN CLASS 42 (U.S. CL. 100).
   FIRST USE 11-0-1971; IN COMMERCE 11-0-1971.

THE ENGLISH TRANSLATION OF THE PHRASE "CASA DE PICO" IN THE MARK IS "HOUSE OF PICO".

   SER. NO. 516,325, FILED 1-7-1985.

JEANNETTE M. LOPEZ, EXAMINING ATTORNEY

UNITED STATES DEPARTMENT OF COMMERCE
**Patent and Trademark Office**
ASSISTANT SECRETARY AND COMMISSIONER
OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

REGISTRATION NO. 1364974     SERIAL NO. 73/516325          PAPER NO.

MAILING DATE: 08/05/91

MARK: CASA DE PICO

RECEIVED

REGISTRANT: BAZAAR DEL MUNDO, INC.

AUG 9 1991

LFH&S/DSG

CORRESPONDENCE ADDRESS:
  DAVID S. GOODER
  LUCE, FORWARD, HAMILTON & SCRIPPS
  1700 THE BANK OF CALIFORNIA PLAZA
  110 WEST A STREET
  SAN DIEGO, CA 92101

Please furnish the following
in all correspondence:

1. Your phone number and zip code.
2. Mailing date of this action.
3. Affidavit-Renewal Examiner's name.
4. The address of all correspondence
   not containing fees should include
   the words "Box 5".
5. Registration No.

RECEIPT IS ACKNOWLEDGED OF THE SUBMITTED REQUEST UNDER:

SECTION 8 OF THE TRADEMARK STATUTE AND 37 CFR SECS. 2.161-2.166.

SECTION 15 OF THE TRADEMARK STATUTE AND 37 CFR SECS. 2.167-2.168.

YOUR REQUEST FULFILLS THE STATUTORY REQUIREMENTS AND HAS BEEN ACCEPTED.

CATHERINE HILL
AFFIDAVIT-RENEWAL EXAMINER
TRADEMARK EXAMINING OPERATION
(703) 557-1988



Nº 1350088

# THE UNITED STATES OF AMERICA

### CERTIFICATE OF REGISTRATION

This is to certify that the records of the Patent and Trademark Office show that an application was filed in said Office for registration of the Mark shown herein, a copy of said Mark and pertinent data from the Application being annexed hereto and made a part hereof,

And there having been due compliance with the requirements of the law and with the regulations prescribed by the Commissioner of Patents and Trademarks,

Upon examination, it appeared that the applicant was entitled to have said Mark registered under the Trademark Act of 1946, and the said Mark has been duly registered this day in the Patent and Trademark Office on the

### PRINCIPAL REGISTER

to the registrant named herein.

This registration shall remain in force for Twenty Years unless sooner terminated as provided by law.



In Testimony Whereof I have hereunto set my hand and caused the seal of the Patent and Trademark Office to be affixed this sixteenth day of July, 1985.

*Acting Commissioner of Patents and Trademarks*

Int. Cl.: 42

Prior U.S. Cl.: 100

**United States Patent and Trademark Office**   Reg. No. 1,350,088
Registered July 16, 1985

## SERVICE MARK
### PRINCIPAL REGISTER

## CASA DE BANDINI

BAZAAR DEL MUNDO, INC. (CALIFORNIA CORPORATION)
2754 CALHOUN STREET
SAN DIEGO, CA 92110

FOR: RESTAURANT SERVICES, IN CLASS 42 (U.S. CL. 100).
FIRST USE 4-0-1980; IN COMMERCE 4-0-1980.

THE ENGLISH TRANSLATION OF THE WORDS "CASA DE BANDINI" IS "HOME OF BANDINI".

SER. NO. 516,403, FILED 1-7-1985.

G. MAYERSCHOFF, EXAMINING ATTORNEY

Case 3:04-cv-02244-JM-JMA   Document 1   Filed 11/09/04   PageID.151   Page 151 of 365



UNITED STATES DEPARTMENT OF COMMERCE
Patent and Trademark Office
ASSISTANT SECRETARY AND COMMISSIONER
OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

REGISTRATION NO.   1350088        SERIAL NO. 73/516403        PAPER NO.
                                                              MAILING DATE: 08/07/91

MARK: CASA DE BANDINI

REGISTRANT: BAZAAR DEL MUNDO, INC.

CORRESPONDENCE ADDRESS:
  LUCE, FORWARD, HAMILTON & SCRIPPS
  1700 THE BANK OF CALIFORNIA PLAZA
  110 WEST A STREET
  SAN DIEGO, CA 92101

Please furnish the following
in all correspondence:

1. Your phone number and zip code.
2. Mailing date of this action.
3. Affidavit-Renewal Examiner's name.
4. The address of all correspondence
   not containing fees should include
   the words "Box 5".
5. Registration No.


RECEIPT IS ACKNOWLEDGED OF THE SUBMITTED REQUEST UNDER:

SECTION 8 OF THE TRADEMARK STATUTE AND 37 CFR SECS. 2.161-2.166.

SECTION 15 OF THE TRADEMARK STATUTE AND 37 CFR SECS. 2.167-2.168.

YOUR REQUEST FULFILLS THE STATUTORY REQUIREMENTS AND HAS BEEN ACCEPTED.

A. J. GORE
AFFIDAVIT-RENEWAL EXAMINER
TRADEMARK EXAMINING OPERATION
(703) 557-1988


**RECEIVED**

**AUG 1 6 1991**

LFH&S/MSG



# State of California
## OFFICE OF THE SECRETARY OF STATE

Service Mark 1972
Reg. No.

## CERTIFICATE OF REGISTRATION OF SERVICE MARK

I, MARCH FONG EU, Secretary of State of the State of California, hereby certify:

That in accordance with the application filed in this office the SERVICE MARK described below has been duly registered in this office on behalf of:

Name of Applicant _____ Bazaar del Mundo, Inc., a California corporation _____

Business Address _____ 2754 Calhoun Street San Diego, California 92110 _____

Date First Used in California _____ November, 1971 _____

Date First Used Anywhere _____ November, 1971 _____

Description of Service Mark _____ the words "CASA DE PICO" _____

Class No. _____ 100 _____

Description of Services on Which the Service Mark is Used _____ restaurant services _____

A copy, specimen, facsimile, counterpart or a reproduction of the mark is attached.

Date of Registration _____ January 14, 1985 _____

Term of Registration Extends to and Includes _____ January 14, 1995 _____



IN WITNESS WHEREOF, I execute this certificate and affix the Great Seal of the State of California this

14th day of January, 1985

_March Fong Eu_

Secretary of State



# State of California

## OFFICE OF THE SECRETARY OF STATE

Service Mark
Reg. No. **21975**

## CERTIFICATE OF REGISTRATION OF SERVICE MARK

I, MARCH FONG EU, Secretary of State of the State of California, hereby certify:

That in accordance with the application filed in this office the SERVICE MARK described below has been duly registered in this office on behalf of:

Name of Applicant **Bazaar del Mundo, Inc., a California corporation**

Business Address **2754 Calhoun Street San Diego, California 92110**

Date First Used in California **April, 1980**

Date First Used Anywhere **April, 1980**

Description of Service Mark **the words "CASA DE BANDINI"**

Class No. **100**

Description of Services on Which the Service Mark is Used **restaurant services**

A copy, specimen, facsimile, counterpart or a reproduction of the mark is attached.

Date of Registration **January 14, 1985**

Term of Registration Extends to and Includes **January 14, 1995**



IN WITNESS WHEREOF, I execute this certificate and affix the Great Seal of the State of California this

day of

**14th      January, 1985**

*March Fong Eu*

*Secretary of State*

1   Michael A. Attanasio, State Bar No. 151529
    Mark L. Mann, State Bar No. 077281
2   Navid Soleymani, State Bar No. 219190
    LUCE, FORWARD, HAMILTON & SCRIPPS LLP
3   600 West Broadway, Suite 2600
    San Diego, California 92101-3372
4   Telephone No.: 619.236.1414
    Fax No.: 619.232.8311
5
    Attorneys for Bazaar Del Mundo, Inc.
6

FILED

03 DEC 29  AM 10: 07

CLERK U.S. ... ...
.................. ..........

                                    DEPUTY

7

8                    UNITED STATES DISTRICT COURT

9                   SOUTHERN DISTRICT OF CALIFORNIA

10

11  BAZAAR DEL MUNDO, INC.,              Case No. 03 CV 2284 TJW (LSP)

12
          Plaintiff,                     **FIRST AMENDED COMPLAINT FOR:**
13
    v.                                   (1) DECLARATORY RELIEF;
14                                       (2) FEDERAL TRADEMARK
15  DELAWARE NORTH COMPANIES PARKS       INFRINGEMENT [15 U.S.C. § 1114];
    AND RESORTS; RUTH COLEMAN, in her    (3) FALSE DESIGNATION OF ORIGIN
16  official capacity as the DIRECTOR OF THE   AND UNFAIR COMPETITION [15 U.S.C. §
    DEPARTMENT OF PARKS AND              1125(a)];
17  RECREATION FOR THE STATE OF          (4) DILUTION OF TRADEMARKS
    CALIFORNIA,                          [15 U.S.C. § 1125(c)(1)];
18                                       (5) TRADEMARK INFRINGEMENT
          Defendants.                    [Cal. Bus. & Prof. Code § 14320];
19                                       (6) DILUTION OF TRADEMARKS
20                                       [Cal. Bus. & Prof. Code § 14330]
                                         (7) UNFAIR COMPETITION
21                                       [Cal. Bus. & Prof. Code §§ 17200 and 17500]
22                                       (8) COMMON LAW TRADEMARK
                                         INFRINGEMENT
23                                       (9) COMMON LAW UNFAIR
                                         COMPETITION
24
25                                       TRIAL BY JURY REQUESTED

26
27                                       COPY
28

                                1

                        Case No. 03 CV 2284 TJW (LSP)
                        FIRST AMENDED COMPLAINT

1    Plaintiff Bazaar del Mundo, Inc. ("BdM") hereby complains of Delaware North

2    Companies Parks and Resorts ("Delaware North") and Ruth Coleman, in her official capacity as

3    the Director of the Department of Parks and Recreation for the State of California.

4                    I.    JURISDICTION AND VENUE

5         1.    This Court has jurisdiction over this federal trademark infringement action pursuant

6    to 28 U.S.C. § 1332, 28 U.S.C. § 1331, 28 U.S.C. § 1338, 28 U.S.C. § 1367 and 15 U.S.C. § 1121.

7         2.    Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because

8    Delaware North is and has, at all times relevant to this complaint, conducted business in this

9    judicial district and the acts of trademark infringement, dilution, and unfair competition

10   complained of herein have occurred and are occurring in this district.

11                   II.    THE PARTIES

12        3.    BdM is a corporation organized and existing under the laws of the State of

13   California, and at all relevant times mentioned herein was authorized to do business and was doing

14   business in the County of San Diego, State of California.  Pursuant to a lease agreement with the

15   California Department of Parks and Recreation, BdM is the incumbent concessionaire for the

16   Mexican Commercial Corner, El Opal Restaurant, and Casa de Bandini/Cosmopolitan Hotel, all

17   located within the Old Town San Diego State Historic Park.

18        4.    BdM is informed and believes and thereon alleges, that Delaware North is a

19   corporation organized and existing under the laws of the State of New York.  BdM is further

20   informed and believes and thereon alleges that Delaware North is and has, at all relevant times to

21   this complaint, conducted business in the County of San Diego, State of California.

22        5.    Ruth Coleman ("Director Coleman") is the Director of the California Department

23   of Parks and Recreation ("DPR" or "Department") and is being sued in her official capacity.

24                   III.    GENERAL ALLEGATIONS

25            Bazaar del Mundo And The Old Town San Diego State Historic Park

26        6.    The Old Town San Diego State Historic Park ("Old Town") is owned by the State

27   of California and managed by the DPR, as part of its responsibility to manage the state park

28   system.  It was created in 1968, encompassing several acres of cultural and historical significance

2

1   to San Diego.  Despite its civic importance, the area and its buildings were in a state of substantial

2   decline during the late 1960s, and few locals or tourists ventured to the area.

3       7.   Old Town remained in a state of decline until the arrival of BdM and its principal,

4   Diane Powers, who responded to the state's first Request For Proposal in 1971 to create and

5   operate a concession within Old Town.  With an authentic vision entitled "Bazaar del Mundo,"

6   Ms. Powers proposed to implement the centuries-old traditions of international trade, cultural

7   exchange, and shopping as a social and recreational event, while at the same time reconnecting the

8   site to its Mexican roots.  The plan she proposed was in direct response to DPR's stated desire to

9   build and promote a Mexican-style shopping arcade at the site.

10       8.   BdM was awarded the Old Town concession in 1971, and Ms. Powers devoted the

11   next 32 years of her life to making Bazaar del Mundo what it is today, the most successful public-

12   private partnership in the California parks system.  Under Ms. Powers' direction, BdM has

13   operated this concession continuously and successfully for the last 32 years.

14       9.   Today, BdM is the largest revenue generator in the state park concession system

15   and has paid over $1 million in rent annually for ten consecutive years, including payments of just

16   under $2 million in 2002.  Its sales last year alone were nearly $25 million, with revenue per

17   square foot substantially exceeding local averages for sit-down dining and retail shops.

18       **The Restaurants and Their Trademarks**

19       10.   A key component of this success story is the performance of two of BdM's anchor

20   restaurants, Casa de Pico and Casa de Bandini.  These restaurants currently generate annual sales

21   per square per foot of $930, a figure that far exceeds the regional average of $500 per square foot

22   and puts BdM's restaurant operations in the top 5 nationally for gross sales.

23       11.   The stellar performance of these restaurants is based in large part on the name

24   recognition and goodwill associated with the trade names Casa de Pico and Casa de Bandini.

25       12.   The names Casa de Pico and Casa de Bandini are federally registered trademarks of

26   BdM, as set forth below:

27   ///

28   ///



| Trademark | Registration No. | Registration Date |
|---|---|---|
| Casa de Pico | 1,364,974 | October 8, 1985 |
| Casa de Bandini | 1,350,088 | July 16, 1985 |

13.    These federally registered trademarks are incontestable under federal law.

14.    BdM is also the owner of the following California Trademark designations:

| Trademark | Registration No. | Registration Date |
|---|---|---|
| Casa de Pico | 21972 | January 14, 1985 |
| Casa de Bandini | 21975 | January 14, 1985 |

15.    BdM has used the name Casa de Pico in connection with restaurant services since November 1971.  BdM has used the name Casa de Bandini in connection with restaurant services since April 1980 when the restaurant was first opened by BdM.

16.    BdM has expended substantial sums of money in promoting and marketing these restaurants, which have become well-known establishments in the community.  This consistent use and extensive promotion of these restaurants has created substantial goodwill that is associated with these trademarks.

17.    This goodwill is evidenced by the numerous awards the restaurants have won for their food and service.  For instance, the San Diego chapter of the California Restaurant Association awarded Casa de Bandini the 2003 Gold Medallion Award for the Best Mexican restaurant in San Diego.  Casa de Bandini has also been awarded the San Diego ConVis 1999 Finest Service Award.  In addition, the restaurant has been voted "Best Mexican Restaurant" five times, and has been voted "Best Patio Dining" two times.  Casa de Pico was recently named a "Neighborhood Favorite" by Elite Dining and designated as one of the top 50 Hispanic restaurants in the United States by Hispanic Magazine.

**The State's RFP Process Induced Trademark Infringement**

18.    In 2001, BdM's most recent 10-year concession contract expired, and on March 13, 2003, DPR issued a new Request for Proposals for the Old Town concession (the "RFP").

/ / /

/ / /

19.   The RFP was fundamentally flawed because it intentionally induced proposers into believing that the winning concessionaire could use BdM's registered trademarks "Casa de Pico" and "Casa de Bandini" ("BdM's Trademarks").  The RFP intentionally induced proposers into submitting proposals that were premised on unlawfully using BdM's Trademarks as the names of two of the anchor restaurants within the concession.  Indeed, the names Casa de Pico and Casa de Bandini are used throughout the RFP, without any indication that they are the registered trademarks of BdM.

20.   DPR's inducement of trademark infringement went beyond the RFP itself.  As part of the bid process, DPR invited proposers to submit written questions concerning the RFP.  These questions, as well as DPR's answers, were compiled and forwarded to all proposers.  Given the significance of the issue, it is not surprising that two proposers specifically asked DPR about the rights to the names of the restaurants:

QUESTION 52.       Are the names of any of the stores or restaurants owned by the incumbent, or will the existing names be available for use by the successful bidder?  If so, please detail those names.

DPR RESPONSE:     The names of the stores and restaurants known by the State to be owned by the incumbent are Bazaar del Mundo, Lino's and Rancho El Nopal.

QUESTION 126.     Intellectual property rights – please confirm that the following names do not belong to the current concessionaire: Casa de Bandini; Casa de Pico; Rancho el Nopal.

DPR RESPONSE:     The State can confirm that Rancho el Nopal belongs to the Concessionaire.

21.   DPR's responses are deceptive, misleading, and factually incorrect.  DPR deliberately refused to answer the proposers' question about the rights to the names Casa de Bandini and Casa de Pico.

22.   DPR knew or should have known that Casa de Bandini and Casa de Pico are federally protected trademarks that belong to BdM, or at the very least, should have investigated this issue before providing incorrect and misleading answers.  By its responses, DPR deliberately invited proposers to violate BdM's Trademarks.

///

5

Case No. 03 CV 2284 TJW (LSP)
FIRST AMENDED COMPLAINT

23.    BdM notified DPR of this error after receiving a copy of the Proposer Questions and DPR Responses.  In a letter dated July 3, 2003, to the Chief of DPR's Concessions and Reservations Division, Ms. Powers stated that DPR's responses to Questions 52 and 126 were inaccurate because the names Casa de Bandini and Casa de Pico are federally registered trademarks belonging to BdM.  In that same July 3 letter, BdM advised DPR that its response to an unrelated question (Question 45) was also inaccurate.

24.    Despite receiving this information from BdM, DPR inexplicably failed to correct its inaccurate responses regarding BdM's Trademarks.  By contrast, DPR did correct its responses relating to Question 45 (which dealt with the calculation of gross receipts) in a letter sent to all proposers on July 22, 2003.   DPR, however, recklessly chose to ignore BdM's correction concerning ownership of the trademarks.

**DPR Now Claims It Has Rights To The Names Casa de Pico and Casa de Pico**

25.    After refusing to answer the proposers' questions about BdM's ownership of the trademark rights, DPR now claims that it somehow owns rights to these federally registered names.

26.    In a letter to Ms. Powers dated September 30, 2003, DPR declared that the subject names are registered historic and/or archaeological sites belonging to DPR, notwithstanding BdM's incontestable federal trademark registrations.   The letter states in pertinent part:

> With respect to the names "Case de Bandini" and "Case de Pico," these are federally and state registered historic and/or archaeological sites belonging to DPR; named for the historically accurate owners of the sites.  These historic names and registrations predated Bazaar del Mundo's contract to do business on the properties.  Further, while Bazaar del Mundo, Inc., may have registered such names as trademarks as concessionaire and licensee under contract with DPR, DPR has continuously used the names as historic sites and DPR source indicators for educational, interpretive, and commercial purposes for well over thirty (30) years.  The authority to use the marks in association with food services by Bazaar del Mundo, Inc., is as a licensee, for the benefit of DPR.

27.    DPR failed to offer any legal authority to support its novel theory that a historic name registry somehow trumps federal trademark law.  DPR was similarly silent as to the supposed "licensee" restrictions on BdM's use of the trademarks.  It is also revealing that DPR asserts rights in the marks for "educational, interpretative, and commercial purposes," but stops far

1  short of arguing rights to use the names in connection with restaurant services.  None of these

2  oversights are surprising, as there is no legal or contractual basis for DPR's claims.

**Delaware North Commits To Trademark Infringement**

4      28.    Delaware North submitted a proposal in response to DPR's flawed RFP process.

5  Predictably, Delaware North was induced by DPR to submit a proposal that also violates federal

6  trademark law.

7      29.    In its proposal, Delaware North commits to using the names Casa de Bandini and

8  Casa de Pico for the very same restaurants that are currently owned and operated by BdM, in

9  direct violation of BdM's incontestable trademark rights.

10     30.    Delaware North's proposal reads like a primer on trademark infringement.  It not

11  only commits to using BdM's restaurant names, but the proposal includes menus listing the foods

12  and prices for the restaurant names – Casa de Pico and Casa de Bandini – that are federally

13  protected trademarks owned by BdM.

14     31.    For example, Delaware North proclaims that the "new Casa de Pico Restaurant"

15  will feature "grilling and roasting meats" and that the area's cattle-rich history "is the inspiration

16  for our menu at Casa de Pico.  The entire interior of Casa de Pico … will be redesigned to reflect

17  the Mexican period…. Beef … will take center stage here at Casa de Pico too."

18     32.    As to Casa de Bandini, Delaware North's proposal announces that the "interior of

19  this newly restored, historic abode home will house the Casa de Bandini Restaurant and Bar."

20  Delaware North then states that oysters will be served in the remodeled Casa de Bandini.

21     33.    Even more striking, Delaware North imagines that it came up with the name Casa

22  de Bandini.  The proposal states that "the restaurant we have named Casa de Bandini is located in

23  the actual Casa de Bandini abode."  In truth, BdM has operated the Casa de Bandini restaurant at

24  this precise location for over 20 years and has obtained incontestable federal and state trademark

25  registrations for this name.

26  ///

27  ///

28  ///

7

**DPR Selected Delaware North While Knowing of the Trademark Infringement**

34.   As part of the selection process, DPR appointed a Concession Contract Award Board to review and evaluate the proposals (the "Review Board"). Based on this evaluation, the Review Board recommended that Delaware North be awarded the contract. DPR accepted the Review Board's recommendation, and on October 17, 2003, DPR issued its "Notice of Intent to Award" the concession contract to Delaware North.

35.   DPR's entire selection process is fundamentally flawed because Delaware North was actually rewarded for its proposal to commit trademark infringement. BdM is informed and believes, and thereon alleges, that DPR selected Delaware North in part because of Delaware North's inflated financial projections and the resulting rent payments that the company has proposed to pay the state. These figures, however, are necessarily premised on Delaware North's stated intention to use unlawfully BdM's Trademarks and to appropriate unlawfully the goodwill associated with those marks.

36.   DPR selected Delaware North's proposal even though DPR was fully aware that Delaware North's proposal called for wholesale trademark infringement. DPR cannot deny that it was aware of BdM's Trademarks because BdM's letter of July 3, 2003, placed DPR on notice of the infringement.

**DPR's Administrative Process to Challenge The Bid Award**

37.   Pursuant to DPR's administrative regulations, BdM has filed a timely administrative challenge of the bid award.

38.   However, BdM believes that this administrative process is inherently flawed and cannot vindicate BdM's trademark rights, especially in light of DPR's newly-adopted claim of ownership to BdM's Trademarks. Indeed, the entire RFP process, selection process, and administrative process are tainted by DPR's refusal to obey trademark law and its decision to trample on BdM's rights under federal and state law.

39.   BdM needs this Court to adjudicate its rights under federal trademark, unfair competition, and trademark dilution law and to enjoin DPR from taking any steps to finalize and implement the concession contract with Delaware North. The Court should further enjoin DPR's

1  administrative process from moving forward until the trademark and related rights are adjudicated

2  in this action.  The Court should also enjoin Delaware North from using and infringing BdM's

3  Trademarks, as it has committed to do in its proposal to DPR.

### FIRST CLAIM FOR RELIEF

[Declaratory Relief]

[Against All Defendants]

7  40.  BdM realleges and incorporates herein Paragraphs 1 through 39, inclusive.

8  41.  An actual controversy has arisen and now exists between the parties because DPR,

9  through Director Coleman, has asserted that DPR owns the rights to the trademarks Casa de Pico

10  and Casa de Bandini, as those marks are used in connection with restaurant services.

11  42.  BdM, however, maintains that it owns and has the exclusive right to use the

12  trademarks Casa de Pico and Casa de Bandini in connection with restaurant services, because

13  BdM has incontestable federal and state trademark registrations for those names and has used

14  them continuously for over 20 years in connection with restaurant services in the Old Town

15  concession.

16  43.  A judicial determination of the respective rights of the parties in the trademarks

17  Casa de Pico and Casa de Bandini is necessary and appropriate at this time so that the parties may

18  ascertain their rights and duties under the law.

### SECOND CLAIM FOR RELIEF

[Federal Trademark Infringement, 15 U.S.C. § 1114]

[Against All Defendants]

22  44.  BdM realleges and incorporates herein Paragraphs 1 through 43, inclusive.

23  45.  The actions of Delaware North described herein constitute infringement of BdM's

24  federally registered and incontestable trademarks in the marks Casa de Pico and Casa de Bandini

25  in violation of section 32(b) of the Lanham Act, 15 U.S.C. § 1114(1).

26  ///

27  ///

28  ///

Case No. 03 CV 2284 TJW (LSP)
FIRST AMENDED COMPLAINT

46.    Through its proposal to DPR, Delaware North has promised and committed to unlawfully using BdM's Trademarks as the names of its restaurants within the Old Town concession.  These restaurants are precisely the same restaurants that BdM has operated using these same Trademarks for more than 20 years.

47.    Delaware North's unauthorized use of BdM's Trademarks as the names of its proposed restaurants has and is likely to continue to cause confusion, mistake and deception in that consumers are likely to associate and believe that Delaware North's proposed restaurants are associated with, connected with, affiliated with, authorized by, endorsed by, and/or sponsored by BdM, in violation of section 32(b) of the Lanham Act, 15 U.S.C. § 1114(1).

48.    As a direct and proximate result of Delaware North's actions, BdM has suffered and will suffer general damages in an amount that will be shown according to proof.

49.    As a further direct and proximate result of Delaware North's unauthorized use of BdM's Trademarks, Delaware North has and will continue to damage BdM's goodwill and reputation, and has and is likely to continue causing a loss of sales and profits for BdM.  Delaware North's actions have caused and will continue to cause irreparable harm to BdM and to the public, particularly to the business reputation and goodwill associated with BdM and with BdM's Trademarks unless restrained and enjoined by this Court.  BdM has no adequate remedy at law to prevent Defendants from continuing their infringing actions and from injuring BdM.

50.    Injunctive relief is warranted because Delaware North's threatened infringement of BdM's Trademarks is imminent and impending, as DPR has accepted Delaware North's proposal and has issued a Notice of Intent to award the contract to Delaware North.  Further, BdM is informed and believes, and thereon alleges, that Delaware North has already taken steps to use BdM's Trademarks by printing sample menus for each restaurant, marketing and publicizing the restaurants, and implementing its transition plans to take over operation of the restaurants.

51.    As a further direct and proximate result of Delaware North's actions, BdM has been and will be damaged and is entitled to receive compensation arising from its lost sales, lost profits, and expense of attempting to prevent customers from being confused.  In addition, BdM is entitled to receive a disgorgement of Delaware North's profits, interest, recovery of BdM's

Case No. 03 CV 2284 TJW (LSP)
FIRST AMENDED COMPLAINT

1  attorneys' fees and costs in bringing this action, injunctive relief, and all other forms of relief that

2  this Court deems appropriate.

3      52.    BdM is informed and believes, and based thereon alleges, that Delaware North's

4  conduct as alleged herein was and is intentional, malicious, willful, and wanton. BdM is therefore

5  entitled, pursuant to 15 U.S.C. § 1117, to recover treble damages incurred by reason of Delaware

6  North's wrongful conduct, and to recover its attorneys' fees incurred in this action.

7      53.    The actions of DPR by and through Director Coleman described herein constitute

8  contributory infringement by DPR and Director Coleman of BdM's Trademarks, in violation of

9  section 32(b) of the Lanham Act, 15 U.S.C. § 1114(1). DPR intentionally induced proposers into

10 submitting proposals that are premised on unlawfully using BdM's trademarks in connection with

11 restaurant services in the Old Town concession. Further, DPR selected and approved Delaware

12 North as the concessionaire for Old Town while knowing that Delaware North is intending to

13 infringe upon BdM's Trademarks.

14     54.    BdM is entitled to injunctive relief that would restrain DPR and Director Coleman

15 from taking any steps to finalize the contract with Delaware North and/or with any entity for the

16 operation of the Old Town concession that proposes to infringe upon BdM's Trademarks. Further,

17 because the entire bid process was tainted by DPR's flagrant violations of BdM's rights, BdM is

18 entitled to injunctive relief that would order DPR and Director Coleman to issue a new RFP that is

19 consistent with federal trademark law.

20                          **THIRD CLAIM FOR RELIEF**

21           [False Designation of Origin And Unfair Competition, 15 U.S.C. § 1125(a)]

22                              [Against All Defendants]

23     55.    BdM realleges and incorporates herein Paragraphs 1 through 54, inclusive.

24     56.    The actions of Delaware North described herein constitute unfair competition and

25 false designation of origin in violation of section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

26     57.    Delaware North's unauthorized use of BdM's Trademarks as the names of its

27 proposed restaurants has and is likely to continue to cause confusion, mistake and deception in

28 that consumers are likely to associate and believe that Delaware North's proposed restaurants are

                                    11              Case No. 03 CV 2284 TJW (LSP)
                                                    FIRST AMENDED COMPLAINT



1 | associated with, connected with, affiliated with, authorized by, endorsed by and/or sponsored by

2 | BdM, in violation of section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

3 | 58.   As a direct and proximate result of Delaware North's actions, BdM has suffered

4 | and will suffer general damages in an amount that will be shown according to proof.

5 | 59.   As a further direct and proximate result of Delaware North's conduct, Delaware

6 | North has and will continue to damage BdM's goodwill and reputation, and has and is likely to

7 | continue causing a loss of sales and profits for BdM.  Delaware North's actions have caused and

8 | will continue to cause irreparable harm to BdM and to the public, particularly to the business

9 | reputation and goodwill associated with BdM and with BdM's Trademarks unless restrained and

10 | enjoined by this Court.  BdM has no adequate remedy at law to prevent Defendants from

11 | continuing their infringing actions and from injuring BdM.

12 | 60.   Injunctive relief is warranted because Delaware North's threatened infringement of

13 | BdM's Trademarks is imminent and impending, as DPR has accepted Delaware North's proposal

14 | and has issued a Notice of Intent to award the contract to Delaware North.  Further, BdM is

15 | informed and believes, and thereon alleges, that Delaware North has already taken steps to use

16 | BdM's Trademarks by printing sample menus for each restaurant, marketing and publicizing the

17 | restaurants, and implementing its transition plans to take over operation of the restaurants.

18 | 61.   As a further direct and proximate result of Delaware North's actions, BdM has

19 | been and will be damaged and is entitled to receive compensation arising from its lost sales, lost

20 | profits, and expense of attempting to prevent customers from being confused.  In addition, BdM is

21 | entitled to receive a disgorgement of Delaware North's profits, interest, recovery of BdM's

22 | attorneys' fees and costs in bringing this action, injunctive relief, and all other forms of relief that

23 | this Court deems appropriate.

24 | 62.   BdM is informed and believes, and based thereon alleges, that Delaware North's

25 | conduct as alleged herein was and is intentional, malicious, willful, and wanton.  BdM is therefore

26 | entitled, pursuant to 15 U.S.C. § 1117, to recover treble damages incurred by reason of Delaware

27 | North's wrongful conduct, and to recover its attorneys' fees incurred in this action.

28 | ///

12

Case No. 03 CV 2284 TJW (LSP)
FIRST AMENDED COMPLAINT

63.     The actions of DPR by and through Director Coleman described herein constitute contributory violations by DPR and Director Coleman of section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a). DPR intentionally induced proposers into submitting proposals that are premised on unlawfully using BdM's trademarks in connection with restaurant services in the Old Town concession. Further, DPR selected and approved Delaware North as the concessionaire for Old Town while knowing that Delaware North is intending to infringe upon BdM's Trademarks.

64.     BdM is entitled to injunctive relief that would restrain DPR and Director Coleman from taking any steps to finalize the contract with Delaware North and/or with any entity for the operation of the Old Town concession that proposes to infringe upon BdM's Trademarks. Further, because the entire bid process was tainted by DPR's flagrant violations of BdM's rights, BdM is entitled to injunctive relief that would order DPR and Director Coleman to issue a new RFP that is consistent with federal unfair competition law.

## FOURTH CLAIM FOR RELIEF

[Dilution Of Trademarks, 15 U.S.C. § 1125(c)(1)]

[Against All Defendants]

65.     BdM realleges and incorporates herein Paragraphs 1 through 64, inclusive.

66.     By and through BdM's expenditure of substantial amounts of money to market the Casa de Pico and Casa de Bandini restaurants, BdM's Trademarks have become "famous" and "distinctive" pursuant to section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).

67.     Delaware North's proposal to commercially use BdM's Trademarks as the names of its restaurants has and is likely to dilute the distinctive qualities of the Trademarks by lessening the capacity of such marks to identify and distinguish BdM's restaurants in the marketplace and has resulted in an actual present injury to BdM's Trademarks, in violation of section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).

68.     As a direct and proximate result of Delaware North's actions, BdM has suffered and will suffer general damages in an amount that will be shown according to proof.

69.     As a further direct and proximate result of Delaware North's conduct, Delaware North has and will continue to damage BdM's goodwill and reputation, and has and is likely to

13

1   continue causing a loss of sales and profits for BdM.  Delaware North's actions have caused and

2   will continue to cause irreparable harm to BdM and to the public, particularly to the business

3   reputation and goodwill associated with BdM and with BdM's Trademarks unless restrained and

4   enjoined by this Court.  BdM has no adequate remedy at law to prevent Defendants from

5   continuing their infringing actions and from injuring BdM.

6       70.    Injunctive relief is warranted because Delaware North's threatened infringement of

7   BdM's Trademarks is imminent and impending, as the DPR has accepted Delaware North's

8   proposal and has issued a Notice of Intent to award the contract to Delaware North.  Further, BdM

9   is informed and believes, and thereon alleges, that Delaware North has already taken steps to use

10   BdM's Trademarks by printing sample menus for each restaurant, marketing and publicizing the

11   restaurants, and implementing its transition plans to take over operation of the restaurants.

12       71.    As a further direct and proximate result of Delaware North's actions, BdM has

13   been and will be damaged and is entitled to receive compensation arising from its lost sales, lost

14   profits, and expense of attempting to prevent customers from being confused.  In addition, BdM is

15   entitled to receive a disgorgement of Delaware North's profits, interest, recovery of BdM's

16   attorneys' fees and costs in bringing this action, injunctive relief, and all other forms of relief that

17   this Court deems appropriate.

18       72.    BdM is informed and believes, and based thereon alleges, that Delaware North's

19   conduct as alleged herein was and is intentional, malicious, willful, and wanton.  BdM is therefore

20   entitled, pursuant to 15 U.S.C. § 1117, to recover treble damages incurred by reason of Delaware

21   North's wrongful conduct, and to recover its attorneys' fees incurred in this action.

22       73.    The actions of DPR by and through Director Coleman described herein constitute

23   contributory violations by DPR and Director Coleman of section 43(c) of the Lanham Act, 15

24   U.S.C. § 1125(c).   DPR intentionally induced proposers into submitting proposals that are

25   premised on unlawfully using BdM's Trademarks in connection with restaurant services in the Old

26   Town concession.  Further, DPR selected and approved Delaware North as the concessionaire for

27   Old Town while knowing that Delaware North is intending to infringe upon BdM's Trademarks.

28   ///

1    74.   BdM is entitled to injunctive relief that would restrain DPR and Director Coleman

2  from taking any steps to finalize the contract with Delaware North and/or with any entity for the

3  operation of the Old Town concession that proposes to infringe upon BdM's Trademarks. Further,

4  because the entire bid process was by DPR's flagrant violations of BdM's rights, BdM is entitled

5  to injunctive relief that would order DPR and Director Coleman to issue a new RFP that is

6  consistent with federal anti-dilution law.

7                   **FIFTH CLAIM FOR RELIEF**

8          [Trademark Infringement, Cal. Bus. & Prof. Code § 14320]

9                 [Against Delaware North]

10    75.   BdM realleges and incorporates herein Paragraphs 1 through 74, inclusive.

11    76.   The actions of Delaware North described herein constitute infringement of BdM's

12  Trademarks, in violation of California Business & Professions Code § 14320.

13    77.   Through its proposal to DPR, Delaware North has promised and committed to

14  unlawfully using BdM's Trademarks as the names of its restaurants within the Old Town

15  concession. These restaurants are precisely the same restaurants that BdM has operated using

16  these same Trademarks for over 20 years.

17    78.   Delaware North's unauthorized use of BdM's Trademarks as the names of its

18  proposed restaurants has and is likely to continue to cause confusion, mistake and deception in

19  that consumers are likely to associate and believe that Delaware North's proposed restaurants are

20  associated with, connected with, affiliated with, authorized by, and/or sponsored by BdM, in

21  violation of California Business & Professions Code § 14320.

22    79.   As a direct and proximate result of Delaware North's actions, BdM has suffered

23  and will suffer general damages in an amount that will be shown according to proof.

24    80.   As a further direct and proximate result of Delaware North's unauthorized use of

25  BdM's Trademarks, Delaware North has and will continue to damage BdM's goodwill and

26  reputation, and has and is likely to continue causing a loss of sales and profits for BdM. Delaware

27  North's actions have caused and will continue to cause irreparable harm to BdM and to the public,

28  particularly to the business reputation and goodwill associated with BdM and with BdM's

1  Trademarks unless restrained and enjoined by this Court. BdM has no adequate remedy at law to

2  prevent Defendants from continuing their infringing actions and from injuring BdM.

3       81.   Injunctive relief is warranted because Delaware North's threatened infringement of

4  BdM's Trademarks is imminent and impending, as the DPR has accepted Delaware North's

5  proposal and has issued a Notice of Intent to award the contract to Delaware North. Further, BdM

6  is informed and believes, and thereon alleges, that Delaware North has already taken steps to use

7  BdM's Trademarks by printing sample menus for each restaurant, marketing and publicizing the

8  restaurants, and implementing its transition plans to take over operation of the restaurants.

9       82.   As a further direct and proximate result of Delaware North's actions, BdM has

10  been and will be damaged and is entitled to receive compensation arising from its lost sales, lost

11  profits, and expense of attempting to prevent customers from being confused. In addition, BdM is

12  entitled to receive a disgorgement of Delaware North's profits, interest, recovery of BdM's

13  attorneys' fees and costs in bringing this action, injunctive relief, and all other forms of relief that

14  this Court deems appropriate.

15                 **SIXTH CLAIM FOR RELIEF**

16          [Dilution of Trademarks, Cal. Bus. & Prof. Code § 14330]

17                [Against Delaware North]

18       83.   BdM realleges and incorporates herein Paragraphs 1 through 82, inclusive.

19       84.   By and through BdM's expenditure of substantial amounts of money to market the

20  Casa de Pico and Casa de Bandini restaurants, BdM's Trademarks have become "famous" and

21  "distinctive" pursuant to Cal. Bus. & Prof. Code § 14330.

22       85.   Delaware North's proposal to commercially use BdM's Trademarks as the names

23  of its restaurants has and is likely to dilute the distinctive qualities of the Trademarks by lessening

24  the capacity of such marks to identify and distinguish BdM's restaurants in the marketplace and

25  has resulted in an actual present injury to BdM's famous Trademarks, in violation of Cal. Bus. &

26  Prof. Code § 14330.

27       86.   As a direct and proximate result of Delaware North's actions, BdM has suffered

28  and will suffer general damages in an amount that will be shown according to proof.

87.   As a further direct and proximate result of Delaware North's conduct, Delaware North has and will continue to damage BdM's goodwill and reputation, and has and is likely to continue causing a loss of sales and profits for BdM. Delaware North's actions have caused and will continue to cause irreparable harm to BdM and to the public, particularly to the business reputation and goodwill associated with BdM and with BdM's Trademarks unless restrained and enjoined by this Court.  BdM has no adequate remedy at law to prevent Defendants from continuing their infringing actions and from injuring BdM.

88.   Injunctive relief is warranted because Delaware North's threatened infringement of BdM's Trademarks is imminent and impending, as the DPR has accepted Delaware North's proposal and has issued a Notice of Intent to award the contract to Delaware North. Further, BdM is informed and believes, and thereon alleges, that Delaware North has already taken steps to use BdM's Trademarks by printing sample menus for each restaurant, marketing and publicizing the restaurants, and implementing its transition plans to take over operation of the restaurants.

89.   As a further direct and proximate result of Delaware North's actions, BdM has been damaged and is entitled to receive compensation arising from its lost sales, lost profits, and expense of attempting to prevent customers from being confused.  In addition, BdM is entitled to receive a disgorgement of Delaware North's profits, interest, recovery of BdM's attorneys' fees and costs in bringing this action, injunctive relief, and all other forms of relief that this Court deems appropriate.

### SEVENTH CLAIM FOR RELIEF

[Unfair Competition, Bus. & Prof. Code § 17200]

[Against Delaware North]

90.   BdM realleges and incorporates herein Paragraphs 1 through 89, inclusive.

91.   The actions of Delaware North and Director Coleman described herein constitute unlawful, unfair, and fraudulent business acts and practices, in violation of California Business & Professions Code § 17200.

92.   The unauthorized use of BdM's Trademarks as the names of its proposed restaurants has and is likely to continue to cause confusion, mistake and deception in that

17

1  consumers are likely to associate and believe that Delaware North's proposed restaurants are

2  associated with, connected with, affiliated with, authorized by, endorsed by, and/or sponsored by

3  BdM, in violation of California Business & Professions Code § 17200.

4    93.   As a result of these acts, Delaware North has received and will continue to receive

5  sales and profits generated from the strength of BdM's success, goodwill, and consumer

6  recognition.

7    94.   BdM has suffered and will suffer damages as a direct result of Delaware North's

8  conduct as described herein, and such damage will continue unless the Court enjoins Delaware

9  North's use of BdM's Trademarks.

10   95.   Delaware North should be required to restore to BdM any and all profits earned as

11  a result of its unlawful and unfair actions.  Delaware North should be held accountable for all

12  wrongfully obtained through appropriate restitution.

13                    **EIGHTH CLAIM FOR RELIEF**

14                  [Common Law Trademark Infringement]

15                     [Against Delaware North]

16   96.   BdM realleges and incorporates herein Paragraphs 1 through 95, inclusive.

17   97.   Through BdM's extensive use and promotion of its Trademarks, BdM has

18  established and acquired protectable and proprietary trademark rights under the common law.

19   98.   The actions of Delaware North described herein constitute infringement of BdM's

20  trademark rights under the common law.

21   99.   As a direct and proximate result of Delaware North's actions, BdM has suffered

22  and will suffer general damages in an amount that will be shown according to proof.

23   100.   As a further direct and proximate result of Delaware North's unauthorized use of

24  BdM's Trademarks, Delaware North has and will continue to damage BdM's goodwill and

25  reputation, and has and is likely to continue causing a loss of sales and profits for BdM.  Delaware

26  North's actions have caused and will continue to cause irreparable harm to BdM and to the public,

27  particularly to the business reputation and goodwill associated with BdM and with BdM's

28  Trademarks unless restrained and enjoined by this Court.  BdM has no adequate remedy at law to

1  prevent Defendants from continuing their infringing actions and from injuring BdM.

2       101.   Injunctive relief is warranted because Delaware North's threatened infringement of

3  BdM's Trademarks is imminent and impending, as the DPR has accepted Delaware North's

4  proposal and has issued a Notice of Intent to award the contract to Delaware North. Further, BdM

5  is informed and believes, and thereon alleges, that Delaware North has already taken steps to use

6  BdM's Trademarks by printing sample menus for each restaurant, marketing and publicizing the

7  restaurants, and implementing its transition plans to take over operation of the restaurants.

8       102.   As a further direct and proximate result of Delaware North's actions, BdM has

9  been damaged and is entitled to receive compensation arising from its lost sales, lost profits, and

10 expense of attempting to prevent customers from being confused. In addition, BdM is entitled to

11 receive a disgorgement of Delaware North's profits, interest, recovery of BdM's attorneys' fees

12 and costs in bringing this action, injunctive relief, and all other forms of relief that this Court

13 deems appropriate.

14 **NINTH CLAIM FOR RELIEF**

15 [Common Law Unfair Competition]

16 [Against Delaware North]

17      103.   BdM realleges and incorporates herein Paragraphs 1 through 102, inclusive.

18      104.   The actions of Delaware North and Director Coleman described herein constitute

19 unfair competition under the common law of the State of California.

20      105.   As a direct and proximate result of Delaware North's actions, BdM has suffered

21 general damages in an amount that will be shown according to proof.

22      106.   As a further direct and proximate result of Delaware North's conduct, Delaware

23 North has and will continue to damage BdM's goodwill and reputation, and has and is likely to

24 continue causing a loss of sales and profits for BdM. Delaware North's actions have caused and

25 will continue to cause irreparable harm to BdM and to the public, particularly to the business

26 reputation and goodwill associated with BdM and with BdM's Trademarks unless restrained and

27 enjoined by this Court. BdM has no adequate remedy at law to prevent Defendants from

28 continuing their infringing actions and from injuring BdM.

1    107.   Delaware North's conduct constitutes oppression, fraud, and malice within the

2  definition of California Civil Code § 3294, and was done with a willful and conscious disregard of

3  BdM's rights.  By reason of such conduct, BdM is entitled to recover from Delaware North

4  punitive damages as provided by law.

5                              **PRAYER FOR RELIEF**

6    WHEREFORE, BdM prays that this Court enter judgment in BdM's favor and for relief

7  against Defendants, and each of them, jointly and severally, as follows:

8            **AGAINST DELAWARE NORTH AND DIRECTOR COLEMAN**

9    1.   For a judicial declaration that:

10           (a)   BdM owns the Trademarks described herein; and

11           (b)   BdM has the exclusive right to use the names Casa de Pico and Casa de

12                 Bandini in connection with restaurant services.

13                      **AGAINST DELAWARE NORTH**

14   1.   Pursuant to 15 U.S.C. §§ 1116, 1125(c)(2) and the common law, that this Court

15  issue a preliminary injunction enjoining and restraining Delaware North:

16           (a)   From using the names or marks Casa de Pico and Casa de Bandini, or any

17                 confusingly similar or related marks, to name or in conjunction with any of

18                 its restaurants or food service operations;

19           (b)   From in any way infringing upon BdM's Trademarks;

20           (c)   From in any way using BdM's Trademarks, and/or any similar names or

21                 marks in a manner which is likely to cause confusion, mistake or to deceive,

22                 or in a manner which is likely to constitute a false designation of origin or a

23                 false or misleading description or representation of fact;

24           (d)   From performing any act or using or displaying the BdM's Trademarks or

25                 any similar names or marks which create a likelihood of injury to BdM's

26                 business reputation or likelihood of misappropriating the goodwill

27                 associated with the BdM's Trademarks; and

28           (e)   From performing any act or using or displaying BdM's Trademarks or any

                                       20                Case No. 03 CV 2284 TJW (LSP)
                                                         FIRST AMENDED COMPLAINT

1   similar words or marks which cause dilution of the distinctive qualities of

2   BdM's Trademarks.

3   2.   Pursuant to 15 U.S.C. §§ 1116, 1125(c)(2) and the common law, that this Court

4   issue a permanent injunction enjoining and restraining enjoining and restraining Delaware North:

5   (a)   From using the names or marks Casa de Pico and Casa de Bandini, or any

6   confusingly similar or related marks, to name or in conjunction with any of

7   its restaurants or food service operations;

8   (b)   From in any way infringing upon BdM's Trademarks;

9   (c)   From in any way using BdM's Trademarks, and/or any similar names or

10   marks in a manner which is likely to cause confusion, mistake or to deceive,

11   or in a manner which is likely to constitute a false designation of origin or a

12   false or misleading description or representation of fact;

13   (d)   From performing any act or using or displaying the BdM's Trademarks or

14   any similar names or marks which create a likelihood of injury to BdM's

15   business reputation or likelihood of misappropriating the goodwill

16   associated with the BdM's Trademarks; and

17   (e)   From performing any act or using or displaying BdM's Trademarks or any

18   similar words or marks which cause dilution of the distinctive qualities of

19   BdM's Trademarks.

20   3.   That Delaware North's infringement and other wrongful acts herein alleged be

21   determined deliberate, willful and in conscious disregard of BdM's rights pursuant to 15 U.S.C. §

22   1117, 15 U.S.C. § 1125(a), and at common law;

23   4.   That Delaware North be required to account to BdM for any and all gross and net

24   sales, revenues, and profits received or derived by Delaware North from the manufacture,

25   marketing, sale, offering for sale, and/or distribution of products or services bearing or using the

26   infringing BdM's Trademarks;

27   5.   That BdM be awarded Delaware North's profits after an accounting;

28   6.   That actual damages be awarded to BdM in an amount according to proof;

7.     That as a result of Delaware North's willful and malicious activities, the Court award BdM treble the amount of actual damages resulting from Delaware North's trademark infringement, unfair competition, and dilution;

8.     That BdM be awarded punitive damages, as applicable, against Delaware North;

9.     That the Court award BdM pre-judgment and post-judgment interest pursuant to 15 U.S.C. § 1117 and as otherwise allowed by law;

10.    That BdM be awarded all of its litigation expenses, including without limitation, its reasonable attorney's fees and costs  pursuant to 15 U.S.C. § 1117, 15 U.S.C. § 1125, and all other applicable laws; and

11.    That the Court order such other relief as it deems proper.

### AGAINST DIRECTOR COLEMAN

1.     Pursuant to 15 U.S.C. §§ 1116, 1125(c)(2), that this Court issue a preliminary injunction enjoining, restraining, and ordering Director Coleman:

(a)    From taking any steps to approve, finalize, ratify and/or implement the concession contract with Delaware North.

(b)    From taking any steps to approve, finalize, ratify and/or implement the concession contract with any entity that proposes to infringe on BdM's Trademarks.

(c)    From in any way infringing upon BdM's Trademarks and/or in any way inducing others to infringe upon BdM's Trademarks and/or in any way approving a concession contract that proposes to infringe upon BdM's Trademarks.

(d)    From in any way using BdM's Trademarks, and/or any similar names or marks in a manner which is likely to cause confusion, mistake or to deceive, or in a manner which is likely to constitute a false designation of origin or a false or misleading description or representation of fact.

(e)    From performing any act or using or displaying the BdM's Trademarks or any similar names or marks which create a likelihood of injury to BdM's

business reputation or likelihood of misappropriating the goodwill associated with the BdM's Trademarks.

(f) From performing any act or using or displaying BdM's Trademarks or any similar words or marks which cause dilution of the distinctive qualities of BdM's Trademarks.

(g) From proceeding with its administrative appeal process until BdM's trademark rights are adjudicated in this action.

(h) To issue a new Request For Proposal for operation of the Old Town concession that is consistent with BdM's trademark rights and that clearly advises proposers that they cannot, without BdM's consent, use BdM's Trademarks, or any confusingly similar or related marks, in connection with any restaurant or food services.

2. Pursuant to 15 U.S.C. §§ 1116, 1125(c)(2), that this Court issue a permanent injunction enjoining, restraining, and ordering Director Coleman:

(a) From taking any steps to approve, finalize, ratify and/or implement the concession contract with Delaware North.

(b) From taking any steps to approve, finalize, ratify and/or implement the concession contract with any entity that proposes to infringe on BdM's Trademarks.

(c) From in any way infringing upon BdM's Trademarks and/or in any way inducing others to infringe upon BdM's Trademarks and/or in any way approving a concession contract that proposes to infringe upon BdM's Trademarks.

(d) From in any way using BdM's Trademarks, and/or any similar names or marks in a manner which is likely to cause confusion, mistake or to deceive, or in a manner which is likely to constitute a false designation of origin or a false or misleading description or representation of fact.

(e) From performing any act or using or displaying the BdM's Trademarks or

Case No. 03 CV 2284 TJW (LSP)
FIRST AMENDED COMPLAINT

1   any similar names or marks which create a likelihood of injury to BdM's

2   business reputation or likelihood of misappropriating the goodwill

3   associated with the BdM's Trademarks.

4   (f)   From performing any act or using or displaying BdM's Trademarks or any

5   similar words or marks which cause dilution of the distinctive qualities of

6   BdM's Trademarks.

7   (g)   From proceeding with its administrative appeal process until BdM's

8   trademark rights are adjudicated in this action.

9   (h)   To issue a new Request For Proposal for operation of the Old Town

10   concession that is consistent with BdM's trademark rights and that clearly

11   advises proposers that they cannot, without BdM's consent, use BdM's

12   Trademarks, or any confusingly similar or related marks, in connection with

13   any restaurant or food services.

14   3.   That the Court order such other relief as it deems proper.

16   DATED: December 26, 2003        LUCE, FORWARD, HAMILTON & SCRIPPS LLP

18   By: _____
19   Michael A. Attanasio
     Attorneys for Bazaar Del Mundo, Inc.

20   **DEMAND FOR JURY TRIAL**

21   Plaintiff BdM hereby demands trial by jury of this action.

22   DATED: December 26, 2003        LUCE, FORWARD, HAMILTON & SCRIPPS LLP

24   By: _____
25   Michael A. Attanasio
     Attorneys for Bazaar Del Mundo, Inc.

28   1922804.1

24

Case No. 03 CV 2284 TJW (LSP)
FIRST AMENDED COMPLAINT

1

PROOF OF SERVICE

2

BAZAAR DEL MUNDO, INC., v. DELAWARE NORTH COMPANIES PARKS AND RESORTS; et al.,

3

Case No. 02 CV 2284 THW (LSP)

4

5

I, Jackie Foglio, declare as follows:

I am employed with the law firm of Luce, Forward, Hamilton & Scripps LLP, whose

6

address is 600 West Broadway, Suite 2600, San Diego, California 92101-3372. I am over the age

7

of eighteen years, and am not a party to this action.

8

9

On December 29, 2003, I served the following:

**FIRST AMENDED COMPLAINT FOR:**

10

**(1) DECLARATORY RELIEF;**
**(2) FEDERAL TRADEMARK INFRINGEMENT [15 U.S.C. § 114];**

11

**(3) FALSE DESIGNATION OF ORIGIN AND UNFAIR COMPETITION**
**[15 U.S.C. § 1125 (a)];**

12

**(4) DILUTION OF TRADEMARKS [15 U.S.C. § 1125 (C)(1)];**
**(5) TRADEMARK INFRINGEMENT [Cal. Bus. & Prof. Code § 14320];**

13

**(6) DILUTION OF TRADEMARKS [Cal. Bus. & Pro. Code § 14330];**
**(7) UNFAIR COMPETITION [Cal. Bus. & Pro. Code § § 17200 and 17500];**

14

**(8) COMMON LAW TRADEMARK INFRINGEMENT;**
**(9) COMMON LAW UNFAIR COMPETITION;**

15

**TRIAL BY JURY REQUESTED**

16

17

on the interested parties in this action by:

18

XX

**U. S. MAIL:** I placed a copy in a separate envelope, with postage fully prepaid, for

19

each address named on the attached service list for collection and mailing on the below indicated day following the ordinary business practices at Luce, Forward, Hamilton &

20

Scripps LLP. I certify I am familiar with the ordinary business practices of my place of employment with regard to collection for mailing with the United States Postal Service.

21

I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit or mailing affidavit.

22

23

**OVERNIGHT COURIER SERVICE:** I placed a copy in a separate envelope addressed to each addressee as indicated below, and caused such envelope(s) to be

24

delivered via _____.

25

**HAND DELIVERY:** I placed a copy in a separate envelope addressed to each addressee as indicated below, and delivered it to _____ for personal service.

26

XX

**FACSIMILE:** I sent a copy via facsimile transmission to the telefax number(s)

27

indicated below. The facsimile machine I used complied with California Rules of Court, Rule 2003 and no error was reported by machine. Pursuant to California Rules

28

of Court, Rule 2006(d), I caused the machine to print a transmission record of the transmission, a copy of which is attached to this declaration.

COPY

1

1   David Elson                           David Robinson
    Randall W. Keen                       Deputy Attorney General
2   Manatt, Phelps, Phillips              110 West A Street
    11355 W. Olympic Blvd.                Suite 1100
3   Los Angeles, CA 90064                 San Diego, CA 92186

4

5

6   _____   **(STATE):** I declare under penalty of perjury under the laws of the State of California
            that the foregoing is true and correct.

7   XX      **(FEDERAL):** I declare that I am employed in the office of a member of the bar of this
            court at whose direction the service was made.

8
            Executed at San Diego, California on December 29, 2003.
9

10

11                              _Jackie Foglio_
                        JACKIE FOGLIO

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28



1  BILL LOCKYER
   Attorney General of the State of California
2  MARY HACKENBRACHT
   Senior Assistant Attorney General
3  CAROL A. SQUIRE
   Supervising Deputy Attorney General
4  DAVID H. ROBINSON
   Deputy Attorney General
5  State Bar No. 74956
     110 West "A" Street, Suite 1100
6    San Diego, CA 92101
     P.O. Box 85266
7    San Diego, CA 92186-5266
     Telephone: (619) 645-2609
8    Fax: (619) 645-2581
   Attorneys for Defendant RUTH COLEMAN
9
                IN THE UNITED STATES DISTRICT COURT
10
              FOR THE SOUTHERN DISTRICT OF CALIFORNIA
11

12 | **BAZAAR DEL MUNDO, INC.,**              Case No. 03CV2284 W (LSP)

13 |                          Plaintiff,      **REPLY MEMORANDUM OF
                                              POINTS AND AUTHORITIES IN
14 |          v.                              SUPPORT OF DEFENDANT RUTH
                                              COLEMAN'S MOTION TO
15 | **DELAWARE NORTH COMPANIES PARKS         DISMISS OR STAY FIRST
      AND RESORTS; RUTH COLEMAN, in her       AMENDED COMPLAINT**
16 |  official capacity as the DIRECTOR OF THE
      DEPARTMENT OF PARKS AND                 Date:      February 9, 2004
17 |  RECREATION FOR THE STATE OF             Time:      10:30 a.m.
      CALIFORNIA,**                           Courtroom: 7
18 |                                          Judge:     Hon. Thomas J.
                          Defendant.                     Whelan
19
                                             [Fed. Rules Civ. Proc., §§ 12(b),
20                                           12(b)(1), and 12(b0(6)]

21                                           No Oral Argument Unless
                                             Requested by the Court
22

23

24                        **INTRODUCTION**

25        In its Opposition brief, Plaintiff Bazaar del Mundo, Inc., thoroughly misstates applicable

26 trademark law and its application to injunctive relief, declaratory relief, and state immunity under

27 the Eleventh Amendment.  In addition, Plaintiff misunderstands and misapplies the doctrines of

28 abstention and stay.  Plaintiff fails to overcome the glaring reality that Plaintiff's First Amended

                                             03CV2284 W (LSP)

                                   1

1   Complaint is barred because its claims are premature and unripe. In its Opposition, Plaintiff attempts

2   to refocus the gravamen of its claims in an unsuccessful attempt to dissuade this Court from applying

3   the appropriate legal standards that would result in dismissal of the case. Plaintiff has simply filed

4   this lawsuit prematurely as an attempt to manufacture leverage in its bid protest against a

5   competitor.[1]

6

### ARGUMENT

7

8   1.   **The First Amended Complaint and All Claims Against Defendant**
        **Coleman Are Premature and Are Not Ripe For Adjudication Under the**
9       **Trademark Laws Because The State Administrative Decision Is Not**
        **Final And There Has Not Been Use In Commerce Of the Alleged**
10      **Infringement**

11          In its Opposition brief, Plaintiff claims a controversy regarding the alleged trademark of

12   two restaurant names exists because the State disagrees with Plaintiff's assertion that it has legally

13   trademarked historical names. This disagreement does not, by itself, render Plaintiff's lawsuit ripe

14   for adjudication.

15          Federal trademark registration, and infringement, require use in commerce. <u>See, e.g.</u>,

16   Lanham Act Section 1(a), Section 2(d). In this case, the bid process itself is not concluded; Plaintiff

17   remains a tenant in possession using the allegedly trademarked names; and any future use of the

18   names in commerce is purely speculative.[2]   Plaintiff does not, and cannot, allege that the State's bid

19   procedures required bidders to utilize the disputed names. Moreover, Defendant Delaware North

20   Companies Parks and Resorts ("Delaware North") has already stated its intent *not* to use the

21   trademarks claimed by Plaintiff. Plaintiff's trademark infringement claims become ripe only when

22   a new restaurant commences operations using the names.

23   ///

24

---

25      1. By stipulation, all parties agreed that the state administrative law hearing deciding the
     validity of the bid process will occur on March 8-11, 2004.
26
        2. Plaintiff asserts strenuously that its alleged trademarks are "incontestable." All that means
27   is that the grounds on which the subject registrations may be canceled are somewhat narrowed. The
     State is currently investigating the circumstances under which the subject registrations were
28   obtained.

03CV2284 W (LSP)

1  Similarly, declaratory relief is inappropriate where the alleged infringer has not actually

2  engaged in a course of conduct of "adversarial conflict" with the alleged trademark owner.  See,

3  Windsurfing Int;l. Inc. v. AMF, Inc., 828 F.2d 755 (Fed.Cir. 1987); Baltimore Luggage Co. v.

4  Samsonite Corp., 727 F.Supp. 202 (D.Md. 1989) (alleged infringer had exhausted inventory).  The

5  alleged infringer must have evidenced a "definite intent and apparent ability to commence use of the

6  marks...."  Starter Corp. v. Converse, Inc., 84 F.3d 592 (2d Cir. 1996).  There is no such evidence

7  here.

8  Plaintiff also asks the Court for injunctive relief to enjoin any *future* use of the allegedly

9  trademarked restaurant names.  There is, as yet, no identified infringing use *in commerce*, as required

10 by the Lanham Act.  Injunctive relief is inappropriate in a Lanham Act case where the alleged

11 infringement is merely a possibility.  See, e.g., Lang v. Pacific Marine & Supply Co., 895 F.2d 761,

12 13 USPQ2d 1820 (Fed.Cir. 1990) (Lanham Act claim based on alleged false advertisement that

13 defendant was principal designer of a ship's control system, dismissed where ship was still under

14 construction); NTN Communications v. Interactive Network, 37 USPQ2d 1475 (N.D.Cal. 1995) (no

15 allegations that defendant had taken steps to begin use of the offending marks); U-Haul International,

16 Inc. v. Kresch, 35 USPQ2d 1317 (E.D.Mich. 1994) (no evidence of infringing use of 800-GO-U-

17 HALL); CogniTest Corp. v. Riverside Publishing Co., 36 USPQ2d 1363 (N.D.Ill. 1995) (no

18 allegation of use in commerce of allegedly infringing mark on software program not yet advertised

19 or released to public).

20 In this case, no member of the public could have been confused by the alleged

21 "infringement" because plaintiff *continues* to operate the restaurants in question as a holdover tenant.

22 The alleged "infringement" has occurred solely in the context of administrative bid processes

23 removed from the public.  Plaintiff implicitly recognizes this in its Opposition brief, arguing that

24 Delaware North "submitted a proposal that *promises* to commit trademark infringement...."

25 Opposition, p. 4, line 19 (emphasis added). Plaintiff has suffered no damages, and continues to

26 operate the subject facilities as a holdover tenant, and there is no certainty that any other entity will

27 utilize the restaurant names.  Therefore, there is no imminent threat of harm justifying preliminary

28 injunctive relief.

1    **2.    Declaratory Relief Under the Trademark Laws Is Inappropriate Since There
          Is A Pending State Administrative Proceeding.**

2

3         Plaintiff has no *right* to the declaratory relief it seeks.  Declaratory relief under section 2201

4    of Title 22 United States Code, is discretionary, and federal courts should exercise that discretion

5    based on considerations of practicality and wise judicial administration.  Wilton v. Seven Falls Co.,

6    515 U.S. 277, 288, 115 S.Ct. 2137 (1995).  In particular, federal courts generally should decline to

7    entertain "reactive declaratory actions" in favor of pending state proceedings involving either the

8    same parties or the same issues. Id.; Government Employees Inc. Co. v. Dizol, 133 F.3d 1220, 1225

9    (9th Cir. 1998) (*en banc*).  Here, there are both.

10        As the U.S. Supreme Court stated 50 years ago in the context of the U.S. Patent and

11   Trademark Office, federal courts should not use the declaratory judgment procedure to "short-

12   circuit" established administrative procedures.

13        [T]he declaratory judgment procedure will not be used to preempt and prejudge issues that

14        are committed for initial decision to an administrative body or special tribunal any more than

15        it will be used as a substitute for statutory methods of review....

16   Public Service Commission v. Wycoff Co., 344 U.S. 237, 73 S.Ct. 236 (1952).  Accord, Gillette Co.

17   v. "42" Products, Ltd., 435 F.2d 1114 (9th Cir. 1970).  See also, Circuit City Stores v. Speedy Car-X,

18   35 USPQ2d 1703 (E.D.Va. 1995); Kosmeo Cosmetics Inc. v. Lancome Parfums, 44 USPQ2d 1472

19   (E.D.Tex. 1996); Goya Foods, Inc. v. Tropicana Products, Inc., 666 F.Supp. 585 (SDNY 1987) ("The

20   Court will not, by declaratory judgment, intercede gratuitously in the unfinished and pending

21   administrative proceedings."), rev'd on other grounds, 846 F.2d 848 (2d Cir. 1988).

22        The administrative processes pertinent to this case, processes which the *Plaintiff* initiated,

23   are *not* final.  In particular, Plaintiff has raised in its bid protest the exact same issues of alleged

24   trademark ownership and infringement that it has raised here.  This is inconsistent with the assertion

25   in Plaintiff's opposition that the federal courts are the *exclusive* forum in which these claims might

26   be raised.

27   ///

28   ///

03CV2284 W (LSP)

4

### 3. The Federal Courts Do Not Have "Exclusive Jurisdiction" Over Plaintiff's Claims of Trademark Infringement.

Plaintiff incorrectly asserts "the exclusive jurisdiction for federal trademark violation rests in the federal court." (Opposition, p. 14, line 14). In fact, in cases arising under the Lanham Act, the jurisdiction of federal and state courts is concurrent. Aquatherm Industries, Inc. v. Fla. Power & Light Co. 84 F.3d 1388, 1394 (11th Cir. 1996); Scientific Technology, Inc. v. Stanford Telecommunications, Inc., 9 U.S.P.Q.2d 1566, 1567 (N.D.Cal. 1988) ("Congress did not intend to limit adjudication of trademark actions under the Lanham Act to federal courts"); Dugan's Funeral Service, Inc. v. Duggan's Serra Mortuary, Inc., 80 Cal. App. 4th 151, 158-159 (2000) ("state courts possess powers under the Lanham Act identical to those of the federal courts"); Brown & Bigelow v. Remembrance Advertising Prod., 279 A.D. 410 [110 N.Y.S.2d 441] (1952), aff'd., 304 N.Y. 909 [110 N.E.2d 736] (state courts can pass upon the validity of federal trademark registration); 5 McCarthy on Trademarks and Unfair Competition (4th ed. 1997) § 32:1 ("there is no doubt … that state courts possess powers under the [Lanham] Act identical to those of the federal courts").

Moreover, the federal Declaratory Judgment Act is not itself an independent grant of jurisdiction to the federal courts. Under Wycoff, "[f]ederal courts will not seize litigation from state courts" merely because one party goes to federal court to assert its federal-law arguments before the state forum begins the case under state law. Thus, McCarthy suggests there is no federal question presented "if a trademark licensee sues a federal trademark registrant in state court, and the registrant seeks a federal declaratory judgment." McCarthy § 32:56 (noting that state courts have the power to cancel federal trademark registrations under Lanham Act § 37, 15 USC § 1119).

### 4. The Eleventh Amendment Bars Trademark Suit Against the State of California And Its Officials

Plaintiff incorrectly alleges its trademark infringement suit against Defendant Ruth Coleman may proceed under the Ex parte Young doctrine. The distinction strenuously asserted by Plaintiff between damages and injunctive relief that is relevant to the Ex parte Young doctrine (see Opposition, pages 4-8) is simply not found in the context of trademark law.

///

1    Rather, as stated by McCarthy, as a result of three U.S. Supreme Court decisions in 1999,

2  "a trademark owner apparently cannot sue a state for infringement in violation of the Lanham Act

3  in either federal court or state court. ... Rather, the trademark owner is relegated to suing for a

4  violation of state trademark law in state court, assuming that the state has consented to being sued

5  for that type of case." 4 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition

6  § 25:66 (4th ed. 2003).  See, Florida Prepaid Postsecondary Education. Expense Board. v. College

7  Savings Bank, 527 U.S. 627; 119 S. Ct. 2199 (1999) (authorization of Lanham Act false advertising

8  cases against a state was unconstitutional); College Savings Bank v. Florida Prepaid Postsecondary

9  Education Expenses Board, 527 U.S. 666, 119 S. Ct. 2219 (1999); Alden v. Maine, 119 S. Ct. 2240

10  (1999) (state immune from being sued in its own courts for a violation of federal law).  See also,

11  Chavez v. Arte Publico Press, 204 F.3d 601, 607-608 (5th Cir. 2000) (applying holding in Florida

12  Prepaid to copyright actions and finding Copyright Remedy Clarification Act an invalid exercise of

13  legislative power); Idaho Potato Commissioner v. M&M Produce Farms & Sales, 95 F.Supp.2d 150

14  (SDNY. 2000), aff'd by 238 F.3d 468, 57 USPQ2d 1728 (2d Cir. 2001) (Eleventh Amendment state

15  sovereign immunity prevents assertion of antitrust claim and claim for cancellation of the IDAHO

16  potato certification mark).

17    Here, Plaintiff's second claim for Federal Trademark Infringement under 15 USC,

18  section 1114 must be dismissed under Florida Prepaid Postsecondary and Chavez v. Arte Publico

19  Press; its third claim for False Designation of Origin and Unfair Competition under 15 United States

20  Code, section 1125(a) must be dismissed under College Savings Bank; and its fourth claim for

21  Dilution of Trademarks under 15 United States Code, section 1125(c)(1) must be dismissed under

22  all these authorities.  Its first claim, for Declaratory Relief under 22 United States Code,

23  section 2201, is simply derivative of these other claims.  All are barred.

24    **5.    The Federal Court Should Abstain Because It Should Not Interfere With
            The Orderly Process Involving the State Administrative Proceeding**
25         **Initiated By Plaintiff**

26    Plaintiff asserts the abstention doctrine does not apply, attempting to distinguish the facts

27  of each type of abstention.  Plaintiff misses the point.  The essence of the abstention doctrine is that

28  a federal court should not interfere where there is a pending state action that will resolve many, if

03CV2284 W (LSP)

1   not all, of the factual and legal issues between the parties.   Plaintiff incorrectly assumes that the

2   federal court retains exclusive jurisdiction to consider the trademark infringement issues, and

3   therefore argues it should resolve the issues before the state administrative process is concluded. The

4   argument is specious.

5        Plaintiff itself initiated the state administrative proceeding challenging the bid process.

6   Contrary to its assertions in its Opposition, Plaintiff raises identical challenges to the alleged use of

7   trademarked restaurant names in its administrative bid protest.  This Court should not interfere with

8   the orderly process of the state administrative proceeding since resolution of that matter may well

9   moot the federal case.  This Court should give regard to conservation of its judicial resources and

10   the comprehensive nature of the state proceedings.

11   **6.   The Federal Court Should Stay or Dismiss The First Amended Complaint Against Defendant Coleman Under the Declaratory Judgment Act**

12

13        Plaintiff attempts to dispute Defendant Coleman's proper request for stay or dismissal of

14   the First Amended Complaint under the Declaratory Judgment Act, asserting "there is no state court

15   proceeding raising the same issues nor could there be because the exclusive jurisdiction for federal

16   trademark violations rests in the federal court." (Opposition, p. 14, lines 13-14.) As discussed above,

17   Plaintiff's legal contention is wrong since there exists concurrent jurisdiction over the subject matter.

18   Moreover, Plaintiff's own pleadings submitted concerning the bid protest contain arguments

19   challenging the use and propriety of the two restaurant names as an integral part of its challenge.

20   (See State's Request for Judicial Notice, Exh. A, filed in support of Motion to Dismiss, pp. 17-19.)

21                          **CONCLUSION**

22        Plaintiff's First Amended Complaint against Defendant Coleman cannot proceed.  This

23   Court lacks jurisdiction to hear federal trademark matters against Defendant Coleman.  In addition,

24   Plaintiff's claims are speculative and premature because there is no final decision by the state.

25   Moreover, there is no showing of use in commerce of the alleged trademarked names required for

26   trademark infringement.  Plaintiff cannot demonstrate the required prerequisites for declaratory and

27   ///

28   ///

03CV2284 W (LSP)

## DECLARATION OF SERVICE BY U.S. MAIL

Case Name: **BAZAAR DEL MUNDO, INC. v. COLEMAN**
No.: **03CV2284 W (LSP)**

I declare:

I am employed in the Office of the Attorney General, which is the office of a member of the California State Bar at which member's direction this service is made. I am 18 years of age or older and not a party to this matter. I am familiar with the business practice at the Office of the Attorney General for collection and processing of correspondence for mailing with the United States Postal Service. In accordance with that practice, correspondence placed in the internal mail collection system at the Office of the Attorney General is deposited with the United States Postal Service that same day in the ordinary course of business.

On January 29, 2004, I served the attached,

**REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT RUTH COLEMAN'S MOTION TO DISMISS OR STAY FIRST AMENDED COMPLAINT**

by placing a true copy thereof enclosed in a sealed envelope with postage thereon fully prepaid, in the internal mail collection system at the Office of the Attorney General at 110 West "A" Street, Suite 1100, San Diego, California 92101, addressed as follows:

DAVID ELSON
MANATT, PHELPS, PHILLIPS
11355 W. OLYMPIC BOULEVARD
LOS ANGELES, CA 90064

ROBERT G. STEINER
MICHAEL A. ATTANASIO
LUCE, FORWARD, HAMILTON &
SCRIPPS LLP
600 WEST BROADWAY, SUITE 2600
SAN DIEGO, CA 92101
(619) 236-1414

I declare under penalty of perjury under the laws of the State of California the foregoing is true and correct and that this declaration was executed on January 29, 2004, at San Diego, California.

S. KNIGHT _____          _S. Knight_____
Declarant                                Signature

1  Callie A. Bjurstrom, State Bar No. 137816
   Michelle A. Herrera, State Bar No. 209842
2  LUCE, FORWARD, HAMILTON & SCRIPPS LLP
   600 West Broadway, Suite 2600
3  San Diego, California 92101-3372
   Telephone No.: 619.236.1414
4  Fax No.: 619.232.8311

5  Attorneys for Defendant Bazaar del Mundo, Inc.

6

7

8                  UNITED STATES DISTRICT COURT

9                 EASTERN DISTRICT OF CALIFORNIA

10

11  DEPARTMENT OF PARKS AND              Case No. 04-CV-1533 (FCD) JFM
    RECREATION FOR THE STATE OF
12  CALIFORNIA,

13                                       **REQUEST FOR JUDICIAL NOTICE IN**
            Plaintiff,                    **SUPPORT OF DEFENDANT BAZAAR**
14                                       **DEL MUNDO, INC.'S MOTION TO**
    v.                                   **TRANSFER VENUE PURSUANT TO 28**
15                                       **U.S.C. § 1404(a)**
    BAZAAR DEL MUNDO, INC., a California
16  corporation, and DOES 1-50, inclusive,   Date:   October 29, 2004
                                             Time:   10:00 a.m.
17          Defendant.                       Dept.:  2
                                             Judge:  Hon Frank C. Damrell, Jr.
18

19      TO PLAINTIFF AND ITS ATTORNEYS OF RECORD:

20  PLEASE TAKE NOTICE that pursuant to Federal Rule of Evidence 201 and federal law,

21  defendant Bazaar del Mundo, Inc. ("BdM") hereby requests this Court to take judicial notice of

22  the materials that are attached as exhibits to BdM's Notice of Lodgment of Exhibits in Support of

23  Motion to Transfer Venue (28 U.S.C. § 1404(a)) as follows:

24  / / /

25  / / /

26  / / /

27  / / /

28  / / /

1    1.    BdM requests that the Court take judicial notice of the following judgment

2    rendered in San Diego Superior Court, Case No. 301993, <u>State of California v. Cardwell Corp., et</u>

3    <u>al.</u>:

4         (a)    Judgment in Condemnation issued October 17, 1968 in San Diego Superior
              Court, Case No. 301993, attached to BdM's NOL as Exhibit A.
5

6    A court may take judicial notice of a judgment rendered in another action. *See Burbank-*

7    *Glendale-Pasadena Airport Auth. v. City of Burbank*, 136 F.3d 1360, 1364 (9th Cir. 1998); *Bogart*

8    *v. Daley*, 2001 U.S. Dist. LEXIS 9445, * 8 (D. Or. June 28, 2001) ("The existence and contents

9    of orders and pleadings are capable of accurate and ready determination by resort to official court

10   files that cannot reasonably be questioned. *See* Fed. R. Evid. 201(b)(2)").

11   2.    BdM requests that the Court take judicial notice of the following federal and state

12   trademark registrations:

13        (a)    United States Patent & Trademark Registration No. 1,364,974 for the mark
              CASA DE PICO issued to Bazaar del Mundo, Inc. on October 8, 1985,
14            attached to BdM's NOL as Exhibit B.

15        (b)    United States Patent & Trademark Registration No. 1,350,088 for the mark
              CASA DE BANDINI issued to Bazaar del Mundo, Inc. on July 16, 1985,
16            attached to BdM's NOL as Exhibit C.

17        (c)    Certificate of Registration for Service Mark No. 21972, for the mark CASA
              DE PICO, issued to Bazaar del Mundo, Inc. by the State of California on
18            January 14, 1985, attached to BdM's NOL as Exhibit D.

19        (d)    Certificate of Registration for Service Mark No. 21975, for the mark CASA
              DE BANDINI, issued to Bazaar del Mundo, Inc. by the State of California
20            on January 14, 1985, attached to BdM's NOL as Exhibit E.

21   A court may take judicial notice of filings, including registrations of trademarks, with the

22   United States Patent & Trademark Office. *Metro Pub. v. San Jose Mercury News*, 987 F.2d 637,

23   641 n.3 (9th Cir. 1993).

24   3.    BdM requests that the Court take judicial notice of the following pleadings filed in

25   the United States District Court for the Southern District of California, Case No. 03-CV-2284

26   TJW (LSP), <u>Bazaar del Mundo, Inc. v. Delaware North Companies Parks and Resorts and Ruth</u>

27   <u>Coleman, in her official capacity as the Director of the Department of Parks and Recreation for the</u>

28   <u>State of California</u>:

(a)    Bazaar del Mundo's First Amended Complaint filed on December 29, 2003, attached to BdM's NOL as Exhibit F.

(b)    Reply Memorandum of Points and Authorities in Support of Defendant Ruth Coleman's Motion to Dismiss or Stay Amended Complaint filed on or about January 29, 2004, attached to BdM's NOL as Exhibit G.

A court may take judicial notice of pleadings filed in another action.  *See EEOC v. Tortilleria "La Mejor,"* 758 F. Supp. 585, 591 (E.D. Cal. 1991).

DATED: August 30, 2004                    LUCE, FORWARD, HAMILTON & SCRIPPS LLP

By:  _Callie A. Bjurstrom_ _____
Callie A. Bjurstrom
Michelle A. Herrera
Attorneys for Defendant Bazaar del Mundo, Inc.

1993709.11

1   Callie A. Bjurstrom, State Bar No. 137816
    Michelle A. Herrera, State Bar No. 209842
2   LUCE, FORWARD, HAMILTON & SCRIPPS LLP
    600 West Broadway, Suite 2600
3   San Diego, California 92101-3372
    Telephone No.: 619.236.1414
4   Fax No.: 619.232.8311

5   Attorneys for Defendant Bazaar del Mundo, Inc.

**FILED**

AUG 3 1 2004 FCD

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
         DEPUTY CLERK

6

7

8               UNITED STATES DISTRICT COURT

9               EASTERN DISTRICT OF CALIFORNIA     **ORIGINAL**

10

11  DEPARTMENT OF PARKS AND                 Case No. 04-CV-1533 (FCD) JFM
    RECREATION FOR THE STATE OF
12  CALIFORNIA,

13                                          **DECLARATION OF DIANE POWERS IN
              Plaintiff,                     SUPPORT OF DEFENDANT BAZAAR
14                                          DEL MUNDO, INC.'S MOTION TO
    v.                                      TRANSFER VENUE PURSUANT TO 28
15                                          U.S.C. § 1404(a)**
    BAZAAR DEL MUNDO, INC., a California
16  corporation, and DOES 1-50, inclusive,  Date:    October 29, 2004
                                            Time:    10:00 a.m.
17            Defendant.                     Dept.:   2
                                            Judge:   Hon. Frank C. Damrell, Jr.
18

19
        I, Diane Powers, declare as follows:
20
        1.      I am a resident of the State of California and am over eighteen years of age.  I have
21
    personal knowledge of the facts contained in this declaration unless stated on information and
22
    belief, and then I have a reasonable basis for believing the information to be true.  If called as a
23
    witness, I can and will competently testify to the truthfulness of the facts contained herein.
24
        2.      I am the President of Bazaar del Mundo, Inc. ("BdM").  I have been the President
25
    and managing officer continuously since 1971.
26
        3.      In 1971, and in response to a Request for Proposal issued by the Department of
27
    Parks and Recreation for the State of California ("DPR"), BdM submitted a proposal to lease
28

                                7    1                   Case No. 04-CV-1533 (FCD) JFM

property and to create and operate concessions at Old Town San Diego State Historic Park ("Old Town"). At that time, vacant buildings that had once been operated as the Casa de Pico motel were present on the site. They were empty and not being used for any purpose, commercial or otherwise. To my knowledge, no restaurants had ever been operated on the property. In 1971, the land and buildings owned by the DPR in Old Town were in a state of substantial disrepair.

4. That same year, DPR accepted BdM's proposal and awarded BdM the lease of the motel buildings to create and operate concessions in Old Town. I conceived of the idea of converting the abandoned Casa de Pico motel into a Mexican marketplace or "bazaar," with unique restaurants and shops with an international flavor. BdM undertook the substantial task and cost of refurbishing the buildings and landscaping to create "Bazaar del Mundo." In 1971, BdM also established in a part of the vacant former motel buildings, a Mexican-themed restaurant under the name "Casa de Pico." To my knowledge, that was the first time the motel buildings had ever been used for a commercial restaurant. BdM has operated the Casa de Pico restaurant continuously at this location from 1971 to the present.

5. Years later after BdM obtained the lease from DPR, an amendment to the original lease was created to include the development of the El Nopal building and later, another building situated on nearby property known by a number of names including the Miramar Hotel, the Cosmopolitan Hotel and the Bandini house. Shortly thereafter, BdM created, opened and commenced operation of a second Mexican-themed restaurant which it named "Casa de Bandini." To my knowledge, BdM's Casa de Bandini restaurant was the first commercial restaurant ever operated out of this property. BdM has continuously operated the Casa de Bandini restaurant at this location from 1980 to the present.

6. From the inception of the Case de Pico and Casa de Bandini restaurants to the present date, BdM has openly and continuously used the trademarks CASA DE PICO and CASA DE BANDINI in connection with its restaurant services and has expended substantial sums of money advertising, marketing and promoting these services to San Diegans, as well as to tourists who visit San Diego.

Case No. 04-CV-1533 (FCD) JFM

7.     In 1985, in an effort to protect the goodwill BdM had built over the years in its CASA DE PICO and CASA DE BANDINI trademarks, BdM filed applications for registrations of these marks with the United States Patent & Trademark Office ("USPTO") and the State of California.

8.     BdM's lease with DPR expired in 2001. BdM has continued in possession of the property on a month-to-month tenancy while issues regarding the new lease are being resolved. On March 13, 2003, DPR issued a Request for Proposal for the Old Town property occupied by BdM. BdM and other entities submitted proposals for the lease. On October 17, 2003, DPR issued a Notice of Intent to Award the Old Town lease to an entity known as Delaware North Companies & Resorts ("Delaware North").

9.     On October 27, 2003, and in response to DPR's Notice of Intent to Award the Old Town lease to Delaware North, BdM filed an administrative protest pursuant to Title 14, California Code of Regulations, Chapter 3, Section 4400. The issues related to trademark ownership were never part of this administrative protest. In connection with its Notice of Intent to Award the Old Town lease to Delaware North, DPR wrongfully purported to grant Delaware North the ability to operate restaurants at Old Town under BdM's registered trademarks CASA DE PICO and CASA DE BANDINI.

10.     On July 23, 2004, the Administrative Law Judge assigned to BdM's administrative protest issued a written opinion recommending DPR deny BdM's protest. On the same date, DPR issued a formal letter awarding the Old Town concession to Delaware North. On August 2, 2004, BdM filed a Verified Petition for Writ of Mandate (CCP Section 1094.5 or in the Alternative CCP Section 1085) and Request for a Stay and Injunctive Relief, et al. in San Diego Superior Court, Case No. GIC 833619.

11.     BdM continues to operate its restaurants under its CASA DE PICO and CASA DE BANDINI trademarks in Old Town on a month-to-month tenancy and will do so until a final resolution of its lease dispute with DPR.

12.     Over the course of the past thirty years, BdM has used the trademarks CASA DE PICO and CASA DE BANDINI exclusively in connection with the two restaurants it created, owns and operates in Old Town, San Diego.

13.     BdM's only office is in San Diego.  I am BdM's principal officer and I live in San Diego County.

14.     To my knowledge, the Cardwell family from whom the Old Town property was taken by the State of California in 1968, then resided in San Diego.

15.     I reviewed, negotiated, and executed on behalf of BdM, the Concession Agreement and amendments thereto that are attached to plaintiff's complaint in this matter, as well as the 1976 lease of the Bandini house.

16.     Over the course of the past three decades, BdM has engaged in extensive advertising and promotion of its Casa de Pico and Casa de Bandini restaurants in San Diego County.  BdM's advertising and promotional materials are located in San Diego, as are witnesses to the extensive use and promotion by BdM of these restaurants by these names.

17.     BdM has received a number of honors and awards from San Diego-based organizations and tourist groups for its Casa de Pico and Casa de Bandini restaurants.  Casa de Bandini has been awarded Best Mexican Restaurant honors by the San Diego Chapter of the California Restaurant Association on numerous occasions.  Casa de Bandini has also received the honor of Best Patio Dining by the Readers of the San Diego Union-Tribune , and has been given the Silver Fork award for fine Mexican dining by the Restaurant Writers Association.  Among the awards for Casa de Pico are the Best Patio dining award from San Diego Magazine , voted one of the Top 50 Mexican Restaurants in the United States by Hispanic Magazine , the Best Margarita award from the San Diego Union-Tribune Readers Poll, and the Finest Service Award from the San Diego Convention and Visitors Bureau.

18.     I am the primary individual at BdM who has personal knowledge and will testify regarding BdM's continued use of its trademarks and its applications for registrations of these marks.  Other witnesses who may have personal knowledge regarding these registrations and the continuous use of these marks by BdM are Cindy Furlong, also with BdM and a San Diego

4

Case No. 04-CV-1533 (FCD) JFM

FROM :DESIGN CENTER INC          FAX NO. :619 2972706          Aug. 30 2004 10:09PM  P6

Luce Forward et. al. 8/30/04 2:04    PAGE  6/6    RightFax

1   resident, and current and former attorneys for BdM including Lisa Sanderson and Peter Hahn,

2   both of whom reside in San Diego County.

3        19.    It would be extremely inconvenient, disruptive and expensive for BdM to have to

4   defend this case filed by DPR in Sacramento, over 500 miles away from the restaurants and the

5   business of BdM.

6        20.    Over the last 10 months, BdM has received in excess of 600 letters and hundreds of

7   telephone calls and/or comments of support given to staff at its restaurants from San Diego

8   residents regarding its dispute with DPR and DPR's decision to grant the lease to Delaware North.

9   In excess of 5000 people, many of them local residents, have signed petitions in support of BdM,

10  and a website has also been created, "www.savebazaardelmundo.com," by local residents.

11       I declare under penalty of perjury of the laws of the State of California that the foregoing is

12  true and correct, and that this declaration was executed on August 30 2004 in San Diego,

13  California.

14

15

16                                          Diane Powers

17

18  1003690

19

20

21

22

23

24

25

26

27

28

5

1  Callie A. Bjurstrom, State Bar No. 137816
   Michelle A. Herrera, State Bar No. 209842
2  LUCE, FORWARD, HAMILTON & SCRIPPS LLP
   600 West Broadway, Suite 2600
3  San Diego, California 92101-3372
   Telephone No.: 619.236.1414
4  Fax No.: 619.232.8311

5  Attorneys for Defendant Bazaar del Mundo, Inc.

6

7

**FILED**

**AUG 3 1 2004**

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
        DEPUTY CLERK

8                UNITED STATES DISTRICT COURT

9              EASTERN DISTRICT OF CALIFORNIA

**ORIGINAL**

10

| | |
|---|---|
| 11  DEPARTMENT OF PARKS AND RECREATION FOR THE STATE OF CALIFORNIA, | Case No. 04-CV-1533 (FCD)JFM |
| 12 | |
| 13          Plaintiffs, | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT BAZAAR DEL MUNDO, INC.'S MOTION TO TRANSFER VENUE PURSUANT TO 28 U.S.C. § 1404(a)** |
| 14  v. | |
| 15  BAZAAR DEL MUNDO, INC., A California corporation, and DOES 1-50, inclusive, | Date:    October 29, 2004 |
| 16 | Time:   10:00 a.m. |
| 17          Defendants. | Dept.:   2 |
| | Judge:  Hon. Frank C. Damrell, Jr. |

18

19

20

21

22

23

24

25

26

27

28

6

# **TABLE OF CONTENTS**

Page

I.    INTRODUCTION ................................................................................................. 1

II.   STATEMENT OF FACTS AND PROCEDURAL BACKGROUND ................... 2

      A.   The Establishment of Old Town San Diego ............................................. 2

      B.   The Creation and Operation of Casa De Pico and Casa De Bandini ......... 3

      C.   DPR'S Intent to Award Old Town Concession to Third Party and Resulting
           Legal Challenge ..................................................................................... 4

      D.   The Localized Nature Of This Dispute Against BdM ............................... 6

III.  LEGAL AUTHORITY AND ARGUMENT ........................................................ 7

      A.   Legal Standard ....................................................................................... 7

      B.   Venue in the Transferor Court is Proper and the Case Could Have Initially
           Been Filed in the Transferee Court ........................................................ 7

      C.   The Convenience of the Parties and Witnesses and the Interests of Justice
           Warrant the Transfer of this Action to the Southern District of California ............. 8

           1.   The Southern District of California is Overwhelmingly More
                Convenient for the Parties and Witnesses in this Action ............................. 9

           2.   The Interests of Justice Weigh Heavily in Favor of Transferring this
                Action to the Southern District of California ............................................. 11

IV.   CONCLUSION ................................................................................................. 13

Case No. 04-CV-1533 (FCD)JFM

1

<h1 style="text-align:center">TABLE OF AUTHORITIES</h1>

<div style="text-align:right"><u>**Page**</u></div>

2

3  <u>**CASES**</u>

4  *A.J. Industries, Inc. v. United States Dist. Court for Cent. Dist.,*
       503 F.2d 384 (9th Cir. 1974) .................................................................................. 12

5
   *Allegiance Healthcare Corp. v. London Int'l. Group,*
6      1998 U.S. Dist. LEXIS 8953 (N.D. Cal. June 16, 1998) ..................................... 13

7  *Decker Coal Co. v. Commonwealth Edison Co.,*
       805 F.2d 834 (9th Cir. 1986) ....................................................................... 7, 9, 11

8
   *Goodyear Tire & Rubber Co. v. McDonnell Douglas Corp.,*
9      820 F. Supp. 503 (C.D. Cal. 1992) ....................................................................... 7

10 *Gulf Oil Corp. v. Gilbert,*
       330 U.S. 501 (1947) ............................................................................................. 11

11
   *Hatch v. Reliance Ins. Co.,*
12     758 F.2d 409 (9th Cir. 1985) .................................................................................. 7

13 *Hyundai Space & Aircraft Co. v. Boeing Co.,*
       1999 U.S. Dist. LEXIS 16025 (N.D. Cal. Oct. 12, 1999) ................................... 12

14
   *In re Eastern Dist. Repetitive Stress Injury Litig.,*
15     850 F. Supp. 188 (E.D.N.Y. 1994) ....................................................................... 12

16 *Jones v. GNC Franchising, Inc.,*
       211 F.3d 495 (9th Cir. 2000) .................................................................................. 7

17
   *Luyendyk v. Douglas Shierson Racing, Inc.,*
18     1992 U.S. Dist. LEXIS 4584 (N.D. Cal. Mar. 23, 1992) ..................................... 12

19 *Pacific Car & Foundry Co. v. Pence,*
       403 F.2d 949 (9th Cir. 1968) ................................................................................. 12

20
   *Polizzi v. Cowles Magazines, Inc.,*
21     345 U.S. 663 (1953) ............................................................................................... 8

22 *Stewart Organization v. Ricoh Corp.,*
       487 U.S. 22 (1988) ................................................................................................. 7

23
   *United Drug Co. v. Theodore Rectanus Co.,*
24     248 U.S. 90 (1918) ................................................................................................. 9

25

   <u>**STATUTES**</u>
26
   15 U.S.C. § 1065 .......................................................................................................... 4
27
   28 U.S.C. § 1391(b) ...................................................................................................... 8
28

<div style="text-align:center">ii</div>

28 U.S.C. § 1404(a) .................................................................................................. 1, 3, 7, 8, 13

28 U.S.C. § 1441 ................................................................................................................ 1

28 U.S.C. § 1446 ................................................................................................................ 1

CCP Section 1085 .............................................................................................................. 5

CCP Section 1094.5 ........................................................................................................... 5

Title 14, California Code of Regulations, Chapter 3, Section 4400 ................................... 4

iii

Case No. 04-CV-1533 (FCD)JFM

1    Defendant Bazaar del Mundo, Inc. ("BdM") respectfully submits this Memorandum of

2    Points and Authorities in Support of its Motion to Transfer Venue pursuant to 28 U.S.C.

3    § 1404(a).

4                                              I.

5                                      **INTRODUCTION**

6        Plaintiff Department of Parks and Recreation for the State of California ("DPR") originally

7    filed the subject Complaint against BdM in Sacramento County Superior Court.  Because DPR's

8    complaint involves questions of federal law, BdM promptly removed the case to this Court

9    pursuant to 28 U.S.C. §§ 1441 and 1446.  Although venue in the Eastern District of California is

10   proper simply because the case was removed to federal court in this District, the Eastern District

11   has no real interest in this dispute.  The dispute between DPR and BdM is a local dispute over

12   intellectual property being used in connection with the operation of two restaurants in San Diego.

13   The parties, witnesses and evidence are located in San Diego.  In the interest of justice, BdM

14   requests this Court exercise its discretion pursuant to 28 U.S.C. § 1404(a) to transfer this case to

15   the Southern District of California; a more convenient forum for a fair and economical resolution

16   of this dispute.

17   With regard to the specific allegations of the Complaint, DPR alleges ownership of two

18   trademarks that BdM created, continuously uses and registered with both the United States

19   Patent & Trademark Office ("USPTO") and the State of California almost twenty years ago.

20   These marks, CASA DE PICO and CASA DE BANDINI, have been used by BdM for decades in

21   connection with two restaurants of the same names it owns and operates in Old Town, San Diego.

22   The restaurants are operated out of buildings BdM leases from DPR.  BdM's lease expired in 2001

23   and thereafter, BdM leased the premises on a month to month basis while DPR engaged in a

24   protracted bid process for the operation of concessions through a lease of these and other

25   buildings.   As part of this bid process, DPR for the first time claimed ownership of

26   BdM's CASA DE PICO and CASA DE BANDINI trademarks and falsely represented that any

27   / / /

28   / / /

1 | new concessionaire would be able to use these marks. In October 2003, DPR awarded the right to

2 | operate concessions in Old Town to a third party on this false premise.[1]

3 |     This lawsuit over the ownership of BdM's trademarks used in connection with its two

4 | restaurants in San Diego, clearly belongs in San Diego. BdM's only office is in San Diego and it

5 | has used the trademarks at issue only in connection with the two restaurants it operates in

6 | San Diego. All of the facts underlying DPR's claims and BdM's defenses have occurred in the

7 | Southern District of California, and all of the evidence relevant to those claims and defenses is

8 | located in that district. The witnesses to this dispute are also located in San Diego. The Southern

9 | District of California is an overwhelmingly more convenient forum for the resolution of this

10 | dispute.

11 |     In addition, the overriding interests of fairness and justice mandate that this action proceed

12 | in San Diego. This case should never have been filed in Sacramento. DPR's decision to file this

13 | Complaint in Sacramento, a forum which has essentially no connection to the dispute, is an

14 | obvious attempt at forum shopping. It would be unfair to require BdM to defend this localized

15 | dispute in a distant forum, at far greater expense and inconvenience to the parties and witnesses.

16 |     For the reasons set forth herein, BdM respectfully requests this Court grant its motion and

17 | transfer this action to the United States District Court for the Southern District of California.

18 | <p style="text-align:center">**II.**</p>

19 | <p style="text-align:center">**STATEMENT OF FACTS AND PROCEDURAL BACKGROUND**</p>

20 | **A.**   **The Establishment of Old Town San Diego**

21 |     The State of California by virtue of a 1968 condemnation judgment in the San Diego

22 | County Superior Court, acquired title to approximately fourteen acres of land upon which it

23 | established Old Town San Diego State Historic Park. (*See* Judgment in Condemnation, Notice of

24 | Lodgment of Exhibits in Support of Defendant Bazaar del Mundo, Inc.'s Motion to Transfer

---

[1]   BdM has filed an administrative challenge to DPR's decision to lease the property to a new concessionaire. This case is pending in San Diego County Superior Court. BdM also filed a trademark infringement lawsuit against DPR and the third party to whom DPR indicated an intent to award the concessions, in the United States District Court for the Southern District of California. The action against this third party is currently pending and on appeal to the Ninth Circuit Court of Appeals.

<p style="text-align:center">2</p>

<p style="text-align:right">Case No. 04-CV-1533 (FCD)JFM</p>

1   Venue Pursuant to 28 U.S.C. § 1404(a) ("NOL"), Exhibit A)  This park is located in the City of

2   San Diego.  Two of the properties acquired through this condemnation proceeding were Parcel

3   No. 10, which included the Casa de Pico Motel, and Parcel No. 41, otherwise known as the

4   Bandini house property.  (*Id.*)  The titles to these properties were taken by condemnation from the

5   Cardwell family of San Diego, California.  (*Id.*)

6       In 1971, the State issued its first Request for Proposal to create and operate a concession

7   within Old Town under a lease of property owned by DPR.  (Declaration of Diane Powers in

8   Support of Defendant Bazaar del Mundo, Inc.'s Motion to Transfer Venue Pursuant to 28 U.S.C.

9   § 1404(a) ("Powers Decl."), ¶ 3.)  At that time, the land and buildings located thereon were in a

10  state of significant disrepair.  (*Id.*)  No restaurants existed on the property; rather, the buildings

11  were vacant.  (*Id.*)  BdM submitted a proposal and later that same year, DPR granted BdM the

12  lease to create and operate a concession in Old Town.  (*Id.*, ¶ 4.)

13  **B.**    **The Creation and Operation of Casa De Pico and Casa De Bandini**

14      Diane Powers, the owner of BdM, conceived of the idea of converting the abandoned Casa

15  de Pico Motel and adjacent properties into a Mexican marketplace or "bazaar" with unique shops

16  and restaurants. (Powers Decl., ¶ 4.)  Over the course of 33 years, her vision, promotional talents

17  and careful management style have developed this area into a destination event for local

18  San Diegans and tourists alike.

19      Two of the restaurants BdM created and that it operates in Old Town are "Casa De Pico"

20  and "Casa De Bandini."  Specifically, BdM established the Casa de Pico restaurant in 1971.  Casa

21  de Bandini opened in 1980. (Powers Decl., ¶ 4-5.)  From the inception of these restaurants to the

22  present date, BdM has openly and continuously used the trademarks CASA DE PICO and CASA

23  DE BANDINI in connection with its restaurant services and has expended substantial sums of

24  money advertising, marketing and promoting these services to San Diegans, as well as to tourists

25  who visit San Diego.  Through BdM's efforts, Casa de Pico and Casa de Bandini have become

26  well-known, award-winning Mexican-themed eating establishments in San Diego. (Powers Decl.,

27  ¶¶ 2-6.)

28      In 1985, in an effort to protect the goodwill BdM had built over the years in its CASA DE

3

Case No. 04-CV-1533 (FCD)JFM

1  PICO and CASA DE BANDINI trademarks, BdM filed applications for registration of these

2  marks with the USPTO and with the State of California. (Powers Decl., ¶ 7.) Following

3  completion of the administrative review processes that govern trademark registration, both the

4  USPTO and the State of California issued registrations for these marks to BdM. (*See* USPTO

5  Trademark Registration No. 1,364,974, NOL Exhibit B; USPTO Trademark Registration

6  No. 1,350,088, NOL Exhibit C; California Trademark Registration No. 21972, NOL Exhibit D;

7  California Trademark Registration No. 21975, NOL Exhibit E.) BdM's federal registrations are

8  incontestable pursuant to 15 U.S.C. §1065. (*See* NOL Exhibits B and C.)

9  **C.   DPR'S Intent to Award Old Town Concession to Third Party and Resulting Legal**

10  **Challenge**

11  DPR originally leased its Old Town property to BdM for a period of ten years. (*See*

12  Exhibit A to Plaintiff's Complaint.) DPR renewed BdM's lease twice, each for an additional ten

13  year period. (*Id*.) In 2001, BdM's most recent 10-year lease with DPR expired of its own terms.

14  (Complaint, ¶ 7.) BdM continued in possession of the property on a month to month tenancy until

15  the issues regarding the new lease were resolved. (Powers Decl., ¶ 8.) To start the process of

16  awarding a new lease, on March 13, 2003, DPR issued a Request for Proposal for the Old Town

17  property occupied by BdM. (*Id*.) In addition to BdM, several other entities submitted proposals

18  for the lease, including an entity known as Delaware North Companies Park & Resorts ("Delaware

19  North"). On October 17, 2003, DPR issued a Notice of Intent to Award the Old Town lease to

20  Delaware North. (*Id*.)

21  On October 27, 2003, BdM filed an administrative protest pursuant to Title 14, California

22  Code of Regulations, Chapter 3, Section 4400. (Powers Decl., ¶ 9.) The grounds for the protest

23  included that in its award decision, DPR wrongfully purported to grant Delaware North the ability

24  to operate restaurants at Old Town under BdM's registered trademarks CASA DE PICO and

25  CASA DE BANDINI. On July 23, 2004, after convening an administrative hearing, the

26  Administrative Law Judge assigned to the matter issued a written opinion recommending denial of

27  BdM's protest. (*Id*., ¶ 10.) This recommendation was based on reasons unrelated to the

28  trademarks at issue in this case. (*Id*.) On the same date, DPR issued a formal letter awarding the

1   Old Town concession to Delaware North.  (*Id.*)  Thereafter, on August 2, 2004, BdM filed a

2   Verified Petition for Writ of Mandate (CCP Section 1094.5 or in the Alternative CCP

3   Section 1085) and Request for a Stay and Injunctive Relief, et al. in San Diego Superior Court,

4   Case No. GIC 833619. (*Id.*)  DPR is expected to appear in that action.  BdM continues to operate

5   its restaurants under its CASA DE PICO and CASA DE BANDINI trademarks in Old Town,

6   San Diego on a month-to-month tenancy until a final resolution of its lease dispute with DPR.

7   (*Id.*, ¶ 11.)

8        On December 12, 2003, while the administrative protest was still pending, BdM filed a

9   complaint against DPR and Delaware North in the United States District Court for the Southern

10  District of California, Case No. 03cv2284 TJW(LSP).  A First Amended Complaint was filed on

11  December 29, 2003, and alleged causes of action for trademark infringement and related federal

12  and state law claims.  (*See* BdM's First Amended Complaint in Case No. 03cv2284 TJW(LSP),

13  NOL Exhibit F.)

14       DPR filed a motion to dismiss BdM's First Amended Complaint on the grounds (among

15  others) that BdM's claims were premature and unripe because (1) BdM's administrative challenge

16  to DPR's Old Town concession decision was still pending, and (2) *the state had not yet used*

17  BdM's trademarks in commerce.  (*See* Reply Memorandum of Points and Authorities in Support

18  of Defendant Ruth Coleman's Motion to Dismiss or Stay First Amended Complaint in Case

19  No. 03cv2284 TJW(LSP), NOL Exhibit G.)[2]  On March 3, 2004, the Hon. Thomas J. Whelan

20  granted DPR's motion to dismiss.[3]

21       Astonishingly, just three months later, DPR filed this Complaint against BdM asserting

22  ownership of the *same trademarks*, and asserting infringement by BdM in its use of these marks.

23  For purposes of the Complaint before this Court, DPR now asserts that it has owned these

24

25  [2]    The trademark dispute between DPR and BdM has never been a part of the administrative proceeding.

26  [3]    Judge Whelan also granted Delaware North's motion to dismiss BdM's First Amended
27  Complaint.  BdM filed an appeal of the Court's decision as to Delaware North which is presently pending before the Ninth Circuit Court of Appeals.  BdM's lawsuit against Delaware North is still
28  pending in the Southern District of California.

Case No. 04-CV-1533 (FCD)JFM

1    trademarks since 1968! (Complaint, ¶ 8.) DPR further contends that although BdM has

2    incontestable federal registrations for these marks, as well as California state registrations, BdM

3    has no rights in the marks and that the trademarks should be transferred to DPR. (Complaint,

4    ¶ 18.) The fact is that DPR has never used or owned these trademarks, and the exclusive use and

5    ownership is vested in BdM who created and has used these marks continuously for decades.

6    **D.**     <u>**The Localized Nature Of This Dispute Against BdM**</u>

7        BdM has used the trademarks at issue exclusively in connection with two restaurants it

8    created, owns and operates in San Diego. (Powers Decl., ¶ 12.) BdM's only office is in

9    San Diego, close to these restaurants. (*Id.*, ¶ 13.) BdM's principal officer, Diane Powers, lives in

10    San Diego County. (*Id.*) All of the witnesses to and evidence supporting BdM's use of its

11    trademarks are located in San Diego.

12        Moreover, whatever evidence DPR could possibly come up with to support its claims of

13    ownership in these trademarks would likewise be located in San Diego. The court files of the

14    condemnation proceeding whereby the State acquired title to the real property and somehow

15    allegedly acquired ownership rights in these marks, is with the San Diego County Superior Court.

16    (*See* NOL Exhibit A.) Any witnesses with information concerning the purported transfer of any

17    intellectual property interest in these marks would also likely reside in San Diego. The Cardwell

18    family from whom the land was taken in 1968 and who, at one time or another, operated a motel

19    or hotel on this land resided in San Diego. (Powers Decl., ¶ 14.) The Cardwell family was

20    represented in the condemnation proceedings by San Diego counsel Paul Overton of Higgs,

21    Fletcher & Mack, a local San Diego law firm. (*See* NOL Exhibit A.) Mr. Overton is a long time

22    resident of San Diego. Local historians and residents may also have information relevant to the

23    use of these properties and any trademarks associated therewith. The Southern District of

24    California is clearly a more convenient forum for the parties and witnesses than the Eastern

25    District of California. The interests of justice and fairness weigh in favor of transferring this

26    action to San Diego where all of the operative facts underlying the claims and defenses have

27    occurred, and where related litigation is currently pending.

28

Case No. 04-CV-1533 (FCD)JFM

# III.

## LEGAL AUTHORITY AND ARGUMENT

**A.    Legal Standard**

28 U.S.C. section 1404(a) sets forth the parameters under which a court may transfer a case pending before it to an alternate venue:

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

28 U.S.C. § 1404(a). "To support a motion for transfer the moving party must show:  (1) that venue is proper in the transferor district; (2) that the transferee district is one where the action might have been brought; and (3) that the transfer will serve the convenience of the parties and witnesses and will promote the interest of justice." *Goodyear Tire & Rubber Co. v. McDonnell Douglas Corp.*, 820 F. Supp. 503, 506 (C.D. Cal. 1992).  Section 1404(a) grants the district court broad discretion "to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Stewart Organization v. Ricoh Corp.*, 487 U.S. 22, 29 (1988), quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964); *accord Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498 (9th Cir. 2000).

**B.    Venue in the Transferor Court is Proper and the Case Could Have Initially Been Filed in the Transferee Court**

So long as venue is proper in both the transferor court and the case initially could have been filed in the transferee court, the transferor court has the power and the broad discretion to inquire into the issue of convenience and to transfer an action.  *Goodyear Tire & Rubber Co*, *supra*, 820 F. Supp. at 506-507 (C.D. Cal. 1992); *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 842 (9th Cir. 1986).  Here, venue is proper in the Eastern District of California by virtue of BdM's removal of the case to this Court.[4]  *See Polizzi v. Cowles Magazines, Inc.*, 345 U.S. 663, 665-666 (1953).  In addition, the case could have initially been filed in the Southern

---

[4]    BdM's removal of this action from Sacramento County Superior Court to the Eastern District of California does not impair its ability to seek a transfer to the Southern District of California under 28 U.S.C. § 1404(a). *See Hatch v. Reliance Ins. Co.*, 758 F.2d 409, 414 (9th Cir. 1985).

Case No. 04-CV-1533 (FCD)JFM

District of California, pursuant to 28 U.S.C. § 1391(b), which governs venue in cases where jurisdiction is founded upon a federal question. This section states:

> A civil action wherein jurisdiction is not founded solely on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought.

28 U.S.C. § 1391(b). BdM resides in the Southern District of California. (Powers Decl., ¶13.) And, as set forth in greater detail in Section III.C., *infra*, an overwhelming number of the events giving rise to DPR's complaint occurred and are occurring in the Southern District of California. Under subsections (1) and (2) of 28 U.S.C. § 1391(b), DPR could have initially filed its Complaint against BdM in the Southern District of California.

**C.   The Convenience of the Parties and Witnesses and the Interests of Justice Warrant the Transfer of this Action to the Southern District of California**

It is well settled that transfer to an alternate venue is warranted in consideration of the convenience of the parties and witnesses and in the interests of justice:

> Section 1404(a) reflects an increased desire to have federal civil suits tried in the federal system at the place called for in the particular case by considerations of convenience and justice. Thus, as the Court recognized in *Continental Grain Co. v. Barge FBL-585*, 364 U.S. 19, 26, 27, the purpose of the section is to prevent the waste "of time, energy and money" and "to protect litigants, witnesses and the public against unnecessary inconvenience and expense . . . ." To this end it empowers a district court to transfer "any civil action" to another district court if the transfer is warranted by the convenience of parties and witnesses and promotes the interest of justice.

*Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964) (footnotes omitted). The Ninth Circuit has identified several factors a court may consider in determining whether a transfer under Section 1404(a) is warranted. The factors that are relevant under the particular circumstances of this case include the following:

(1) the convenience of the parties and witnesses;

(2) the relative ease of access to sources of proof;

(3) the possibility of viewing the premises;

(4) the local interest in having localized disputes decided at home;

1        (5) the unfairness of burdening citizens in an unrelated forum with jury duty; and

2        (6) plaintiff's choice of forum.

3    *See Decker Coal, supra,* 805 F.2d at 843.

4        As set forth below, the circumstances of this case warrant a transfer to the Southern

5    District of California where all of the facts, evidence and witnesses relevant to DPR's claims and

6    BdM's defenses are located.

7        **1.**    **The Southern District of California is Overwhelmingly More Convenient for the Parties and Witnesses in this Action**

8

9        The Southern District of California is clearly a more convenient forum for the parties and

10   witnesses in this action.   The basic theory underlying DPR's claims can be summarized as

11   follows:

12       1.    DPR "inherited" the trademarks at issue in this case when it acquired title to real

13       property allegedly referred to by the names "Casa de Pico" and "Casa de Bandini"

14       through condemnation proceedings in 1968;

15       2.    DPR somehow impliedly granted BdM a "license" to use the trademarks through

16       the leases awarded to BdM;

17       3.    BdM "wrongfully" filed applications to register the marks CASA DE PICO and

18       CASA DE BANDINI for use in connection with restaurant services with the

19       federal and state governments; and

20       4.    BdM's use of these trademarks allegedly infringes DPR's rights and interests in

21       those marks.

22   (Complaint, ¶¶ 9-11.)

23       "There is no such thing as property in a trademark except as a right appurtenant to an

24   established business or trade in connection with which the mark is employed." *United Drug Co. v.*

25   *Theodore Rectanus Co.*, 248 U.S. 90, 97 (1918).  As a result, what occurred with the businesses

26   operated out of the buildings situated on the condemned property is critical to any assertion of

27   ownership of these trademarks by the State.   The condemnation proceedings occurred in

28   San Diego. (*See* NOL Exhibit A.) The files, witnesses and attorneys involved are located here.

1   Any remaining members of the Cardwell family who may have knowledge regarding these

2   businesses are likely located in San Diego, as are local historians and fact witnesses who have

3   knowledge regarding the subject properties and the businesses operated out of those properties.

4        Whether DPR granted BdM a license to use the trademarks through the leases is also

5   critical.  These documents (which nowhere mention the licensing of trademarks or intellectual

6   property) were negotiated by Diane Powers on behalf of BdM.  Ms. Powers is BdM's President

7   and a lifelong resident of San Diego. (Powers Decl., ¶ 13.)  The leases were negotiated and signed

8   by William Penn Mott, Jr. for the DPR.  Mr. Mott is since deceased.

9        Moreover, BdM's use of the CASA DE PICO and CASA DE BANDINI trademarks is the

10   focus of this dispute.  BdM has used these marks openly, notoriously and continuously for decades

11   in connection with its restaurants located in San Diego. (Powers Decl., ¶ 6.)  BdM has engaged in

12   extensive advertising and promotion of these restaurants in San Diego County.  BdM's advertising

13   and promotional materials are located in San Diego, as are witnesses to the extensive use and

14   promotion of these marks by BdM.  (*Id.*)  BdM has also received a number of awards and

15   accolades from San Diego-based organizations and tourist groups for its CASA DE PICO and

16   CASA DE BANDINI restaurants.  (*Id.*, ¶ 17.)  Witnesses to the same are located in San Diego.

17        Ms. Powers is the primary individual at BdM who can testify regarding BdM's use of its

18   trademarks and its applications for registration of these marks.  (Powers Decl., ¶ 18.)  Other

19   witnesses who may have knowledge regarding these registrations are Cindy Furlong, also with

20   BdM and a San Diego resident, and current and former attorneys for BdM some of whom reside in

21   San Diego.  (*Id.*)  It would be very inconvenient, disruptive and unnecessarily expensive to the

22   business of BdM to require it to litigate this matter in Sacramento, over 500 miles away.  (*Id.*,

23   ¶ 19.)

24        In sum, all of the significant events underlying DPR's claims have occurred in San Diego.

25   The witnesses and evidence related to those claims and BdM's defenses are located in San Diego.

26   By DPR's own admission, the only connection this lawsuit has to the Eastern District of California

27   is that BdM sent its applications for registration of the CASA DE PICO and CASA DE BANDINI

28   trademarks with the State of California from San Diego to Sacramento nearly twenty years ago.

1   (Complaint, ¶ 2.)  This is clearly tenuous.  Not only did BdM have no choice but to send these

2   applications to Sacramento for filing, but such transitory contact with Sacramento pales in

3   comparison to the dominating and long-standing connections this dispute has to San Diego.  Under

4   these circumstances, a transfer of this case to San Diego and the Southern District of California is

5   clearly warranted.

6       **2.    The Interests of Justice Weigh Heavily in Favor of Transferring this Action to the Southern District of California**

7

8       The interests of justice mandate a transfer of this action to the Southern District of

9   California.  On this particular issue, and in addition to the factors set forth in the *Decker Coal*

10  decision (*see* Section III.C., *supra*), "all other practical problems that make trial of a case easy,

11  expeditious and inexpensive" should be taken into consideration in deciding a motion to transfer

12  venue. *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947).

13      DPR's overriding goal in this lawsuit appears to be to prevent BdM from using BdM's

14  registered and incontestable trademarks.  As stated in the preceding sections, all evidence of

15  BdM's use of these marks, as well as any other entities' use of these marks, is located in the

16  Southern District of California.  The entire dispute over the ownership and right to use the CASA

17  DE PICO and CASA DE BANDINI trademarks is localized in San Diego, the venue in which

18  BdM operates its restaurants of the same names.  *See Gulf Oil*, *supra*, 330 U.S. at 509

19  (recognizing a "local interest in having localized controversies decided at home").  The

20  community of San Diego also has a great interest in the outcome of this dispute.  BdM has

21  received letters and telephone calls of support from local residents, and a website has been created

22  in an effort to save that which BdM has so carefully and creatively developed over the years.

23  (Powers Decl., ¶ 20.)  Such local interest in the ongoing dispute between BdM and DPR warrants

24  a transfer of this case to the Southern District of California:

25          The public interest in the local adjudication of local controversies also supports
            transfer. A lawsuit is not purely a matter of private concern. When an action
26          involves injuries sustained in a particular locale, the public interest supports
            adjudication of the controversy in that locale, where it may be a matter of local
27          attention, rather than in a remote location where it will be learned of only by report.

28  *In re Eastern Dist. Repetitive Stress Injury Litig.*, 850 F. Supp. 188, 195 (E.D.N.Y. 1994).

1   Under the circumstances of this case, DPR's election to file its complaint in Sacramento

2   should be accorded minimal weight, if any, in determining whether this action should be

3   transferred to the Southern District of California. As the Ninth Circuit has explained:

4   > Plaintiff's choice of forum, then, is not the final word. In judging the weight to be
5   > given such a choice, as is the case with other types of actions, consideration must
>    be given to the extent both of the defendant's business contacts with the chosen
>    forum and of the plaintiff's contacts, including those relating to his cause of action.
6   > If the operative facts have not occurred within the forum of original selection and
>    that forum has no particular interest in the parties or the subject matter, the
7   > plaintiff's choice is entitled only to minimal consideration.

8   *Pacific Car & Foundry Co. v. Pence*, 403 F.2d 949, 954 (9th Cir. 1968) (footnotes omitted).

9   *Accord Luyendyk v. Douglas Shierson Racing, Inc.*, 1992 U.S. Dist. LEXIS 4584 at *9-10 (N.D.

10   Cal. Mar. 23, 1992) (motion to transfer venue granted where the claims at issue did not involve

11   any events in the district chosen by plaintiff). *See also Hyundai Space & Aircraft Co. v. Boeing*

12   *Co.*, 1999 U.S. Dist. LEXIS 16025 at *11 (N.D. Cal. Oct. 12, 1999) ("If the transactions giving

13   rise to the action lack a significant connection to the plaintiff's chosen forum, then the plaintiff's

14   choice of forum is given considerably less weight").

15   Here, all of the operative facts underlying DPR's claims and BdM's defenses have

16   occurred in the Southern District of California, and the evidence relevant to those claims and

17   defenses is likewise within that district. The Eastern District of California has no real interest in

18   this dispute. The nature and extent of the contacts this dispute has with the Southern District of

19   California outweigh any interest DPR has in its original choice of forum. *See Hyundai Space &*

20   *Aircraft Co., supra*, 1999 U.S. Dist. LEXIS 16025 at *15 (venue is more appropriate "where the

21   subject of the dispute is headquartered, where most of the witnesses and evidence are located, and

22   where many of the events related to [the] dispute occurred").

23   The pendency of two actions in San Diego courts involving issues related to those in this

24   case also supports transferring this case to the Southern District of California. *See, e.g., A.J.*

25   *Industries, Inc. v. United States Dist. Court for Cent. Dist.*, 503 F.2d 384, 389 (9th Cir. 1974) ("the

26   pendency of an action in another district is important because of the positive effects it might have

27   in possible consolidation of discovery and convenience to witnesses and parties").

28   The transfer of this trademark action to the Southern District of California is unequivocally

12

Case No. 04-CV-1533 (FCD)JFM

1 | supported by the Central District of California's decision in *Allegiance Healthcare Corp. v.*

2 | *London Int'l. Group*, 1998 U.S. Dist. LEXIS 8953 (N.D. Cal. June 16, 1998).   In that case,

3 | plaintiff alleged trademark claims under the Lanham Act and California unfair competition law.

4 | *Id.* at *3.   Defendants moved to transfer the case to the Northern District of Georgia on the

5 | grounds that district was the corporate headquarters for the primary defendant, the situs of the

6 | conduct complained of, and the residence of many witnesses.   *Id.* at *3-4.   After balancing the

7 | interests and noting that "very few of the operative facts" occurred in the Northern District of

8 | California, the court transferred the action to the Northern District of Georgia.   *Id.* at *13.

9 | The same is true here.   The Southern District of California is the situs of all of the

10 | operative facts underlying DPR's trademark claims, and all evidence and witnesses relevant to

11 | those claims are located there.   This action involves a dispute local to San Diego and should be

12 | decided by the federal court in San Diego.

13 | **IV.**

14 | **CONCLUSION**

15 | For the reasons set forth herein, this Court should grant BdM's motion to transfer venue

16 | pursuant to 28 U.S. C. § 1404(a) and transfer this action to the United States District Court for the

17 | Southern District of California.

18 | DATED:  August *30*, 2004          LUCE, FORWARD, HAMILTON & SCRIPPS LLP

20 | By: _____

21 | Callie A. Bjurstrom

Michelle Herrera

22 | Attorneys for Defendant Bazaar del Mundo, Inc.

23 | 1992640.2

13          Case No. 04-CV-1533 (FCD)JFM

<table>
<tr><td>1</td><td>Callie A. Bjurstrom, State Bar No. 137816<br>Michelle A. Herrera, State Bar No. 209842</td></tr>
</table>

1  Callie A. Bjurstrom, State Bar No. 137816
   Michelle A. Herrera, State Bar No. 209842
2  LUCE, FORWARD, HAMILTON & SCRIPPS LLP
   600 West Broadway, Suite 2600
3  San Diego, California 92101-3372
   Telephone No.: 619.236.1414
4  Fax No.: 619.232.8311

5  Attorneys for Defendant Bazaar del Mundo, Inc.

**FILED**

**AUG 3 1 2004**

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
        DEPUTY CLERK

6

7

8              UNITED STATES DISTRICT COURT

9              EASTERN DISTRICT OF CALIFORNIA

**ORIGINAL**

10

11  DEPARTMENT OF PARKS AND          Case No. 04-CV-1533 (FCD) JFM
    RECREATION FOR THE STATE OF
12  CALIFORNIA,

13                                    **DEFENDANT BAZAAR DEL MUNDO,**
              Plaintiff,              **INC.'S NOTICE OF MOTION AND**
14                                    **MOTION TO TRANSFER VENUE**
    v.                                **PURSUANT TO 28 U.S.C. § 1404(a)**
15
    BAZAAR DEL MUNDO, INC., a California   Date:   October 29, 2004
16  corporation, and DOES 1-50, inclusive,  Time:   10:00 a.m.
                                      Dept.:  2
17          Defendant.                Judge:  Hon. Frank C. Damrell, Jr.

18

19       TO PLAINTIFF AND ITS ATTORNEYS OF RECORD:

20       PLEASE TAKE NOTICE that on October 29, 2004 at 10:00 a.m., or as soon thereafter as

21  this matter may be heard in Courtroom 2 of the above-entitled court, defendant Bazaar del Mundo,

22  Inc. will and hereby does move this Court for an order transferring this case to the United States

23  District Court for the Southern District of California pursuant to 28 U.S.C. §1404 (a). This motion

24  is based on the grounds that the Southern District of California is an overwhelmingly more

25  convenient forum for the parties and witnesses, and that the interests of justice mandate that this

26  action be transferred to the situs of the trademark dispute that forms the basis of plaintiff's

27  complaint.

28  ///

                              5

                              1

1    This motion is based on this Notice of Motion and Motion, the Memorandum of Points and

2    Authorities filed in support of the Motion, the Declaration of Diane Powers, the Notice of

3    Lodgment of Exhibits, and a Request for Judicial Notice all filed concurrently herewith, the

4    pleadings, records and files in this action, and upon further oral and documentary evidence as may

5    be presented at the hearing on this Motion.

6

DATED: August 30, 2004              LUCE, FORWARD, HAMILTON & SCRIPPS LLP

7

8

By: _____

9                                      Callie A. Bjurstrom
                                       Michelle A. Herrera
10                                     Attorneys for Defendant Bazaar del Mundo, Inc.

11

12   1993691.1

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

2

## PROOF OF SERVICE

Department of Parks and Recreation for the State of California v. Bazaar Del Mundo, Inc.

Case No. 04-1533 FCD JFM

District Judge: Honorable Frank C. Damrell, Jr.

Magistrate Judge: Honorable John F. Moulds

**FILED**

**AUG - 6 2004**

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
DEPUTY CLERK

I, the undersigned, declare as follows:

I am employed with the law firm of Luce, Forward, Hamilton & Scripps LLP, whose address is Rincon Center II, 121 Spear Street, Suite 200, San Francisco, California 94105-1582. I am over the age of eighteen years, and am not a party to this action.

On August 6, 2004, I served the following:

1.     BAZAAR DEL MUNDO, INC.'S ANSWER TO COMPLAINT FOR (1) DECLARATORY JUDGMENT OF TRADEMARK OWNERSHIP [CCP § 1060]; (2) RECTIFICATION OF TRADEMARK [15 U.S.C. § 1119; (3) FRAUDULENT FEDERAL TRADEMARK INFRINGEMENT [15 U.S.C. § 1120; (4) UNFAIR BUSINESS PRACTICES [B&PC § 17200]; (5) FALSE ADVERTISING [B&PC § 17500]; AND (6) FALSE DESIGNATION OF ORIGIN [15 U.S.C. § 1125]; DEMAND FOR JURY TRIAL;

2.     NOTICE OF RIGHT TO CONSENT TO THE EXERCISE OF JURISDICTION BY A MAGISTRATE JUDGE;

3.     CONSENT TO PROCEED BEFORE UNITED STATES MAGISTRATE JUDGE;

4.     NOTICE OF AVAILABILITY OF VOLUNTARY DISPUTE RESOLUTION PROGRAM (VDRP);

5.     STIPULATION AND ORDER TO ELECT REFERRAL OF ACTION TO VDRP;

6.     JUDGE DAMRELL'S ORDER REQUIRING JOINT STATUS REPORT;

on the interested parties in this action by:

___XX___   **U. S. MAIL:** I placed a copy in a separate envelope, with postage fully prepaid, for each address named on the attached service list for collection and mailing on the below indicated day following the ordinary business practices at Luce, Forward, Hamilton & Scripps LLP. I certify I am familiar with the ordinary business practices of my place of employment with regard to collection for mailing with the United States Postal Service. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit or mailing affidavit.

David H. Robinson, Esq.                    Attorneys for Plaintiff
Deputy Attorney General
State of California
Office of the Attorney General
110 West "A" Street, Suite 1100
San Diego, CA 92101

1

**ORIGINAL**

1      Richard P. Sybert, Esq.                Attorneys for Plaintiff
     Gordon & Rees LLP

2      101 West Broadway, Suite 1600
     San Diego, CA 92101

3

4    _____   **(STATE):** I declare under penalty of perjury under the laws of the State of California
               that the foregoing is true and correct.

5

6    __XX__   **(FEDERAL):** I declare that I am employed in the office of a member of the bar of this
               court at whose direction the service was made.

7      Executed at San Francisco, California on August 6, 2004.

8

9

10                        ALISSA VAAGE

11

12   1988119.1

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Litigant bringing action to the U.S. Di█████ Court shall serve this notice and form to a██████ties as an attachment to copies of the complaint, summons and counsel identification notice (unless proceeding informa pauperis).

## CASE NUMBER: CIV. S-04-1533 FCD JFM

# NOTICE OF RIGHT TO CONSENT TO THE EXERCISE OF CIVIL JURISDICTION BY A MAGISTRATE JUDGE AND APPEAL OPTION

In accordance with the provisions of Title 28, U.S. C. Section 636(c) and Local rule 73-305, you are hereby notified that the Magistrate Judges of the United States District Court, in addition to their other duties, upon the consent of all parties in a civil case, may conduct any or all proceedings in a civil case, including a jury or non-jury trial, and the entry of final judgment.

You should be aware that your decision to consent or not to consent to the referral of the case to a United States Magistrate Judge is entirely voluntary. Only if ALL the parties to the case consent to the reference will any judge or magistrate be informed of your decision. Pursuant to F.R.C.P. 28 U.S.C. 636(c) (2), the decision of the parties shall be communicated to the Clerk of the Court.

An Appeal from a judgment entered by a magistrate judge is taken directly to the United States Court of Appeals for the Ninth Circuit in the same manner as an appeal form any other judgment of a district court. See Local Rule 73-305 and Fed.R.Civ. 73(c).

Mail completed form to:

Office of the Clerk
501 I Street, Room 4-200
Sacramento, CA 95814

USDC-EDCA Form.8

Attorney Identification
(include State Bar number)

Attorney(s) for _____

# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF CALIFORNIA

## DEPT OF PARKS AND RECREATION

v.

**BAZAAR DEL MUNDO, INC**
_____ )

NO.  **CIV. S-04-1533 FCD JFM**

CONSENT TO PROCEED BEFORE
UNITED STATES MAGISTRATE JUDGE

In accordance with the provisions of Title 28 U.S.C. Section 636(c) _____
consents to have a United States Magistrate Judge conduct any and all further proceedings in this
case, including trial and the entry of final judgment.

Dated: _____    _____
                                            Signature

USDC-EDCA Form.9

# ●OTICE OF AVAILABILITY ●
# VOLUNTARY DISPUTE RESOLUTION

Pursuant to the findings and directives of Congress in 28 U.S.C. §§ 651 *et seq.,* and in recognition of the economic burdens and delay in the resolution of disputes that can be imposed by full formal litigation, Local Rule 16-271 governs the referral of certain actions to the Voluntary Dispute Resolution Program ("VDRP") at the election of parties.  Plaintiff or removing party is to provide all other parties with copies of the notice at the time service is effected or, for parties already served, no more than fourteen (14) days after receiving notice from the Court.  After filing of the original complaint or removal action, any party who causes a new party to be joined in the action shall promptly serve a copy of the notice on the new party.

It is the Court's intention that the VDRP shall allow the participants to take advantage of a wide variety of alternative dispute resolution methods.  These methods may include, but are not limited to, mediation, negotiation, early neutral evaluation and settlement facilitation.  The specific method or methods employed will be determined by the Neutral and the parties.

**PLEASE TAKE NOTICE**  that pursuant to Local Rule 16-271, *this Local Rule applies to*  all civil actions pending before any District Judge or Magistrate Judge in this District except that actions in the following categories are exempt from presumptive inclusion: (i) prisoner petitions and actions, including habeas corpus petitions, (ii) actions in which one of the parties is appearing pro se, (iii) voting rights actions, (iv) social security actions, (v) deportation actions, (vi) Freedom of Information Act actions, and (vii) actions involving the constitutionality of federal, state or local statutes or ordinances.  The fact that a case falls in a category that is exempt from presumptive applicability of this Local Rule neither (1) precludes the parties to such a case from agreeing to participate in an Alternative Dispute Resolution ("ADR") process, nor (2) deprives the Court of authority to compel participation in an appropriate ADR proceeding.

Parties may elect Voluntary Dispute Resolution with the Court indicating that all parties to the action agree to submit the action to VDRP pursuant to Local Rule 16-271.  Actions may not be assigned to VDRP over the objection of a party.  (Copy of sample stipulation attached hereto.)  **At the time of filing, a copy of the stipulation shall be provided to the VDRP Administrator designated below:**

|                          Sacramento Cases:                         |                          Fresno Cases:                          |
| :----------------------------------------------------------------: | :-------------------------------------------------------------: |
| Joyce Del Pero, Administrator                                      | Voluntary Dispute Resolution                                    |
| Voluntary Dispute Resolution Program                              | Program Administrator                                           |
| United States District Court                                      | United States District Court                                    |
| 501 I Street, Suite 4-200                                         | 1130 O Street, Room 5000                                        |
| Sacramento, CA 95814                                              | Fresno, CA 93721                                                |
| (916) 930-4042                                                    | (559) 498-7483                                                  |

Attorney Identification
(include State Bar number)

Attorney(s) for _____

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **DEPT OF PARKS AND RECREATION** | NO. **CIV. S-04-1533 FCD JFM** |
| Plaintiff(s) | |
| v. | |
| **BAZAAR DEL MUNDO, INC** | STIPULATION AND ORDER TO ELECT REFERRAL OF ACTION TO VOLUNTARY DISPUTE RESOLUTION PROGRAM (VDRP) PURSUANT TO LOCAL RULE 16-271 |
| Defendants(s) | |

Pursuant to Local Rule 16-271, the parties hereby agree to submit the above-entitled action to the Voluntary Dispute Resolution Program.

DATED: _____

_____
Attorney(s) for Plaintiff(s)

_____
Attorney(s) for Defendant(s)

IT IS SO ORDERED.

DATED: _____

_____
UNITED STATES DISTRICT COURT JUDGE

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF CALIFORNIA

**FILED**

**August 4, 2004**

CLERK, US DISTRICT COURT
EASTERN DISTRICT OF
CALIFORNIA

D Waggoner

DEPUTY CLERK

DEPT OF PARKS AND RECREATION,    )
    )
    )
    )
    Plaintiffs,    )
    )
v.    )
    )
BAZAAR DEL MUNDO, INC,    )
    )
    )
    Defendants.    )

NO.   **CIV. S-04-1533 FCD JFM**

**ORDER REQUIRING**
**JOINT STATUS REPORT**

This action has been assigned to the Honorable Frank C. Damrell, Jr. Pursuant to the provisions of Rule 16 of the Federal Rules of Civil Procedure, IT IS HEREBY ORDERED THAT:

1. Plaintiff(s) shall complete service of process on all parties within one hundred and twenty (120) days of the date of the filing of the complaint;

2. Concurrently with the service of process, or as soon thereafter as possible, plaintiff(s) shall serve upon each of the parties named in the complaint, and upon all parties subsequently joined, a copy of this order, and shall file with the Clerk of the Court a certificate reflecting such service. Any party who impleads a third-party defendant shall serve upon that party a copy of this order, and shall file with the Clerk of the Court a certificate reflecting such service;

3. In the event this action was originally filed in a state court and was thereafter removed to this court, the removing party or parties shall, immediately following such removal, serve upon each of the other parties named in the complaint, and upon all parties subsequently joined, a copy of this order and shall file with the Clerk of the Court a certificate reflecting such service;

4. Within sixty (60) days of service of the complaint **on all parties**, or from the date of removal, the parties shall confer as required by Fed. R. Civ. P. 26(f) and shall prepare and submit to the court a **joint status report** that includes the Rule 26(f) discovery plan. **The parties are instructed to submit a Joint Status Report with all named parties participating in its completion. If this cannot be accomplished plaintiff's counsel shall contact the undersigned for further instructions prior to the submission of any report.** The status report shall address the following matters:

    (a)  a brief summary of the claims and legal theories under which recovery is sought or liability denied;

(b) status of servi⬤pon all defendants and cross-defendants⬤

(c) possible joinder of additional parties;

(d) contemplated amendments to the pleadings;

(e) the statutory basis for jurisdiction and venue;

(f) anticipated discovery and the scheduling of discovery, including:

> (1) what changes, if any, should be made in the timing, form, or requirement for disclosures under Rule 26(a), including a statement as to when disclosures under Rule 26(a)(1) were made or will be made;

> (2) the subjects on which discovery may be needed; when discovery should be completed, and whether discovery should be conducted in phases;

> (3) what changes, if any, should be made in the limitations on discovery imposed under the Civil Rules and what other limitations, if any, should be imposed;

> (4) the timing of the disclosure of expert witnesses and information required by Rule 26(a)(2); and

> (5) proposed dates for discovery cut-off;

(g) contemplated dispositive motions and proposed date by which all non-discovery motions shall be heard;

(h) proposed date for final pretrial conference;

(i) proposed date for trial, estimate of days of trial, and whether any party has demanded a jury;

(j) appropriateness of special procedures such as reference to a special master or agreement to try the matter before a magistrate judge pursuant to 28 U.S.C. 636(c);

(k) proposed modification of standard pretrial procedures because of the simplicity or complexity of the case;

(l) whether the case is related to any other case pending in this district, including the bankruptcy courts of this district;

(m) prospects for settlement, including whether a settlement conference should be scheduled and whether, in the case of a jury trial, the parties will stipulate to the trial judge acting as settlement judge; and

(n) any other matters that may be conducive to the just and expeditious disposition of the case.

5. The Court, upon review of the joint status report may:

(a) by minute order, set a status conference to be held either by telephone or in person; or

(b) issue a scheduling order incorporating the suggestions of counsel as contained in the joint status report.

6. In the rare event the parties are not able to file a joint status report, each party must file an individual status report and attach a declaration setting forth, in detail, the circumstances that prevented the parties from filing a joint status report.

7. If a status conference is held, a formal order will be issued regarding future proceedings in the case. Counsel are directed to read the order carefully. Requests to modify or vacate any date set forth in the order are not favored and will not be granted absent good cause.

8. All purely legal issues are to be resolved by timely pretrial motions. Motions shall be filed in accordance with L.R. 78-230(b). Opposition papers shall be filed in accordance with L.R. 78-230(c). Any party that does not oppose the granting of the motion shall file a statement of non-opposition in accordance with L.R. 78-230(c). The failure to file an opposition or statement of non-opposition in accordance with L.R. 78-230(c) may be deemed consent to the granting of the motion and the court may dispose of the motion summarily. Brydes v. Lewis, 18 F.3d 651, 652-53 (9th Cir. 1994).

9. Counsel are reminded of their continuing duty pursuant to L.R. 16-160 to immediately notify the courtroom deputy and chambers of any settlement or other disposition of the case.

Maureen A. Price

Courtroom Deputy

(916) 930-4163 fax (916) 491-3932

e-mail: mprice@caed.uscourts.gov

Page 3 of 3

FILED

AUG - 6 2004

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
DEPUTY CLERK

Callie A. Bjurstrom, State Bar No. 137816
Michelle A. Herrera, State Bar No. 209842
LUCE, FORWARD, HAMILTON & SCRIPPS LLP
600 West Broadway, Suite 2600
San Diego, California 92101-3372
Telephone No.: 619.236.1414
Fax No.: 619.232.8311

Attorneys for Bazaar Del Mundo, Inc.

ORIGINAL

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA, SACRAMENTO DIVISION

| | |
|---|---|
| DEPARTMENT OF PARKS AND RECREATION FOR THE STATE OF CALIFORNIA,<br><br>　　　　Plaintiff,<br><br>v.<br><br>BAZAAR DEL MUNDO, INC., a California corporation, and DOES 1-50, inclusive,<br><br>　　　　Defendants. | Case No. 04-1533 FCD JFM<br><br>**BAZAAR DEL MUNDO, INC.'S ANSWER TO COMPLAINT FOR (1) DECLARATORY JUDGMENT OF TRADEMARK OWNERSHIP [CCP § 1060]; (2) RECTIFICATION OF TRADEMARK [15 U.S.C. § 1119; (3) FRAUDULENT FEDERAL TRADEMARK INFRINGEMENT [15 U.S.C. § 1120; (4) UNFAIR BUSINESS PRACTICES [B&PC § 17200]; (5) FALSE ADVERTISING [B&PC § 17500]; AND (6) FALSE DESIGNATION OF ORIGIN [15 U.S.C. § 1125]; DEMAND FOR JURY TRIAL** |

Bazaar Del Mundo, Inc. ("Defendant") answers plaintiff Department of Parks and Recreation for the State of California's ("Plaintiff's") Complaint as follows:

1.　　Defendant admits that jurisdiction in this Court is proper.

2.　　Defendant denies the allegations in paragraph 2 of the Complaint.

3.　　Defendant admits the allegations in paragraph 3 of the Complaint.

4.　　Defendant denies the appropriateness of suing allegedly unknown Defendants as "DOE Defendants" as set forth in paragraph 4 of the Complaint.

5.　　Defendant denies the allegations in paragraph 5 of the Complaint.

/ / /

1    6.    Defendant admits that Plaintiff is an agency of the State of California.  Defendant

2  has no actual knowledge or information regarding the authority of the Plaintiff to sue on behalf of

3  the State and therefore denies the same.  Defendant denies any and all remaining allegations in

4  paragraph 6 of the Complaint.

5    7.    Defendant admits that beginning in 1971 and continuing to the present day, it has

6  been the concessionaire for the Old Town San Diego State Historic Park under a written

7  Concession Agreement originally entered into on or about June 21, 1971 with the Plaintiff and

8  thereafter renewed.  Defendant also admits that the Concession Agreement has been amended

9  from time to time and that the Concession Agreement and some of the amendments are attached as

10  Exhibit A to the Complaint.  Defendant further admits that the Concession Agreement expired in

11  2001, and that Defendant has responded to Plaintiff's request for proposal and has protested the

12  award of the Old Town concession to a third party.  Defendant has filed a verified petition seeking

13  an order of the Superior Court enforcing its protest.  Defendant denies any and all remaining

14  allegations in paragraph 7 of the Complaint.

15    8.    Defendant admits that it has operated restaurants known as "Casa de Pico" and

16  "Casa de Bandini" in Old Town.  Defendant further admits that Casa de Bandini resides in a

17  registered historic building.  Defendant lacks information and knowledge sufficient to admit or

18  deny when the State came to own the buildings at issue and when the Bandini building became a

19  registered historic building and therefore denies the same.  Defendant denies any and all remaining

20  allegations in paragraph 8 of the Complaint.

21    9.    Defendant admits that a Pico building was originally built in 1824 by Pio and

22  Andres Pico as a residence for their mother.  Defendant also admits that during some portion of

23  the 1960s, the property was operated as the Casa de Pico Motor Hotel.  Defendant further admits

24  the property was used by a third party during the Fiesta 200.  Defendant lacks knowledge and

25  information sufficient to admit or deny the remaining allegations in paragraph 9 and therefore

26  denies the same.

27  / / /

28  / / /

2                    Case No. 04-1533 FCD JFM

1    10.    Defendant admits that Juan Bandini built an adobe residence in 1829.  Defendant

2  further admits that in the late 1860s, A.L. Seeley purchased the residence and remodeled it.

3  Defendant lacks knowledge or information sufficient to admit or deny the remaining allegations in

4  paragraph 10 and therefore denies the same.

5    11.    Defendant admits the Concession Agreement entered into between Plaintiff and

6  Defendant permitted it to operate restaurants.  Defendant denies any and all remaining allegations

7  in paragraph 11.

8    12.    Defendant admits an Amendment No. 2 to the Concession Agreement was

9  executed by Plaintiff and Defendant, and refers to that amendment attached at Exhibit A to the

10  Complaint for the specific terms set forth therein.  Defendant denies any and all remaining

11  allegations in paragraph 12 of the Complaint.

12    13.    Defendant admits a Third Amendment to and Restatement of Concession Contract,

13  Old Town San Diego State Historic Park, was executed by Plaintiff and Defendant and refers to

14  that amendment attached at Exhibit A to the Complaint for the specific terms set forth therein.

15  Defendant denies any and all remaining allegations in paragraph 13 of the Complaint.

16    14.    Defendant admits the allegations in paragraph 14 of the Complaint.

17    15.    Defendant admits that it filed applications with the United States Patent and

18  Trademark Office to obtain federal registrations for the marks CASA DE PICO and CASA DE

19  BANDINI.  Defendant admits that both applications proceeded to issuance, and that CASA DE

20  BANDINI was registered by the U.S. Patent and Trademark Office as U.S. Trademark

21  No. 1,350,088 on July 16, 1985 for restaurant services in Class 42 with a date of first use of

22  April 1980, and CASA DE PICO was registered by the U.S. Patent and Trademark Office as U.S.

23  Trademark No. 1,364,974 on October 8, 1985, also in Class 42 with a date of first of

24  November 1971.  Defendant denies any and all remaining allegations in paragraph 15 of the

25  Complaint.

26    16.    Defendant denies the allegations in paragraph 16 of the Complaint.

27  ///

28  ///

Case No. 04-1533 FCD JFM

1       17.    Defendant admits that it filed applications for registration of the marks CASA DE

2   PICO and CASA DE BANDINI with the State of California.  Defendant admits both applications

3   proceeded to issuance and that the State of California issued state registrations for these marks to

4   Defendant.  Defendant denies any and all remaining allegations in paragraph 17 of the Complaint.

5       18.    Defendant admits that it has used and displayed the registered trademark notation

6   in its literature and on its website in connection with its registered trademarks, including

7   BAZAAR DEL MUNDO.   Defendant also admits that it has a federal registration, U.S.

8   Trademark No. 1,430,518, in the mark BAZAAR DEL MUNDO.  Defendant denies any and all

9   remaining allegations in paragraph 18 of the Complaint.

10       19.    Defendant denies the allegations in paragraph 19 of the Complaint.

11       20.    In response to paragraph 20 of the Complaint, Defendant hereby repeats and

12   realleges the admissions and denials previously set forth in this Answer.

13       21.    Defendant admits that the building in which it operates its Casa de Bandini

14   restaurant is a registered historic structure.  Defendant lacks sufficient information and knowledge

15   to admit or deny the date on which plaintiff became the owner of these buildings, and therefore

16   denies the same.  Defendant denies each and every remaining allegation in paragraph 21 of the

17   Complaint.

18       22.    Defendant denies the allegations in paragraph 22 of the Complaint.

19       23.    Defendant admits that a controversy has arisen and exists given Plaintiff's wrongful

20   assertion of an ownership interest in Defendant's registered trademarks CASA DE PICO and

21   CASA DE BANDINI, and that such controversy is ripe for judicial determination.  Defendant

22   denies any and all remaining allegations in paragraph 23 of the Complaint.

23       24.    In response to paragraph 24 of the Complaint, Defendant hereby repeats and

24   realleges the admissions and denials previously set forth in this Answer.

25       25.    Defendant denies the allegations in paragraph 25 of the Complaint.

26       26.    In response to paragraph 26 of the Complaint, Defendant hereby repeats and

27   realleges the admissions and denials previously set forth in this Answer.

28       27.    Defendant denies the allegations in paragraph 27 of the Complaint.

       Case No. 04-1533 FCD JFM

1     28.     Defendant admits that it submitted the necessary declarations for the applications

2  for registration of the CASA DE PICO and CASA DE BANDINI trademarks with the U.S. Patent

3  and Trademark Office pursuant to 15 U.S.C. § 1051 and Section 1 of the Lanham Act. Defendant

4  denies any and all remaining allegations in paragraph 28 of the Complaint.

5     29.     Defendant admits it filed affidavits of continued use under Sections 8 and 15 of the

6  Lanham Act for the CASA DE PICO and CASA DE BANDINI marks, and that these affidavits

7  were accepted by the U.S. Patent and Trademark Office.

8     30.     Defendant denies the allegations in paragraph 30 of the Complaint.

9     31.     Defendant denies the allegations in paragraph 31 of the Complaint, to include a

10  denial of any and all sums and amounts alleged, to be alleged or otherwise.

11     32.     Defendant denies the allegations in paragraph 32 of the Complaint, to include a

12  denial of any and all sums and amounts alleged, to be alleged or otherwise.

13     33.     In response to unnumbered paragraph 33 of the Complaint, Defendant hereby

14  repeats and realleges the admissions and denials previously set forth in this Answer.

15     34.     Defendant denies the allegations in paragraph 34 of the Complaint.

16     35.     Defendant denies the allegations in paragraph 35 of the Complaint.

17     36.     Defendant denies the allegations in paragraph 36 of the Complaint.

18     37.     In response to paragraph 37 of the Complaint, Defendant hereby repeats and

19  realleges the admissions and denials previously set forth in this Answer.

20     38.     Defendant denies the allegations in paragraph 38 of the Complaint.

21     39.     Defendant denies the allegations in paragraph 39 of the Complaint.

22     40.     Defendant denies the allegations in paragraph 40 of the Complaint.

23     41.     In response to paragraph 41 of the Complaint, Defendant hereby repeats and

24  realleges the admissions and denials previously set forth in this Answer.

25     42.     Defendant denies the allegations in paragraph 42 of the Complaint.

26     43.     Defendant denies the allegations in paragraph 43 of the Complaint.

27     44.     Defendant denies the allegations in paragraph 44 of the Complaint.

28  / / /

Case No. 04-1533 FCD JFM

45.     Defendant denies the allegations in paragraph 45 of the Complaint, to include a denial of any and all sums and amounts alleged, to be alleged or otherwise.

46.     Defendant denies each and every allegation contained in the prayer of the Complaint and further denies that the requested relief is due to the Plaintiff either in law or in equity, to include a denial of any and all sums and amounts alleged, to be alleged or otherwise.

## AFFIRMATIVE DEFENSES TO THE COMPLAINT AND EACH
## ALLEGED CAUSE OF ACTION THEREIN

As separate affirmative defenses to the Complaint, and to the purported causes of action therein, Defendant alleges:

### FIRST AFFIRMATIVE DEFENSE
### (Failure to State a Cause of Action)

The Complaint, and each and every purported cause of action alleged therein, fails to state facts sufficient to constitute a cause of action against Defendant.

### SECOND AFFIRMATIVE DEFENSE
### (Failure to Provide Evidence of Ownership)

The Complaint, and each and every purported cause of action alleged therein, fails to state facts sufficient to establish that Plaintiff has any trademark rights in the names CASA DE PICO and CASA DE BANDINI and as a result, Plaintiff cannot sustain any of the claims pled against Defendant in the Complaint as a matter of law.

### THIRD AFFIRMATIVE DEFENSE
### (No Use by Plaintiff)

Plaintiff has acquired no trademark rights in the marks CASA DE PICO and CASA DE BANDINI because it has failed to use those marks in commerce.

### FOURTH AFFIRMATIVE DEFENSE
### (Plaintiff Lacks Standing To Sue)

Given that Plaintiff has established no rights in and to the CASA DE PICO and CASA DE BANDINI trademarks, Plaintiff lacks standing to sue Defendant for claims of infringement, unfair competition or related claims based on Defendant's use of these marks.

Case No. 04-1533 FCD JFM

1

2

## FIFTH AFFIRMATIVE DEFENSE

### (Use By Defendant Is Not Use By the State)

3  Defendant's use of the trademarks CASA DE PICO and CASA DE BANDINI does not

4  inure to the benefit of Plaintiff given that Plaintiff and Defendant had no agreement in writing or

5  otherwise to that effect.

6

## SIXTH AFFIRMATIVE DEFENSE

7

### (No Implied License of Trademark Rights Through Real Estate Lease)

8  The leasing of real estate does not result in an implied license to use property names or

9  trademarks previously used in connection with the real estate and any such use by the lessee does

10  not inure to the benefit of the lessor.

11

## SEVENTH AFFIRMATIVE DEFENSE

12

### (Improper Licensing)

13  To the extent Plaintiff had any ownership interest in the marks CASA DE PICO and

14  CASA DE BANDINI, Plaintiff's rights in such marks have been abandoned through improper

15  licensing.

16

## EIGHTH AFFIRMATIVE DEFENSE

17

### (Defendant's Ownership of the Trademarks)

18  Defendant is the owner of all right, title and interest in the trademarks CASA DE PICO

19  and CASA DE BANDINI. Defendant acquired these rights through the consistent and continuous

20  use of these marks in commerce in connection with restaurant services. Defendant has lawfully

21  acquired federal registrations for these marks, Registration Nos. 1,364,974 and 1,350,088

22  respectively, and such registrations have become incontestable pursuant to 15 U.S.C. § 1065. As a

23  result, Plaintiff has no right to contest Defendant's use and ownership of these marks.

24

## NINTH AFFIRMATIVE DEFENSE

25

### (Lack of Knowledge of Plaintiff's Purported Ownership of Marks)

26  Defendant had no knowledge, at any time, of an ownership interest by Plaintiff, if any, in

27  the marks CASA DE PICO and CASA DE BANDINI.

28  / / /

Case No. 04-1533 FCD JFM

## TENTH AFFIRMATIVE DEFENSE

### (Adverse Possession)

Defendant's use and claimed ownership of the CASA DE PICO and CASA DE BANDINI trademarks has been open and notorious for over 33 and 24 years respectively, such that to the extent Plaintiff had any ownership interest in the marks CASA DE PICO and CASA DE BANDINI, such ownership interest is now owned by Defendant through continuous, open, and public adverse possession.

## ELEVENTH AFFIRMATIVE DEFENSE

### (Laches/Estoppel)

Plaintiff is not entitled to maintain this lawsuit or to assert infringement by Defendant by reason of estoppel and/or laches.  The use and claimed ownership of the mark CASA DE PICO by Defendant has been open, continuous and extensive for over 33 years.  The use and claimed ownership of the mark CASA DE BANDINI by Defendant has been open, continuous and extensive for over 24 years.  Such use by Defendant was within the knowledge of the State, and Defendant has relied to its detriment upon the State's acquiescence and delay, and has continued to use these marks and has invested substantial resources in the promotion and advertising of the marks.  As a result, the State is estopped from alleging that any acts of Defendant now constitute an infringement of Plaintiff's alleged trademark rights.

## TWELFTH AFFIRMATIVE DEFENSE

### (Condemnation of Real Property Does Not Result in Acquisition of Trademark Rights)

Defendant asserts that the condemnation and/or seizure of real property by the State does not result in the acquisition of trademark rights based on use in commerce by the predecessor owners and/or tenants of that real property.

## THIRTEENTH AFFIRMATIVE DEFENSE

### (Assignment in Gross)

Plaintiff alleges it acquired all rights in and to the trademarks CASA DE PICO and CASA DE BANDINI as a result of the transfer of ownership of two buildings in or about 1968. Defendant is informed and believes and thereon alleges, that any transfer of ownership in these

Case No. 04-1533 FCD JFM

1    buildings was without the goodwill associated with any business operated therein and as a result,

2    constitutes an assignment in gross of these alleged trademarks and a resulting abandonment by

3    Plaintiff of any and all rights acquired in these marks by prior owners.

### FOURTEENTH AFFIRMATIVE DEFENSE

### (Presumed Abandonment Through Non-Use)

6    To the extent Plaintiff had any ownership interest in the marks CASA DE PICO or CASA

7    DE BANDINI, such ownership interest has been presumptively abandoned through non-use.

### FIFTEENTH AFFIRMATIVE DEFENSE

### (Abandonment)

10    Defendant is informed and believes and thereon alleges, that prior to Plaintiff's alleged

11    acquisition of the Pico site and the Bandini building, any use of the trademarks CASA DE PICO

12    and CASA DE BANDINI by prior owners of those marks, if any, had ceased with an intent not to

13    resume use of those marks resulting in an abandonment of these trademarks.

### SIXTEENTH AFFIRMATIVE DEFENSE

### (Abandonment)

16    Defendant is informed and believes and thereon alleges, that prior to Plaintiff's acquisition

17    of the Pico site and the Bandini building, any use of the trademarks CASA DE PICO and CASA

18    DE BANDINI was in connection with goods or services of a radically different nature than those

19    associated with Defendant.

### SEVENTEENTH AFFIRMATIVE DEFENSE

### (Abandonment by Predecessor Owners)

22    Plaintiff did not acquire any trademark rights in the marks CASA DE PICO and CASA DE

23    BANDINI because these marks, if ever previously used, were abandoned by their prior owners

24    who discontinued restaurant and/or hotel services in connection with the use of these marks with

25    no intent to resume use for such services, well before any transfer in ownership of the buildings to

26    the State occurred.

27    / / /

28    / / /

9                                    Case No. 04-1533 FCD JFM

## EIGHTEENTH AFFIRMATIVE DEFENSE

### (Failure to Establish Transfer and/or Assignment of Rights)

The Complaint and the purported causes of action alleged therein, fail to state facts sufficient to establish that any trademark rights in the marks CASA DE PICO and CASA DE BANDINI that were allegedly acquired by a predecessor to the State were legitimately transferred and/or assigned to the State.

## NINETEENTH AFFIRMATIVE DEFENSE

### (Unclean Hands)

Plaintiff comes to this case with unclean hands and is not entitled in equity to assert any rights in the CASA DE PICO and CASE DE BANDINI marks against Defendant. Plaintiff's purported ownership of rights in these trademarks is a sham and is asserted simply as a mechanism to interfere with the lawful use of these marks by Defendant.

## TWENTIETH AFFIRMATIVE DEFENSE

### (Improper Venue and/or Inconvenient Forum)

Defendant asserts that the choice of venue for this litigation was both improper, as well as an inconvenient forum for the disposition of this dispute given that Defendant resides in San Diego County and all significant contacts with this dispute originate out of San Diego County.

## TWENTY-FIRST AFFIRMATIVE DEFENSE

### (Conduct Not "Unfair")

Defendant's business practices are not "unfair" within the meaning of Business and Professions Code § 17200, et seq., and/or the common law and as a result, Plaintiff's claims under this statute and the common law are barred.

## TWENTY-SECOND AFFIRMATIVE DEFENSE

### (Conduct Not "Fraudulent")

Defendant's business practices were not "fraudulent" within the meaning of Business and Professions Code § 17200, et seq., and/or the common law and as a result, Plaintiff's claims under this statute and the common law are barred.

///

Case No. 04-1533 FCD JFM

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## TWENTY-THIRD AFFIRMATIVE DEFENSE

### (No Entitlement to Attorneys' Fees)

Plaintiff has failed to allege an adequate basis or any facts upon which to seek attorneys' fees.

## TWENTY-FOURTH AFFIRMATIVE DEFENSE

### (The Statute as Applied is Unconstitutionally Vague)

Plaintiff's claims violate Defendant's rights under the United States and California Constitutions by attempting to enforce Business and Professions Code §17200 et seq. in a manner which renders the requirements of the statutes/provisions unconstitutionally vague.

## TWENTY-FIFTH AFFIRMATIVE DEFENSE

### (Rule 11 of the Federal Rules of Civil Procedure)

Defendant is informed and believes and thereon alleges, that Plaintiff has filed this lawsuit for an improper purpose, that being to harass and/or extort ownership of the CASE DE PICO and CASE DE BANDINI trademarks from Defendant through the use of the legal system and to require Defendant to spend time and money defending against its meritless claims of ownership of these marks.

## TWENTY-SIXTH AFFIRMATIVE DEFENSE

### (Reservation of Rights)

Defendant presently has insufficient knowledge or information upon which to form a belief as to whether it may have additional, as yet unstated Affirmative Defenses available. Defendant reserves herein the right to assert additional Affirmative Defenses in the event discovery indicates that they would appropriate.

/ / /
/ / /
/ / /
/ / /
/ / /
/ / /

11                                                    Case No. 04-1533 FCD JFM

1      WHEREFORE, Defendant prays that:

2      1.      Plaintiff takes nothing by its Complaint;

3      2.      For costs of suit; and

4      3.      For such other and further relief as the Court deems just and proper.

5   DATED: August 5, 2004                    LUCE, FORWARD, HAMILTON & SCRIPPS LLP

6

7                                            By: _____

8                                            Callie A. Bjurstrom
                                             Attorneys for Bazaar Del Mundo, Inc.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                     12                    Case No. 04-1533 FCD JFM

1

## DEMAND FOR JURY TRIAL

2   Defendant hereby demands a trial by jury pursuant to Rule 38 of the Federal Rules of Civil

3   Procedure.

4   DATED: August 5, 2004          LUCE, FORWARD, HAMILTON & SCRIPPS LLP

5

6                                          By: _____

7                                          Callie A. Bjurstrom
                                           Attorneys for Bazaar Del Mundo, Inc.

8

9   1986564.1

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF CALIFORNIA

FILED

August 4, 2004

CLERK, US DISTRICT COURT
EASTERN DISTRICT OF
CALIFORNIA

D Waggoner

DEPUTY CLERK

DEPT OF PARKS AND RECREATION,    )
                                 )
                                 )
                     Plaintiffs, )
                                 )    NO.   CIV. S-04-1533 FCD JFM
v.                               )
                                 )
                                 )    ORDER REQUIRING
BAZAAR DEL MUNDO, INC,           )    JOINT STATUS REPORT
                                 )
                                 )
                     Defendants. )
                                 )

This action has been assigned to the Honorable Frank C. Damrell, Jr.  Pursuant to the provisions of Rule 16 of the Federal Rules of Civil Procedure, IT IS HEREBY ORDERED THAT:

1. Plaintiff(s) shall complete service of process on all parties within one hundred and twenty (120) days of the date of the filing of the complaint;

2. Concurrently with the service of process, or as soon thereafter as possible, plaintiff(s) shall serve upon each of the parties named in the complaint, and upon all parties subsequently joined, a copy of this order, and shall file with the Clerk of the Court a certificate reflecting such service.  Any party who impleads a third-party defendant shall serve upon that party a copy of this order, and shall file with the Clerk of the Court a certificate reflecting such service;

3. In the event this action was originally filed in a state court and was thereafter removed to this court, the removing party or parties shall, immediately following such removal, serve upon each of the other parties named in the complaint, and upon all parties subsequently joined, a copy of this order and shall file with the Clerk of the Court a certificate reflecting such service;

4. Within sixty (60) days of service of the complaint **on all parties**, or from the date of removal, the parties shall confer as required by Fed. R. Civ. P. 26(f) and shall prepare and submit to the court a **joint status report** that includes the Rule 26(f) discovery plan. **The parties are instructed to submit a Joint Status Report with all named parties participating in its completion. If this cannot be accomplished plaintiff's counsel shall contact the undersigned for further instructions prior to the submission of any report.**  The status report shall address the following matters:

        (a) a brief summary of the claims and legal theories under which recovery is
            sought or liability denied;

(b)   status of ser⬤e upon all defendants and cross-defendar⬤

(c)   possible joinder of additional parties;

(d)   contemplated amendments to the pleadings;

(e)   the statutory basis for jurisdiction and venue;

(f)   anticipated discovery and the scheduling of discovery, including:

> (1)   what changes, if any, should be made in the timing, form, or requirement for disclosures under Rule 26(a), including a statement as to when disclosures under Rule 26(a)(1) were made or will be made;

> (2)   the subjects on which discovery may be needed; when discovery should be completed, and whether discovery should be conducted in phases;

> (3)   what changes, if any, should be made in the limitations on discovery imposed under the Civil Rules and what other limitations, if any, should be imposed;

> (4)   the timing of the disclosure of expert witnesses and information required by Rule 26(a)(2); and

> (5)   proposed dates for discovery cut-off;

(g)   contemplated dispositive motions and proposed date by which all non-discovery motions shall be heard;

(h)   proposed date for final pretrial conference;

(i)   proposed date for trial, estimate of days of trial, and whether any party has demanded a jury;

(j)   appropriateness of special procedures such as reference to a special master or agreement to try the matter before a magistrate judge pursuant to 28 U.S.C. 636(c);

(k)   proposed modification of standard pretrial procedures because of the simplicity or complexity of the case;

(l)  whether the case is related to any other case pending in the district, including the bankruptcy courts of this district;

(m)  prospects for settlement, including whether a settlement conference should be scheduled and whether, in the case of a jury trial, the parties will stipulate to the trial judge acting as settlement judge; and

(n)  any other matters that may be conducive to the just and expeditious disposition of the case.

5.  The Court, upon review of the joint status report may:

(a)  by minute order, set a status conference to be held either by telephone or in person; or

(b)  issue a scheduling order incorporating the suggestions of counsel as contained in the joint status report.

6.  In the rare event the parties are not able to file a joint status report, each party must file an individual status report and attach a declaration setting forth, in detail, the circumstances that prevented the parties from filing a joint status report.

7.  If a status conference is held, a formal order will be issued regarding future proceedings in the case.  Counsel are directed to read the order carefully.  Requests to modify or vacate any date set forth in the order are not favored and will not be granted absent good cause.

8.  All purely legal issues are to be resolved by timely pretrial motions.  Motions shall be filed in accordance with L.R. 78-230(b).  Opposition papers shall be filed in accordance with L.R. 78-230(c).  Any party that does not oppose the granting of the motion shall file a statement of non-opposition in accordance with L.R. 78-230(c).  The failure to file an opposition or statement of non-opposition in accordance with L.R. 78-230(c) may be deemed consent to the granting of the motion and the court may dispose of the motion summarily.  Brydes v. Lewis, 18 F.3d 651, 652-53 (9th Cir. 1994).

9.  Counsel are reminded of their continuing duty pursuant to L.R. 16-160 to immediately notify the courtroom deputy and chambers of any settlement or other disposition of the case.

Maureen A. Price
Courtroom Deputy
(916) 930-4163 fax (916) 491-3932
e-mail: mprice@caed.uscourts.gov
Page 3 of 3

# UNITED STATES DISTRICT COURT

*EASTERN DISTRICT OF CALIFORNIA*

Office of the Clerk
501 "I" Street
Suite 4-200
Sacramento, California 95814

**Jack L. Wagner**
Clerk

Divisional Office
1130 "O" Street
Fresno, CA 93721-2201

## NOTICE IN ALL ACTIONS FILED IN THE DISTRICT COURT

TO FILER OF NEW CIVIL ACTION:   **CIV. S-04-1533 FCD JFM**

**DEPT OF PARKS AND RECREATION  v.  BAZAAR DEL MUNDO, INC.**

As the filer of a new civil action in the United States District Court, you are being provided the following documents. <u>You are responsible for serving a copy of these documents on all parties to the action and filing proof thereof with the court.</u> If you do not receive a copy of any of the documents listed below, it is your responsibility to contact the Clerk of Court immediately at 916-930-4000 (Sacramento) or 559-498-7483 (Fresno) to obtain copies.

---

1. NOTICE OF RIGHT TO CONSENT TO THE EXERCISE OF JURISDICTION BY A MAGISTRATE JUDGE

2. CONSENT TO PROCEED BEFORE UNITED STATES MAGISTRATE JUDGE

3. NOTICE OF AVAILABILITY OF VOLUNTARY DISPUTE RESOLUTION PROGRAM (VDRP)

4. STIPULATION AND ORDER TO ELECT REFERRAL OF ACTION TO VDRP

5. JUDGE DAMRELL'S ORDER REQUIRING JOINT STATUS REPORT

---

## PROOF OF SERVICE

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Eastern District of California.

That on August 4, 2004, I SERVED a true and correct copy of the above listed documents on the filer of this action; by returning copies in person to the filer of this action, or by placing said copy(ies) in a postage paid envelope addressed to the filer and depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

Jack L. Wagner, Clerk

By:  D Waggoner
Deputy Clerk

1  Callie A. Bjurstrom, State Bar No. 137816
   Michelle A. Herrera, State Bar No. 209842
2  LUCE, FORWARD, HAMILTON & SCRIPPS LLP
   600 West Broadway, Suite 2600
3  San Diego, California 92101-3372
   Telephone No.: 619.236.1414
4  Fax No.: 619.232.8311

5  Attorneys for Defendant Bazaar del Mundo, Inc.

6

7

**FILED**

AUG  4 2004

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY_____
            DEPUTY CLERK

8                 UNITED STATES DISTRICT COURT

9        EASTERN DISTRICT OF CALIFORNIA, SACRAMENTO DIVISION

10

11  DEPARTMENT OF PARKS AND            Case No. **CIV.S- 0 4 - 1 5 3 3 FCD JFM**
    RECREATION FOR THE STATE OF
12  CALIFORNIA,                        DEFENDANT BAZAAR DEL MUNDO,
                                       INC.'S NOTICE OF REMOVAL OF
13          Plaintiffs,                ACTION PURSUANT TO 28 U.S.C. § 1441
                                       (FEDERAL QUESTION JURISDICTION)
14  v.

15  BAZAAR DEL MUNDO, INC., a California
    corporation, and DOES 1-50, inclusive,      **ORIGINAL**
16
            Defendants.
17

18      TO THE CLERK OF THE UNITED STATES DISTRICT COURT FOR THE EASTERN

19  DISTRICT OF CALIFORNIA, SACRAMENTO DIVISION:

20      NOTICE IS HEREBY GIVEN that pursuant to 28 U.S.C. §§ 1441 and 1446, defendant

21  Bazaar del Mundo, Inc. ("Bazaar del Mundo"), hereby removes this action from the Superior

22  Court of the State of California for the County of Sacramento, and respectfully submits the

23  following statement of facts in support of removal:

24      1.     On June 16, 2004, an action was commenced in the Superior Court of the State of

25  California in and for the County of Sacramento, entitled Department of Parks and Recreation for

26  the State of California v. Bazaar Del Mundo, Inc. and Does 1 through 50, Superior Court Case No.

27  04AS02446.  A true and correct copy of all pleadings in said action served on or by Bazaar del

28  Mundo are attached hereto as Exhibit "A."

                                    1                    Case No. 04CV_____

1    2.    The first date upon which Bazaar del Mundo was served with a copy of the

2    Summons and Complaint in said action was July 9, 2004.

3    3.    In its Complaint, plaintiff alleges claims against Bazaar del Mundo arising under

4    laws of the United States, specifically, The Lanham Act, 15 U.S.C. §§ 1119, 1120 and 1125. This

5    Court therefore has original jurisdiction over this action pursuant to 28 U.S.C. § 1331, and this

6    action may be removed to this Court by Bazaar del Mundo pursuant to the provisions of 28 U.S.C.

7    §§ 1441(a) and 1441 (b).

8    4.    This Court has supplemental jurisdiction over the remaining state law claims in

9    plaintiff's Complaint pursuant to 28 U.S.C. § 1367(a).

10    WHEREFORE, Bazaar del Mundo requests that this action be removed from the Superior

11    Court of the State of California for the County of Sacramento, to this United States District Court

12    for the Eastern District of California, and that this Court assume full jurisdiction over this action as

13    provided by law.

14    DATED: August 3, 2004          LUCE, FORWARD, HAMILTON & SCRIPPS LLP

15

16                                       By: _____

17                                            Callie A. Bjurstrom
                                             Michelle A. Herrera
18                                            Attorneys for Defendant Bazaar Del Mundo, Inc.

19    1985736.1

20

21

22

23

24

25

26

27

28

                                          2                    Case No. 04CV_____

# ORIGINAL

SUM-100

## SUMMONS
### (CITACION JUDICIAL)

**FOR COURT USE ONLY**
*(SOLO PARA USO DE LA CORTE)*

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
BAZAAR DEL MUNDO, INC., a California corporation, and DOES 1-50, inclusive

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
DEPARTMENT OF PARKS AND RECREATION FOR THE STATE OF CALIFORNIA

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association.

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.courtinfo.ca.gov/selfhelp/espanol/), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.courtinfo.ca.gov/selfhelp/espanol/) o poniéndose en contacto con la corte o el colegio de abogados locales.*

| | |
|---|---|
| The name and address of the court is: *(El nombre y dirección de la corte es):* Sacramento County Superior Court 720 Ninth Street Sacramento, CA 95814 | **CASE NUMBER:** *(Número del Caso):* **04AS02446** |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
David H. Robinson, DAG, State of California - Office of the Attorney General - San Diego Office
110 West "A" Street, Suite 1100, San Diego, California 92101   Tel. No.: (619) 645-2001

DATE: *(Fecha)* **JUN 16 2004**          Clerk, by _____ , Deputy
                                          *(Secretario)*          *(Adjunto)*

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served

[SEAL]

1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☐ on behalf of *(specify):* BAZAAR DEL MUNDO, INC, A CALIFORNIA CORPORATION

   under: ☒ CCP 416.10 (corporation)          ☐ CCP 416.60 (minor)
          ☐ CCP 416.20 (defunct corporation)   ☐ CCP 416.70 (conservatee)
          ☐ CCP 416.40 (association or partnership)   ☐ CCP 416.90 (authorized person)
          ☐ other *(specify):*

4. ☒ by personal delivery on *(date):* 7-9-04

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. January 1, 2004]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
American LegalNet, Inc. | www.USCourtForms.com

**Exhibit A 1**

ATTORNEY GENERAL

CM-010

| | FOR COURT USE ONLY |
|---|---|
| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, state bar number, and address):* (7) David H. Robinson, SBN: 74956 — State of California, Office of the Attorney General, 110 West A Street San Diego, California 92101 TELEPHONE NO.: 619-645-2609     FAX NO.: 619-645-2581 ATTORNEY FOR *(Name):* Department of Parks and Recreation for the State of CA | FILED ENDORSED JUN 1 6 2004 P CRESCENTI By Deputy Clerk |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF Sacramento
STREET ADDRESS: 720 Ninth Street, Sacramento, CA 95814
MAILING ADDRESS: 720 Ninth Street
CITY AND ZIP CODE: Sacramento, CA 95814
BRANCH NAME:

CASE NAME:
Department of Parks and Recreation v. Bazaar del Mundo, Inc.

| CIVIL CASE COVER SHEET | | Complex Case Designation | | CASE NUMBER: |
|---|---|---|---|---|
| [✓] Unlimited (Amount demanded exceeds $25,000) | [ ] Limited (Amount demanded is $25,000 or less) | [ ] Counter  [ ] Joinder Filed with first appearance by defendant (Cal. Rules of Court, rule 1811) | | JUDGE: DEPT.: **04AS02446** |

*All five (5) items below must be completed (see instructions on page 2).*

1. Check one box below for the case type that best describes this case:

**Auto Tort**
[ ] Auto (22)
[ ] Uninsured motorist (46)
**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
[ ] Asbestos (04)
[ ] Product liability (24)
[ ] Medical malpractice (45)
[ ] Other PI/PD/WD (23)
**Non-PI/PD/WD (Other) Tort**
[ ] Business tort/unfair business practice (07)
[ ] Civil rights (08)
[ ] Defamation (13)
[ ] Fraud (16)
[✓] Intellectual property (19)
[ ] Professional negligence (25)
[ ] Other non-PI/PD/WD tort (35)
**Employment**
[ ] Wrongful termination (36)
[ ] Other employment (15)

**Contract**
[ ] Breach of contract/warranty (06)
[ ] Collections (09)
[ ] Insurance coverage (18)
[ ] Other contract (37)
**Real Property**
[ ] Eminent domain/Inverse condemnation (14)
[ ] Wrongful eviction (33)
[ ] Other real property (26)
**Unlawful Detainer**
[ ] Commercial (31)
[ ] Residential (32)
[ ] Drugs (38)
**Judicial Review**
[ ] Asset forfeiture (05)
[ ] Petition re: arbitration award (11)
[ ] Writ of mandate (02)
[ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 1800–1812)**
[ ] Antitrust/Trade regulation (03)
[ ] Construction defect (10)
[ ] Mass tort (40)
[ ] Securities litigation (28)
[ ] Environmental/Toxic tort (30)
[ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)
**Enforcement of Judgment**
[ ] Enforcement of judgment (20)
**Miscellaneous Civil Complaint**
[ ] RICO (27)
[ ] Other complaint *(not specified above)* (42)
**Miscellaneous Civil Petition**
[ ] Partnership and corporate governance (21)
[ ] Other petition *(not specified above)* (43)

2. This case [ ] is [✓] is not   complex under rule 1800 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties   d. [ ] Large number of witnesses
   b. [ ] Extensive motion practice raising difficult or novel   e. [ ] Coordination with related actions pending in one or more courts issues that will be time-consuming to resolve       in other counties, states or countries, or in a federal court
   c. [ ] Substantial amount of documentary evidence   f. [ ] Substantial post-judgment judicial supervision

3. Type of remedies sought *(check all that apply):*
   a. [ ] monetary   b. [✓] nonmonetary; declaratory or injunctive relief   c. [ ] punitive
4. Number of causes of action *(specify):* six (6)
5. This case [ ] is [✓] is not   a class action suit.
Date:

David H. Robinson
(TYPE OR PRINT NAME)                    ▶ *(signature)*          (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
• Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate, Family, or Welfare and Institutions Code). (Cal. Rules of Court, rule 201.8.) Failure to file may result in sanctions.
• File this cover sheet in addition to any cover sheet required by local court rule.
• If this case is complex under rule 1800 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
• Unless this is a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. July 1, 2003]

**CIVIL CASE COVER SHEET**

Cal. Rules of Court, rules 201.8, 1800–1812;
Standards of Judicial Administration, § 19
www.courtinfo.ca.gov

Exhibit A 2

ATTORNEY GENERAL

FILED
ENDORSED

JUN 1 6 2004

By _____
P CRESCENTI
Deputy Clerk

1  BILL LOCKYER
   Attorney General of the State of California
2  MARY HACKENBRACHT
   Senior Assistant Attorney General
3  CAROL A. SQUIRE
   Supervising Deputy Attorney General
4  DAVID H. ROBINSON
   Deputy Attorney General
5  State Bar No. 74956
      110 West "A" Street, Suite 1100
6  San Diego, CA 92101
   P.O. Box 85266
7  San Diego, CA 92186-5266
   Telephone: (619) 645-2609
8  Fax: (619) 645-2581

9  RICHARD P. SYBERT, Bar No. 80731
   BRETT M. MIDDLETON, Bar No. 199427
10 GORDON & REES LLP
   101 West Broadway, Suite 1600
11 San Diego, CA 92101
   Telephone: (619) 696-6700
12 Fax: (619) 696-7124                    No fee pursuant to Government Code
   Attorneys for Plaintiff Department of Parks and        Section 6103
13 Recreation for the State of California

14              SUPERIOR COURT OF CALIFORNIA

15                COUNTY OF SACRAMENTO

16                                              04AS02446

17 DEPARTMENT OF PARKS AND RECREATION      Case No:
   FOR THE STATE OF CALIFORNIA,
18                                          COMPLAINT FOR
                              Plaintiffs,
19                                          (1) DECLARATORY
                                            JUDGMENT OF TRADEMARK
        v.                                  OWNERSHIP [CCP § 1060];
20
   BAZAAR DEL MUNDO, INC., a California     (2) RECTIFICATION OF
21 corporation, and DOES 1-50, inclusive,  TRADEMARK [15 U.S.C. §
                                            1119];
22                            Defendants.
                                            (3) FRAUDULENT FEDERAL
23                                          TRADEMARK
                                            INFRINGEMENT [15 U.S.C. §
24                                          1120];

25                                          (4) UNFAIR BUSINESS
                                            PRACTICES [B&PC § 17200];
26
                                            (5) FALSE ADVERTISING
27                                          [B&PC § 17500]; AND

28                                          (6) FALSE DESIGNATION OF
                                            ORIGIN [15 U.S.C. § 1125].

                                                        **Exhibit A 3**

1   BILL LOCKYER
    Attorney General of the State of California
2   MARY HACKENBRACHT
    Senior Assistant Attorney General
3   CAROL A. SQUIRE
    Supervising Deputy Attorney General
4   DAVID H. ROBINSON
    Deputy Attorney General
5   State Bar No. 74956
       110 West "A" Street, Suite 1100
6      San Diego, CA 92101
       P.O. Box 85266
7      San Diego, CA 92186-5266
       Telephone: (619) 645-2609
8      Fax: (619) 645-2581

9   RICHARD P. SYBERT, Bar No. 80731
    BRETT M. MIDDLETON, Bar No. 199427
10  GORDON & REES LLP
    101 West Broadway, Suite 1600
11  San Diego, CA  92101
    Telephone:  (619) 696-6700
12  Fax:  (619) 696-7124
    Attorneys for Plaintiff Department of Parks And
13  Recreation For The State of California        No fee pursuant to Government Code
                                                           Section 6103

14              SUPERIOR COURT OF CALIFORNIA

15                COUNTY OF SACRAMENTO

16  DEPARTMENT OF PARKS AND RECREATION       Case No:
                                              COMPLAINT FOR
17  FOR THE STATE OF CALIFORNIA,              (1) DECLARATORY
                                              JUDGMENT OF
18                              Plaintiffs,   TRADEMARK OWNERSHIP
                                              [CCP § 1060];
19          v.                                (2) RECTIFICATION OF
                                              TRADEMARK [15 U.S.C. §
20  BAZAAR DEL MUNDO, INC., a California      1119];
    corporation, and DOES 1-50, inclusive,   (3) FRAUDULENT FEDERAL
21                                            TRADEMARK
                                Defendants.   INFRINGEMENT [15 U.S.C. §
22                                            1120];
                                              (4) UNFAIR BUSINESS
23                                            PRACTICES [B&PC § 17200];
                                              (5) FALSE ADVERTISING
24                                            [B&PC § 17500]; AND
                                              (6) FALSE DESIGNATION OF
25                                            ORIGIN [15 U.S.C. § 1125].

26      Comes now Plaintiff Department of Parks and Recreation for the State of California, and for

27  its Complaint alleges as follows:

28                                1
    ───────────────────────────────────────────────────────────
    COMPLAINT FOR DECLARATORY JUDGMENT OF TRADEMARK OWNERSHIP AND
    RECTIFICATION OF TRADEMARK

Exhibit A 4

### JURISDICTION AND VENUE

1.    This is an action for injunctive relief and declaratory relief arising under California Code of Civil Procedure § 1060; United States Trademark Act of 1946 (Lanham Act), including 15 U.S.C. §§ 1119, 1120 and 1125; and California Business and Professions Code §§ 17200, 17203 and 17500. This Court has original and concurrent jurisdiction over these claims.

2.    Venue is proper in this Court under California Code of Civil Procedure § 395 because part of the injury and activities complained of, namely the wrongful registration of state trademarks by defendant, took place in this County.

### THE PARTIES

3.    Defendant BAZAAR DEL MUNDO, INC. is a corporation organized under the laws of the State of California with its principal place of business located in San Diego County.

4.    The identities of Defendants DOES 1 – 50, inclusive, are currently unknown to Plaintiff, but Plaintiff believes, and on information and belief alleges, that each is in some way responsible for the acts alleged herein, and bears liability for them, and therefore Plaintiff sues them by such fictitious names. Plaintiff will seek leave to amend this Complaint when the true identities of these defendants are learned. Defendants BAZAAR DEL MUNDO, INC. and DOES 1 - 50, inclusive, are collectively referred to as "BdM".

5.    On information and belief, each Defendant acted as the agent of each other defendant in doing the acts alleged herein, and bears joint and several liability therefore.

6.    Plaintiff DEPARTMENT OF PARKS AND RECREATION (sometimes hereinafter "DPR") is an agency of the State of California ("State") and is authorized to bring this suit on behalf of the State.

### FACTUAL BACKGROUND

7.    Beginning in 1971 and continuing to the present day, BdM has been the concessionaire at the Old Town San Diego State Historic Park (hereinafter referred to as "Old Town"), under a written Concession Agreement originally entered into June 21, 1971 with the State acting through DPR. The Concession Agreement has been amended and renewed several times. The amendments

2

COMPLAINT FOR DECLARATORY JUDGMENT OF TRADEMARK OWNERSHIP AND
RECTIFICATION OF TRADEMARK

1   are attached as part of Exhibit A.  The Concession Agreement expired in 2001.  BdM has continued

2   to operate the Old Town facilities as a holdover tenant, while it appeals administratively against the

3   award of the Old Town concession to a third party.  True and correct copies of the Concession

4   Agreement, and all amendments and renewals, are collectively attached as Exhibit A, and

5   incorporated herein.

6       8.   As directed by the terms of the Concession Agreement, BdM has operated the "Casa de

7   Pico" and "Casa de Bandini" restaurants in Old Town in the registered historic buildings of the same

8   names, since 1971 and 1980, respectively.  Each of these buildings has been owned by the State of

9   California since 1968 as California Historical Landmarks.  ("Casa de Pico" and "Casa de Bandini"

10  are sometimes hereinafter collectively referred to as "the marks.")

11      9.   Plaintiff is informed and believes and thereon alleges that Casa de Pico was originally built

12  in 1824 by Pio Pico, the last Mexican governor of California.  It has been known as "Casa de Pico"

13  for one hundred and eighty (180) years.  In the 1960s, the property was operated as a motel by the

14  name of "Casa de Pico Motel."  When the State of California acquired possession of the Casa de Pico

15  Building in 1968, it was designated a historical landmark and used to house shops during the City

16  of San Diego's 200th anniversary celebration known as "Fiesta 200."

17      10.  Plaintiff is informed and believes and thereon alleges that Casa de Bandini was originally

18  built in 1829 by Don Juan Bandini, an immigrant from Peru.  It has been known as "Casa de

19  Bandini," as well as the "Cosmopolitan Hotel," ever since, for one hundred seventy-five (175) years.

20  The second story to the home was added in the 1860s by A.L. Seeley and the structure became a

21  hotel and stage station, which included a restaurant.  BdM is therefore not the first entity to operate

22  a restaurant at this site or under this name.  During the 1960s, the property was operated by Mr. and

23  Mrs. Cardwell as a hotel named "Casa de Bandini."  When the State acquired the Casa de Bandini

24  building in 1968, this structure was designated a historical landmark and used as an art gallery and

25  the headquarters for "Fiesta 200."

26      11.  BdM's use of these California historical names "Casa de Pico" and "Casa de Bandini" for

27  its concession restaurant businesses, housed in registered historical buildings of the same names, was

28

3

COMPLAINT FOR DECLARATORY JUDGMENT OF TRADEMARK OWNERSHIP AND
RECTIFICATION OF TRADEMARK

Exhibit A 6

1  authorized by the State.  Paragraph 1 of the Concession Agreement provided:

2      The State ...grants to Concessionaire the right, privilege and duty to construct or
       modify, equip, operate, and maintain a Mexican-style Shopping Arcade.  Items typical of
3      Mexican manufacture may be displayed and sold.  The concession shall be located in the
       premises provided by State and known as the Casa de Pico Buildings, Old Town San
4      Diego State Historic Park, at 2754 Calhoun Street, in the City and County of San Diego,
       State of California....

5

6      12.  On December 1, 1972, BdM and the State entered into Amendment No. 2 to the

7  Concession Agreement, to permit BdM to "... further upgrade and expand the concession facility as

8  shown on Exhibits I-B (Bandini House – Cosmopolitan Hotel)...."  A true and correct copy of

9  Amendment No. 2 is included as part of Exhibit A to this Complaint.

10     13.  On November 18, 1981, BdM and the State entered into a written "Third Amendment to

11  and Restatement of Concession Contract, Old Town San Diego State Historic Park," extending the

12  term of the contractor an additional ten years.  In addition, Paragraph 1 stated:

13     The State . . . grants to Concessionaire the right, privilege and duty to construct or modify,
       equip, operate, and maintain a Mexican-style Shopping Arcade together with the Casa de
14     Pico, Lino's, Hamburguesa and Casa de Bandini Restaurants.  Items typical of Mexican
       Manufacture may be displayed and sold.  The concession shall be located in the premises
15     provided by State and known as the Casa de Pico Building, the El Nopal Adobe and the
       Casa de Bandini in Old Town San Diego State Historic Park....

16

17     A true and correct copy of Amendment 3 is included as part of Exhibit A to this Complaint.

18     14.  In 1991 BdM exercised an option under the Concession Agreement to extend the term of

19  the Concession Agreement for another ten years to June 30, 2001.

20     15.  Plaintiff is informed and believes and thereon alleges that, without either advising or

21  seeking permission from the State, BdM applied to the United States Patent and Trademark Office

22  (USPTO) for federal trademark registration in BdM's own name for the marks "Casa de Pico" and

23  "Casa de Bandini" on January 7, 1985.  Both applications proceeded to issuance.  "Casa de Bandini"

24  was registered as U.S. Trademark No. 1,350,088 on July 16, 1985 for restaurant services in Class

25  42, with a claimed date of first use in April 1980.  "Casa de Pico" was registered as U.S. Trademark

26  No. 1,364,974 on October 8, 1985 in Class 42 with a date of first use claimed in November 1971.

27     16.  On information and belief, BdM never informed the USPTO that the names sought to be

28
                                          4
      COMPLAINT FOR DECLARATORY JUDGMENT OF TRADEMARK OWNERSHIP AND
      RECTIFICATION OF TRADEMARK

1  registered and then maintained were the names of historical landmarks owned by the State of

2  California, or that BdM's use of these names for restaurant services was permitted, allowed, and

3  authorized by the terms of the Concession Agreement, and constituted a license. On information and

4  belief, BdM never disclosed to the State that BdM had registered the marks, despite BdM's

5  subsequent action in 1991 of extending the Concession Agreement for ten years.

6      17.  On information and belief, without either advising or seeking permission from the State,

7  BdM also applied for trademark registration with the State of California for the marks "Casa de Pico"

8  and "Casa de Bandini". Both applications proceeded to issuance.

9      18.  On information and belief, BdM has concealed its federal and state registrations or claims

10  of trademark ownership of "Casa de Pico" and "Casa de Bandini," by avoiding display or use of the

11  federal registration notation ® or the common law trademark notation ™ in connection with these

12  names in its literature and website.  However, BdM does use and display the ® notation in its

13  literature and website in connection with its own name and registered mark "Bazaar del Mundo,"

14  U.S. Trademark No. 1430518, suggesting it is aware of such trademark notation.  True and correct

15  copies of promotional literature and website for the marks Bazaar del Mundo, Casa de Pico, and

16  Casa de Bandini are attached collectively as Exhibit B.

17      19.  BdM obtained, and has maintained, its state and federal trademark registrations for "Casa

18  de Pico" and "Casa de Bandini" without authority or right.  BdM does not own the marks but uses

19  them only under license from their true owner, the State of California.  Further, BdM has threatened

20  or implied that it intends to use the marks in connection with restaurant services outside Old Town

21  if a third party replaces BdM as concessionaire at Old Town.

22              **FIRST CAUSE OF ACTION**

23    **(Declaratory Judgment of Trademark Ownership under Cal. Code Civ. Proc. § 1060)**

24      20.  Plaintiff incorporates and alleges herein by reference all of the preceding allegations as if

25  set forth in full.

26      21.  The buildings in which BdM's restaurants are located are each historic structures and have

27  been known as the "Casa de Bandini" and "Casa de Pico" for over one hundred-seventy five (175)

28

<div align="center">5</div>

COMPLAINT FOR DECLARATORY JUDGMENT OF TRADEMARK OWNERSHIP AND
RECTIFICATION OF TRADEMARK

<div align="right">**Exhibit A 8**</div>

1  years. They have been owned by Plaintiff, and beneficially by the people of the State of California

2  since 1968. Plaintiff has common law rights to the marks dating from before the time BdM began

3  offering restaurant services in the historic buildings.

4      22.  Plaintiff, through its licensee Defendant BdM, has used the marks "Casa de Pico" and

5  "Casa de Bandini" to designate restaurant services since November 1971, and April 1980,

6  respectively. The marks have been in continuous use since that time and have acquired secondary

7  meaning. The benefit of BdM's use of the marks, including good will, inures to Plaintiff, the owner

8  of the historic buildings and the licensor of the marks.  In addition, Plaintiff is the owner of the

9  marks under the doctrine of merger.

10     23.  A genuine case and controversy has arisen and now exists between Plaintiff and BdM as

11  to the ownership of the marks "Casa de Pico" and "Casa de Bandini," and is ripe for judicial

12  determination. Plaintiff desires a judicial determination of its rights of ownership in the marks.

13  Plaintiff further alleges that, as a result of BdM's activities, a cloud has been cast over Plaintiff's

14  ownership or use of the marks. Plaintiff therefore requests a swift judicial determination by the

15  Court that Plaintiff unequivocally owns the entire right, title, and interest in the marks "Casa de Pico"

16  and "Casa de Bandini."

17              **SECOND CAUSE OF ACTION**

18        **(Rectification of Trademark Register under 15 U.S.C. § 1119)**

19     24.  Plaintiff incorporates and alleges herein by reference all of the preceding

20  allegations as if set forth in full.

21     25.  Plaintiff requests this Court order the rectification of the registration ownership of the

22  "Casa de Pico" and "Casa de Bandini" trademarks from BdM to the State of California, Department

23  of Parks and Recreation, at the United States Patent and Trademark Office.

24              **THIRD CAUSE OF ACTION**

25     26.  Plaintiff incorporates and realleges herein by reference all of the preceding allegations as

26  if set forth in full.

27     27.  Plaintiff is informed and believes, and on that basis alleges, that BdM has procured

28

6

COMPLAINT FOR DECLARATORY JUDGMENT OF TRADEMARK OWNERSHIP AND
RECTIFICATION OF TRADEMARK

1   registration in the United States Patent and Trademark Office of the marks "Casa de Bandini", U.S.

2   Trademark No. 1,350,088 and "Casa de Pico," U.S. Trademark No. 1,364,974 by false or fraudulent

3   declaration or representation in writing.

4        28.   As part of its applications for each mark, submitted in 1985, BdM was required to and did

5   make the following required declaration under penalty of perjury:

> The undersigned, being hereby warned that willful false statements and the like so made are punishable by fine or imprisonment, or both, under 18 U.S.C. § 1001, and that such willful false statements may jeopardize the validity of the application or any resulting registration, declares that he/she is properly authorized to execute this application on behalf of the applicant; **he/she believes the applicant to be the owner of the trademark/ service mark sought to be registered**, or, if the application is being filed under 15 U.S.C. § 1051(b), he/she believes applicant to be entitled to use such mark in commerce; **to the best of his/her knowledge and belief no other person, firm, corporation, or association has the right to use the mark in commerce**, either in the identical form thereof or in such near resemblance thereto as to be likely, when used on or in connection with the goods/services of such other person, to cause confusion, or to cause mistake, or to deceive; and that all statements made of his/her own knowledge are true; and that all statements made on information and belief are believed to be true. [emphasis added]

13        29.   Six years later, on or about March 25, 1991, BdM submitted to the USPTO affidavits of

14   continued and continuous use under Sections 8 and 15 of the United States Trademark Act (Lanham

15   Act), which were accepted by the USPTO on or about July 26 and 27, 1991.  In these affidavits,

16   BdM declared under penalty of perjury:

> There has been no final decision adverse to the owner's claim of ownership of such mark for such goods and/or services, **or to the owner's right to register the same or to keep the same on the register**; and there is no proceeding involving said rights pending and not disposed of either in the Patent and Trademark Office or in the courts. [emphasis added]

20        30.   Plaintiff is informed and believes, and on that basis alleges, that the declarations submitted

21   in 1985 and 1991 as described in Paragraphs 28 and 29 above were false to the extent they implied

22   BdM was the rightful owner of the marks.

23        31.   If BdM is permitted to retain registrations of Plaintiff's "Casa de Pico" and "Casa de

24   Bandini" marks obtained as a result of these declarations, Plaintiff will be irreparably harmed and

25   damaged.

26        32.   Plaintiff has been damaged by BdM's procurement of registrations by false or fraudulent

27   declarations or representations, or by false means, in that, *inter alia,* Plaintiff has been obliged to

28

<div align="center">7</div>

COMPLAINT FOR DECLARATORY JUDGMENT OF TRADEMARK OWNERSHIP AND
RECTIFICATION OF TRADEMARK

<div align="right">Exhibit A 10</div>

1   incur attorney's fees to assert its rights in the subject marks.

2   **FOURTH CAUSE OF ACTION**

3   **(Unfair Business Practice under Cal. Bus. & Prof. Code § 17200)**

4       Plaintiff incorporates and alleges herein by reference all of the preceding allegations as if set

5   forth in full.

6       34.  The acts of BdM as alleged, including without limitation BdM's assertion of ownership

7   rights in the subject marks to the USPTO and to the California Secretary of State, constitute unfair

8   and fraudulent business practices in violation of California Business and Professions Code § 17200,

9   *et seq.*

10       35.  As a result of the activities of BdM, Plaintiff has suffered, and will suffer, irreparable

11   injury to its business reputation, goodwill, and the value and integrity of its marks.   Plaintiff's

12   remedy at law is not sufficient to compensate Plaintiff for injuries caused by BdM. Plaintiff is

13   entitled to injunctive relief to prohibit BdM from continuing its illegal action under, *inter alia,*

14   Business and Professions Code § 17203.

15       36.  Plaintiff requests this Court order the California Secretary of State to rectify the

16   registration ownership of the "Casa de Pico" and "Casa de Bandini" California state trademarks from

17   BdM to the State of California, Department of Parks and Recreation.

18   **FIFTH CAUSE OF ACTION**

19   **(False Advertising under Cal. Bus. & Prof. Code § 17500)**

20       37.  Plaintiff incorporates and alleges herein by reference all of the preceding allegations as if

21   set forth in full.

22       38.  The acts of BdM as alleged, including without limitation BdM's assertion in public

23   documents and records of ownership rights in the subject marks, violate California Business and

24   Professions Code § 17500 *et seq.* because the acts constitute unfair, deceptive, and misleading

25   advertising.

26       39.  As a result of the activities of BdM, Plaintiff has suffered, and will suffer, irreparable

27   injury to its business reputation, goodwill, and the value and integrity of its marks.   Plaintiff's

28

8

COMPLAINT FOR DECLARATORY JUDGMENT OF TRADEMARK OWNERSHIP AND
RECTIFICATION OF TRADEMARK

Exhibit A 11

1  remedy at law is not sufficient to compensate Plaintiff for injuries caused by BdM.  Plaintiff is

2  entitled to injunctive relief under, *inter alia,* Business and Professions Code § 17203, to prohibit

3  BdM from continuing its illegal actions.

4      40.  Plaintiff requests this Court order the California Secretary of State to rectify the

5  registration ownership of the "Casa de Pico" and "Casa de Bandini" California state trademarks from

6  BdM to the State of California, Department of Parks and Recreation.

7  <center>**SIXTH CAUSE OF ACTION**</center>

8  <center>**(False Designation of Origin, False Description, and False Representation Under 15 U.S.C.**</center>

9  <center>**§1125)**</center>

10      41.  Plaintiff incorporates and alleges herein by reference all of the preceding allegations as if

11  set forth in full.

12      42.  Plaintiff is informed and believes, and on that basis alleges, that BdM has, in commercial

13  advertising and promotion, misrepresented the nature, characteristics, and qualities of its services

14  by failing to make clear to the consuming public that the marks "Casa de Pico" and "Casa de

15  Bandini" do not belong to BdM but are used under license from the State.

16      43.  Plaintiff is informed and believes, and on that basis alleges, that, if BdM is permitted to

17  use the "Casa de Pico" and "Casa de Bandini" trademarks outside of Old Town, BdM will cause a

18  likelihood of confusion, mistake and deception as to the source, origin, sponsorship, authorization,

19  association or affiliation of the goods and services of BdM.  There is a likelihood that the public will

20  be confused into believing that the services BdM provides are directly sponsored by, associated with,

21  or originate from the State.

22      44.  Plaintiff is entitled to a preliminary and permanent injunction to enjoin BdM from making

23  false designations of origin and false descriptions.

24      45.  The nature and character of BdM's conduct as alleged herein make this case "exceptional"

25  within the meaning of Section 35 of the Lanham Act, 15 U.S.C. § 1117, and accordingly, Plaintiff

26  is entitled to its reasonable attorney's fees.

27  / / /

28

<center>9</center>

COMPLAINT FOR DECLARATORY JUDGMENT OF TRADEMARK OWNERSHIP AND
RECTIFICATION OF TRADEMARK

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment against BdM, as follows:

On the First Cause of Action:

The Court declare that Plaintiff is the owner of the entire right, title, and interest in and to the marks "Casa de Pico" and "Casa de Bandini" under Cal. Code Civ. Proc. §1060.

On the Second Cause of Action:

For an order from the Court that the United States Patent and Trademark Office rectify its records of ownership for the mark "Casa de Pico," U.S. Trademark No. 1,364,974 and "Casa de Bandini", U.S. Trademark No. 1,350,088, to reflect the ownership of such marks in the State of California, Department of Parks and Recreation, under 15 U.S.C. §1119.

On the Third Cause of Action:

Damages according to proof.

On the Fourth and Fifth Causes of Action:

For an order from the Court that the California Secretary of State rectify its records of ownership for the marks "Casa de Pico" and "Casa de Bandini" to reflect the ownership of such marks in the State of California, Department of Parks and Recreation.

On the Fourth, Fifth and Sixth Causes of Action:

(a)   That the Court adjudge that BdM, by its commercial advertising and promotion, and such other acts as BdM may have undertaken, has misrepresented the nature, characteristics, and qualities of its services by failing to make clear to the consuming public that the marks "Casa de Pico" and "Casa de Bandini" do not belong to BdM but are used under license from the State.  The Court further adjudge that BdM has willfully violated Plaintiff's rights under 15 U.S.C. §1125(a).

(b)   For attorney's fees and costs under 15 U.S.C. § 1117.

(c)   For preliminary and permanent injunctions restraining and enjoining BdM, its agents, servants, employees, successors, licensees, subsidiaries, transferees, representatives and assignees, and any persons in active concert or participation with any of them, from: (i) using or displaying Plaintiff's "Casa de Pico" and "Casa de Bandini" marks or any confusingly similar marks, either

10

COMPLAINT FOR DECLARATORY JUDGMENT OF TRADEMARK OWNERSHIP AND RECTIFICATION OF TRADEMARK

Exhibit A 13

1   alone or in combination with other words, phrases, or symbols, in any manner; (ii) immediately

2   ceasing from any and all use of the "Casa de Pico" and "Casa de Bandini" designations on BdM's

3   services, Internet web sites, domain name, promotional materials and advertisements, corporate name

4   and logos; and (iii) ensuring that any and all of BdM's employees or representatives that are using

5   this designation on behalf of BdM, with BdM's consent, express or implied, or under some

6   agreement with Defendant, cease such use.

7       (d)   For preliminary and permanent injunctions restraining and enjoining BdM, its agents,

8   servants, employees, successors, licensees, subsidiaries, transferees, representatives and assignees,

9   and any persons in active concert or participation with any of them, from doing or allowing any act

10   or thing calculated to or likely to: (i) cause confusion or mistake in the minds of members of the

11   public or the trade, or prospective purchasers of Plaintiff's or Plaintiff's licensee's services; or (ii)

12   likely to deceive members of the public or the trade, or prospective purchasers, into believing that

13   there is some association between Plaintiff's or Plaintiff's licensee's services and the services of

14   BdM outside of Old Town.

15       (e)   For an Order that BdM has no right or authority to issue, grant, register, license, or

16   otherwise authorize, the use of "Casa de Pico" or "Casa de Bandini" as an Internet domain name, and

17   no right to use, copy, reproduce, or display Plaintiff's "Casa de Pico" or "Casa de Bandini" marks

18   on the Internet in connection with advertising or promoting BdM's services.

19   / / /

20   / / /

21   / / /

22   / / /

23   / / /

24   / / /

25   / / /

26   / / /

27   / / /

28

11

COMPLAINT FOR DECLARATORY JUDGMENT OF TRADEMARK OWNERSHIP AND
RECTIFICATION OF TRADEMARK

1  On all Causes of Action

2     (a)  For reasonable attorneys fees;

3     (b)  For costs of suit; and,

4     (c)  For such other and further relief as this Court may deem just and proper.

5          Dated:  June 14, 2004

6                                         Respectfully submitted,

7
                                          BILL LOCKYER
8                                         Attorney General of the State of California

9                                         MARY HACKENBRACHT
                                          Senior Assistant Attorney General
10
                                          CAROL A. SQUIRE
11                                        Supervising Deputy Attorney General

12

13

14
                                          DAVID H. ROBINSON
15                                        Deputy Attorney General

16                                        Attorneys for Plaintiff Department of Parks
                                          and Recreation for the State of California
17

18

19

20

21

22

23

24

25

26

27

28
                                  12
     COMPLAINT FOR DECLARATORY JUDGMENT OF TRADEMARK OWNERSHIP AND
     RECTIFICATION OF TRADEMARK

# EXHIBIT "A"

DOCUMENT FILE

CONCESSION CONTRACT
OLD TOWN SAN DIEGO STATE HISTORIC PARK
SAN DIEGO CITY AND COUNTY, CALIFORNIA
BAZAAR DEL MUNDO, INC.

| Paragraph | | Page |
|---|---|---|
| 1 | Grant and Description of Premises | 1 |
| 2 | Condition of Premises | 2 |
| 3 | Term | 2 |
| 4 | Quitclaim Deed | 2 |
| 5 | Rental | 3 |
| 6 | Use of Premises | 5 |
| 7 | Type and Approval of Improvements | 6 |
| 8 | Completion of Improvements | 7 |
| 9 | Title to Improvements | 8 |
| 10 | Maintenance of Improvements | 8 |
| 11 | Assignments | 9 |
| 12 | Utilities and Services | 10 |
| 13 | Equipment | 10 |
| 14 | Signs and Approval of Name | 11 |
| 15 | Quality of Service and Control of Rates and Charges | 11 |
| 16 | Bonds | 12 |
| 17 | Hold Harmless Agreement | 13 |
| 18 | Liability Insurance | 14 |
| 19 | Fire Insurance | 15 |
| 20 | Construction or Modification of Improvements | 16 |
| 21 | Taxes | 17 |
| 22 | Inspection of Premises | 17 |
| 23 | Inspection and Maintenance | 17 |
| 24 | Contract Notice | 18 |
| 25 | Interpretation of Contract | 18 |
| 26 | Waiver of Contract Terms | 18 |
| 27 | Modification of Contract | 19 |
| 28 | Breach of Contract | 19 |
| 29 | Assignments and Subleases | 20 |
| 30 | Waiver of Claims | 21 |
| 31 | Agent for Service of Process | 21 |
| 32 | Right of Entry as Agent | 22 |
| 33 | Terms Binding on Successors | 23 |
| 34 | Duration of Public Facilities | 23 |
| 35 | Time of Essence | 23 |
| 36 | Conflict of Interest | 23 |
| 37 | Photography | 24 |
| 38 | Nondiscrimination | 24 |
| 39 | Paragraph Titles | 26 |
| 40 | Contract in Counterparts | 26 |
| 41 | Alcoholic Beverages | 26 |
| 42 | Health Certificate | 26 |
| 43 | Eminent Domain | 26 |
| 44 | Report of Gross Receipts | 27 |

COURT PA
STATE OF CI
STD. 113 (A
...TED 8-70
RHIA
-701
Y OFF

Exhibit A 17

CONCESSION CONTRACT
OLD TOWN SAN DIEGO STATE HISTORIC PARK
SAN DIEGO CITY AND COUNTY, CALIFORNIA
BAZAAR DEL MUNDO, INC.

THIS CONTRACT, made and fully executed this 21st day of June, 1971, by and between the STATE OF CALIFORNIA, acting through its Department of Parks and Recreation, hereinafter referred to as "State", and BAZAAR DEL MUNDO, INC. of San Diego, California, hereinafter referred to as "Concessionaire":

W I T N E S S E T H:

1. GRANT AND DESCRIPTION OF PREMISES: The State, pursuant to the authority of and in accordance with Section 5019.10 et seq., of the Public Resources Code of the State of California, and for and in consideration of the agreements hereinafter stated, grants to Concessionaire the right, privilege and duty to construct or modify, equip, operate, and maintain a Mexican-style Shopping Arcade. Items typical of Mexican manufacture may be displayed and sold. The concession shall be located in the premises provided by State and known as the Casa de Pico Buildings, Old Town San Diego State Historic Park, at 2754 Calhoun Street, in the City and County of San Diego, State of California, and being a portion of Lot 1 all of Lot 2, Block 426 of Old San Diego, in the City of San Diego according to map thereof made by James Pascoe in 1870, a certified copy of which map was filed in the County Recorder's Office December 12, 1921, and is known as Miscellaneous Map No. 40, and as more particularly designated in red on the plat attached marked Exhibit "I" and by this reference incorporated

-1-

COURT PAPER
STATE OF CALIFORNIA
STD. 113 (NEW 8-70)
48843-780 8-70 200M 77 OSP

1   herein.

2

3     2.   CONDITION OF PREMISES:  The taking of possession of the

4   subject premises by the Concessionaire shall, in itself, constitute

5   acknowledgment that the subject premises are in good and tenantable

6   condition.  Concessionaire agrees to accept said premises in their

7   presently existing condition, "as is", and that the State shall not

8   be obligated to make any alterations, additions or betterments thereto.

9

10    3.   TERM:  The term of this contract shall be for a period of

11  five (5) years commencing on July 1, 1971 and ending on June 30, 1976.

12  At the expiration or termination of this contract as herein provided,

13  the Concessionaire shall within thirty (30) days thereafter, remove

14  from said premises, or otherwise dispose of in a manner satisfactory to

15  State, all personal property belonging to Concessionaire located on

16  said premises.  Should Concessionaire fail to remove or dispose of

17  his property as herein provided, State may, at its election, consider

18  such property abandoned or may dispose of same at Concessionaire's

19  expense.  Also, at the expiration or termination of this contract,

20  the Concessionaire shall quit and surrender the said premises

21  including real property improvements in a good state of repair, damage

22  by matters over which Concessionaire has no control excepted, provided

23  that such exculpatory provision shall not extend to any risk which

24  Concessionaire is required to insure against as herein provided.

25

26    4.   QUITCLAIM DEED:  Upon termination of the rights hereby

27  granted, the Concessionaire shall execute and deliver to State within

-2-

thirty (30) days after service of written demand therefor, a good and

sufficient quitclaim deed to the rights arising hereunder.  Should

Concessionaire fail or refuse to deliver to State a quitclaim deed as

aforesaid, a written notice by the State reciting the failure of the

Concessionaire to execute and deliver said quitclaim deed as herein

provided, shall after ten (10) days from the date of recordation of

said notice be conclusive evidence against the Concessionaire and all

persons claiming under Concessionaire of the termination of said

concession.

5.   RENTAL:  Concessionaire shall pay, without demand:

   a.  For the first year of operation:

      2% of annual gross receipts.

   b.  For the remaining period of the contract and after the

      expiration of the first year of operation noted above,

      as a minimum annual rental, the sum of one thousand five

      hundred dollars ($1,500) payable at the rate of one

      hundred twenty-five dollars ($125) per month, or the

      following percentages, whichever sum is greater:

   (1)  On gross receipts from stores owned and operated by

      Concessionaire:

      2% of the first $200,000 of annual gross receipts, plus

      4% of all over $200,000 of annual gross receipts.

   (2)  On gross receipts from subleased stores:

      2% of the first $200,000 of annual gross receipts, plus

      4% of all over $200,000 of annual gross receipts.

   Beginning with the 20th day of the month following the

commencement of operations hereunder, Concessionaire shall furnish to

State by the 20th day of each month of the term hereof, and upon the

COURT PAPER
STATE OF CALIFORNIA
STD. 113 (NEW 8-70)
44445-700 9-70 200m 17 OSP

Exhibit A 20

1   20th day of the month next following the end of the term, a verified

2   statement of its cumulative total gross receipts as defined herein

3   through the close of the preceding month, for the then current year.

4   With such monthly statement, the Concessionaire shall pay to State,

5   and without demand, the rental fee for the preceding calendar month.

6   The rental payment for each preceding month shall be such an amount as

7   will, if added to all previous months payment of that year, equal the

8   prescribed percentage of the accumulated gross sales to the end of that

9   month, or the total minimum monthly rental to date, whichever is

10   greater.  Payments to the State shall be made to the order of the

11   Department of Parks and Recreation and made at the office of the

12   Departmental Accounting Officer, Department of Parks and Recreation,

13   Post Office Box 2390, Sacramento, California  95811.

14            Concessionaire shall keep true and accurate books and records

15   showing all of its business transactions in separate records of account

16   for the concession in a manner acceptable to State and the State shall

17   have the right through its representatives and at all reasonable times,

18   to inspect such books and records including State of California sales

19   tax return records and Federal income tax returns; and Concessionaire

20   hereby agrees that all such records and instruments are available to

21   the State.

22            State further reserves the right to examine all such books

23   and records at any time during the one (1) year period following the

24   termination of this contract.

25            Concessionaire agrees that as part of its record-keeping

26   activity it shall at its own cost and expense install and maintain

27   such cash register equipment as may be deemed necessary by State.

-4-

1 Such cash register equipment shall contain a continuous registering
2 tape.  The term "gross receipts", wherever used in this contract, is
3 intended to and shall mean all monies, property or any other thing
4 of value received by Concessionaire through the operation of said
5 concession or from any other business carried on or upon said premises
6 or any portion thereof, or from any other use of said premises or any
7 portion thereof by Concessionaire, without any deduction or deductions,
8 it being understood, however, that the term "gross receipts" shall not
9 include any sales or excise taxes imposed by any governmental entity
10 and collected by Concessionaire.

11

12     6.  USE OF PREMISES:  The subject premises shall be used by the
13 Concessionaire to establish a Mexican Shopping Arcade, including, but
14 not limited to, retail trade, exhibitions and other activities all of
15 which pertain to, or are compatible with, the theme of Old Town San
16 Diego State Historic Park, and as approved by the Area Manager.

17     Concessionaire shall install a substantial number and variety of
18 working craftsmen on the premises who will perform their crafts for the
19 benefit of the general public using this unit of the State Park System.

20     In keeping with the theme of the restoration of Old Town San
21 Diego, Concessionaire agrees to require all employees, or his sub-
22 lessees, and himself, while employed on or in the premises described
23 herein, to be dressed in a costume depicting the Old Town San Diego era
24 of 1827-1869, if required by State.

25     These services shall be provided during hours and days to meet
26 the needs of the public and as agreed upon between Concessionaire and
27 the Area Manager.

-5-

Exhibit A 22

1   Concessionaire shall not use or permit the subject premises to be

2  used in whole or in part during the term of this contract, for any

3  purpose other than as hereinabove set forth, without the prior written

4  consent of the State first had and obtained.  Concessionaire expressly

5  agrees at all times during the term of this contract, at its own cost,

6  to maintain and operate the subject premises in a clean, wholesome and

7  sanitary condition, and in compliance with any and all present and

8  future laws, general rules or regulations of any governmental authority

9  now or at any time during the term of this contract in force relating

10  to sanitation or public health, safety or welfare; and Concessionaire

11  shall at all times faithfully obey and comply with all laws, rules and

12  regulations applicable thereto adopted by Federal, State, the

13  California State Park and Recreation Commission, the Director of Parks

14  and Recreation, or other governmental bodies or departments or officers

15  thereof.

16   All advertising matter to be published or circulated by or on

17  behalf of Concessionaire shall be submitted to and approved by the

18  Area Manager prior to publication or circulation.

19

20   7.  TYPE AND APPROVAL OF IMPROVEMENTS:  Concessionaire may modify

21  the existing State structures to adequately provide all services needed

22  for the shopping arcade contemplated herein and as approved by State.

23  Concessionaire shall provide and maintain public restrooms as shown

24  on Exhibit "II" attached hereto and by this reference incorporated

25  herein, and shall accomplish all work described in Exhibits "I" and

26  "II" at his sole cost and expense.  Concessionaire shall utilize the

27  services of an architect and contractor, both licensed by the State

1  of California, for the modification of said facilities.  Copies of the

2  contract between Concessionaire and his architect and contractor, and

3  stage inspection reports, shall be furnished State when occurring.  The

4  architect's services shall include the preparation of working drawings,

5  detailed specifications, estimates of cost of construction, super-

6  vision, stage inspection, and upon completion of construction, the

7  construction shall be certified by the architect to be in substantial

8  accordance with the original plans and specifications.  Within six (6)

9  weeks after the execution of this contract, working drawings, detailed

10  specifications and estimates of construction cost shall be submitted

11  to State for approval in accordance with the Plan Approval Procedure

12  attached hereto, marked Exhibit "III" and hereby made a part of this

13  contract.  If the State disapproves any drawings, plans or specifi-

14  cations, Concessionaire shall submit necessary modifications and

15  revisions.  The State shall not unreasonably withhold such approval,

16  and will give approval or specify specific changes within thirty (30)

17  days of receipt of such working drawings, plans and specifications.

18  Once approved, no changes or alterations shall be made in working

19  drawings, plans or specifications without prior written approval of

20  State.

21

22  8.  COMPLETION OF IMPROVEMENTS:  Upon approval of and in accord-

23  ance with the working drawings, plans and specifications as provided

24  in paragraph No. 7, entitled "Type and Approval of Improvements", of

25  this contract, Concessionaire shall immediately commence construction

26  of the facilities described herein and prosecute the same to completion

27  with all due diligence and within three (3) months after said plans and

1  specifications have been approved by State.  Upon said completion,

2  Concessionaire shall file a Notice of Completion of Construction with

3  State, provided that such time for completion will be extended by a

4  fair and reasonable period on account of any delay due to fire, earth-

5  quake, wars, strikes, or other calamity beyond the control of Con-

6  cessionaire.  When construction has been completed and facilities

7  accepted by State, Concessionaire may commence operations.

8

9      9.  TITLE TO IMPROVEMENTS:  Concessionaire hereby acknowledges

10 the title of State in and to the premises described in this contract,

11 including real property improvements existing or erected thereon and

12 hereby convenants and agrees never to assail, contest or resist said

13 title.

14

15     10.  MAINTENANCE OF IMPROVEMENTS:  Concessionaire agrees to main-

16 tain any and all concession facilities on the subject premises,

17 including the public restrooms described on Exhibit "II", in good order

18 and repair, at his own cost and expense, during the entire term of this

19 contract.  Concessionaire shall perform, at his own cost and expense,

20 any required maintenance and repairs, including structural maintenance;

21 and such maintenance shall include but not be limited to interior and

22 exterior maintenance and repair of all structures, all utility services,

23 and glass windows or doors, plumbing and electrical fixtures and main-

24 tenance of grounds, gardens and landscaped areas; and should Concession-

25 aire fail, neglect or refuse to do so, the State shall have the right to

26 perform such maintenance or repairs for the Concessionaire's account

27 and the Concessionaire agrees to promptly reimburse the State for the

1  cost thereof, provided, however, that the State shall first give

2  Concessionaire ten (10) days' written notice of its intention to

3  perform such maintenance or repairs for the Concessionaire's account

4  for the purpose of enabling Concessionaire to proceed with such

5  maitenance or repairs at its own expense. The State shall not be

6  obligated to make any repairs to or maintain any improvements on the

7  subject premises. Concessionaire hereby expressly waives the right

8  to make repairs at the expense of the State and the benefit of the

9  provision of Sections 1941 and 1942 of the Civil Code of the State of

10 California relating thereto, if any there be.

11

12     11. ASSIGNMENTS: No transfer or assignment by the Concessionaire

13 of this contract or of any part thereof or interest therein, directly

14 or indirectly, voluntarily or involuntarily, shall be made unless such

15 transfer or assignment is first approved in writing by State, except

16 that Concessionaire may sublease portions of these premises and as

17 approved by the Area Manager. The Concessionaire's possessory

18 interest in Concessionaire's improvements, for the purpose of affording

19 security only, may be assigned, transferred or encumbered when first

20 approved in writing by State. No mortgage shall be executed and no

21 bonds or other evidence of interest in, or indebtedness upon the

22 assets or proposed assets of the Concessionaire in the State unit

23 shall be issued except for the purposes of installing, enlarging or

24 improving plant and equipment and extending facilities for the

25 accommodation of the public in the State unit and then only except upon

26 prior authorization in writing in each case obtained from the State.

27 In the event of default on such a mortgage or such other indebtedness

1   or of other assignment, transfer or encumbrance, the creditor thereof

2   shall succeed to the possessory interest of the Concessionaire in

3   Concessionaire's improvements.  Under these circumstances, operating

4   rights and privileges shall be as outlined in this contract;

5   however, the right of any person or persons to actually operate the

6   said concession is subject to the approval of State.  Approval by

7   State of such person or persons shall be contingent upon said person

8   or persons having at least two (2) years experience as a manager of

9   a facility comparable to the facility contemplated herein.

10

11       12.  UTILITIES AND SERVICES:  Concessionaire shall be responsible

12  for the payment of all utility charges, used in connection with the

13  premises.  For the purpose of this paragraph, sewage disposal shall

14  be construed as a utility.  All trash containers and/or trash bins

15  shall be adequately screened to the satisfaction of the Area Manager.

16  All rubbish and garbage shall be disposed of by Concessionaire at

17  his own cost and expense in accordance with applicable law and outside

18  the confines of the Historic Park Area.  All such rubbish removal

19  shall be performed by Concessionaire to the satisfaction of the Area

20  Manager.

21

22       13.  EQUIPMENT:  Concessionaire, at its own expense, shall

23  completely equip the concession improvements described herein and

24  shall keep the same equipped in a first-class manner throughout the

25  term of this contract.

26  ——

27  ——

COURT PAPER
STATE OF CALIFORNIA
STD. 113 (NEW 8-70)
44443-700 9-70 2000 IT 69F

Exhibit A 27

1   · 14.  <u>SIGNS AND APPROVAL OF NAME</u>:  No signs, name or placards,

2  shall be inscribed, painted or affixed upon said premiese without

3  written consent of the State first had and obtained.

4

5      15.  <u>QUALITY OF SERVICE AND CONTROL OF RATES AND CHARGES</u>:

6  Concessionaire agrees that he will operate and manage the services and

7  facilities offered in a first-class manner and comparable to other

8  first-class concessions providing similar facilities and services

9  during the entire term of this contract.  Where such facilities are

10  provided, Concessionaire agrees that he shall and will furnish and

11  dispense goods of the best quality and shall and will maintain a high

12  standard of service at least equal to that of other establishments in

13  State Parks and/or adjacent communities and to those prevailing in such

14  areas for similar products and services, and without discrimination.

15      The State shall have access to and the right to inspect the

16  schedule of prices and rates for goods sold or services rendered or

17  performed upon the subject premises.  In the event that after Conces-

18  sionaire has been advised and given reasonable opportunity to confer

19  with the State and justify the prices mentioned above, if the State

20  shall determine any price or prices to be unreasonable or inappropriate

21  for the services rendered, or the item sold, the same shall be modified

22  as directed by the State.  Concessionaire shall post rates and prices

23  for all goods and services in such places as may be designated by State.

24      State reserves the right to prohibit the sale or rental of any

25  item which it deems objectionable or beyond the scope of merchandise

26  deemed necessary for proper service to the public.

27      A competent person, over twenty-one years of age, shall be on the

Exhibit A 28

1   premises at all times while the concession is in operation.

2

3   .16.  BONDS:  Concessionaire, at his own cost and expense, shall

4   furnish the State two (2) separate bonds as follows:

5

6   (a)  Continuing Performance Bond:  Within thirty (30) days after

7   the final awarding of this contract and prior to the commencement of

8   construction or modification, concessionaire shall furnish a bond in a

9   form satisfactory to State, issued by a corporate surety licensed to

10   transact business in the State of California and satisfactory to State,

11   in a sum not less than Five Thousand Dollars ($5,000) payable to the

12   State and conditioned upon full and satisfactory performance of the

13   obligations of Concessionaire set forth in this contract and con-

14   ditioned upon satisfactory performance of maintenance on the premises.

15   Said bond renewable annually shall be kept by Concessionaire in full

16   force and effect during the entire term of this contract to insure

17   faithful performance by Concessionaire of all the covenants, terms and

18   conditions of this contract inclusive of, but not restricted to, the

19   payment of all rentals, fees and charges.  The corporate surety issuing

20   said bond or bonds shall give State notice in writing in at least

21   thirty (30) days prior to each anniversary date of its intention to

22   renew or not to renew said bond or bonds of Concessionaire.

23

24   (b)  Labor and Material Bond and Construction Performance Bond:

25   Prior to the commencement of construction or modification hereunder,

26   Concessionaire shall furnish the state a surety bond of a corporate

27   surety licensed to transact business in the State of California and in

Exhibit A 29

1  a form satisfactory to the State, with Concessionaire's contractor or

2  contractors as principals in a sum not less than fifty percent (50%)

3  of the estimated cost of construction of the facility mentioned above,

4  guaranteeing the payment for all materials, provisions, provender,

5  supplies and equipment used in, upon, for or about the performance

6  of said construction work or labor done thereon of any kind whatsoever

7  and protecting the State from any liability, losses, or damages arising

8  therefrom.

9

10      17.  HOLD HARMLESS AGREEMENT:  Concessionaire shall indemnify,

11  hold harmless, and defend State, its officers, agents and employees

12  against any and all claims, demands, damages, costs, expenses or

13  liability costs arising out of the development, construction,

14  operation or maintenance of the property described herein, except for

15  liability arising out of the concurrent or sole negligence of State,

16  its officers, agents or employees.

17      In the event State is named as co-defendant, Concessionaire shall

18  notify State of such fact and shall represent State in such legal

19  action unless State undertakes to represent itself as co-defendant in

20  such legal action in which event State shall bear its own litigation

21  costs, expenses and attorney's fees.

22      In the event judgment is entered against State and Concessionaire

23  because of the concurrent negligence of State and Concessionaire,

24  their officers, agents or employees, an apportionment of liability to

25  pay such judgment shall be made by a court of competent jurisdiction.

26  Neither party shall request a jury apportionment.

27  —

Exhibit A 30

1   18.  LIABILITY INSURANCE:  Concessionaire shall provide before

2  entering the premises and shall maintain in force during the term

3  of this contract, public liability insurance in the sum of One Hundred

4  Thousand Dollars ($100,000) for injury to or death of any one person;

5  and Three Hundred Thousand Dollars ($300,000) for injury to or death

6  of more than one person; and property damage and products liability

7  insurance in the sum of Fifty Thousand Dollars ($50,000).  This policy

8  or policies of liability insurance shall contain the following special

9  endorsement:

10          "The State of California, California State Park and

11          Recreation Commission, Department of Parks and Recreation,

12          their officers, employees and agents, are hereby declared

13          to be additional insureds under the terms of this policy,

14          both as to the activities of the Concessionaire and as

15          to the activities of the State, the State Park and

16          Recreation Commission, the Department of Parks and

17          Recreation, their officers, employees and agents as

18          related to the concession activity described herein.

19

20          "This insurance policy will not be cancelled without

21          thirty (30) days' prior written notice to said

22          Department of Parks and Recreation.  The State of

23          California is not liable for the payment of premiums

24          or assessments on this policy."

25

26          No cancellation provision in any insurance policy shall be

27  construed in derogation of the continuous duty of the Concessionaire

-14-

COURT PAPER
STATE OF CALIFORNIA
STD. 113 (NEW 8-70)
48043-750 8-70 200M IT OSP

1  to furnish insurance during the term of this contract.  Said policy

2  or policies shall be underwritten to the satisfaction of the State.

3  A signed complete certificate of insurance, with all endorsements

4  required by this paragraph, shall be submitted to State concurrently

5  with the execution of this contract.  At least thirty (30) days prior

6  to the expiration of any such policy, a signed complete certificate

7  of insurance, with all endorsements required by this paragraph, show-

8  ing that such insurance coverage has been renewed or extended shall

9  be filed with State.

10

11    19.  FIRE INSURANCE:  Concessionaire, at its own expense, shall

12  and hereby agrees to carry fire insurance with extended coverage

13  endorsements thereon, on all concession improvements, whether State-

14  owned, placed or constructed upon the subject premises by Concession-

15  aire, in an amount equal to ninety percent (90%) of the full replace-

16  ment cost and/or value thereof; said policy to contain a replacement

17  cost endorsement naming the Concessionaire as the insured, provided

18  however, that if there is a lender on the security of the improvements

19  so insured, the proceeds of any such policy or policies may be made

20  payable to such lender.  In either case, whether proceeds are paid to

21  Concessionaire or to lender, the policy shall contain a special

22  endorsement that such proceeds shall be used to repair or rebuild

23  any such improvements so damaged or destroyed; and if not so used,

24  such proceeds shall be paid to the State.  The proceeds of any such

25  insurance payable to the State are to be deposited in the State Park

26  Contingent Fund and shall be used for rebuilding or repair as necessary

27  to restore the premises and at the discretion of State.

    A complete signed certificate of insurance with all endorsements

COURT PAPER
STATE OF CALIFORNIA
STD. 113 (NEW 8-70)
85843-780 9-70 30MM IT OSP

-15-

1    required by this paragraph shall be filed with the State prior to the

2    commencement of occupation of the described premises under this

3    contract; and such policy or policies shall provide that such insurance

4    coverage will not be cancelled or reduced without at least thirty (30)

5    days' prior written notice to the State and that the State is not

6    responsible for the payment of any premiums thereon.  At least thirty

7    (30) days prior to the expiration of any such policy, a signed complete

8    certificate of insurance with all endorsements required by this para-

9    graph, showing that such insurance coverage has been renewed shall be

10   filed with the State.

11       In the event of destruction, loss or damage by fire or other cause

12   of any of the State-owned buildings, improvements or fixtures used in

13   connection with said concession, which in the opinion of State

14   (notification of which opinion shall be given Concessionaire in writing

15   within ten (10) days after such occurrence), cannot be repaired within

16   One Hundred Eighty (180) days, either party may terminate this contract

17   by notice in writing to the other party given within fifteen (15)

18   days after such notification.  In the event of such destruction, loss

19   or damage, and the contract is not terminated under this paragraph, any

20   buildings, improvements, or fixtures constructed by State in replace-

21   ment of such damaged or destroyed property, shall be subject to the

22   terms and provisions of this contract.

23       20.  CONSTRUCTION OR MODIFICATION OF IMPROVEMENTS:  In the event

24   that modifications or additions to concession improvements are desired,

25   the approval in writing of the State shall first be had and obtained

26   prior to such modification or addition.  The plan approval procedure

27   prescribed in Exhibit "III" attached hereto and hereby made a part of

Exhibit A 33

1  this contract shall be used for such modification.

2

3      21.  TAXES:  Concessionaire agrees to pay all lawful taxes,

4  assessments or charges which at any time may be levied by the State,

5  County, City or any tax or assessment levying body upon any interest

6  in this contract or any possessory right which Concessionaire may

7  have in or to the premises covered hereby or the improvements thereon

8  by reason of its use or occupancy thereof or otherwise, as well as

9  all taxes, assessments, and charges on goods, merchandise, fixtures,

10  appliances, equipment and property owned by it in or about said

11  premises.

12

13      22.  INSPECTION OF PREMISES:  The State hereby reserves the

14  right to enter upon the premises at any reasonable time to inspect

15  the same.

16

17      23.  INSPECTION AND MAINTENANCE:  State reserves the right of

18  ingress and egress to inspect, investigate and survey said premises

19  as deemed necessary by State, and the right to do any and all work

20  of any nature necessary for preservation, maintenance and operation

21  of the Casa de Pico Buildings and all areas of Old Town San Diego

22  State Historic Park, and in any areas within the confines of said

23  unit.  Concessionaire shall be given reasonable notice when such

24  work may become necessary and will adjust concession operations

25  in such a manner that State may proceed expeditiously.

26  ——

27  ——

Exhibit A 34

1    24.  CONTRACT NOTICE:  Any notices herein provided to be given,

2  or which may be given by either party to the other, shall be deemed

3  to have been fully given when made in writing and deposited in the

4  United States mail, postage prepaid and addressed as follows:

5

6    To the Concessionaire at:  3603 Fifth Avenue, San Diego,

7  California 92103.

8

9    To the State at:  Post Office Box 2390, Sacramento, California

10  95811.

11

12    The address to which notices shall or may be mailed as aforesaid

13  by either party shall or may be changed by written notice given by

14  such party to the other as hereinbefore provided, but nothing herein

15  contained shall preclude the giving of any such notice by personal

16  service.

17

18    25.  INTERPRETATION OF CONTRACT:  This contract is made under

19  and is subject to the laws of the State of California in all respects

20  as to interpretation, construction, operation, effect and performance.

21

22    26.  WAIVER OF CONTRACT TERMS:  No waiver by either party at any

23  time of any of the terms, conditions or covenants of this contract

24  shall be deemed as a waiver at any time thereafter of the same or of

25  any other term, condition or covenant herein contained, nor of the

26  strict and prompt performance thereof.. No delay, failure or omission

27  of the State to re-enter the premises or to exercise any right,

COURT PAPER
STATE OF CALIFORNIA
STD. 113 (NEW 8-70)
44842-780 8-70 2000 IT OSP

-18-

1  power or privilege or option arising from any default, nor any sub-

2  sequent acceptance of rent then or thereafter accrued shall impair any

3  such right, power, privilege or option or be construed as a waiver of

4  such default or a relinquishment of any right or acquiescence therein.

5  No notice to the Concessionaire shall be required to restore or revive

6  time as of the essence after the waiver by the State of any default.

7  No option, right, power, remedy or privilege of the State shall be

8  construed as being exhausted by the exercise thereof in one or more

9  instances.  The rights, powers, options and remedies given to the State

10  by this contract shall be deemed cumulative.

11

12      27.  MODIFICATION OF CONTRACT:  Notwithstanding any of the pro-

13  visions of this contract, the parties may hereafter, by mutual consent,

14  agree to modifications thereof or additions thereto in writing which

15  are not forbidden by law.  The State shall have the right to grant

16  reasonable extensions of time to Concessionaire for any purpose or for

17  the performance of any obligation of Concessionaire hereunder.

18

19      28.  BREACH OF CONTRACT:  This contract is made upon the con-

20  dition that, if the rents or other sums which Concessionaire herein

21  agrees to pay or any part thereof shall be unpaid on the date on which

22  the same shall become due, or if default be made in any of the terms,

23  agreements, conditions or covenants herein contained on the part of

24  the Concessionaire, or should Concessionaire become insolvent or bank-

25  rupt, either voluntarily or involuntarily, then and in such event at

26  the option of the State, this contract shall cease and terminate,

27  and the State may enter upon the premises.

Exhibit A 36

1    Should Concessionaire close the facilities and services to the

2    public for a period of 30 consecutive days or 60 days during any one

3    year without written consent of State, this contract shall cease and

4    terminate, and State may enter upon the premises.

5        Notwithstanding any of the above breach of contract provisions,

6    should Concessionaire create or allow to be created a nuisance on the

7    premises described herein, State at its discretion may immediately

8    declare this contract and all rights therein terminated.

9

10    29.  ASSIGNMENTS AND SUBLEASES:  Concessionaire shall neither

11    assign, sublease or otherwise convey any interest of any sort granted

12    by this contract, to any person or persons, entity or entities what-

13    soever without prior written consent and approval of the conveying

14    document by State.  Before State considers an assignment, evidence

15    must be given to State that the proposed assignee qualifies as a

16    "best responsible bidder" under the terms of Sections 5019.11 and

17    5019.15 of the Public Resources Code and has and will have available

18    a responsible managing employee.  The Concessionaire's interest here-

19    under shall not be assignable in bankruptcy, insolvency or assigned

20    for the benefit of creditors, nor shall said interest be assignable

21    by operation of law.  Any document by which an interest is granted,

22    subject to the approval of State, shall indicate that the person

23    acquiring that interest has been advised of the terms of this contract

24    and takes his interest subject to the terms and conditions in this

25    contract and recognizes that upon termination of the interest of the

26    Concessionaire granted by this contract, his interest shall also be

27    terminated.  However, in the event of termination of this contract,

Exhibit A 37

1  State at its sole option, may elect to treat any assignee, subtenant

2  or holder of an interest conveyed by Concessionaire as State's tenant,

3  subject to the terms and conditions of this contract and that entered

4  into between the assignee, subtenant or holder of an interest conveyed

5  by Concessionaire.  Concessionaire shall draft a standard contract

6  which it intends to use with its subconcessionaires occupying these

7  premises for approval by State.  This document must contain a refer-

8  ence to this contract and must also contain irrevocable termination

9  provisions, either before or at the termination date of this contract.

10

11      30.  WAIVER OF CLAIMS:  The Concessionaire hereby waives any

12  claim against the State of California, its officers, agents or

13  employees for damage or loss caused by any suit or proceeding directly

14  or indirectly attacking the validity of this contract, or any part

15  thereof or by any judgment or award in any suit or proceeding declaring

16  this contract null, void or voidable or delaying the same or any part

17  thereof from being carried out.

18

19      31.  AGENT FOR SERVICE OF PROCESS:  It is expressly agreed and

20  understood that if the Concessionaire is not a resident of this State

21  or is an association or partnership without a member or partner

22  resident of this State, or is a foreign corporation, then in any such

23  event, the Concessionaire shall file with the State a designation of

24  a natural person residing in the State of California, giving his name,

25  residence and business address, as his or its agent for the purpose

26  of service of process in any court action between him or it and the

27  State arising out of or based upon this contract, and the delivery to

Exhibit A 38

1  such agent of a copy of any process in any such action shall con-

2  stitute valid service upon such Concessionaire; and it is further

3  expressly agreed, covenanted and stipulated that if for any reason

4  service of such process upon such agent is not possible, then in such

5  event Concessionaire may be personally served with such process out

6  of this State and that such service shall constitute valid service

7  upon such Concessionaire; and it is further expressly agreed that

8  Concessionaire is amenable to the process so served, submits to the

9  jurisdicion of the court so acquired, and waives any and all objection

10 and protest thereto.

11

12     32.  RIGHT OF ENTRY AS AGENT:  In any case in which provision is

13 made herein for the termination of this contract by the State or in the

14 case of abandonment or vacating of the premises by Concessionaire,

15 the State, in lieu of declaring a forfeiture may enter upon the

16 premises.  To such end, Concessionaire hereby irrevocably appoints the

17 State its agent to remove any and all persons or property on said

18 premises and place any such property in storage for the account of

19 and at the expense of Concessionaire.  In such case, the State may

20 relet the premises upon such terms as it may deem proper, and if a

21 sufficient sum shall not be realized thereby, after paying expenses

22 of such reletting, to satisfy the rent and other sums herein agreed to

23 be paid by Concessionaire, Concessionaire agrees to save the State

24 harmless from any loss or damage or claim arising out of the action of

25 the State in pursuance of this paragraph.

26 ——

27 ——

Exhibit A 39

33. <u>TERMS BINDING ON SUCCESSORS</u>:  All the terms, covenants and conditions of this contract shall inure to the benefit of and be binding upon the successor and assigns of the parties hereto.  The provisions of this paragraph shall not be deemed as a waiver of any of the conditions against assignment hereinbefore set forth.

34. <u>DURATION OF PUBLIC FACILITIES</u>:  By entering into this contract, State makes no stipulation as to the type, size, location or duration of public facilities to be maintained at this unit.  Concessionaire understands and agrees that as a part of State's proposed project in Old Town San Diego, the City has been requested to close all streets within the project boundary, including San Diego Avenue, to all vehicular traffic and the closing thereof shall not constitute a violation of the terms of this contract.  State shall provide delivery access to the premises and as directed by State.

35. <u>TIME OF ESSENCE</u>:  Time shall be of the essence in the performance of this contract.

36. <u>CONFLICT OF INTEREST</u>:  Concessionaire warrants and covenants that no official or employee of State nor any business entity in which an official or employee of State is interested:  (1) Has been employed or retained to solicit or aid in the procuring of this contract;  (2) Will be employed in the performance of this contract without the immediate divulgence of such fact to State.  In the event State determines that the employment of any such official, employee or business entity is not compatible with such official's or employee's

COURT PAPER
STATE OF CALIFORNIA
STD. 113 (REV 8-70)
4843-790 0-70 80M IT OSP

Exhibit A 40

1  duties as an official or employee of the State of California, Con-

2  cessionaire, upon request of State, shall terminate such employment

3  immediately.  For breaches or violation of this paragraph, State shall

4  have the right both to annul this contract without liability, and in

5  its discretion, recover the full amount of any such compensation paid

6  to such official, employee or business entity.

7

8      37.  PHOTOGRAPHY:  State may grant permits to persons or cor-

9  porations engaged in the production of still and motion pictures and

10  related activities, for the use of said premises for such purposes

11  when such permission shall not interfere with the primary business of

12  Concessionaire.

13

14      38.  NONDISCRIMINATION:  The Concessionaire and his employees

15  shall not discriminate because of race, religion, color or national

16  origin, against any person by refusing to furnish such person any

17  accommodation, facility, service or privilege offered to or enjoyed

18  by the general public.  Nor shall the Concessionaire or his employees

19  publicize the accommodations, facilities, services or privileges in

20  any manner that would directly or inferentially reflect upon or

21  question the acceptability of the patronage of any person because of

22  race, religion, color or national origin, all subject to reasonable

23  orders of the Director of General Services.

24      In the performance of this contract, the Concessionaire will

25  not discriminate against any employee or applicant for employment,

26  because of race, color, religion, ancestry or national origin.  The

27  Concessionaire will take affirmative action to ensure that applicants

COURT PAPER
STATE OF CALIFORNIA
STD. 113 (NEW 8-70)
46843-780 8-70 200M IT OSP

-24-

Exhibit A 41

1  are employed, and that employees are treated during employment,

2  without regard to their race, color, religion, ancestry or national

3  origin.  Such action shall include, but not be limited to, the

4  following:  employment, upgrading, demotion or transfer; recruitment

5  or recruitment advertising; layoff or termination; rates of pay or

6  other forms of compensation; and selection for training, including

7  apprenticeship.  The Concessionaire shall post in conspicuous places,

8  available to employees and applicants for employment, notices to be

9  provided by the State setting forth the provisions of this Fair

10  Employment Practices Section.  Form 809, Equal Employment Opportunity

11  Poster, may be used.

12        The Concessionaire will permit access to his records of

13  employment, employment advertisement, application forms, and other

14  pertinent data and records by the State Fair Employment Practices

15  Commission, or any other agency of the State of California designated

16  by the awarding authority, for the purpose of investigation to

17  ascertain compliance with the Fair Employment Practices Section of

18  this contract.

19        The State may determine a willful violation of the Fair

20  Employment Practices provision to have occurred upon receipt of a

21  final judgment having that effect from a court in an action to which

22  Concessionaire was a party, or upon receipt of a written notice from

23  the Fair Employment Practices Commission that it has investigated

24  and determined that the Concessionaire has violated the Fair

25  Employment Practices Act and has issued an order, under Labor Code

26  Section 1426, which has become final, or obtained an injunction under

27  Labor Code Section 1429.  In the event of violation of this paragraph,

Exhibit A 42

1  the State will have the right to terminate this contract, and any loss

2  of revenue sustained by the State by reason thereof shall be borne and

3  paid for by the Concessionaire.

4

5      39.  PARAGRAPH TITLES:  The paragraph titles in this contract are

6  inserted only as a matter of convenience and for reference, and in no

7  way define, limit or describe the scope or intent of this contract or

8  in any way affect this contract.

9

10     40.  CONTRACT IN COUNTERPARTS:  This contract is executed in

11 counterparts, each of which shall be deemed an original.

12

13     41.  ALCOHOLIC BEVERAGES:  Notwithstanding anything to the con-

14 trary, the sale of liquor, beer, or other alcoholic beverages on the

15 subject premises is expressly forbidden.

16

17     42.  HEALTH CERTIFICATE:  Concessionaire shall file with State a

18 certificate showing that within the last two years, every person

19 employed in the concession activity has been examined and has been

20 found to be free of communicable tuberculosis, all in accordance with

21 Section 506.1 et seq. of the Public Resources Code.

22

23     43.  EMINENT DOMAIN:  If, during the term of this contract, any

24 property described herein or hereafter added hereto is taken in eminent

25 domain, the entire award shall be paid to State and this contract shall

26 terminate at that time.

27 —

Exhibit A 43

1   44.  REPORT OF GROSS RECEIPTS:  Concessionaire will submit to

2   State no later than February 15th of each year a statement of gross

3   receipts prepared by a Certified Public Accountant or licensed Public

4   Accountant.  Said statement shall contain an appropriate certification

5   that all gross receipts during the yearly accounting period shall have

6   been duly and properly reported to the State.  Any amount shown by said

7   statement to be owed to State shall be paid with the filing of the

8   statement.  It is agreed that State is entitled to review Concession-

9   aire's books and records at any time that it deems it necessary for the

10  purpose of auditing payments due State under this contract.

11

12  45.  PERFORMANCE OF CONTRACT AND STATE BUY-OUT PROVISION:  Per-

13  formance under this contract is of prime material consideration to

14  State.  State may elect at any time in its sole discretion, in addition

15  to any other remedy which it may have in law or equity, to terminate

16  this contract and all rights of Concessionaire thereunder, upon giving

17  three (3) months' written notice to Concessionaire provided that State

18  or its authorized agent, concurrently therewith, shall have offered to

19  pay to Concessionaire the then value of the facilities erected or

20  placed on the premises by the Concessionaire.  For the purposes of this

21  paragraph, such facilities shall be deemed to be that structure(s) or

22  facilities which Concessionaire is expressly required to construct

23  hereunder exclusive of trade fixtures, equipment and any personal

24  property.  The value of such facilities for the purposes of this para-

25  graph shall be computed in the following manner:

26  Upon the filing of notice of completion as required in para-

27  graph No. 8, entitled "Completion of Improvements", of this contract,

Exhibit A 44

1 Concessionaire will submit verified cost statements accompanied by

2 substantiating invoices and bills of labor, material or any other

3 construction costs, to State.  After such statements, invoices and bills

4 have been examined by State, State will establish the value of

5 improvements, etc..  Such improvements at a particular point in time

6 shall have a value equal to that percentage of such appraised value,

7 which is computed by dividing the total years then remaining of the

8 original 5 year term by the total number of years from the date of

9 completion thereof to the end of said term.  At the end of the initial

10 term hereof, the value of said facilities is deemed to be zero (0).

11      The beginning value of facilities shall be determined as

12 stated above.  The then value of facilities shall be based on a three

13 percent (3%), five (5) year capital recovery schedule.  The annual

14 payment on a Fifteen Thousand Dollar ($15,000) beginning value on this

15 basis is Three Thousand Two Hundred Seventy-Five Dollars ($3,275) and

16 the ratio of the beginning value to this payment multiplied by the

17 remaining years or fraction thereof shall be the then value of

18 improvements made by Concessionaire.

19 ——

20 ——

21 ——

22 ——

23 ——

24 ——

25 ——

26 ——

27 ——

COURT PAPER
STATE OF CALIFORNIA
STD. 113 (NEW 8-70)
40043-700 6-70 2000 IT OSP

-28-

Exhibit A 45

1    IN WITNESS WHEREOF, the parties hereto have caused these

2    presents to be executed the day and year first above written.

3

4                                    Concessionaire:
                                     Bazaar Del Mundo, Inc.
5

6                                    _Diana Powers_
                                     Diana Powers
7

8                                    6-23-71
                                            (date)
9

10                                   _Richard T. Silberman_
                                     Richard T. Silberman
11

12                                   6-23-71
                                            (date)
13

14                                   WILLIAM PENN MOTT, JR.
                                     DIRECTOR OF PARKS AND RECREATION
15

16   APPROVED AS TO FORM            By _____

17   A. C. Buchter

18   DEPARTMENTAL COUNSEL                         (date)

19   APPROVED AS TO FORM AND FOUND   APPROVED:
     TO BE IN ACCORDANCE WITH THE    DEPARTMENT OF GENERAL SERVICES
20   REQUIREMENTS OF SECTIONS
     5019.10 - 5019.26, PUBLIC
21   RESOURCES CODE.
                                     By _____
22   EVELLE J. YOUNGER
     Attorney General
23
                                     _____
24   By                                       (title)
     Deputy Attorney General
25                                   _____
     DATED:                                   (date)
26   AUG 23 1971

27                                   APPROVED BY _____
                                     For Department of Finance

                                     -29-

Department of General Services
APPROVED
SEP 16 1971
BY
Deputy Director

Exhibit A 46

# 2 27/

1
AMENDMENT NO. 1
2
TO CONTRACT
OLD TOWN SAN DIEGO STATE HISTORIC PARK
3
LOCATED IN
SAN DIEGO COUNTY, CALIFORNIA
BAZAAR DEL MUNDO, INC.
4

DOCUMENT FILE

5    THIS AGREEMENT TO AMEND, made and entered into this 10th day

6 of December 1971, by and between the STATE OF CALIFORNIA, acting through

7 its Department of Parks and Recreation, hereinafter referred to as

8 "State", and Bazaar Del Mundo, Inc., a California corporation, of San

9 Diego, California, hereinafter referred to as "concessionaire".

10

11                 W I T N E S S E T H:

12

13    WHEREAS, a concession contract was entered into on the 21st

14 day of June, 1971, by and between the State and Concessionaire for the

15 installation of a Mexican-style shopping arcade at Old Town San Diego

16 State Historic Park; and

17

18    WHEREAS, Concessionaire has accomplished the work required in

19 paragraph 7 of said concession contract dated the 21st day of June 1971,

20 and to the satisfaction of State; and

21

22    WHEREAS, Concessionaire has expended approximately twenty-five

23 thousand dollars ($25,000) on improving the structures and premises de-

24 scribed in said contract, and as shown on Exhibit I-A attached hereto;

25 and

26

27    WHEREAS, State and Concessionaire desire to further upgrade

COURT PAPER
STATE OF CALIFORNIA
STD. 113 (NEW 8-70)
OSP

-1-

the concession facility as shown on Exhibit II-A attached hereto and
as more particularly described in Schedule One, attached hereto, which
will require an additional expenditure of approximately $45,000; and

WHEREAS, Concessionaire is, by the terms hereof, to construct
substantial and additional concession facilities as hereinafter pro-
vided and at his sole cost and expense; and

WHEREAS, the parties hereto desire to amend said concession
contract dated the 21st day of June, 1971, to provide for the afore-
mentioned changes.

NOW, THEREFORE, IT IS MUTUALLY AGREED BY AND BETWEEN THE
PARTIES HERETO AS FOLLOWS:

1.   Page 2, paragraph 3, line 11, change "five (5)" to "ten (10)"
and change "June 30, 1976", to "June 30, 1981".

2.   Page 3, paragraph 5, delete lines 10 through 25 and insert
the following:

"5.   RENTAL:   Concessionaire shall pay, without demand:

a.   For the first year of operation:

A minimum annual rental, the sum of three thousand
dollars ($3,000), payable monthly at the rate of two
hundred fifty dollars ($250.00) or the following
percentages of annual gross receipts, whichever
sum is greater:

1    2% of annual gross receipts, except beer

2    and wine; plus

3    5% of annual gross receipts from beer

4    and wine.

5    b.   For the remaining period of the contract and after

6    the expiration of the first year of operation noted

7    above, as a minimum annual rental, the sum of three

8    thousand six hundred dollars ($3,600) payable at the

9    rate of three hundred dollars ($300.00) per month,

10   or the following percentages, whichever sum is greater:

11   (1)  On gross receipts from stores owned and operated

12   by Concessionaire;

13   2% of the first $200,000 of annual gross receipts,

14   except beer and wine; plus 4% of all over $200,000

15   of annual gross receipts, except beer and wine;

16   plus 5% of annual gross receipts from beer and

17   wine.

18

19   (2)  On gross receipts from subleased stores;

20   2% of the first $200,000 of annual gross receipts,

21   except beer and wine; plus 4% of all over $200,000

22   of annual gross receipts, except beer and wine,

23   plus 5% of annual gross receipts from beer and

24   wine."

25

26   3.   Page 5, add the following after line 10.

27   "It is further understood and agreed that the area

28   designated for the Design Center offices, Item No. 16

COURT PAPER
STATE OF CALIFORNIA
STD. 113 (NEW 8-70)
OSP

-3-

Exhibit A 49

on Exhibit II, will not be used for retail sales.  Gross

receipts as defined herein is not intended to include

contracts entered into between Design Center, Inc.

and their clients for work outside Old Town San Diego

State Historic Park."

4.   Page 6, delete paragraph 7, and insert the following:

"7.   TYPE AND APPROVAL OF IMPROVEMENTS:   Concessionaire has

accomplished the work described in Exhibits I and II of the concession

contract dated the 21st day of June, 1971, at his sole cost and expense.

Concessionaire shall further upgrade and expand the concession

facilities to provide the facilities shown in Exhibit II-A, attached

hereto and by this reference incorporated herein, and more particularly

described in Schedule One attached hereto and by this reference

incorporated herein, at his sole cost and expense.

"Concessionaire shall utilize the services of an architect

and contractor, both licensed by the State of California, for the

modification of said facilities.  Copies of the contract between

Concessionaire and his architect and contractor, and stage inspection

reports, shall be furnished State when occurring.  The architect's

services shall include the preparation of working drawings, detailed

specifications, estimates of cost of construction, supervision, stage

inspection, and upon completion of construction, the construction

shall be certified by the architect to be in substantial accordance

with the original plans and specifications.  Within six (6) weeks

after the execution of this contract, working drawings, detailed

-4-

Exhibit A 50

1  specifications and estimates of construction cost shall be submitted

2  to State for approval in accordance with the Plan Approval Procedure

3  attached hereto, marked Exhibit "III" and hereby made a part of this

4  contract.  If the State disapproves any drawings, plans or specifi-

5  cations, Concessionaire shall submit necessary modifications and

6  revisions. The State shall not unreasonably withhold such approval,

7  and will give approval or specify specific changes within thirty (30)

8  days of receipt of such working drawings, plans and specifications.

9  Once approved, no changes or alterations shall be made in working

10  drawings, plans or specifications without prior written approval of

11  State."

12

13      5.    Page 8, delete paragraph 8 and insert the following:

14

15      "8.   COMPLETION OF IMPROVEMENTS:  Upon approval of and in

16  accordance with the working drawings, plans and specifications as pro-

17  vided in paragraph No. 7, entitled 'Type and Approval of Improvements',

18  of this contract, Concessionaire shall immediately commence construc-

19  tion of the facilities described herein and prosecute the same to com-

20  pletion with all due diligence and within three (3) months after said

21  plans and specifications have been approved by State.  Upon said com-

22  pletion, Concessionaire shall file a Notice of Completion of Construc-

23  tion with State, provided that such time for completion will be extended

24  by a fair and reasonable period on account of any delay due to fire,

25  earthquake, wars, strikes, or other calamity beyond the control of

26  Concessionaire."

27  - -

COURT PAPER
STATE OF CALIFORNIA
STD. 113 (NEW 8-70)
OSP

- 5 -

Exhibit A 51

6.    Page 26, delete paragraph 41 and insert:

    "<u>ALCOHOLIC BEVERAGES</u>:  The sale of beer and wine shall be subject to any regulations established for the State Park System by the Director of Parks and Recreation and to all rules and regulations established by the Department of Alcoholic Beverage Control.

    "Advertising of the sale of alcoholic beverages by any means, except by notice in menus, shall not be permitted on the exterior of the concession facilities."

    All other terms and conditions of said concession contract dated the 21st day of June 1971, shall remain the same and in full force and effect.

    The effective date of this amendment shall be January 1, 1972.

    This amendment is executed in counterparts, each of which shall be deemed an original.

- - -
- - -
- - -
- - -
- - -
- - -
- - -

COURT PAPER
STATE OF CALIFORNIA
STD. 113 (NEW 8-70)

1      IN WITNESS WHEREOF, the parties have executed this instrument

2 upon the date first hereinabove appearing.

3

4                     CONCESSIONAIRE:

5                     BAZAAR DEL MUNDO, INC.

6

7                     BY

8                            2-1-72

9                             (date)

10                  WILLIAM PENN MOTT, JR., DIRECTOR

11                DEPARTMENT OF PARKS AND RECREATION

12                     BY

13                     Feb 28 1972

14                         (date)

15

16

17                     APPROVED:

18

19                     LAWRENCE R. ROBINSON, JR.

20                     DIRECTOR OF GENERAL SERVICES

21

22                     BY

23

24

25                         (date)

26

27

*(stamped overlay text, left side:)* AS TO FORM AND FOUND IN ACCORDANCE WITH THE REQUIREMENTS OF SECTIONS 5019.10 - 5019.20, PUBLIC RESOURCES CODE.

EVELLE J. YOUNGER, Attorney General

By _____ Deputy Attorney General

DATED: MAR - 7 1972

*(stamp, right side:)*

APPROVED

MAR 20 1972

BY _____ Deputy Director

COURT PAPER
STATE OF CALIFORNIA
STD. 113 (NEW 8-70)

BAZAAR DEL MUNDO

OLD TOWN SAN DIEGO STATE HISTORIC PARK

SCHEDULE ONE

(By category: see Exhibit II-A
entitled "Bazaar del Mundo")

Numbers keyed to floor plan numbers

1. DESIGN CENTER: Tile floor throughout. Removal of one bathroom.
   Installation of lighting track and new electrical circuits.

2. THE GALLERY: Carpeting throughout. Removal of two storage rooms.
   Installation of lighting track and new electrical outlets.

3. THE CANDLE SHOP: Installation of tile floor. Removal of closet
   walls. Installation of lighting track and new electrical circuits.

4. PAJA (Basket shop): Installation of tile floor. Removal of closet
   wall. Installation of electrical circuits.

5. DESIGN CENTER FURNITURE SHOWROOM: Installation of tile floor.
   Removal of large wall areas. Plastering and patching of walls.
   Installation of new electrical circuits.

6. ANTELLINE'S FRUIT BAZAAR: Removal of closet wall. Complete removal
   of bathroom wall. Complete tiling of garage floor. Installation of
   new electrical circuits.

7. LIBROS (Book store): Installation of tile floor throughout. Removal
   of garage wall. Installation of new electrical circuits.

8. CASA DEL PICO RESTAURANT: Installation of tile floor throughout.
   & Installation of anteroom for two restrooms in accordance with the Health
9. Code requirements. Removal of adjacent walls between two rooms. Re-
   moval of two bathrooms. New plumbing drain and gas systems in kitchen
   area. Major modification of all surfaces and floors to conform to
   health standards. New electrical system in kitchen. New ventilating
   system in kitchen. Installation of complete kitchen equipment including
   freezers, cold box and dishwashing system.

10. THE GIFTED HAND: Installation of tile floor throughout. Installation
    of new electrical circuits. Removal of adjacent wall between two rooms.
    Removal of one bathroom.

11. ARTES DE MEXICO: Installation of tile floor throughout. Installation
    of new electrical circuits.

12. GUSTERMAN SILVERSMITHS: Installation of tile floor throughout. Installa-
    tion of new electrical circuits.

SCHEDULE ONE

13. FARMERS MARKET: Installation of complete new plumbing to meet Health codes, including new drain system. Installation of new electrical circuits. Construction of cold storage box. Construction of necessary sanitation and sink facilities. Provide restroom facilities for female employees. Fill in door to silvershop and provide new vinyl floor. Building area was extended by 3,085 sq. ft. with complete new building structure.

14. GEPPETTO'S: Removal of three interconnecting walls. Installation of new electrical circuits. Removal of one bathroom.

15. LA PANADERIA: Installation of tile flooring. Installation of new electrical circuits.

16. DEVELOPMENT OF DESIGN OFFICES: Wall removal. Removal of one restroom. Installation of new electrical circuits. Installation of new carpeting.

17. COVERED AREA FOR CRAFTSMEN EXHIBITS, LECTURES AND CLASSES:

18. LINDAS ROPAS: Refinish floors. Removal of wall. Installation of new electrical circuits.

19. MARIMEKKO: Refinish hardwood floors. Installation of new electrical circuits. Removal of walls.

20. MEAT AND FISH MARKET: Installation of new electrical circuits. Installation of new vinyl and tile floors. Installation of new plumbing and drainage systems to conform to health standards. Installation of walk in box.

21, CRAFTSMEN STUDIES: Installation of new electrical circuits and possible
25, tile floors.
26.

24. STRUCTURE FOR OUTSIDE FLOWER MARKET.

22. REMOTE WALK IN BOX and storeroom for restaurant with new vinyl floor and electrical circuits.

23. WHIRLING LOGS INDIAN ARTS: Installation of tile floor throughout. Installation of new electrical circuits.

27a. POTTERY SHOP: Installation of tile floor and electrical circuits. Installation of fresh water supply. Development of adjacent courtyard as outside display/work area with kiln.

27b. Development of classroom/workshop area with potters wheels and kilns available.

28. CONSTRUCTION OF AVIARY: For collection of rare and unusual tropical birds.

29. INSTALLATION OF ELECTRIC PUMP IN WISHING WELL: Renonvation and painting for water tight integrity.

SCHEDULE ONE

-2-

Exhibit A 55

30. GENERAL AND MISCELLANEOUS: Lawn completely removed and area reseeded. In-
    stallation of sprinkler system. Installation of all new exterior lighting.
    Installation of public address system. Installation of background music
    system. Installation of ADT electronic surveillance system in critical
    areas. New asphalt paving in certain areas to prevent flooding from run
    off rain water in Farmers Market area.

31. Development of adjacent parking lot including design concrete bumpers
    lighting demolition and asphalt patching.

F-2/12 &
2a/1

SCHEDULE ONE

-3-

Exhibit A 56

## PLAN APPROVAL PROCEDURE FOR SUBMITTING DRAWINGS

A. **Preliminary Drawings:**

1. Preliminary drawings shall be submitted when any changes are proposed involving the exterior appearance of the buildings or the site layout as shown on the prospectus exhibit drawings.

2. Preliminary drawings shall be in sufficient detail to show all proposed modifications to exhibit drawings. One set of original or duplicate tracings shall be submitted to the organizational unit of the Department of Parks and Recreation designated by the Concessions Division.

3. Drawings shall be identified by the word "PRELIMINARY" placed immediately above the title block. An approval panel sufficient for four (4) approved signatures shall be provided on each sheet of the drawings.

4. Approved original or duplicate preliminary drawings will be returned to the concessionaire's architect.

B. **Working Drawings and Specifications:**

1. Working drawings and specifications shall be prepared on the basis of the prospectus exhibit drawings or, approved preliminary drawings. Any significant changes from approved preliminary drawings will require submission and approval of revised preliminary drawings.

2. Working drawings shall consist of plans, elevations, sections and details to show in a comprehensive manner all features of the work contemplated. Specifications shall be a clear and complete description of materials, methods of installation, standards of craftsmanship, and finishes required in the completed project.

3. Prepare working drawings on 24" x 36" sheets. Identify the drawings with the words "WORKING DRAWINGS" placed immediately above the title block. Provide an approval panel with space for two approval signatures on each sheet of the drawings.

4. Submit one set of original or duplicate tracings for approval to the organizational unit of the Department of Parks and Recreation designated by the Concessions Division. Submit a minimum of five (5) copies of the General Conditions and Specifications for approval with the tracings. The Department of Parks and Recreation will retain four (4) copies of the General Conditions and Specifications. Submit sufficient additional copies to provide necessary distribution of approved copies to contractor, concessionaire, architect, etc.. Approved orginal or duplicate tracings, general conditions, and specifications will be returned to concessionaire's architect for distribution.

EXHIBIT **III**

Exhibit A 57

Exhibit A 58

1    AMENDMENT NO. 2

2    TO CONTRACT

3    OLD TOWN SAN DIEGO STATE HISTORIC PARK

4    LOCATED IN

5    SAN DIEGO COUNTY, CALIFORNIA

6    BAZAAR DEL MUNDO, INC.

DOCUMENT FILE

7

8    THIS AGREEMENT TO AMEND, made and entered into this 1st day of

9    December 1972, by and between the STATE OF CALIFORNIA, acting through its

10   Department of Parks and Recreation, hereinafter referred to as "State", and

11   Bazaar del Mundo, Inc., a California Corporation of San Diego, California,

12   hereinafter referred to as "Concessionaire".

13

14   W I T N E S S E T H:

15

16   WHEREAS, a concession contract was entered into on the 21st day of

17   June 1971, as amended on the 10th day of December 1971, by and between the State

18   and Concessionaire for the installation of a Mexican-style shopping arcade at

19   Old Town San Diego State Historic Park; and

20

21   WHEREAS, Concessionaire has accomplished the work required in

22   Paragraph 7 of said concession contract dated the 21st day of June 1971, as

23   amended on the 10th day of December 1971; and

24

25   WHEREAS, State and Concessionaire desire to further upgrade and expand

26   the concession facility as shown on Exhibits I-B (Bandini House - Cosmopolitan

27   Hotel) and II-B (El Nopal) attached hereto; and

1      WHEREAS, Concessionaire is, by the terms hereof, to construct substan-

2 tial and additional concession facilities as hereinafter provided and at his

3 sole cost and expense; and

4

5      WHEREAS, the parties hereto desire to further amend said concession

6 contract dated the 21st day of June 1971 to provide for the aforementioned

7 changes.

8

9      NOW, THEREFORE, IT IS MUTUALLY AGREED BY AND BETWEEN THE PARTIES

10 HERETO AS FOLLOWS:

11

12    1.   Page 2, Paragraph 2, add the following:

13

14    The State reserves the right and in its sole discretion to effect

15 structural repairs, complete or partial restoration, and to stabilize the

16 facilities herein referred to as the Bandini House and at State's sole cost and

17 expense, when State restoration funds become available, in order to restore

18 this structure to the era in which it was known as the Cosmopolitan Hotel.  To

19 this end, Concessionaire agrees that upon six (6) calendar months' written

20 notice by State, operations will cease and equipment, as necessary, will be

21 removed as requested by State during the period of such repairs, restoration or

22 stabilization; provided, however, that in the event that such work will permit,

23 the said equipment may be stored within the premises noted herein and at the

24 discretion of the State.  State shall extend the term of this contract for a

25 period equal to the closure period.

26

27    Nothing herein shall be construed to require State to perform any repair,

COURT PAPER
STATE OF CALIFORNIA
STD. 113 (REV. 8-72)
44692-790 7-72
4803B XD OSP

Exhibit A 60



1  restoration, and/or stabilization of said structure, but any such repair,

2  restoration and/or stabilization shall be performed at State's sole discretion.

3  Should the State at any time vacate that portion of the Bandini House to be used

4  as a visitor center, Concessionaire shall have the right to use such area for

5  the balance of this term.

6

7      2.   Page 1, Paragraph 3, line 11, as amended, delete the words "ten (10)"

8  and insert the words "twenty (20)", and change "June 30, 1981", to June 30, 1991".

9

10     3.   Page 3, Paragraph 5, delete lines 10 through 25 as amended and insert

11 the following:

12

13         5.   PAYMENTS AND AMORTIZATION:   Commencing with the effective date

14 of this amendment No. 2, Concessionaire shall:

15             a.   RENT:  Pay an annual rental to the State of $3,600.00

16 payable monthly at the rate of $300.00

17             b.   AMORTIZATION:  Concessionaire shall establish an

18 amortization account based on an amount equal to 1-1/2% of annual gross sales

19 less $3,600.00 per annum, which is paid to State, and apply any excess amount

20 toward the amortization of the improvements to the extent of the cost

21 established in Paragraph 8 entitled "Completion of Improvements", computed on

22 an 8% capital recovery basis.

23             In the event the facilities and improvements have not been

24 amortized under this paragraph at the end of this contract, then at that time

25 such facilities and improvements will become the property of the State and at no

26 expense to the State.

27             When the improvements are fully amortized, then the full

COURT PAPER
STATE OF CALIFORNIA
STD. 113 (REV. 8-72)

Exhibit A 61

1  percentage of gross receipts stated above will be paid as additional rent

2  directly to the State.

3        c.. ADVERTISING AND PROMOTION:  In addition to the above,

4  Concessionaire agrees to spend a minimum of 2% of annual gross sales for

5  promotion and advertising.  It is mutually acknowledged that such advertising

6  and promotion causes persons to visit the Old Town San Diego State Historic

7  Park, visit historical and interpretative facilities and the shops of other

8  concessionaires.  Further, the Concessionaire agrees to include in his

9  advertisements announcements of special events, historical dates and celebra-

10  tions, as requested by the State.  Concessionaire's public relations department

11  or counsel will assist in promoting the Old Town San Diego State Historic Park.

12        Concessionaire shall submit to State, no later than 45 days

13  after the close of his business year, verified cost statements and invoices

14  verifying the expenditures of said funds.  In the event Concessionaire does not

15  annually expend a minimum of two percent (2%) of his annual gross receipts, then

16  Concessionaire shall add to the amortization account the difference between the

17  actual expenditure and the amount generated by 2% of the annual gross receipts,

18  or such amount will be paid directly to State.

19

20      4.   Page 5, add the following after line 10:

21

22      "It is further understood and agreed that the area designated for the

23      Design Center offices, will not be used for retail sales.  Gross receipts

24      as defined herein are not intended to include contracts entered into

25      between Design Center, Inc., and their clients for work outside Old Town

26      San Diego State Historic Park."

27  —

Exhibit A 62

5.   Page 6, delete paragraph 7, as amended and insert the following:

"7.   TYPE AND APPROVAL OF IMPROVEMENTS:  Concessionaire has accomplished
the work described in Exhibits I and II of the concession contract dated the
21st day of June 1971 and has accomplished the work required in Exhibit II-A of
the amendment dated the 10th day of December 1971 and at his cost and expense.
Concessionaire shall further upgrade and expand the concession facilities
shown on Exhibits I-B (Bandini House) and II-B (El Nopal) attached hereto, by
this reference incorporated herein.

When the existing structure known as the La Casa Blanca is razed,
Concessionaire shall have the right of first refusal to construct the historic
building originally located on that site and under terms agreeable to State.

In addition to the above, Concessionaire agrees to reconstruct one of the
historic buildings on Calhoun Street, as agreed to by State and with a
minimum expenditure of $50,000.  The reconstruction of this building will be
done in accordance with Exhibit III-B (Concession Development of Historic
Structures), and as a part of Phase III described herein.  Prior to such
construction, Concessionaire shall accomplish the archaeological research
required in Exhibit III-B.

Concessionaire shall utilize the services of an architect and contractor,
both licensed by the State of California, for the modification of all facilities.
Copies of the contract between Concessionaire and his architect and contractor,
and stage inspection reports, shall be furnished State when occurring.  The
architect's services shall include the preparation of working drawings, detailed

Exhibit A 63

1  specifications, estimates of cost of construction, supervision, stage inspection

2  and upon completion of construction, the construction shall be certified by the

3  architect to be in substantial accordance with the original plans and specifica-

4  tions. Within six (6) weeks after the execution of this contract, working

5  drawings, detailed specifications and estimates of construction cost for phase

6  one on Exhibit I-B (offices and orientation center) shall be submitted to State

7  for approval in accordance with the Plan Approval Procedure attached hereto,

8  marked Exhibit "III" and hereby made a part of this contract.  If the State

9  disapproves any drawings, plans or specifications, Concessionaire shall submit

10  necessary modifications and revisions.  The State shall not unreasonably with-

11  hold such approval, and will give approval or specify specific changes within

12  thirty (30) days of receipt of such working drawings, plans and specifications.

13  Once approved, no changes or alterations shall be made in working drawings,

14  plans or specifications without prior written approval of State."

15

16      6.    Pages 7 and 8, delete paragraph 8 and insert the following:

17

18      "8.    COMPLETION OF IMPROVEMENTS:  Upon approval of and in accordance with

19  the working drawings, plans and specifications as provided in Paragraph No. 7,

20  entitled 'Type and Approval of Improvements', of this contract, Concessionaire

21  shall immediately commence construction of the facilities described as phase one

22  in Exhibit I-B and prosecute the same to completion with all due diligence and

23  within six (6) months after said plans and specifications have been approved

24  by State.  Upon said completion, of each phase, Concessionaire shall file a

25  Notice of Completion of Construction with State, provided that such time for

26  completion will be extended by a fair and reasonable period on account of any

27  delay due to fire, earthquake, wars, strikes or other calamity beyond the control

28  of Concessionaire.

COURT PAPER
STATE OF CALIFORNIA
STD. 113 (REV. 8-72)
84825-790 7-72
480N 1D OSP

-6-

1   Upon acceptance by State of the facilities described in Exhibit I-B, phase

2 one, Concessionaire shall move the present State offices from the El Nopal

3 structure to the facilities provided by Concessionaire in the Bandini House.

4

5   Upon acceptance by State of the facilities described in Exhibit I-B, as

6 phase one, Concessionaire will, within two (2) months, submit working drawings,

7 detailed specifications and estimates of construction costs for phase two,

8 delineated on Exhibit II-B, for approval and in accordance with the "Plan

9 Approval Procedures" described above.

10

11   Upon approval of and in accordance with the working drawings, plans and

12 specifications as provided in Paragraph No. 7 above, Concessionaire shall

13 immediately commence construction of phase two and prosecute the same to

14 completion with all due diligence and within seven (7) months, after approval

15 of plans by State.

16

17   Upon completion of phase two above, Concessionaire will, within six (6)

18 months, submit working drawings, detailed specifications and estimates of

19 construction costs for phase three, which is the reconstruction of one of the

20 historic buildings on Calhoun Street, as agreed between Concessionaire and

21 State for approval and in accordance with the "Plan Approval Procedure"

22 described above, and with a minimum expenditure of $50,000.

23

24   Upon approval of and in accordance with the working drawings, plans and

25 specifications as provided in Paragraph No. 7 above, Concessionaire shall

26 immediately commence construction of phase three and prosecute the same to

27 —

Exhibit A 65

1 completion with all due diligence and within twelve (12) months, after approval

2 of plans by State."

3

4      7.    Page 27, delete paragraph 45 and insert the following:

5

6      45.    STATE BUY-OUT PROVISION:   Notwithstanding any other provision in this

7 contract, in addition to any other termination or remedy and in addition to

8 termination for default, State reserves the right, from the beginning of year

9 10 and for the remaining period of this contract, to terminate upon giving

10 Concessionaire twelve (12) months' written notice and offering to pay Conces-

11 sionaire the then depreciated cost of the facilities placed, erected, or developed

12 by it at proposed area; provided, however, that State reserves the right from

13 the beginning of year five (5) hereof, without terminating this contract, to pay

14 the Concessionaire the then cost of the proposed trellis delineated on Exhibit

15 "II-B" located within Mason Street (closed) or Calhoun Street (closed) between

16 the Pico Motel and the present park office, and to remove said trellis at State's

17 expense. It is understood and agreed that the removal of said trellis and any

18 renovation to the area accomplished by State will proceed as expeditiously as

19 possible and when completed will not reduce the size of the outside eating

20 facility or interfere with public access to Concessionaire's facilities.

21      For the purposes of this paragraph 45, such facilities shall be deemed to

22 be that structure(s) or facility(ies) which Concessionaire is expressly required

23 to construct hereunder exclusive of trade fixtures, equipment and any personal

24 property. The cost of such facilities for the purposes of this paragraph 45

25 shall be computed in the following manner:

26      Upon filing of Notice of Completion as required in paragraph 8 entitled

27 "Completion of Improvements" on page 6 of this contract, or within 30 days of

Exhibit A 66

1  opening for business, whichever is earlier, Concessionaire will submit verified

2  cost statements accompanied by substantiating invoices and bills of labor,

3  material or any reasonable other construction costs, to State.  After such

4  statements, invoices and bills have been examined by State, State will in its

5  sole discretion establish the cost of facilities and improvements to which the

6  Notice of Completion relates.  In the event costs are not filed by Concessionaire

7  for each phase within the period above provided, State shall estimate said cost

8  and serve the same on Concessionaire in the manner provided herein.  State's

9  estimate shall become final ten (10) days after service thereof.

10  The amount to be paid as the then depreciated cost of the facilities in the

11  event of termination under this paragraph shall be based on an eight percent

12  (8%), twenty (20) year capital recovery schedule, which will provide Ten

13  Thousand One Hundred Eighty-five dollars ($10,185) for each One Hundred Thousand

14  Dollars ($100,000) of beginning cost, beginning at each notice of completion or

15  time of State's determination of cost, whichever is earlier, multiplied by the

16  remaining years.

17  However, any amortization which accrues under the formula in paragraph 5,

18  above, shall be deducted from the cost computed in this paragraph 45 to arrive

19  at the then current cost.

20

21  8.   Paragraph 19, Page 16, Line 18, after the word "notification", insert

22  the following:

23

24  "In the event of such termination, State shall be entitled to any fire

25  insurance proceeds, except as hereinafter provided.  Concessionaire shall be

26  entitled to that portion of said compensation which is the value of the loss of

27  concessionaire-constructed improvements for the remainder of the contract term.

1  The amount to which Concessionaire shall be entitled hereunder shall not exceed

2  the actual cost of improvements constructed by Concessionaire, reduced in

3  proportion to the relationship that the expired contract term bears to the

4  original contract term."

5

6       9.   Delete Paragraph 43, page 26 and insert:

7

8  "EMINENT DOMAIN:   In the event the whole subject premises is condemned by a

9  public entity in the lawful exercise of the power of eminent domain, this contract

10 shall forthwith terminate and Concessionaire shall be entitled to the then

11 depreciated cost of the facilities as computed in Paragraph 45 above.

12      In the event that only a part of the subject premises is condemned, and the

13 part taken does not substantially affect the operations of Concessionaire, this

14 contract shall forthwith terminate as to the part taken and Concessionaire shall

15 be entitled to the then value of his interest in the part taken, not to exceed

16 the depreciated cost thereof as established in Paragraph 45 above.   In the event

17 that only a part of the subject premises is condemned, and the part taken sub-

18 stantially affects the operation of Concessionaire, State may forthwith terminate

19 this contract and Concessionaire will be entitled to an amount which shall not

20

21

22

23

24

25

26

27

Exhibit A 68

1  exceed the actual cost of improvements constructed by Concessionaire, reduced

2  in proportion to the relationship that the expired contract term bears to the

3  original contract term, as established in Paragraph 45 above."

4

5      All other terms and conditions of said concession contract dated the 21st

6  day of June 1971, and as amended the 10th day of December 1971, shall remain

7  the same and in full force and effect.

8

9      The effective date of this amendment shall be February 1, 1973.

10

11      This amendment is executed in counterparts, each of which shall be deemed

12  an original.

13

14      IN WITNESS WHEREOF, the parties have executed this instrument upon

15  the date first hereinabove appearing.

16

17

DEC 26 1973

18

19  APPROVED:

20

21

22  LAWRENCE R. ROBINSON, JR.
    DIRECTOR OF GENERAL SERVICES

23

24

25

26

27

CONCESSIONAIRE:
BAZAAR del MUNDO, INC.

By _____
6 June 1973
                    (date)

WILLIAM PENN MOTT, JR.
DIRECTOR OF PARKS AND RECREATION

By _____
SEP 1 7 1973   CHIEF DEPUTY DIRECTOR
                    (date)

I hereby certify that all conditions for
exception set forth in State Administra-
tive Manual Section 1201.13 have been
complied with and this document is ex-
empt from review by the Department of
Finance.

N-6

COURT PAPER
STATE OF CALIFORNIA
STD. 113 (REV. 8-72)
44805-780 7-72
4808 10 09%

DEC 18 1973    -11-

Exhibit A 69

EXHIBIT III-B

CONCESSION DEVELOPMENT OF HISTORIC STRUCTURES

The individual or firm undertaking the reconstruction, restoration or preservation of an historic building in any unit of the State Park System for the first time will be faced with requirements that would not normally be encountered in the remodeling of an existing, or construction of a new non-historic building. The minimum requirements for such an undertaking follow:

Terms Defined

Reconstruction: Utilizing documentary evidence to design and construct a replica of an earlier building or facility which no longer exists.

Restoration: Returning a building or facility to its appearance at a specific period with meticulous attention to original details and materials.

Preservation: Establishing a building or facility in its existing form by preventing further change or deterioration.

A structure reconstructed, restored or preserved for educational purpose, where the bulding will be utilized for exhibition only, must be constructed or repaired and maintained with the utmost fidelity. Every reasonable additional care and expense are justified to approximate, in new work, the materials, methods and quality of old construction.

When an historic building is being reconstructed, restored or preserved for some productive use other than exhibition, only those modern uses will be considered which are consistent with preservation of the building's outstanding values. In such cases limited compromise with restoration standards may be justified, especially in the interior, to obtain desired conveniences.

All available sources of information must be investigated for evidence needed to authentically restore or reconstruct the building to the desired period. The size, height, appearance, construction materials, type and style of windows, doors or other openings, roof materials, canopies, balconies, railings, and all visible parts of the structure must be substantiated by documentary evidence before final plans can be approved. In the event no evidence of actual details can be found, details of other construction materials or methods used during the period may have to be documented and used.

The research will require the services of archeologists, historians and architects, all experienced in building restoration in order to develop the necessary data to prepare the final plans. As many hours may be spent in securing information as it will take to do the construction. The history of the structure, its occupants and its significance must be documented in order that it may be interpreted to the public. The primary purpose of reconstructing or restoring an historic structure must be kept foremost; that

Exhibit A 70

is, the interpretive value of the structure and the historical activities associated with it. Its secondary purpose is to provide a structure to house a profit-making business.

The minimum information required before a final agreement can be executed for restoration or reconstruction of an historic building is as follows. (Some of this information may already be available from the Department):

1. Complete history of the building, its occupants and uses from beginning to the present or to the date of its removal, including sources of the information.

2. A report which documents all findings on the site, using archeological methodology if the building no longer exists.

3. Copies of photographs, lithographs or narrative descrptions which will document the physical appearance, materials and type of construction of the building at the period to which the building is being restored or reconstructed.

4. A detailed proposal for use of the building including the means by which the structure's history will be interpreted to the public.

Exhibit A 71

THIRD AMENDMENT TO AND
RESTATEMENT OF
CONCESSION CONTRACT
OLD TOWN SAN DIEGO STATE HISTORIC PARK
SAN DIEGO CITY AND COUNTY, CALIFORNIA

BAZAAR DEL MUNDO, INC.

Paragraph | Page

| 1 | Grant and Description of Premises | 1 |
| 2 | Condition of Premises | 2 |
| 3 | Term | 2 |
| 4 | First Right of Refusal to Renew | 2 |
| 5 | Quitclaim Deed | 5 |
| 6 | Rental | 6 |
| 7 | Records | 7 |
| 8 | Gross Receipts | 8 |
| 9 | Accounting Year | 8 |
| 10 | Use of Premises | 9 |
| 11 | Type and Approval of Improvements | 10 |
| 12 | Title to Improvements | 12 |
| 13 | Maintenance of Improvements | 12 |
| 14 | Assignments | 13 |
| 15 | Utilities and Services | 14 |
| 16 | Equipment | 14 |
| 17 | Signs and Approval of Name | 14 |
| 18 | Quality of Service and Control of Rates and Charges | 14 |
| 19 | Bonds | 15 |
| 20 | Hold Harmless Agreement | 17 |
| 21 | Liability Insurance | 17 |
| 22 | Fire Insurance | 19 |
| 23 | Taxes | 21 |
| 24 | Inspection of Premises | 21 |
| 25 | Inspection and Maintenance | 21 |
| 26 | Contract Notice | 22 |
| 27 | Interpretation of Contract | 22 |
| 28 | Waiver of Contract Terms | 22 |
| 29 | Modification of Contract | 23 |
| 30 | Breach of Contract | 23 |
| 31 | Assignments and Subleases | 24 |
| 32 | Waiver of Claims | 25 |
| 33 | Agent for Service of Process | 25 |
| 34 | Right of Entry as Agent | 26 |
| 35 | Terms Binding on Successors | 26 |
| 36 | Duration of Public Facilities | 27 |
| 37 | Time of Essence | 27 |
| 38 | Conflict of Interest | 27 |
| 39 | Photography | 28 |
| 40 | Nondiscrimination | 28 |
| 41 | Paragraph Titles | 29 |
| 42 | Contract in Counterparts | 30 |
| 43 | Alcoholic Beverages | 30 |
| 44 | Eminent Domain | 30 |
| 45 | State Buy-Out Provision | 31 |
| 46 | State's Area Manager | 32 |
| 47 | Agreement in Writing | 33 |
| | Signatures | 33 |

Exhibit A 72

THIRD AMENDMENT TO AND
RESTATEMENT OF
CONCESSION CONTRACT
OLD TOWN SAN DIEGO STATE HISTORIC PARK
SAN DIEGO CITY AND COUNTY, CALIFORNIA

BAZAAR DEL MUNDO, INC.

THIS CONTRACT is amended, restated, made, and fully executed as of the 18th day of November, 1981, by and between the STATE OF CALIFORNIA, acting through its Department of Parks and Recreation, hereinafter referred to as "State", and BAZAAR DEL MUNDO, INC. of San Diego, California, hereinafter referred to as "Concessionaire":

W I T N E S S E T H:

1.  GRANT AND DESCRIPTION OF PREMISES:  The State, pursuant to the authority of and in accordance with Section 5019.10 et seq. of the Public Resources Code of the State of California, and for and in consideration of the agreements hereinafter stated, grants to Concessionaire the right, privilege and duty to construct or modify, equip, operate, and maintain a Mexican-style Shopping Arcade together with the Casa de Pico, Lino's, Hamburguesa and Casa de Bandini Restaurants.  Items typical of Mexican manufacture may be displayed and sold.  The concession shall be located in the premises provided by State and known as the Casa de Pico Building, the El Nopal Adobe and the Casa de Bandini in Old Town San Diego State Historic Park as designated in red on the plats attached marked Exhibit "I", "I-B", and "II-B" and by this reference incorporated herein.

--

--

--

1    2.   <u>CONDITION OF PREMISES</u>: The taking of possession of the subject

2  premises by the Concessionaire shall, in itself, constitute acknowledgement

3  that the subject premises are in good and tenantable condition.

4  Concessionaire agrees to accept said premises in their presently existing

5  condition, "as is", and that the State shall not be obligated to make any

6  alterations, additions, or betterments thereto.

7

8    3.   <u>TERM</u>: The term of this contract shall be for a period commencing on

9  July 1, 1971 and ending on June 30, 1991. At the expiration or termination of

10  this contract or any renewal hereof as herein provided, the Concessionaire

11  shall within thirty (30) days thereafter, remove from said premises, or

12  otherwise, dispose of in a manner satisfactory to State, all personal property

13  belonging to Concessionaire located on said premises.  Should Concessionaire

14  fail to remove or dispose of its property as herein provided, State may, at

15  its election, consider such property abandoned or may dispose of same at

16  Concessionaire's expense.  Also, at the expiration or termination of this

17  contract, the Concessionaire shall quit and surrender the said premises

18  including real property improvements in a good state of repair, damage by

19  matters over which Concessionaire has no control excepted, provided that such

20  exculpatory provision shall not extend to any risk which Concessionaire is

21  required to insure against as herein provided.

22

23    4.   <u>FIRST RIGHT OF REFUSAL TO RENEW</u>:  Concessionaire shall have the first

24  right and option to extend the term of this Concession Contract for one

25  additional period of ten (10) years subject to all of the provisions of this

26  agreement, including but not limited to provision for adjustments to and

27  variations in rent, and subject to the following conditions:

Exhibit A 74

a.   Concessionaire shall not be in default hereunder at the time notice of exercise is given or on the last day of the term; and

b.   At least ninety (90) days before the last day of the term, Concessionaire shall give the State written notice of its election to exercise this right and option; and

c.   The then fair market percentage rental for the period between July 1, 1991, and June 30, 1996, and again for the period between July 1, 1996 and June 30, 2001 shall be established based on a survey of then-current rental practices and rents and other lease terms established by governmental agencies and private owners for comparable commercial space on a statewide basis and take into account local rental rates and other lease terms in the San Diego area.  Any dispute between Concessionaire and the State over such then fair market percentage rentals shall be determined by arbitration in accordance with the following procedure:

(i)   One arbiter shall be selected by the State and shall be a recognized real estate appraiser and a member of the American Institute of Real Estate Appraisers; one shall be selected by Concessionaire and shall be a recognized real estate appraiser and a member of the Institute of Real Estate Appraisers.  Each party shall give written notice of the appointment of an arbiter to the other party.  Should either party within five (5) days after receiving such notice from the other party fail to appoint an arbiter and give written notice thereof to the other party who has appointed its arbiter, then upon application of either party the Presiding Judge of the Superior Court of the State of California, in and for the County of San Diego, shall appoint an arbiter for the party who failed to appoint one.  The arbiter so appointed

Exhibit A 75

1  shall have the same power and authority as if he had been appointed by such
2  party who failed to appoint an arbiter. Within five (5) days after said two
3  arbiters have been appointed, such two arbiters shall appoint a third
4  arbiter. If such two arbiters within the period last mentioned shall be
5  unable to agree upon the third arbiter, then upon application of either or
6  both parties hereto, the Presiding Judge of the Superior Court of the State of
7  California, in and for the County of San Diego, shall appoint the third
8  arbiter;
9

10      (ii)    Within fifteen (15) days after the appointment of the third
11  arbiter, the arbiter shall render a decision signed by not less than two of
12  such arbiters in which decision shall be specified the percentage rental to be
13  paid by Concessionaire to State for and during the ten (10) year period in
14  dispute. It is agreed that any award made pursuant to this arbitration may in
15  the instance of either party be made an order of the Superior Court of the
16  State of California, in and for the County of San Diego, and that such award
17  may be enforced as though it were a judgment of that Court, provided standards
18  set forth herein have been fairly observed and complied with by said arbiters
19  in said award; and
20

21      (iii)   Each party shall bear the expense of its own appointed
22  arbiter and shall share equally in the third arbiter's fee and incidental
23  expenses of arbitration.
24

25      d.   In the event the State then determines to raze or convert to
26  other uses the premises of the El Nopal Adobe, now operated as The Hamburguesa
27  restaurant, and/or its adjoining facilities, including the trellis, all as

COURT PAPER
STATE OF CALIFORNIA
STD. 113 (REV. 8-72)
OSP

-4-

# CONCESSION CONTRACT ARBITRATION

## Written Decision

In compliance with Paragraph 4 - FIRST RIGHT OF REFUSAL TO RENEW: Subparagraph (c), page 3 of the "Third Amendment to and Restatement of Concession Contract - Old Town San Diego State Historic Park, San Diego City and County, California - Bazaar Del Mundo, Inc." dated November 18, 1981, between the State of California, acting through its Department of Parks and Recreation, "State" and Bazaar Del Mundo, Inc., "Concessionaire", a meeting of the three arbiters--Thomas L. Roberts, MAI, H. L. "Bill" Lipman, MAI, and Gerald E. Schmitz, MAI--took place at 10 a.m. on December 14, 1992 at the Casa de Bandini Restaurant, in Old Town, San Diego, California.

The purpose of the meeting was to establish the fair market percentage rental of gross receipts from the concession premises to be paid to the State of California by Bazaar Del Mundo.

By unanimous agreement, the arbiters have determined that the fair market percentage rental for the five-year period commencing July 1, 1991, shall be seven (7) percent of gross receipts, as defined under Paragraph 8 - GROSS RECEIPTS, page 8 - in the above-stated document. Payment shall be made monthly as defined under Paragraph 6 - RENTAL: Subparagraph (d), page 6, in the above-stated document.

With the submission of this letter, all parties agree that proper notice pursuant to the Concession Contract has been given.

Dated December 15, 1992

_____
Thomas L. Roberts, MAI

_____
H. L. "Bill" Lipman, MAI

_____
Gerald E. Schmitz, MAI

**Exhibit A 77**

1  described in Exhibit II-B, such renewal term will not include the premises
2  described in Exhibit II-B.  The provisions of paragraph 45, STATE BUY-OUT
3  PROVISION, will not apply in the event of such determination by the State.
4  State will give notice of such determination to Concessionaire within 60 days
5  of receiving Concessionaire's notice of its election to exercise its option
6  under subparagraph b above, but need not do so prior to January 1, 1991 if
7  Concessionaire gives earlier notice of exercising its option.

8

9        e.   If the State rebuilds historic buildings itself, or plans such
10  rebuilding through a concession agreement, on the premises described in
11  Exhibit II-B, Concessionaire shall have the first right of refusal to enter a
12  contract for such commercial uses, if any, as may be planned by State, on the
13  same terms as the contract entered pursuant to its option, if Concessionaire
14  exercises that option.

15

16     5.  QUITCLAIM DEED:  Upon termination of the rights hereby granted, the
17  Concessionaire shall execute and deliver to State within thirty (30) days
18  after service of written demand therefor, a good and sufficient quitclaim deed
19  to the rights arising hereunder.  Should Concessionaire fail to refuse to
20  deliver to State a quitclaim deed as aforesaid, a written notice by the State
21  reciting the failure of the Concessionaire to execute and deliver said
22  quitclaim deed as herein provided, shall after ten (10) days from the date of
23  recordation of said notice be conclusive evidence against the Concessionaire
24  and all persons claiming under Concessionaire of the termination of said
25  concession.

26  ---

27  ---

COURT PAPER
STATE OF CALIFORNIA
STD. 113 (REV. 8-72)
OSP

-5-

Exhibit A 78

1    6.   RENTAL:

2

3        a.   For the period of time from August 1, 1981 (the effective date

4    of this amendment) until August 1, 1986, Concessionaire shall pay 4-1/2% of

5    gross receipts from all concession premises.

6

7        b.   Between August 1, 1981 and August 1, 1982 Concessionaire may set

8    off against 1/2 the rental the costs of improvements established under

9    Paragraph 8 of the original contract, as amended by Paragraph 6 of

10   Amendment 2, to the extent such costs have not previously been amortized under

11   Paragraph 3 of Amendment 2; such unamortized costs were $427,000 as of

12   January 1, 1981.  From and after August 1, 1982, no further set off of such

13   costs against rental shall occur, and Concessionaire shall pay the total

14   percentage rental hereunder to State, as aforesaid.

15

16       c.   On August 1, 1986 said percentage rent shall be changed to a

17   percentage rent determined in accordance with the provisions of paragraph 4 c.

18   hereof.

19

20       d.   Payment of rental shall be made concurrently with the monthly

21   statement in such an amount as will, if added to all previous months' payment

22   of that calendar year equal the prescribed percentage of the accumulated gross

23   receipts to the end of that month except for August 1 - December 31, 1981,

24   which will be paid as if August 1 commenced the calendar year.

25

26       Payments to the State shall be made to the order of the

27   Department of Parks and Recreation, and made at the office of the Frontera

Exhibit A 79

1  Area Manager, Department of Parks and Recreation, 2725 Congress Street,

2  Suite 2-K, San Diego, California 92110.

3

4      7.   <u>RECORDS:</u>  Concessionaire shall furnish to State by the 20th day of

5  each month of term hereof and upon the 20th day of the month next following

6  the end of the term, a statement certified by the Concessionaire of its total

7  gross receipts (including gross receipts of subconcessionaires) through the

8  close of the preceding month for the then current year.

9

10      Concessionaire will submit to State no later than February 15 of each

11  year a statement of gross receipts compiled by a Certified Public Accountant

12  or licensed Public Accountant.  Said statement shall contain an appropriate

13  certification that all recorded gross receipts during the yearly accounting

14  period shall have been duly and properly reported to the State.  Any amount

15  shown by said statement to be owed to State shall be paid with the filing of

16  the statement.  It is agreed that State is entitled to review Concessionaire's

17  books and records at any time that it deems it necessary for the purpose of

18  auditing payments due State under this contract.

19

20      Concessionaire shall keep true and accurate records and books showing

21  all of its business transactions in separate records of account for the

22  concession in a manner acceptable to State, and State shall have the right,

23  through its representatives and at all reasonable times, to inspect such books

24  and records including State of California sales tax return records and Federal

25  income tax returns; and Concessionaire hereby agrees that all such records and

26  instruments are available to the State, its agents, and employees.

27  ---

Exhibit A 80

State further reserves the right to examine all such books and records at any time during the one (1) year period following the termination of this contract.

Concessionaire agrees that as a part of its record-keeping activity it shall, at its own cost and expense, install and maintain such cash registers as may be deemed necessary by State. Such cash register equipment shall contain a continuous registering tape.

8.  GROSS RECEIPTS: Between the dates of August 1, 1981 and June 30, 1991, and during any extension of this agreement, the term "gross receipts" shall include all receipts of Concessionaire, whether money or property or other things of value, and all receipts of any subconcessionaire or lessee of concession premises, and gross receipts of Design Center, Inc. from retail sales within Old Town San Diego State Historic Park or for work by Design Center, Inc. within Old Town San Diego State Historic Park.

At no time shall "gross receipts" include proceeds of contracts entered between Design Center, Inc. and its clients for work outside Old Town San Diego State Historic Park. "Gross receipts" shall not include interest and realized gains from disposition of capital assets. "Gross receipts" shall not include any sales or excise taxes collected by Concessionaire. There shall be deducted from gross receipts the amount of any refund made for returned merchandise.

9.  ACCOUNTING YEAR: The Concessionaire's accounting year, or fiscal year, or current year as used herein, shall mean from January 1 to December 31.

Exhibit A 81

1    10.  UNDERLINE USE OF PREMISES: The subject premises shall be used by the

2  Concessionaire to establish a Mexican Shopping Arcade, Lino's, Hamburguesa,

3  Casa de Pico, and the Casa de Bandini Restaurants, (with sale of alcoholic

4  beverages), including, but not limited to, retail trade, restaurants,

5  exhibitions and other activities all of which pertain to, or are compatible

6  with, the theme of Old Town San Diego State Historic Park, and as approved by

7  the Area Manager.

8

9    Concessionaire shall install a substantial number and variety of

10  working craftsmen on the premises who will perform their crafts for the

11  benefit of the general public using this unit of the State Park System.

12

13    The concession premises known as the Bandini House, including the

14  garden and verandas thereof, may be used by Concessionaire for restaurant

15  purposes, dispensing food and beverages (including alcoholic beverages)

16  typical of either the Mexican Period or the American Period or both.

17

18    In keeping with the theme of the restoration of Old Town San Diego,

19  Concessionaire agrees to require all employees, or its subconcessionaires,

20  while employed on or in the premises described herein, to be dressed in a

21  costume depicting the Old Town San Diego era of 1827-1869, if required by

22  State.

23

24    These services shall be provided during hours and days to meet the

25  needs of the public and as agreed upon between Concessionaire and the Area

26  Manager.

27  --

1    Concessionaire shall not use or permit the subject premises to be
2    used in whole or in part during the term of this contract, for any purpose
3    other than as hereinabove set forth and as used on the effective date hereof,
4    without the prior written consent of the State first had and obtained.
5    Concessionaire expressly agrees at all times during the term of this contract,
6    at its own cost, to maintain and operate the subject premises in a clean,
7    wholesome and sanitary condition, and in compliance with any and all present
8    and future laws, general rules or regulations of any governmental authority
9    now or at any time during the term of this contract in force relating to
10   sanitation or public health, safety or welfare; and Concessionaire shall at
11   all times faithfully obey and comply with all laws, rules and regulations
12   applicable thereto adopted by Federal, State, the California State Park and
13   Recreation Commission, the Director of Parks and Recreation, or other
14   governmental bodies or departments or officers thereof.
15
16   11.  TYPE AND APPROVAL OF IMPROVEMENTS:  Concessionaire has accomplished
17   the work described in Exhibits "I" and "II" of the concession contract dated
18   June 21, 1971, the work described in Exhibit "II-A" of the amendment dated
19   December 10, 1971 and the work described in Exhibit "I-B" and "II-B" of the
20   amendment dated December 1, 1972.
21
22       When the existing structure known as the La Casa Blanca is razed,
23   Concessionaire shall have the right of first refusal to construct the historic
24   building originally located on that site and operate a concession therein
25   under terms agreeable to State.
26   ---
27   ---

Exhibit A 83

Upon the earlier of the date January 1, 1983 or the date ground is broken for construction of an historic building on Calhoun Street, Concessionaire will pay $50,000 to State.  Such payment will fulfill Concessionaire's obligations under page 7, lines 17-22 of Amendment 2.

Concessionaire shall utilize the services of an architect and contractor, both licensed by the State of California, for the modification of all facilities.  Copies of the contract between Concessionaire and its architect and contractor, and stage inspection reports, shall be furnished State when requested.  The architect's services shall include the preparation of working drawings, detailed specifications, estimates of cost of construction, supervision, stage inspection, and upon completion of construction, the construction shall be certified by the architect to be in substantial accordance with the original plans and specifications.

Prior to construction of the replacement for La Casa Blanca, and in the event that other modifications or additions to concession improvements are desired, the approval in writing of the State shall first be had and obtained prior to such modification or addition.  The plan approval procedure prescribed in Exhibit "III" attached to the amendment dated December 1, 1972 and thereby made a part of this contract shall be used for such modification.

If the State disapproves any drawings, plans, or specifications, Concessionaire shall submit necessary modifications and revisions.  The State shall not unreasonably withhold such approval, and will give approval or specify changes within thirty (30) days of receipt of such working drawings,

---

Exhibit A 84

1    plans, and specifications. Once approved, no changes or alterations shall be
2    made in working drawings, plans, or specifications without prior written
3    approval of State.

4

5        12.  TITLE TO IMPROVEMENTS:  Concessionaire hereby acknowledges the title
6    of State in and to the premises described in this contract, including real
7    property improvements existing or erected thereon and hereby covenants and
8    agrees never to assail, contest, or resist said title.

9

10       13. MAINTENANCE OF IMPROVEMENTS:  Concessionaire agrees to maintain any
11   and all concession facilities on the subject premises, including the public
12   restrooms, in good order and repair, at its own cost and expense, during the
13   entire term of this contract.  Concessionaire shall perform, at its own cost
14   and expense, any required maintenance and repairs, including structural
15   maintenance; and such maintenance shall include but not be limited to interior
16   and exterior maintenance and repair of all structures, all utility services,
17   and glass windows or doors, plumbing, and electrical fixtures and maintenance
18   of grounds, gardens, and landscaped areas; and should Concessionaire fail,
19   neglect, or refuse to do so, the State shall have the right to perform such
20   maintenance or repairs for the Concessionaire's account and the Concessionaire
21   agrees to promptly reimburse the State for the cost thereof, provided,
22   however, that the State shall first give Concessionaire ten days' written
23   notice of its intention to perform such maintenance or repairs for the
24   Concessionaire's account for the purpose of enabling Concessionaire to proceed
25   with such maintenance or repairs at its own expense.  The State shall not be
26   obligated to make any repairs to or maintain any improvements on the subject
27   premises.  Concessionaire hereby expressly waives the right to make repairs at

Exhibit A 85

the expense of the State and the benefit of the provision of Sections 1941 and 1942 of the Civil Code of the State of California relating thereto, if any there be.

14. <u>ASSIGNMENTS</u>:  No transfer or assignment by the Concessionaire of this contract or of any part thereof or interest therein, directly or indirectly, voluntarily or involuntarily, shall be made unless such transfer or assignment is first approved in writing by State, except that Concessionaire may sublease portions of these premises and as approved by the Area Manager.  The Concessionaire's possessory interest in Concessionaire's improvements, for the purpose of affording security only, may be assigned, transferred, or encumbered when first approved in writing by State.  No mortgage shall be executed and no bonds or other evidence of interest in, or indebtedness upon the assets or proposed assets of the Concessionaire in the State unit shall be issued except for the purposes of installing, enlarging, or improving plant and equipment and extending facilities for the accommodation of the public in the State unit and then only except upon prior authorization in writing in each case obtained from the State.  In the event of default on such a mortgage or such other indebtedness or other assignment, transfer, or encumbrance, the creditor thereof shall succeed to the possessory interest of the Concessionaire in Concessionaire's improvements.  Under these circumstances, operating rights and privileges shall be as outlined in this contract; however, the right of any person or persons to actually operate the said concession is subject to the approval of State.  Approval by State of such person or persons shall be contingent upon said person or persons having at least two (2) years experience as a manager of a facility comparable to the facility contemplated herein.

Exhibit A 86

1    15.  UTILITIES AND SERVICES:  Concessionaire shall be responsible for the

2  payment of all utility charges, used in connection with the premises.  For the

3  purpose of this paragraph, sewage disposal shall be construed as a utility.

4  All trash containers and/or trash bins shall be adequately screened to the

5  satisfaction of the Area Manager.  All rubbish and garbage shall be disposed

6  of by Concessionaire at its own cost and expense in accordance with applicable

7  law and outside the confines of the Historic Park Area.  All such rubbish

8  removal shall be performed by Concessionaire to the satisfaction of the Area

9  Manager.

10

11    16.  EQUIPMENT:  Concessionaire, at its own expense, shall completely

12  equip the concession improvements described herein and shall keep the same

13  equipped in a first-class manner throughout the term of this contract.

14

15    17.  SIGNS AND APPROVAL OF NAME:  No signs, names, or placards, shall be

16  inscribed, painted, or affixed upon said premises without written consent of

17  the State first had and obtained.

18

19    18.  QUALITY OF SERVICE AND CONTROL OF RATES AND CHARGES:  Concessionaire

20  agrees that it will operate and manage the services and facilities offered in

21  a first-class manner and comparable to other first-class concessions providing

22  similar facilities and services during the entire term of this contract.

23  Where such facilities are provided, Concessionaire agrees that it shall and

24  will furnish and dispense goods of the best quality and shall and will main-

25  tain a high standard of service at least equal to that of other establishments

26  in State Parks and/or adjacent communities and to those prevailing in such

27  areas for similar products and services, and without discrimination.

Exhibit A 87

The State shall have access to and the right to inspect the schedule of prices and rates for goods sold or services rendered or performed upon the subject premises. In the event that after Concessionaire has been advised and given reasonable opportunity to confer with the State and justify the prices mentioned above, if the State shall reasonably determine any price or prices to be unreasonable or inappropriate for the services rendered, or the item sold, the same shall be modified as directed by the State. Concessionaire shall post rates and prices for all goods and services in such places as may be designated by State.

State reserves the right to prohibit the sale or rental of any item which it deems objectionable or beyond the scope of merchandise deemed necessary for proper service to the public.

A competent person, over twenty-one years of age, shall be on the premises at all times while the concession is in operation.

19. BONDS: In the event of assignment of Concessionaire's rights hereunder or in the event of further construction or improvements, bonds shall be furnished as follows:

a.  Continuing Performance Bond:

Within thirty (30) days after the Assignment of Concessionaire's rights under this contract and prior to the commencement of any new construction or modification, concessionaire shall furnish a bond in a form satisfactory to State, issued by a corporate surety licensed to transact

Exhibit A 88

business in the State of California and satisfactory to State, in a sum not less than Five Thousand Dollars ($5,000) payable to the State and conditioned upon full and satisfactory performance of the obligations of Concessionaire set forth in this contract and conditioned upon satisfactory performance of maintenance on the premises.  Said bond repayable annually shall be kept by Concessionaire in full force and effect during the entire term of this contract to insure faithful performance by Concessionaire of all the covenants, terms and conditions of this contract inclusive of, but not restricted to, the payment of all rentals, fees and charges.  The corporate surety issuing said bond or bonds shall give State notice in writing at least thirty (30) days prior to each anniversary date of its intention to renew or not to renew said bond or bonds of Concessionaire.

The performance bond furnished in the event of new construction or improvement shall be maintained until ninety (90) days after completion of construction or improvement.  The performance bond maintained by the new Concessionaire in the event of assignment of Concessionaire's rights hereunder shall be a continuing performance bond, to be maintained during the term of the contract including any renewal thereof.

b.  Labor and Material Bond:

Prior to the commencement of construction or modification hereunder, Concessionaire shall furnish the State a surety bond of a corporate surety licensed to transact business in the State of California and in a form satisfactory to the State, with Concessionaire's contractor or contractors as principals in a sum not less than fifty percent (50%) of the estimated cost of

Exhibit A 89

1  construction of the facility mentioned above, guaranteeing the payment for all

2  materials, provisions, provender, supplies, and equipment used in, upon, for,

3  or about the performance of said construction work or labor done thereon of

4  any kind whatsoever and protecting the State from any liability, losses, or

5  damages arising therefrom.

6

7   20.  HOLD HARMLESS AGREEMENT:  Concessionaire shall indemnify, hold

8  harmless, and defend State, its officers, agents, and employees against any

9  and all claims, demands, damages, costs, expenses, or liability costs arising

10  out of the development, construction, operation, or maintenance of the property

11  described herein, except for liability arising out of the concurrent or sole

12  negligence or willful misconduct of State, its officers, agents, or employees.

13

14        In the event State is named as co-defendant, Concessionaire shall

15  notify State of such fact and shall represent State in such legal action

16  unless State undertakes to represent itself as codefendant in such legal

17  action in which event State shall bear its own litigation costs, expenses, and

18  attorney's fees.

19

20        In the event judgment is entered against State and Concessionaire

21  because of the concurrent negligence of State and Concessionaire, their

22  officers, agents, or employees, an apportionment of liability to pay such

23  judgment shall be made by a court of competent jurisdiction.  Neither party

24  shall request a jury apportionment.

25

26   21.  LIABILITY INSURANCE:  Concessionaire shall provide before entering

27  the premises and shall maintain in force during the term of this contract,

Exhibit A 90

public liability insurance in the sum of One Hundred Thousand Dollars ($100,000) for injury to or death of any one person; and Three Hundred Thousand Dollars ($300,000) for injury to or death of more than one person; and property damage products liability insurance in the sum of Fifty Thousand Dollars ($50,000). This policy or policies of liability insurance shall contain the following special endorsement:

> "The State of California, California State Park and Recreation Commission, Department of Parks and Recreation, their officers, employees and agents, are hereby declared to be additional insureds under the terms of this policy, both as to the activities of the Concessionaire and as to the activities of the State, the State Park and Recreation Commission, the Department of Parks and Recreation, their officers, employees, and agents as related to the concession activity described herein.

> "This insurance policy will not be cancelled without thirty (30) days' prior written notice to said Department of Parks and Recreation. The State of California is not liable for the payment of premiums or assessments on this policy."

No cancellation provision in any insurance policy shall be construed in derogation of the continuous duty of the Concessionaire to furnish insurance during the term of this contract. Said policy or policies shall be underwritten to the satisfaction of the State. A signed complete certificate of insurance, with all endorsements required by this paragraph, shall be submitted to State concurrently with the execution of this contract. At least

Exhibit A 91

1  thirty (30) days prior to the expiration of any such policy, a signed complete

2  certificate of insurance, with all endorsements required by this paragraph,

3  showing that such insurance coverage has been renewed or extended shall be

4  filed with State.

5

6     22.  FIRE INSURANCE:  Concessionaire, at its own expense, shall and hereby

7  agrees to carry fire insurance with extended coverage endorsements thereon, on

8  all concession improvements, whether State-owned, placed, or constructed upon

9  the subject premises by Concessionaire, in an amount equal to ninety percent

10  (90%) of the full replacement cost and/or value thereof; said policy to

11  contain a replacement cost endorsement naming the Concessionaire as the

12  insured, provided however, that if there is a lender on the security of the

13  improvement so insured, the proceeds of any such policy or policies may be

14  made payable to such lender.  In either case, whether proceeds are paid to

15  Concessionaire or to lender, the policy shall contain a special endorsement

16  that such proceeds shall be used to repair or rebuild any such improvements so

17  damaged or destroyed; and if not so used, such proceeds shall be paid to the

18  State.  The proceeds of any such insurance payable to the State are to be

19  deposited in the State Park Contingent Fund and shall be used for rebuilding

20  or repair as necessary to restore the premises and at the discretion of State.

21

22     A complete signed certificate of insurance with all endorsements

23  required by this paragraph shall be filed with the State prior to the

24  commencement of occupation of the described premises under this contract; and

25  such policy or policies shall provide that such insurance coverage will not be

26  cancelled or reduced without at least thirty (30) days' prior written notice

27  to the State and that the State is not responsible for the payment of any

Exhibit A 92

1 premiums thereon.  At least thirty (30) days prior to the expiration of any

2 such policy, a signed complete certificate of insurance with all endorsements

3 required by this paragraph, showing that such insurance coverage has been

4 renewed shall be filed with the State.

5

6       In the event of destruction, loss, or damage by fire or other cause

7 of any of the State-owned buildings, improvements, or fixtures used in

8 connection with said concession, which in the opinion of State (notification

9 of which opinion shall be given Concessionaire in writing within ten (10) days

10 after such occurrence), cannot be repaired within one hundred eighty (180)

11 days after obtaining all necessary permits, either party may terminate this

12 contract by notice in writing to the the other party given within fifteen (15)

13 days after such notification.  In the event of such termination, State shall

14 be entitled to any fire insurance proceeds, except as hereinafter provided.

15 Concessionaire shall be entitled to that portion of said compensation which is

16 the value of the loss of unamortized Concessionaire-constructed improvements

17 for the remainder or the contract term.  The amount to which Concessionaire

18 shall be entitled hereunder shall not exceed the actual cost of improvements

19 constructed by Concessionaire less costs amortized under Paragraph 3 of

20 Amendment 2, reduced in proportion to the relationship that the expired

21 contract term bears to the original contract term.  In the event of such

22 destruction, loss, or damage, and the contract is not terminated under this

23 paragraph, any buildings, improvements, or fixtures constructed by State in

24 replacement of such damaged or destroyed property, shall be subject to the

25 terms and provisions of this contract.

26 ---

27 ---

Exhibit A 93

1    23.  <u>TAXES</u>:  This concession agreement may create a *possessory interest* in

2 public property which is subject to property taxation.  In the event that such

3 interest is created, Concessionaire agrees to be subject to the payment of and

4 to pay property taxes levied on such interest.  Concessionaire agrees to pay

5 the above and all other lawful taxes, assessments, or charges which at any

6 time may be levied by the State, County, City, or any tax or assessment

7 levying body upon any interest in this contract or any possessory right which

8 Concessionaire may have in or to the premises covered hereby or the

9 improvements thereon by reason of its use or occupancy thereof or otherwise as

10 well as all taxes, assessments, and charges on goods, merchandise, fixtures,

11 appliances, equipment, and property owned by it on or about said premises.

12 Concessionaire shall comply with all laws, regulations, and ordinances

13 regarding the collection of taxes due a local government agency and otherwise

14 administer the same.

15

16    24.  <u>INSPECTION OF PREMISES</u>:  The State hereby reserves the right to enter

17 upon the premises at any reasonable time to inspect the same.

18

19    25.  <u>INSPECTION AND MAINTENANCE</u>:  State reserves the right of ingress and

20 egress to inspect, investigate, and survey said premises as deemed necessary

21 by State, and the right to do any and all work of any nature necessary for

22 preservation, maintenance, and operation of the buildings and all areas of Old

23 Town San Diego State Historic Park, and in any areas within the confines of

24 said unit. Concessionaire shall be given reasonable notice when such work may

25 become necessary and will adjust concession operations in such a manner that

26 State may proceed expeditiously.

27 ---

Exhibit A 94

26. <u>CONTRACT NOTICE</u>: Any notices herein provided to be given, or which may be given by either party to the other, shall be deemed to have been fully given when made in writing and deposited in the United States mail, postage prepaid and addressed as follows:

To the Concessionaire at: 2754 Calhoun Street, San Diego, California 92110, Attention: Diane Powers, with a carbon copy to Luce, Forward, Hamilton & Scripps (Attention: E. Miles Harvey), Suite 1700, 110 West A Street, San Diego, CA 92101.

To the State at: Post Office Box 2390, Sacramento, California 95811.

The address to which notices shall or may be mailed as aforesaid by either party shall or may be changed by written notice given by such party to the other as hereinbefore provided, but nothing herein contained shall preclude the giving of any such notice by personal service.

27. <u>INTERPRETATION OF CONTRACT</u>: This contract is made under and is subject to the laws of the State of California in all respects as to interpretation, construction, operation, effect, and performance.

28. <u>WAIVER OF CONTRACT TERMS</u>: No waiver by either party at any time of any of the terms, conditions, or covenants of this contract shall be deemed as a waiver at any time thereafter of the same or of any other term, condition, or covenant herein contained, nor of the strict and prompt performance thereof. No delay, failure, or omission of the State to re-enter the premises or to exercise any right, power, or privilege or option arising from any

Exhibit A 95

1  default, nor any subsequent acceptance of rent then or thereafter accrued

2  shall impair any such right, power, privilege, or option or be construed as a

3  waiver of such default or a relinquishment of any right or acquiescence

4  therein.  No notice to the Concessionaire shall be required to restore or

5  revive time as of the essence after the waiver by the State of any default.

6  No option, right, power, remedy, or privilege of the State shall be construed

7  as being exhausted by the exercise thereof in one or more instances.  The

8  rights, powers, options, and remedies given to the State by this contract

9  shall be deemed cumulative.

10

11     29.  UNDERLINE MODIFICATION OF CONTRACT:  Notwithstanding any of the provisions of

12  this contract, the parties may hereafter, by mutual consent, agree to

13  modifications thereof or additions thereto in writing which are not forbidden

14  by law.  Any such modification will be subject to the provisions of

15  Section 8.10 of the Budget Act of 1981, as such provision may exist in any

16  future legislation.  The State shall have the right to grant reasonable

17  extensions of time to Concessionaire for any purpose or for the performance of

18  any obligation of Concessionaire hereunder.

19

20     30.  BREACH OF CONTRACT:  This contract is made upon the condition that,

21  if the rents or other sums which Concessionaire herein agrees to pay or any

22  part thereof shall be unpaid on the date on which the same shall become due,

23  or if default be made in any of the terms, agreements, conditions, or

24  covenants herein contained on the part of the Concessionaire, or should

25  Concessionaire become insolvent or bankrupt, either voluntarily or

26  involuntarily, then and in such event at the option of the State, this

27  contract shall cease and terminate, and the State may enter upon the premises.

Exhibit A 96

1    Should Concessionaire close the facilities and services to the public

2    for a period of thirty (30) consecutive days or sixty (60) days during any

3    one (1) year without written consent of State, this contract shall cease and

4    terminate, and State may enter upon the premises.

5

6    Notwithstanding any of the above breach of contract provisions,

7    should Concessionaire create or allow to be created a nuisance on the premises

8    described herein, State at its discretion may immediately declare this

9    contract and all rights therein terminated.

10

11    31. ASSIGNMENTS AND SUBLEASES: Concessionaire shall neither assign,

12    sublease, or otherwise convey any interest of any sort granted by this

13    contract, to any person or persons, entity or entities whatever without prior

14    written consent and approval of the conveying document by State.  Before State

15    considers an assignment, evidence must be given to State that the proposed

16    assignee qualifies as a "responsible bidder" under the terms of Sections

17    5019.11 and 5019.15 of the Public Resources Code and has and will have

18    available a responsible managing employee.  The Concessionaire's interest

19    hereunder shall not be assignable in bankruptcy, insolvency, or assigned for

20    the benefit of creditors, nor shall said interest be assignable by operation

21    of law.  Any document by which an interest is granted, subject to the approval

22    of State, shall indicate that the person acquiring that interest has been

23    advised of the terms of this contract and recognizes that upon termination of

24    the interest of the Concessionaire granted by this contract, its interest

25    shall also be terminated.  However, in the event of termination of this

26    contract, State at its sole option, may elect to treat any assignee,

27    subtenant, or holder of an interest conveyed by Concessionaire as State's

Exhibit A 97

1  tenant, subject to the terms and conditions of this contract and that entered

2  into between the assignee, subtenant, or holder of an interest conveyed by

3  Concessionaire.  Concessionaire shall draft a standard subconcessionaire

4  contract for approval by State.  This document must contain a reference to

5  this contract and must also contain irrevocable termination provisions, either

6  before or at the termination date of this contract.  After State approval,

7  Concessionaire will use that standard contract for all of its subconcessions.

8

9      32.  UNDERLINE{WAIVER OF CLAIMS}:  The Concessionaire hereby waives any claim against

10  the State of California, its officers, agents, or employees for damage or loss

11  caused by any suit or proceeding directly or indirectly attacking the validity

12  of this contract, or any part thereof or by any judgment or award in any suit

13  or proceeding declaring this contract null, void, or voidable or delaying the

14  same or any part thereof from being carried out.

15

16      33.  AGENT FOR SERVICE OF PROCESS:  It is expressly agreed and understood

17  that if the Concessionaire is not a resident of this State or is an

18  association or partnership without a member or partner resident of this State,

19  or is a foreign corporation, then in any such event, the Concessionaire shall

20  file with the State a designation of a natural person residing in the State of

21  California, giving his name, residence and business address, as its agent for

22  the purpose of service of process in any court action between it and the State

23  arising out of or based upon this contract, and the delivery to such agent of

24  a copy of any process in any such action shall constitute valid service upon

25  such Concessionaire; and it is further expressly agreed, covenanted, and

26  stipulated that if for any reason service of such process upon such agent is

27  not possible, then in such event Concessionaire may be personally served with

Exhibit A 98

1    such process out of this State and that such service shall constitute valid

2    service upon such Concessionaire, and it is further expressly agreed that

3    Concessionaire is amenable to the process so served, submits to the

4    jurisdiction of the court so acquired, and waives any and all objection and

5    protest thereto.

6

7        34.  **RIGHT OF ENTRY AS AGENT**:  In any case in which provision is made

8    herein for the termination of this contract by the State or in the name of

9    abandonment or vacating of the premises by Concessionaire, the State, in lieu

10   of declaring a forfeiture, may enter upon the premises.  To such end,

11   Concessionaire hereby irrevocably appoints the State its agent to remove any

12   and all persons or property on said premises and place any such property in

13   storage for the account of and at the expense of Concessionaire.  In such

14   case, the State may relet the premises upon such terms as it may deem proper,

15   and if a sufficient sum shall not be realized thereby, after paying expenses

16   of such reletting, to satisfy the rent and other sums herein agreed to be paid

17   by Concessionaire, Concessionaire agrees to save the State harmless from any

18   loss or damage or claim arising out of the action of the State in pursuance of

19   this paragraph.

20

21       35.  **TERMS BINDING ON SUCCESSORS**:  All the terms, covenants, and

22   conditions of this contract shall inure to the benefit of and be binding upon

23   the successor and assigns of the parties hereto.  The provisions of this

24   paragraph shall not be deemed as a waiver of any of the conditions against

25   assignment hereinbefore set forth.

26   --

27   ---

1    36. <u>DURATION OF PUBLIC FACILITIES</u>: By entering into this contract, State

2 makes no stipulation as to the type, size, location, or duration of public

3 facilities to be maintained at this unit. Concessionaire understands and

4 agrees that as a part of State's proposed project in Old Town San Diego, the

5 City has been requested to close all streets within the project boundary,

6 including San Diego Avenue, to all vehicular traffic and the closing thereof

7 shall not constitute a violation of the terms of this contract. State shall

8 provide delivery access to the premises and as directed by State.

9

10    37. <u>TIME OF ESSENCE</u>: Time shall be of the essence in the performance of

11 this contract.

12

13    38. <u>CONFLICT OF INTEREST</u>: Concessionaire warrants and covenants that no

14 official or employee of State nor any business entity in which an official or

15 employee of State is interested: (1) Has been employed or retained to solicit

16 or aid in the procuring of this contract; (2) Will be employed in the

17 performance of this contract without the immediate divulgence of such fact to

18 State. In the event State determines that the employment of any such

19 official, employee, or business entity is not compatible with such official's

20 or employee's duties as an official or employee of the State of California,

21 Concessionaire, upon request of State, shall terminate such employment

22 immediately. For breaches or violations of this paragraph, State shall have

23 the right both to cancel this contract without liability, and in its

24 discretion, recover the full amount of any such compensation paid to such

25 official, employee, or business entity.

26 ---

27 ---

Exhibit A 100

39. <u>PHOTOGRAPHY:</u> State may grant permits to persons or corporations engaged in the production of still and motion pictures and related activities, for the use of said premises for such purposes when such permission shall not interfere with the primary business of Concessionaire.

40. <u>NONDISCRIMINATION:</u> The Concessionaire and its employees shall not discriminate because of race, religion, color, or national origin, against any person by refusing to furnish such person any accommodation, facility, service, or privilege offered to or enjoyed by the general public. Nor shall the Concessionaire or its employees publicize the accommodations, facilities, services, or privileges in any manner that would directly or inferentially reflect upon or question the acceptability of the patronage of any person because of race, religion, color, or national origin, all subject to reasonable orders of the Director of General Services.

In the performance of this contract, the Concessionaire will not discriminate against any employee or applicant for employment, because of race, color, religion, ancestry, or national origin. The Concessionaire will take affirmative action to ensure that applicants are employed, and that employees are treated during employment, without regard to their race, color, religion, ancestry, or national origin. Such action shall include, but not be limited to, the following: employment, upgrading, demotion or transfer; recruitment or recruitment advertising; layoff or termination; rates of pay or other forms of compensation; and selection for training, including apprenticeship. The Concessionaire shall post in conspicuous places, available to employees and applicants for employment, notices to be provided ---

Exhibit A 101

1  by the State setting forth the provisions of this Fair Employment Practices

2  Section.  Form 809, Equal Employment Opportunity Poster, may be used.

3

4  The Concessionaire will permit access to its records of employment,

5  employment advertisement, application forms, and other pertinent data and

6  records by the State Fair Employment and Housing Commission, or any other

7  agency of the State of California designated by the awarding authority, for

8  the purpose of investigation to ascertain compliance with the Fair Employment

9  Practices Section of this contract.

10

11  The State may determine a willful violation of the Fair Employment

12  Practices provision to have occurred upon receipt of a final judgment having

13  that effect from a court in an action to which Concessionaire was a party, or

14  upon receipt of a written notice from the Fair Employment and Housing

15  Commission that it has investigated and determined that the Concessionaire has

16  violated the Fair Employment Practices Act and has issued an order, under

17  Government Code Section 12970, which has become final, or obtained an

18  injunction under Government Code Section 12973.  In the event of violation of

19  this paragraph, the State will have the right to terminate this contract, and

20  any loss of revenue sustained by the State by reason thereof shall be borne

21  and paid for by the Concessionaire.

22

23  41.  <u>PARAGRAPH TITLES</u>:  The paragraph titles in this contract are inserted

24  only as a matter of convenience and for reference, and in no way define,

25  limit, or describe the scope or intent of this contract or in any way affect

26  this contract.

27  ---

Exhibit A 102

1   42.   CONTRACT IN COUNTERPARTS:  This contract may be executed in
2   counterparts, each of which shall be deemed an original.
3
4   43.   ALCOHOLIC BEVERAGES:  The sale of alcoholic beverages shall be
5   subject to any regulations established for the State Park System by the
6   Director of Parks and Recreation and to all rules and regulations established
7   by the Department of Alcoholic Beverage Control.
8
9   Advertising of the sale of alcoholic beverages by any means, except
10  by notice in menus, shall not be permitted on the exterior of the concession
11  facility.
12
13  44.   EMINENT DOMAIN:  In the event the whole subject premises is condemned
14  by a public entity in the lawful exercise of the power of eminent domain, this
15  contract shall forthwith terminate and Concessionaire shall be entitled to the
16  then depreciated cost of the facilities as computed in Paragraph 22 above in
17  the event of termination by either party after fire or other damage which
18  cannot be repaired within one hundred and eighty (180) days, and
19  Concessionaire shall be entitled to seek compensation for the value of its
20  business.
21
22  In the event that only a part of the subject premises is condemned,
23  and the part taken does not substantially affect the operations of
24  Concessionaire, this contract shall forthwith terminate as to the part taken
25  and Concessionaire shall be entitled to the then value of its interest in the
26  part taken, not to exceed the depreciated cost thereof as established in
27  Paragraph 22 above.  In the event that only a part of the subject premises is

Exhibit A 103

1  condemned, and the part taken substantially affects the operation of

2  Concessionaire, State may forthwith terminate this contract and Concessionaire

3  will be entitled to an amount which shall not exceed the actual cost of

4  improvements constructed by Concessionaire less costs amortized against rent,

5  reduced in proportion to the relationship that the expired contract term bears

6  to the original contract term, as established in Paragraph 22 above.

7

8      45.  STATE BUY-OUT PROVISION:  Notwithstanding any other provision in this

9  contract, and in addition to any other termination or remedy, specifically in

10  addition to termination for material breach, State reserves the right, from

11  July 1, 1981 and for the remaining period of this contract and any extension

12  thereof, to terminate upon giving Concessionaire twelve (12) months' written

13  notice and offering to pay Concessionaire the fair market value of

14  Concessionaire's rights under this contract, provided, however, that State

15  reserves the right from the date hereof, without terminating this contract, to

16  pay Concessionaire the then cost of the trellis delineated on Exhibit "II-8"

17  located within Mason Street (closed) or Calhoun Street (closed) between

18  Hamburguesa and the present park office, and to remove said trellis at State's

19  expense.  Any such removal of the trellis and renovation of the area

20  accomplished by State will proceed as expeditiously as possible and when

21  completed will not reduce the size of the outside eating facility nor

22  interfere with public access to Concessionaire's facilities.

23

24      Such termination and purchase of the Concessionaire's interest shall

25  occur only:

26  ---

27  ---

1.   For failure of performance by Concessionaire not amounting to material breach; or in the event of material breach and State determines for reasons of its own not to cancel the agreement for cause.

2.   In the event State desires to implement a plan for historic restoration and interpretation of a portion or all of the space occupied by the Concessionaire.

3.   In the event State determines that a more necessary public use requires use of part or all of the concession premises.

Upon such termination, Concessionaire shall be paid the fair market value of the Concessionaire's rights under this contract.

46.  STATE'S AREA MANAGER: For purposes of this contract, the "Area Manager" is the State representative in direct charge of Old Town San Diego State Historic Park and other units of the State Park System as may be assigned. He is charged with the day-to-day administration of this contract and is the Concessionaire's initial contact with the State for information, contract performance, and other problems as might arise.

---
---
---
---
---

COURT PAPER
STATE OF CALIFORNIA
STD. 113 (REV. 8-73)
OSP

Exhibit A 105

1    47.  <u>AGREEMENT IN WRITING:</u>  This concession contract contains and embraces

2  the entire agreement between the parties hereto and neither it nor any part of

3  it may be changed, altered, modified, limited, or extended orally or by any

4  agreement between the parties unless such agreement be expressed in writing,

5  signed, and acknowledged by the State and the Concessionaire, or their

6  successors in interest.

7

8                                        CONCESSIONAIRE:

9                                        BAZAAR DEL MUNDO, INC.

10

11                                   By

12                                   Date 6-16-82

13

14

15

16                                    DEPARTMENT OF PARKS AND RECREATION

17

18                                   By

19                                   Date 6 - 16 - 82

20

21

22  APPROVED:                      APPROVED:
     ATTORNEY GENERAL            DIRECTOR OF GENERAL SERVICES

23          APPROVED AS TO FORM AND FOUND

24          TO BE IN ACCORDANCE WITH THE
              REQUIREMENTS OF SECTIONS

25          5019.10 - 5019.26, PUBLIC
              RESOURCES CODE.

26          GEORGE DEUKMEJIAN

27  PERM/0001X     Attorney General
              By

              Deputy Attorney General

          DATED: JUN 23 1982     -33-

Department of General Services

APPROVED

JUL 0 2 1982

BY

Deputy Director

COURT PAPER
STATE OF CALIFORNIA
STD. 113 (REV. 8-72)

OSP

Exhibit A 106

# EXHIBIT "B"

Casa de Pico Mexican Restau···                                    Page 1 of 3



| Home | Shopping | Dining | Events | Virtual Tours | Directions | About Us |

**Restaurants**

# CASA DE PICO



San Diego's favorite courtyard dining! The Casa de Pico Mexican restaurant is situated on the original site of the home of General Pico, the last Governor of California during Mexican rule. For the last 30 years, Casa de Pico has been one of the most popular restaurants in San Diego's Old Town. It is well known for serving fabulous Mexican food and for the beautiful courtyard atmosphere: a lush garden with mature trees, colorful flowers, splashing fountains and a central stage which features authentic Latin music. You will love the giant margaritas and strolling mariachis!

<u>Read recent guest comments</u>

**Moderately priced. Breakfast, Lunch and Dinner. Open daily 10:00AM to 9:00PM.**

**Located at Bazaar del Mundo in the Old Town San Diego State Historic Park.**
**(619) 296-3267**

Use our <u>contact form</u> for comments, questions and suggestions and to be entered to win dinner for two and Casa De Pico!

**Fun Filled Patios - Famous Margaritas & Mariachis Mexican Food at its Best** 

---

# CASA DE PICO MENU
## Selected Items

RESTAURANTS

Pico's Avocado Salad 8.95

Exhibit A 108

Rancho
El Nopal

Casa
de Pico

Casa de
Bandini

Casa
Guadalajara

Lino's Italian

Tacos Al Pastor 10.95

Carne Asada!
La Especial De Juan 11.75

Pollo Fundido 8.95

Taco Loco 8.75

Tostada Del Mundo 7.95

Especial de Flautas 7.95

Fabulosa! Mexican Favorites 12.50

Pico's Chimichanga 8.95

Tacos de Carnitas 10.95

Tacos Victoriosos 8.95

Macho Grande Combination 14.95

Machaca Burritos 8.95

Chili Colorado 9.75

Machaca Burritos 8.95

Cheese Crisp Special 7.75

Taquitos Rancheros 7.75

Enchiladas Rancheras 8.95

Mexican Stir Fry 9.75

Vegetarian Enchiladas 8.50

Enchiladas de Carne 8.95

Guacamole Enchiladas 8.95

Fish Taco Plate 9.75

Steak Picado 9.95






Exhibit A 109

home | shopping | dining | events | virtual tours | directions | about us
employment opportunities

# BAZAAR DEL MUNDO

Copyright © 2002 Bazaar Del Mundo
2754 Calhoun St., San Diego, CA 92110

Exhibit A 110





## Restaurants

# CASA DE BANDINI



A San Diego favorite for 20 years, this Mexican restaurant in Old Town is well known for lively mariachi music, giant margaritas and exquisite patio dining. Choose from many award-winning Mexican specialities and seafood entrees. Dine in one of three elegant dining rooms or in a patio paradise amid lush trees, flowers and fountains. This gracious home, a restored 1829 adobe hacienda, is a historic landmark in Old Town San Diego State Historic Park. Winner of the San Diego ConVis 1999 Finest Service Award and the California Restaurant Association 2003 Gold Medallion Award, Casa de Bandini is one of San Diego's most enchanting dining environments.

- Voted "Best Mexican Restaurant" FIVE TIMES
- Voted "Best Patio Dining" TWO TIMES

**Read recent guest comments**

Moderately priced. Breakfast, Lunch and Dinner.
Open daily 11:00AM
Spring/Summer close at 9:30PM Sun-Thu, 10:00PM Fri and Sat
Fall/Winter close at 9:00PM Sun-Thu, 9:30PM Fri and Sat



Located in the Old Town San Diego State Historic Park.
(619) 297-8211
Use our contact form for comments, questions and suggestions. and to be entered to win dinner for two and Casa De Bandini!

**Famous Margaritas & Mariachis - Beautiful Patio Dining**
**Mexican Specialities & Seafood - Parties & Banquets**



**Exhibit A 111**

# CASA DE BANDINI MENU
## Selected Items

**RESTAURANTS**

Rancho
El Nopal

Casa
de Pico

Casa de
Bandini

Casa
Guadalajara

Lino's Italian

**Grilled Chicken & Avocado Tacos** 9.95

**Taco Feast** 16.95

**Fajitas** 11.95

**Carnitas a la Michoacan** 11.95

**Carne Asada Tampiquena** 11.95

**Tamales** 9.95

**Burrito de Bandini** 8.50

**Chimichanga** 8.95

**Pollo Fundido** 8.95

**Steak Picado** 10.95

**Crab & Shrimp Fajitas** 15.95

**Tequila Lime Shrimp** 15.50

**Camarones Al Mojo De Ajo** 15.50

**Tostada Corona** 6.50

**Bandini Chicken and Avocado Salad** 9.75





home | shopping | dining | events | virtual tours | directions | about us
employment opportunities

### BAZAAR DEL MUNDO

Copyright © 2002 Bazaar Del Mundo
2754 Calhoun St., San Diego, CA 92110

http://bazaardelmundo.com/dining/bandini.html

3/31/2004

Exhibit A 112

# Superior Court of California
# County of Sacramento

### Program Case Notice

The Accelerated Civil Trial Case Management Program, (A.C.T.) requires the following timelines to be met in all cases except those that are excluded by California Rules of Court section 207(b):

| Action | Requirement |
| --- | --- |
| Service of Summons | Summons, complaint and program case notice must be served on all named defendants and proofs of service on those defendants must be filed with the court within **60 days** from the filing of the complaint.<br><br>When the complaint is amended to add a new defendant, the added defendant must be *served and proofs of service must be filed within 30 days after the filing of the* amended complaint.<br><br>A cross-complaint adding a new party must be served and proofs of service must be filed with the court **30 days** from the filing of the cross-complaint. |
| Statement of Damages | If a statement of damages pursuant to Section 425.11 of the Code of Civil Procedure or a statement of punitive damages is required, it must be served with the summons and complaint. |
| Certificate of Service/Progress | Within **75 days** of the filing of the complaint, plaintiff must file a certificate of service or a certificate of progress on a form provided by the court. |
| Responsive Pleadings | If a responsive pleading is not served within the time limits and no extension of time has been granted, the plaintiff within **10 days** after the time for service has elapsed must file a request for entry of default.<br><br>Parties may stipulate without leave of court to one 15-day extension beyond the 30-day time period prescribed for the response after service of the initial complaint.<br><br>No extensions of time to respond beyond **105 days** from the filing of the complaint may be given. |
| Judgment by Default | When a default is entered, the party who requested the entry of default must apply for a default judgment against the defaulting party within **45 days** after entry of default, unless the court has granted an extension of time. |
| Case Management Statement | The court will serve a notice of case management conference on all parties approximately **120 days** after the complaint is filed. A case management conference statement shall be filed at least 15 calendar days prior to the date set for the case management conference. |
| Meet and Confer | Parties must meet and confer, in person or by telephone as required in California Rules of Court 212(f) at least 30 calendar days before the case management conference date. |
| Case Management Conference | A case management conference is generally held within **180 days** of the filing of the complaint. |

Failure to comply with the program rules may result in the imposition of sanctions or an order to show cause. *Please refer to Local Rules 11.00 (C.M.P.) to 11.19 (C.M.P.) for more information.*

### NOTE: THIS NOTICE MUST BE SERVED WITH THE SUMMONS AND COMPLAINT.

**Exhibit A 113**

**ORIGINAL**

JS 44 (Rev. 3/99)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS
Department of Parks and Recreation for the State of California

## DEFENDANTS
Bazaar del Mundo, Inc., a California corp., and DOES 1-50, inclusive

**(b)** County of Residence of First Listed Plaintiff ___Unknown___
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed _____
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
David H. Robinson, Esq., SBN 74956
State of California, Office of the Attorney Gen'l
110 West A Street, San Diego, CA 92101

Attorneys (If Known)
Callie A. Bjurstrom, Esq., SBN 137816
Luce, Forward, Hamilton & Scripps, LLP
600 W. Broadway #2600, San Diego, CA 92101

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1 U.S. Government Plaintiff

☒ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant

☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

|  | PLF | DEF |  | PLF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury— | ☐ 620 Other Food & Drug | | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | ☐ 423 Withdrawal 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury— | of Property 21 USC 881 | | ☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | **PROPERTY RIGHTS** | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product | ☐ 650 Airline Regs. | ☐ 820 Copyrights | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | Liability | ☐ 660 Occupational | ☐ 830 Patent | ☐ 810 Selective Service |
| Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | ☒ 840 Trademark | ☐ 850 Securities/Commodities/ |
| (Excl. Veterans) | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other | | Exchange |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 371 Truth in Lending | | | ☐ 875 Customer Challenge |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | **LABOR** | **SOCIAL SECURITY** | 12 USC 3410 |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Property Damage | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | ☐ 891 Agricultural Acts |
| ☐ 190 Other Contract | Product Liability | ☐ 385 Property Damage | Act | ☐ 862 Black Lung (923) | ☐ 892 Economic Stabilization Act |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal Injury | Product Liability | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | ☐ 893 Environmental Matters |
| | | | | ☐ 864 SSID Title XVI | ☐ 894 Energy Allocation Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 730 Labor/Mgmt.Reporting | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | & Disclosure Act | | Information Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | Sentence | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 900 Appeal of Fee |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | Habeas Corpus: | | ☐ 870 Taxes (U.S. Plaintiff | Determination Under |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | ☐ 790 Other Labor Litigation | or Defendant) | Equal Access to Justice |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | | | ☐ 950 Constitutionality of |
| ☐ 290 All Other Real Property | ☐ 440 Other Civil Rights | ☐ 540 Mandamus & Other | ☐ 791 Empl. Ret. Inc. | ☐ 871 IRS—Third Party | State Statutes |
| | | ☐ 550 Civil Rights | Security Act | 26 USC 7609 | ☐ 890 Other Statutory Actions |
| | | ☐ 555 Prison Condition | | | |

## V. ORIGIN (PLACE AN "X" IN ONE BOX ONLY)

☐ 1 Original Proceeding  ☒ 2 Removed from State Court  ☐ 3 Remanded from Appellate Court  ☐ 4 Reinstated or Reopened  ☐ 5 Transferred from another district (specify)  ☐ 6 Multidistrict Litigation  ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION
(Cite the U.S. Civil Statute under which you are filing and write brief statement of cause. Do not cite jurisdictional statutes unless diversity.)

15 U.S.C. Sections 1119, 1120 and 1125; Plaintiff alleges various causes of action related to trademark infringement.

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $ Unspecified  CHECK YES only if demanded in complaint:
JURY DEMAND: ☐ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY
(See instructions): JUDGE _____   DOCKET NUMBER _____

DATE 8/3/04

SIGNATURE OF ATTORNEY OF RECORD _Callie A. Bjurstrom_

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

CIV.S- 04-1533 FCD JFM

AO 120 (3/85)

| TO: | REPORT ON THE |
|---|---|
| **Commissioner of Patents and Trademarks**<br>**Washington, D.C. 20231** | **FILING OR DETERMINATION OF AN**<br>**ACTION REGARDING A PATENT** |

In compliance with the Act of July 19, 1952 (66 Stat. 814; 35 U.S.C. 290) you are hereby advised
that a court action has been filed on the following patent(s) in the U.S. District Court:

| DOCKET NO.<br>04CV2244JM (JMA) | DATE FILED<br>11/9/04 | U.S. DISTRICT COURT<br>United States District Court, Southern District of California |
|---|---|---|
| PLAINTIFF<br>Department of Parks | | DEFENDANT<br>Bazaar Del Mundo, Inc. |

| | PATENT NO. | DATE OF PATENT | PATENTEE |
|---|---|---|---|
| 1 | 1,350,088 | March 1991 | BdM |
| 2 | 1,364,974 | March 1991 | BdM |
| 3 | | | |
| 4 | | | |

In the above-entitled case, the following patent(s) have been included:

| DATE INCLUDED | INCLUDED BY |
|---|---|
| | ☐ Amendment   ☐ Answer   ☐ Cross Bill   ☐ Other Pleading |

| | PATENT NO. | DATE OF PATENT | PATENTEE |
|---|---|---|---|
| 1 | | | |
| 2 | | | |
| 3 | | | |
| 4 | | | |

In the above-entitled case, the following decision has been rendered or judgment issued:

| DECISION/JUDGMENT |
|---|
| |

| CLERK | (BY) DEPUTY CLERK | DATE |
|---|---|---|
| | | |

**\*\*\* CASE TRANSFERRED TO USDC SOUTHERN DISTRICT OF CA FROM USDC EASTERN DISTRICT OF CA \*\*\***

Copy 1 - Upon initiation of action, mail this copy to Commissioner   Copy 3 - Upon termination of action, mail this copy to Commissioner
Copy 2 - Upon filing document adding patent(s), mail this copy to Commissioner   Copy 4 - Case file copy

# UNITED STATES DISTRICT COURT
Southern District Of California
Office Of The Clerk
880 Front Street, Room 4290
San Diego, California 92101-8900
Phone: (619) 557-5600
Fax: (619) 702-9900

W. Samuel Hamrick, Jr.                                              Matt Dykman
Clerk of Court                                                     Chief Deputy


November 10, 2004


David H. Robinson
110 W. A Street
San Diego, CA 92101

US District Court
Eastern District of California
Office of the Clerk
501 "I" Street
Sacramento, CA 95814

Callie A. Bjurstrom
Luce Forward Hamilton and Scripps
600 West Broadway
San Diego, CA 92101

RE: Dept. Of Parks and Recreation for the State of CA v. Bazaar Del Mundo, Inc.

You are hereby notified that the above entitled case was on 11-9-04 transferred from
the USDC Eastern District of CA to the U.S. District Court, Southern District of
California.   The case will now contain the case number of the Southern District, and
the initial of the assigned Judge. The case has been assigned to the Honorable Jeffrey
T. Miller, and on all future filings please show the case number as 04CV2244 JM
(JMA).


W. Samuel Hamrick, Jr.
Clerk of Court

By: _____
George Perrault, Deputy Clerk

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

OFFICE OF THE CLERK
501 "I" STREET
SACRAMENTO, CA  95814

US District Court,
Southern District of CA
880 Front Street, Suite 4290
San Diego, CA 92101-8900

RE: DEPARTMENT OF PARKS AND RECREATION v. BAZAAR DEL MUNDO, INC / CIV S-

04-1533 FCD JFM

Dear Clerk,

Pursuant to the Order transferring the above captioned case to

your court, dated NOVEMBER 4, 2004, transmitted herewith are a

certified copy of the transferral order and the original case file

documents.

Please acknowledge receipt of the above documents by

endorsing the copy of this letter provided.

Sincerely,

Jack L Wagner, Clerk

By: L. Mena-Sanchez, Deputy Clerk

**DATE RECEIVED:**      11 - 9 - 04

**COURT:**      USDC Southern Dist.

**NEW CASE NUMBER:**      04CV2244

JS44
(Rev. 07/89)

# CIVIL COVER SHEET

sheet. (SEE INSTRUCTIONS ON THE SECOND PAGE OF THIS FORM.)

FILED

**I (a) PLAINTIFFS**

**Dept of Parks and Recreation for the State of California**

**DEFENDANTS**

**Bazaar Del Mundo, Inc., a California corp., and DOES 1-50, inclusive**

04 NOV -9 AM 11: 09

CLERK U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

**(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF**
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT
(IN U.S. PLAINTIFF CASES ONLY)

BY ____ **DEPUTY**

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

**(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)**

David H. Robinson
110 W. A Street
San Diego, CA 92101

ATTORNEYS (IF KNOWN)

'04 CV 2244 JM    (JMA)

**II. BASIS OF JURISDICTION (PLACE AN x IN ONE BOX ONLY)**

☐ 1 U.S. Government Plaintiff

☑ 3 Federal Question
(U.S. Government Not a Party)

☐ 2 U.S. Government Defendant

☐ 4 Diversity (Indicate Citizenship of Parties in Item III

**III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN X IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT**
(For Diversity Cases Only)

| | PT | DEF | | PT | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. CAUSE OF ACTION (CITE THE US CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY).** 28:1331 et GP
15 U.S.C. 1119, 1120 and 1125

**V. NATURE OF SUIT (PLACE AN X IN ONE BOX ONLY)**

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reappointment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury- Medical Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | | ☐ 625 Drug Related Seizure of Property 21 USC881 | **PROPERTY RIGHTS** | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 365 Personal Injury - Product Liability | ☐ 630 Liquor Laws | ☐ 820 Copyrights | ☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment &Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 640 RR & Truck | ☐ 830 Patent | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs | ☑ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment of Veterans Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities Exchange |
| ☐ 160 Stockholders Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 864 SSID Title XVI | ☐ 892 Economic Stabilization Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 894 Energy Allocation Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | ☐ 530 General | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/Accommodations | ☐ 535 Death Penalty | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 871 IRS - Third Party 26 USC 7609 | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 240 Tort to Land | ☐ 444 Welfare | ☐ 540 Mandamus & Other | | | ☐ 950 Constitutionality of State |
| ☐ 245 Tort Product Liability | ☐ 440 Other Civil Rights | ☐ 550 Civil Rights | | | ☐ 890 Other Statutory Actions |
| ☐ 290 All Other Real Property | | ☐ 555 Prisoner Conditions | | | |

**VI. ORIGIN (PLACE AN X IN ONE BOX ONLY)**

☐ 1 Original Proceeding   ☐ 2 Removal from State Court   ☐ 3 Remanded from Appellate Court   ☐ 4 Reinstated or Reopened   ☑ 5 Transferred from another district (specify)   ☐ 6 Multidistrict Litigation   ☐ 7 Appeal to District Judge from Magistrate Judgment

**VII. REQUESTED IN COMPLAINT:**   ☐ CHECK IF THIS IS A CLASS ACTION UNDER f.r.c.p. 23

DEMAND $

Check YES only if demanded in complaint:
JURY DEMAND: ☐ YES ☐ NO

**VIII. RELATED CASE(S) IF ANY (See Instructions):**   JUDGE _____   Docket Number _____

DATE   11-9-04

SIGNATURE OF ATTORNEY OF RECORD
QB Fechler